Allen R. Ball, Esq. (State Bar #124088)
**LAW OFFICE OF BALL & YORKE**
1001 Partridge Drive, Suite 330
Ventura, California 93003
(805) 642-5177; (805) 642-4622 Fax
aball@ballandyorkelaw.com

**Attorney for Defendants,**
**JAMES WALD; NATALIE WALD;**
**JAYSON COHEN and ELITE SOUND COMPANY, LLC**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS EDWARD MARTIN, an individual; | **Case No.: 2:26-cv-03714-WLH(DFMx)** Judge: Hon. Wesley L. Hsu |
| **Plaintiff,** | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE AND MOTION OF DEFENDANTS WALD, COHEN AND ELITE TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (RULE 12(B)(1)) OR, IN THE ALTERNATIVE, TO STAY OR DISMISS DUE TO OTHER PENDING STATE ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ALLEN R BALL** |
| vs. | |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, a federal agency; JAMES WALD, an individual; NATALIE WALD, an individual; ELITE SOUND COMPANY LLC, a California limited liability company; JAYSON COHEN, an individual; | |
| **Defendants.** | **Date: June 5, 2026** **Time: 1:30 p.m.** **Dept: 9B** |

## TO THE COURT AND TO ALL PARTIES:

As authorized by Rule 201 of the Federal Rules of Evidence, Defendants James Wald; Natalie Wald; Jayson Cohen, and Elite Sound Company respectfully request that this court take judicial notice of the documents, attached as Exhibits to the Declaration of Allen R. Ball, in connection with the Notice of and Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, to Stay or Dismiss Due to Other Pending State Actions.

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald, Cohen & Elite

This court "may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (Fed.Rules.Evid., rule 201, subd. (b).) A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." (Fed.Rules.Evid., rule 201, subd. (c)(2).)

This court may "take judicial notice of various filings in [state court] proceedings. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992) (`We 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.')." (*Bennet v. Medtronic, Inc*, 285 F.3d 801, 803, fn. 2 (9th Cir, 2002)

Therefore, it is respectfully requested that the court judicially notice the following documents from various proceedings in California state courts:

Exhibit "A": A printout of the appellate opinion known as *People v. Martin* (filed June 17, 2024, no. B 325 048). affirming plaintiff's criminal conviction on nine counts of sex offenses against a the four-year-old daughter of current defendants James Wald and Natalie Wald and also his sentence of 610 years to life;

Exhibit "B": A printout of the complaint, filed October 29, 2024 by plaintiff Travis Martin, in the case known as *Martin v. Wald*, Ventura County Superior Court Case No. 2024CUNP032821, against defendants herein for claimed wrongdoing in first obtaining, and then exercising, ownership of the businesses such as Entertainment Technology, identified in the current federal pleading;

Exhibit "C": A printout of both the order denying and the initial Motion for Preliminary Injunction filed July 14, 2025, filed by plaintiff Travis Martin, in the

case known as *Martin v. Wald*, Ventura County Superior Court Case No. 2024CUNP032821, alleging that current defendants are mis-managing the businesses identified in the current federal pleading -- which, defendants suggest, is similar to the allegations in the current federal pleading;

Exhibit "D": A printout of the register of actions in the case known as *Martin v. Wald*, Ventura County Superior Court Case No. 2024CUNP032821, this document shows that, since the date of filing, this case has been – and currently is -- the subject of intensive litigation in the state courts, with a trial date set for November 30, 2026;

Exhibit "E": A printout of the complaint, filed August 3, 2023 by current defendants Natalie Wald and James Wald, both as individual plaintiffs and as Guardian ad Litem for their then-four-year-old daughter, victim of current plaintiff's child molestation, in a case known as *Wald v. Martin, et. al.*, Ventura County Superior Court, Case No. 2023CUPP012195, which case is referred to in plaintiff's current federal complaint even though it primarily seeks damages connected to the sexual abuse of the child plaintiff/victim.

Exhibit "F": A printout of a First Amended Cross-Complaint, filed April 7, 2026 by current plaintiff Martin in a case known as *Wald v. Martin, et. al.*, Ventura County Superior Court, Case No. 2023CUPP012195 against defendants herein, alleging, among other things, causes of action pertaining to the same businesses also identified in the current federal complaint;

Exhibit "G": A printout of the register of actions in the case known as *Wald v. Martin, et. al.*, Ventura County Superior Court, Case No. 2023CUPP012195, which case is referred to in plaintiff's current complaint; this document shows that, since the date of filing, this case has been – and currently is -- the subject of intensive litigation in the state courts;

///

///

## *Conclusion*

For the foregoing reasons, this request should be granted and judicial notice be taken of the documents attached as exhibits to the declaration of Allen R. Ball.

Respectfully submitted,

Dated:  May 4 2026

LAW OFFICE OF BALL & YORKE

Allen R. Ball, Esq.
Attorney for Defendants,
JAMES WALD AND NATALIE WALD;
JAYSON COHEN and ELITE SOUND
COMPANY LLC.

/ / /

/ / /

/ / /

/ / /

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald, Cohen & Elite

## *Declaration of Allen R. Ball*

I, ALLEN R. BALL hereby declare:

1.     I am an attorney duly licensed to practice law before all courts of the State of California. I am also duly licensed to practice law before the United States District Court, Central District of California. I am a partner with the Law Office of Ball & Yorke, attorneys of record for James Wald, Natalie Wald, Jayson Cohen and Elite Sound, Company, LLC, defendants herein. I am the attorney principally in charge of handling the file in this action and so, I have personal knowledge of the facts contained herein.

2.     Attached hereto as Exhibit "A", which I printed out from Lexis computerized legal research, is a copy of the appellate opinion known as *People v. Martin* (filed June 17, 2024, no. B325048) affirming plaintiff's criminal conviction on nine counts of sex offenses against a four-year-old child and a sentence of 610 years to life. This pertains to the references the existing federal complaint concerning plaintiff's imprisonment.

3.     The current federal case is not the only lawsuit between plaintiff Martin and current defendants regarding plaintiff Martin's accusations against defendants for both wrongful acquisition and improper management of businesses such as Entertainment Technology and/or Airlink at issue. Plaintiff Martin chose to litigate these issues in state court by filing an action, known as *Martin v. Wald*, Ventura County Superior Court Case No. 2024CUNP032821 now pending in the Superior Court of the State of California, County of Ventura. Exhibits "B" through "D", inclusive, are documents printed out from the Ventura County Superior Court's website, pertaining to this second state court action, as follows:

Exhibit "B": A printout of the complaint, filed October 29, 2024 by plaintiff Travis Martin, against defendants herein for claimed wrongdoing in obtaining and exercising ownership of the businesses identified in the current federal pleading, such as Entertainment Technology;

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald, Cohen & Elite

Exhibit "C":  A printout of both the and the Motion for Preliminary Injunction filed July 14, 2025, filed by plaintiff Travis Martin, in this second case, alleging that current defendants are mis-managing the businesses identified in the current federal pleading such as Entertainment Technology and/or Airlink; and the Court Order Denying the motion.

Exhibit "D":  A printout of the register of actions in the case known as *Martin v. Wald*, Ventura County Superior Court Case No. 2024CUNP032821, this document shows that, since the date of filing, this case has been – and currently is -- the subject of intensive litigation in the state courts with a trial date currently set for November 30, 2026.

4.    Plaintiff's current complaint refers to certain causes of action in the lawsuit known as *Wald v. Martin, et. al.*, Ventura County Superior Court, Case No. 2023CUPP012195, currently pending in the Superior Court of the State of California, County of Ventura.   Exhibits "E" through "G", inclusive, are documents printed out from the Ventura County Superior Court's website, pertaining to this action, as follows:

Exhibit "E":  A printout of the complaint, filed August 3, 2023 by current defendants Natalie Wald and James Wald, both as individual plaintiffs and as Guardian ad Litem for their then- four-year-old daughter, victim of current plaintiff's sexual abuse, and showing that the primary issues concern the damages inflicted on the child victim by plaintiff Martin's sexual abuse;

Exhibit "F":  A printout of a First Amended Cross-Complaint, filed April 7, 2026 by current plaintiff Martin in this action, alleging, among other things, causes of action pertaining to the same businesses also identified in the current federal complaint;

Exhibit "G":  A printout of the register of actions in this same action, showing that, since the date of filing in 2023, this case has been – and currently is -- the subject of intensive litigation in the state courts;

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald,  Cohen & Elite

5.    The documents attached as Exhibits "B" through "G" inclusive show that plaintiff chose state court as the forum for litigating alleged damages claimed from current defendants' alleged management of the businesses identified in this pending federal complaint.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this the 4 day of May 2026 in Ventura California.

Allen R. Ball, Declarant

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald,  Cohen & Elite

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of eighteen (18) years.  My business address is 1001 Partridge Drive, Suite 330, Ventura, California 93003.  I am employed in the County of Ventura, State of California, and am not a party to the above-entitled action.

On **May 4 , 2026**, I served ☐ the original ☒ a true copy of the following named document(s):

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE AND MOTION OF DEFENDANTS WALD, COHEN AND ELITE TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (RULE 12(B)(1)) OR, IN THE ALTERNATIVE, TO STAY OR DISMISS DUE TO OTHER PENDING STATE ACTIONS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ALLEN R BALL**

☒ **BY MAIL (F.R.C.P. 5(b)(2)(C)):**  By causing such documents(s) to be deposited in the United Stated Mail at Ventura, California, in regular business fashion with which I am readily familiar, sealed in an envelope with postage thereon, fully prepaid, addressed as follows:

☒ **BY ELECTRONIC MAIL (F.R.C.P. 5(b)(2)(E)):**  By sending it via electronic mail, without transmission error or difficulty, to the e-mail address(es) provided by the party(ies) as identified herein below:

☒ **VIA CM/ECF (F.R.C.P. 5(b)(3)):**  By filing the document electronically and allowing the Notice of Electronic Filing to suffice as the proof of service to all parties/counsel registered for electronic service.

### *** SEE THE ATTACHED SERVICE LIST***

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.  Executed this _4_ **day of May, 2026**, at Ventura, California.

Cathy Hernandez, Declarant

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald,  Cohen & Elite

## SERVICE LIST

| | |
|---|---|
| Travis Edward Martin<br>1746 F South Avenue, Suite 104<br>Ventura, CA 93003<br>Martin57290@gmail.com<br><br>Travis Martin (CDCR# BU6031)<br>Richard J. Donovan Correctional Facility<br>480 Alta Road<br>San Diego, CA 92179 | **Plaintiff in Pro Per** |

Request for Judicial Notice in Support of d Motion to Dismiss (or at least Stay) Plaintiff's Complaint, filed by Defendants Wald, Cohen & Elite

# EXHIBIT "A"

 Warning
As of: July 15, 2025 2:56 PM Z

## *People v. Martin*

Court of Appeal of California, Second Appellate District, Division Six

June 17, 2024, Opinion Filed

No. B325048

**Reporter**

2024 Cal. App. Unpub. LEXIS 3721 *; 2024 WL 3022464

THE PEOPLE, Plaintiff and Respondent, v. **TRAVIS EDWARD MARTIN**, Defendant and Appellant.

**Notice:** NOT TO BE PUBLISHED IN OFFICIAL REPORTS. *CALIFORNIA RULES OF COURT, RULE 8.1115(a)*, PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY *RULE 8.1115(b)*. THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF *RULE 8.1115*.

**Subsequent History:** Review denied by *People v. Martin, 2024 Cal. LEXIS 4715 (Cal., Aug. 21, 2024)*

**Prior History:** [*1] Superior Court of Ventura County, No. 2021029627, David R. Worley, Judge.

**Counsel:** Bases & Bases, Arielle Bases, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Julie A. Harris, Deputy Attorney General, and Kenneth C. Byrne, Supervising Deputy Attorney General, for Plaintiff and Respondent.

**Judges:** CODY, J.; GILBERT, P. J., BALTODANO, J. concurred.

**Opinion by:** CODY, J.

## Opinion

**Travis Edward Martin** appeals from a judgment following a trial at which the jury found him guilty of seven counts of committing a lewd act upon a child (*Pen. Code[1], § 288, subd. (a)*; counts 1-7), posing or modeling a minor for sexual purposes (§ 311.4, subd.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2024 Cal. App. Unpub. LEXIS 3721, *1

(c); count 8), and possession or control of child pornography (§ 311.11, subd. (a); count 9). As to all counts, appellant admitted two strike priors (§§ 667, 1170.12). As to each of counts one through seven, appellant admitted two prior convictions for committing a lewd act upon a child (§ 667.61, subds. (a), (d)) and a serious felony prior (§ 667, subd. (a) (§ 667(a)). The court sentenced appellant to a total term of 610 years to life: (1) 75 years to life under the Three Strikes Law, plus an additional five years for the section 667(a) serious felony priors, for counts one through seven; and (2) 25 years to life for [*2] counts eight and nine.

Regarding his convictions, appellant contends: (1) the trial court prejudicially erred in admitting *Evidence Code section 1108* evidence; (2) the prosecutor committed misconduct by misstating the evidence during closing argument; (3) the court improperly admitted expert evidence regarding Child Sexual Abuse Accommodation Syndrome; and (4) cumulative error.

Concerning his sentence, appellant asserts the court abused its discretion in both (1) denying appellant's request to strike the section 667(a) serious felony prior enhancements; and (2) sentencing appellant to a term of 610 years to life in violation of the prohibition against cruel and unusual punishment.

We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Background Information*

Natalie Wald[2] met appellant through his parents, whom Natalie and her husband James Wald had met at church. Natalie and James had two children—a daughter, Jane Doe, and a son.

Appellant's mother told Natalie appellant was incarcerated for child sexual abuse. Appellant served a sentence of approximately three and a half years. In 2016, several years after appellant's release from prison, appellant and James became business partners when they purchased a company called Entertainment [*3] Technology. Appellant paid for many family trips with the Walds, to places like Disneyland, June Lake, and Great Wolf Lodge. Appellant also paid the private school tuition for the Wald children.

Natalie allowed appellant to take her children to his home in Oxnard, where he lived with his mother, once or twice a week. The children thought of appellant as a fun uncle and his mother as a grandmother.

---

[2] We refer to the Walds by their first names to avoid confusion. No disrespect is intended. We refer to the charged victim as "Jane Doe" or "Doe."

2024 Cal. App. Unpub. LEXIS 3721, *3

### Jane Doe's Testimony

Jane Doe was seven years old when she testified at appellant's trial. At Great Wolf Lodge, after putting on her swimsuit, appellant licked her vagina. Later, after a swim, appellant licked Doe's vagina again. He also touched Doe's vagina with his finger at Great Wolf Lodge. Appellant forced Doe to put her mouth on his penis "a lot of times at his house." At his house, he also touched Doe's vagina with his fingers more than once. He orally copulated her at his home and at Disneyland. Appellant told Doe that her mother would hate Doe if Doe told her what he was doing.

When she was about four years old, Doe told her mother Natalie about appellant's conduct. Natalie did not believe Doe at that time because appellant denied. Natalie later believed her when they talked at the park. [*4]

### Doe's Reports to Natalie

Natalie testified that sometime before Doe turned five in February 2020, and likely shortly before September 28, 2019, Doe told Natalie appellant had licked her "hoo-hoo," Doe's word for vagina. Natalie called appellant, who denied and said he could no longer spend time with Doe. Doe cried and stated she did not know why she said appellant had done that. Natalie did not tell Child Protective Services or the police. After a brief hiatus, appellant began seeing the children again, and the status quo returned within a few months.

On October 31, 2021, appellant and Natalie argued about appellant picking up and holding Doe. The argument escalated, and Natalie threatened to call the police. On November 3, 2021, appellant spoke to Natalie and her husband about Natalie no longer doing accounting work for Entertainment Technologies.

From Doe's initial report until November 2021, Natalie had asked Doe every few weeks if there had been "any licking going on." Doe had denied. On November 4, 2021, Natalie asked Doe if anyone ever touched her, and she said no. Natalie had a feeling Doe was lying. The next day, Natalie took Doe to the park and asked if she had any secrets. Doe [*5] said appellant licked her "hoo-hoo" and called it "cleaning," and he touched her "hoo-hoo" with his hands. Doe touched appellant's "privates" and put her mouth on it. Doe indicated the conduct occurred at Disneyland and June Lake. That same day, Natalie called the police.

### Police Investigation and Appellant's Arrest

On November 9, 2021, Detective Meagan Yates interviewed Doe, who was about six and a half years old at the time. Doe said when she was with appellant at Great Wolf

2024 Cal. App. Unpub. LEXIS 3721, *5

Lodge, appellant touched her vagina with his fingers and made her touch his private part with her hands and mouth. Appellant also touched her vagina with his fingers and tongue at his house in Oxnard. Doe said appellant called licking "cleaning" and told Doe not to tell her mother. Doe said appellant never took pictures of her but showed her a video of two four-year-old girls showering together.

Law enforcement found photos of a young female's exposed vaginal and anal area on appellant's iPad. One photo appeared to show an adult hand spreading the child's labia open to better expose her vagina. Detective Yates believed clothing the female in the photos wore matched Jane Doe's clothing, which Natalie had provided. [*6]


_Evidence Code Section 1108 Testimony_

Autumn F. was 27 years old at the time of appellant's trial. Appellant offered to babysit Autumn when her parents were divorcing. Autumn was eight when she and appellant began spending time alone. Appellant took her to the movies, to toy stores, and on drives. When Autumn was nine, appellant asked her to take her clothes off at his shop. Appellant wanted to photograph her, but she refused to smile until her clothes were back on. He inserted his fingers into her vagina for about 20 to 30 minutes, which hurt. Appellant licked her vagina. He took quite a few photos of Autumn after she put her clothes back on.

Appellant attempted to molest Autumn at Disneyland. He told his family she needed to take a nap. At the hotel room, appellant told Autumn to lay down. She did, and appellant climbed on top of her and tried to pull her pants down. Appellant touched her vagina with his tongue over her underwear. He also visited Autumn's family at their home. For about a year, every time he came into Autumn's room to say goodnight, he would put his fingers into her vagina. Appellant threatened to kill her mother if she told anybody. Autumn told no one until she was taken to the police. Appellant [*7] confessed to some of the conduct Autumn described as occurring at the shop and at Disneyland. In 2006, appellant was convicted of two counts of lewd and lascivious acts with a child under 14 (§ 288, subd. (a)) and one count of using a minor for sex acts (§ 311.4, subd. (c)). At the trial for his conduct against Doe, appellant stipulated to those convictions.

Hailee G. was 26 years old at the time of appellant's trial. In 2006, appellant was an adult, and she was around ten years old. Hailee's family moved in with appellant for about a year. Appellant would take her shopping and buy her whatever she wanted. But eventually, appellant started doing things she did not like. At first, he sat next to her and put his arm around her. Then, he would have her sit on his lap and touch her by the waist. The conduct progressed to touching her under her clothes but over her underwear. Ultimately, appellant started touching Hailee's vagina and inserting his finger inside it. She would "tell him no," but appellant would try to hold her. Initially, Hailee did

not tell anyone about appellant's acts because she thought they were friends. Later, she told her stepmom, and the police were contacted.

Kasey N., Hailee's sister, was 22 years [*8] old at the time of trial. Kasey was six years old in 2006. Appellant would give her extra sweets and would touch her inappropriately when they were alone together. Over three times, appellant put his hand down her pants and rubbed her vagina with his fingers. Kasey testified that in order to keep her quiet, appellant would pretend he was someone else, a person who lived in the home and who Kasey loved. She kept quiet for a while but ultimately told her mom and the police about the abuse. Neither Kasey's nor Hailee's claims resulted in convictions.

## Child Sexual Abuse Accommodation Syndrome

Dr. Anthony Urquiza testified as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. Urquiza explained CSAAS is neither a diagnosis nor a mental health disorder. He also testified CSAAS is not and should not be used to identify abused victims. Instead, it is a description of common behaviors of a sexually abused child.

Dr. Urquiza did not interview Jane Doe, nor did he read the police reports in her case.

DISCUSSION

### Evidence Code Section 1108 Testimony

Appellant contends the trial court prejudicially erred in admitting the *Evidence Code section 1108* evidence. We disagree.

*Evidence Code section 1101* generally "limits the admissibility of so-called 'propensity' or 'disposition' [*9] evidence offered to prove a person's conduct on a particular occasion." (*People v. Daveggio and Michaud (2018) 4 Cal.5th 790, 822-823, 231 Cal. Rptr. 3d 646, 415 P.3d 717.*) *Evidence Code section 1108*[3] creates an exception to this rule authorizing the admission of evidence of the defendant's prior sexual offenses unless it would be unduly prejudicial pursuant to *Evidence Code section 352.*[4]

---

[3] *Evidence Code section 1108* states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by *Section 1101*, if the evidence is not inadmissible pursuant to *Section 352*." (*Evid. Code, § 1108, subd. (a).*)

[4] *Evidence Code section 352* provides that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*Evid. Code, § 352.*)

*Evidence Code section 1108* creates a "presumption in favor of admissibility." (*People v. Merriman (2014) 60 Cal.4th 1, 59, 177 Cal. Rptr. 3d 1, 332 P.3d 1187*.) Nevertheless, trial courts "must engage in a careful weighing process under *[Evidence Code] section 352*." Factors the court should consider include whether the prior act is remote, "the degree of certainty of its commission, and the . . . similarity to the charged offense. (*People v. Falsetta (1999) 21 Cal.4th 903, 917, 89 Cal. Rptr. 2d 847, 986 P.2d 182 (Falsetta)*.) We review admission under *Evidence Code section 1108* for abuse of discretion. (*People v. Cordova (2015) 62 Cal.4th 104, 132, 194 Cal. Rptr. 3d 40, 358 P.3d 518*.)

Appellant argues the uncharged offenses against Hailee and Kasey were not similar because they did not involve oral copulation or photography. But he ignores other similarities that made the evidence highly probative. In each case, appellant spent time with the family. He initiated a period of grooming in which he bought toys or provided extra sweets. Then, he engaged in sexual misconduct to varying degrees. Common to Hailee, Kasey, and Doe was appellant using his hands to touch their vaginas. The three were similar in age when abused.

Appellant argues Hailee's and Kasey's roughly 16-year-old [*10] offenses were too temporally remote. However, courts have repeatedly upheld admission when the offenses occurred many years prior. (See e.g., *People v. Branch (2001) 91 Cal.App.4th 274, 285, 109 Cal. Rptr. 2d 870* [similarity between offenses "'balanced out'" a 30-year gap]; *People v. Waples (2000) 79 Cal.App.4th 1389, 1395 [20-year gap not too remote]*.) Given their similarity with the charged crimes, the offenses against Hailee and Kasey were not too remote.

Appellant argues Hailee's and Kasey's testimony was unreliable because appellant denied their allegations, they were never proven in court, and there was no corroboration. However, appellant's denial does not make the testimony unreliable, and neither does the lack of a conviction, especially when no charges were filed. Absence of corroboration is unsurprising given the "secretive nature of sex crimes." (*Falsetta, supra, 21 Cal.4th at p. 911*.) Ultimately, the jury was the judge of whether the testimony was credible.

We have considered appellant's additional challenges to Hailee's and Kasey's testimony and find them equally unpersuasive.

Appellant asserts the trial court should have excluded Autumn F.'s testimony as cumulative of appellant's confessions and convictions. But the prosecution was not obliged to rely solely on such antiseptic evidence. (Cf. *People v. Johnson (2015) 61 Cal.4th 734, 767, 190 Cal. Rptr. 3d 536, 353 P.3d 266*.) Moreover, Autumn testified about additional acts of sexual [*11] abuse for which appellant was not charged or

2024 Cal. App. Unpub. LEXIS 3721, *11

convicted. The court did not abuse its discretion in admitting the *Evidence Code section 1108* testimony.


### Prosecutorial Misconduct

Appellant asserts the prosecutor committed misconduct by misstating the evidence in closing argument; he argues the error requires reversal. We conclude appellant forfeited this claim by failing to timely object at trial. However, even considering the merits of the claim, the error was harmless.

"[M]ischaracterizing the evidence is misconduct." (*People v. Hill (1998) 17 Cal.4th 800, 823, 72 Cal. Rptr. 2d 656, 952 P.2d 673*.) To preserve a misconduct claim for appeal, a defendant must make a timely objection unless "an objection would have been futile . . . ." (*People v. Winbush (2017) 2 Cal.5th 402, 485, 213 Cal. Rptr. 3d 1, 387 P.3d 1187*.)

The prosecutor misstated the evidence in closing argument when he indicated that all the prior offenses involved oral copulation and photography. Appellant did not object. The objection would not have been futile. We conclude the claim is forfeited.

Appellant argues defense counsel's failure to object constituted ineffective assistance of counsel. We are unpersuaded. "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse (2002) 27 Cal.4th 469, 502, 117 Cal. Rptr. 2d 45, 40 P.3d 754*.) Counsel might have believed objecting "would focus the jury's attention [*12] on the [prior conduct] in ways that would not be helpful to the defense." (*People v. Harris (2008) 43 Cal.4th 1269, 1289, 78 Cal. Rptr. 3d 295, 185 P.3d 727*.)

Regardless, the error was harmless under both federal and state constitutional standards. Under the federal standard the misstatement did not infect the trial with such "'unfairness as to make the resulting conviction a denial of due process . . . .'" (*People v. Martinez (2010) 47 Cal.4th 911, 955, 105 Cal. Rptr. 3d 131, 224 P.3d 877*.) Under the state standard, it was not "reasonably probable the trial outcome was affected." (*People v. Shazier (2014) 60 Cal.4th 109, 127, 175 Cal. Rptr. 3d 774, 331 P.3d 147*.)

The prosecutor's circumscribed misstatement did not result in a denial of due process nor is it reasonably probable the outcome would have been different absent the error. The trial court instructed the jury that the attorney arguments are not evidence. (*CALCRIM No. 222*.) We presume the jury follows such instructions. (*People v. Chhoun (2021) 11 Cal.5th 1, 30, 275 Cal. Rptr. 3d 2, 480 P.3d 550*.)

Appellant contends the misconduct improperly bolstered Doe's credibility by exaggerating the similarity between the prior and charged offenses. Although the prior

2024 Cal. App. Unpub. LEXIS 3721, *12

and charged offenses differed in some respects, they all shared many similarities. Moreover, the prosecutor made no misstatement as to Autumn.

Ultimately, Doe's detailed testimony was largely consistent with her prior statements. The *Evidence Code section 1108* witnesses lend credence to her account, as do photographs recovered [*13] from appellant's iPad. While the prosecutor slightly overstated the similarity between prior and charged offenses, we cannot find a reasonable probability of a different outcome.


*CSAAS Evidence*

Appellant contends the trial court should have excluded Dr. Urquiza's CSAAS testimony. We disagree.

Appellant argues the CSAAS evidence should have been subject to *Kelly/Frye* scientific reliability standards. (*People v. Kelly (1976) 17 Cal.3d 24, 130 Cal. Rptr. 144, 549 P.2d 1240*; *Frye v. United States (D.C. Cir. 1923) 293 F.1013*.)

As this court recently determined in *People v. Munch (2020) 52 Cal.App.5th 464, 266 Cal. Rptr. 3d 136*, the *Kelly/Frye* rule does not apply to CSAAS evidence. CSAAS is not expert testimony based on a new scientific technique or method. We see no reason to reconsider this well-established conclusion.

Appellant posits the trial court should have excluded the CSAAS evidence because it improperly bolstered Jane Doe's credibility and allowed the jury to consider it as evidence of guilt. Appellant maintains *CALCRIM No. 1193*[5] did not cure this error but misstated the law.

We rejected a similar challenge in *People v. Gonzales (2017) 16 Cal.App.5th 494, 224 Cal. Rptr. 3d 421 (Gonzales)*. In *Gonzales*, as here, the CSAAS expert testified that CSAAS is not a tool to help diagnose child sexual abuse. (*Id. at pp. 503-504*.) We concluded "[t]he CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior." (*Id. at p. 504*.) "Thus, under *CALCRIM No. 1193*, a juror who believes [Dr. Urquiza's] testimony [*14] will find both that [Doe's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (*Ibid.*)

---

[5] The jury was instructed using *CALCRIM No. 1193*: "You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome. [¶] Dr. Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged. [¶] You may consider this evidence only in deciding whether or not [Jane Doe's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

Appellant takes issue with the instruction's use of "'not inconsistent,'" contending "not inconsistent" is the same as "consistent." Even if true,[6] the instruction provides CSAAS evidence is to be considered "in deciding *whether or not* [Doe's] conduct was not inconsistent with the conduct of someone who has been molested . . . ." (italics added.) As we explained in *Gonzales*: "A reasonable juror would understand *CALCRIM No. 1193* to mean that the jury can use [Dr. Urquiza's] testimony to conclude that [Doe's] behavior does not mean she lied when she said she was abused." (*Gonzales, supra, 16 Cal.App.5th at p. 504.*) CSAAS evidence and the attendant instruction serve to "disabuse jurors of commonly held misconceptions of child sexual abuse . . . ." (*Id., at p. 503*, citing *People v. McAlpin (1991) 53 Cal.3d 1289, 1301, 283 Cal. Rptr. 382, 812 P.2d 563.*) Addressing those misconceptions "neutralizes the victim's apparently self-impeaching behavior" (*id., at p. 504*), leaving the parties free to argue and the jury to determine what the conduct may mean, including that the behavior, such as delay in reporting, could be indicative of [*15] falsehood.

We conclude the trial court properly admitted and instructed on the CSAAS evidence.

## Cumulative Error

Appellant claims cumulative error necessitates reversal. We detected only one error—the prosecutor's misstatement during closing argument—and concluded it was harmless. Accordingly, there is no cumulative error.

## Section 667(a) Serious Felony Prior Enhancements

Appellant asserts the trial court abused its discretion by failing to strike the section 667(a) serious felony prior enhancements. We disagree.

Section 1385 vests the trial court with the authority to dismiss enhancements. We review the exercise of that authority for abuse of discretion. (*People v. Mendoza (2023) 88 Cal.App.5th 287, 298, 304 Cal. Rptr. 3d 624.*) When, "'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Jefferson (2016) 1 Cal.App.5th 235, 242-243, 204 Cal. Rptr. 3d 583.*)

Appellant contends the refusal to dismiss the section 667(a) enhancements contradicted the trial court's initial statement that a single term of 75 years to life would have been

---

[6] *CALCRIM No. 1193* was modified in September 2022, and this part of the instruction now states: "You may consider this evidence only in deciding whether or not [the alleged victim's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

sufficient. However, the court made that statement before hearing counsels' argument. After argument, [*16] the court found the prosecution "summed it up well. The prior offenses were of the same type, and the circumstances were very similar to those of this as well, making any grant of motion to strike unwise and unwarranted in this circumstance." Openness to argument does not indicate abuse of discretion.

## Cruel and Unusual Punishment

Appellant argues his sentence of 610 years to life violates the prohibition against cruel and unusual punishment. He maintains he "does not deserve a sentence which is the functional equivalent of life without the possibility of parole." Appellant contends a sentence he cannot possibly complete serves no rational legislative or penological purpose. We conclude appellant's sentence is not cruel or unusual.

Under the California Constitution, a sentence constitutes cruel or unusual punishment if it is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Dillon (1983) 34 Cal.3d 441, 478, 194 Cal. Rptr. 390, 668 P.2d 697*; *Cal. Const., art. 1, § 17*.) Deference to the Legislature "is an important element in any disproportionality analysis." (*In re Palmer (2021) 10 Cal.5th 959, 972, 274 Cal. Rptr. 3d 292, 479 P.3d 782*.) Three analytical techniques aid this deferential review: "(1) an examination of the nature of the offense and the offender, [*17] with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*Id. at p. 973*.)

Without recounting the graphic details, appellant repeatedly sexually abused a young child. Appellant concedes "the conduct as found true by the jury is morally reprehensible . . . ." (See *Ashcroft v. Free Speech Coalition (2002) 535 U.S. 234, 244, 122 S. Ct. 1389, 152 L. Ed. 2d 403* ["The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"].) Of course, "[t]here exists a strong public policy to protect children of tender years." (*People v. Olsen (1984) 36 Cal.3d 638, 646, 205 Cal. Rptr. 492, 685 P.2d 52*.) Especially given appellant had already served prison time for sexual abuse of a child under similar circumstances, appellant manifestly poses a danger to society.

As to comparison with more serious offenses in California, "lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable. It may have lifelong consequences to the well-being of the child." (*People v. Christensen (2014) 229 Cal.App.4th 781, 806, 177 Cal. Rptr. 3d 712*.) Moreover, a substantial portion of appellant's sentence stems from his prior convictions and the Three Strikes Law. The [*18] United States Supreme Court has approved recidivist statutes that "deal[] in a

# EXHIBIT "B"

RECEIVED
VENTURA SUPERIOR COURT
**10/29/24**

Alexander S. Kasendorf (SBN 213958)
kasendorf@thecalaw.com
Timothy R. Crawford (SBN 334859)
crawford@thecalaw.com
**CORNELIUS & KASENDORF, APC**
23801 Calabasas Rd., Suite 100
Calabasas, CA 91302
Telephone:    (818) 835-9159
Facsimile:    (818) 396-3160

Attorneys for Plaintiffs Travis Edward Martin,
Airlink Internet, Inc. and Entertainment
Technology, LLC

Electronically
**FILED**
by Superior Court of California
County of Ventura
**10/29/2024**
Brenda L. McCormick
Executive Officer and Clerk
Hannah Cress
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA
COUNTY OF VENTURA**

| | |
|---|---|
| TRAVIS EDWARD MARTIN, an individual; ENTERTAINMENT TECHNOLOGY, LLC, a California limited liability company; and AIRLINK INTERNET, INC., a California corporation<br><br>Plaintiffs,<br><br>v.<br><br>JAMES WALD, an individual; NATALIE WALD, an individual; ELITE SOUND COMPANY LLC, a California limited liability company; JAYSON COHEN, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | **Case No.:  2024CUNP032821**<br><br>**COMPLAINT FOR:**<br><br>**1) BREACH OF OPERATING AGREEMENT;**<br>**2) BREACH OF FIDUCIARY DUTY;**<br>**3) FRAUD IN THE INDUCEMENT;**<br>**4) INTENTIONAL MISREPRESENTATIONS;**<br>**5) THEFT BY FALSE PRETENSES;**<br>**6) CORPORATE WASTE;**<br>**7) ABUSE OF CONTROL;**<br>**8) ACCOUNTING;**<br>**9) DECLARATORY RELIEF;**<br>**10) INJUNCTIVE RELIEF;**<br>**11) UNFAIR BUSINESS PRACTICES;**<br>**12) COMMON COUNTS; and**<br>**13) NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

Plaintiffs TRAVIS EDWARD MARTIN, an individual, AIRLINK INTERNET, INC., a California corporation and ENTERTAINMENT TECHNOLOGY, LLC, a California limited liability company, for their complaint against defendants JAMES WALD, an individual;

1
**COMPLAINT**

Ventura Superior Court Accepted through eDelivery submitted 10-29-2024 at 12:27:00 PM

NATALIE WALD, an individual; ELITE SOUND COMPANY LLC, a California limited liability company; JAYSON COHEN, an individual; and DOES 1 through 50, inclusive, alleges as follows:

## PARTIES

1.    Complainant TRAVIS EDWARD MARTIN ("TRAVIS"), an individual, is an adult currently residing in Fresno County, California.

2.    ENTERTAINMENT TECHNOLOGY, LLC, ("ENTERTAINMENT") is, and at all times relevant hereto was, a California limited liability lompany with its principal place of business located in the County of Ventura, State of California.

3.    AIRLINK INTERNET, INC. ("AIRLINK" collectively with TRAVIS and ENTERTAINMENT, "Plaintiffs"), is, and at all times relevant hereto was, a California corporation with its principal place of business located in the County of Ventura, State of California.

4.    Defendant JAMES WALD ("JAMES") is, and at all times relevant here to was, an individual over the age of majority residing in County of Ventura, State of California.

5.    Defendant NATALIE WALD ("NATALIE") is, and at all times relevant hereto was an individual over the age of majority residing in the County of Ventura, State of California.

6.    Defendant JAYSON COHEN ("JAYSON") is, and at all times relevant hereto was, an individual over the age of majority residing in the County of Ventura, State of California.

7.    Defendant ELITE SOUND COMPANY LLC ("ELITE") is, and at all times relevant hereto was, a California limited liability company with its principal place of business located in the County of Ventura, State of California.

8.    Plaintiffs are ignorant of the true names of defendants identified as DOES 1 through 50, inclusive, and have therefore sued them by the above names which are fictitious. Plaintiffs will amend this complaint by inserting their true names in lieu of these fictitious names, together with apt and proper charging words, when the true names are ascertained. Plaintiffs are informed and believe and thereon allege that each of the defendants designated in

2

**COMPLAINT**

this complaint as DOE are responsible and liable to Plaintiffs in some manner for the events, happenings, and contentions referred to in this complaint. All references in this complaint to defendants shall be deemed to include all DOE defendants.

9.    At all times relevant to this action, each defendant, including those fictitiously named defendants, was the agent, servant, employee, partner, joint ventures, alter ego or surety of the other defendants and was acting within the scope of that agency, employment, partnership, venture, relationship or suretyship with the knowledge and consent or ratification of each of the other defendants in doing the things alleged in this complaint.

**FACTUAL ALLEGATIONS**

10.    Defendants were introduced to TRAVIS through TRAVIS' mother Donna Martin ("DONNA") in 2008. Defendants were in the sound and music business and JAMES was also an electrician.

11.    In or around 2016, TRAVIS formed ENTERTAINMENT. TRAVIS thereafter invited JAMES to go into business with him and gifted him a 10% interest in ENTERTAINMENT. TRAVIS was therefore a 90% owner of ENTERTAINMENT and JAMES was a 10% owner of ENTERTAINMENT. TRAVIS financed all of ENTERTAINMENT himself. NATALIE did the accounting for ENTERTAINMENT. TRAVIS and JAMES are the only members of ENTERTAINMENT.

12.    In or around 2017, NATALIE began working for AIRLINK, another company owned by TRAVIS.

13.    JAMES represented to TRAVIS that he could help ENTERTAINMENT grow as a business and generate more revenue. JAMES stated to TRAVIS, that if AIRLINK financed ENTERTAINMENT's growth, he would be able to grow the business such that it could pay back AIRLINK with interest.

14.    In 2020 and 2021, AIRLINK gave several loans to ENTERTAINMENT totaling $528,231.37 (the "Airlink Loans") to buy sound equipment at the direction of JAMES. TRAVIS and JAMES had developed a close business and personal relationship and had known each other

for approximately 12 years prior to the distribution of the Airlink Loans. JAMES represented to TRAVIS that if AIRLINK loaned the money to ENTERTAINMENT so that it could buy more equipment, JAMES would build and grow ENTERTAINMENT into one of the largest production companies in Southern California. The proceeds would be used to pay back AIRLINK with interest. JAMES and TRAVIS entered oral agreements (the "Contract") for the Airlink Loans, but JAMES intentionally drafted future transactional documents between the parties to state that JAMES would not assume any individual liability or obligations owed by ENTERTAINMENT to AIRLINK.

15. JAMES intended to appropriate the Airlink Loans into his own businesses ELITE for his own benefit and because he entered into an agreement that he was not personally liable for any debts or obligations that ENTERTAINMENT owed to AIRLINK. JAMES encouraged TRAVIS to authorize the Airlink Loans, ensured that he (JAMES) would not be personally liable for the Airlink Loans, and then misappropriate the Airlink Loans for his own personal benefit.

16. During JAMES tenure as an owner of ENTERTAINMENT, JAMES paid himself a $500.00 *per diem*. TRAVIS received no income from ENTERTAINMENT and any proceeds TRAVIS was entitled to were put directly back into ENTERTAINMENT to help grow the company.

17. In order to wrest complete and total control of the companies from TRAVIS, JAMES and NATALIE conspired to concoct a plan to accuse TRAVIS of sexually assaulting JAMES and NATALIE's minor child.

18. Ultimately because of the allegations made against TRAVIS, TRAVIS was arrested in 2021 and convicted.

19. When JAMES and NATALIE realized they wouldn't be able to acquire any financing due to their poor personal finances, they added their friend JAYSON to the conspiracy. JAYSON is the principal of ELITE. Defendants conspired to get ENTERTAINMENT to sell all of its assets to ELITE at a substantial discount without paying the fair market value of those assets.

4

**COMPLAINT**

20.    After TRAVIS was convicted, he was unable to negotiate any business dealings. DONNA became the agent of TRAVIS, as power of attorney, thus giving her control over ENTERTAINMENT. In November 2022, Defendants approached DONNA and represented to DONNA that ENTERTAINMENT's value had plummeted because of TRAVIS's incarceration and ENTERTAINMENT needed to sell its assets to Defendants before ENTERTAINMENT dropped in value further (the "Misrepresentations"). Defendants knew that ENTERTAINMENT was not dropping in value, and it had its best year in revenue in 2022 and that TRAVIS's incarceration had no negative impact on ENTERTAINMENT's business. On November 26, 2022, Defendants coerced DONNA into signing a Business Assets Sale Agreement (the "Sale Agreement") for ENTERTAINMENT to sell all its remaining assets to ELITE. The Sale Agreement is grossly oppressive and an unfair sale.

21.    DONNA had no way of knowing the value of the assets and could not communicate with TRAVIS. JAMES, JAYSON and ELITE repeatedly pressured DONNA and pushed a sense of urgency to act; while knowing she was in distress to force the sale of all of ENTERTAINMENT's assets during this time frame knowing she could not confer with TRAVIS.

22.    JAMES also improperly influenced DONNA to have ENTERTAINMENT sell $500,000.00 worth of assets to Rat Sound Systems, Inc. ("Rat Sound") for a total of $400,000.00. Rat Sound was meant to be a business vendor for ENTERTAINMENT but JAMES coerced DONNA and ENTERTAINMENT to sell ENTERTAINMENT's assets to Rat Sound for a $100,000.00 discount so that JAMES and ELITE would have a good relationship with Rat Sound so that ELITE would be able to get business from Rat Sound in the future.

23.    JAMES, JAYSON, and ELITE purchased the assets of ENTERTAINMENT for $400,000.00. The estimated value of the assets, tangible and intangible, at the time, was close to $1.15 million.

24.    Defendants underpaid upwards of $750,000.00 for the assets of ENTERTAINMENT through conspiracy and undue influence. This was the culmination of the

**COMPLAINT**

Defendants plot to send TRAVIS to prison to acquire the business at a substantially reduced price after he cutoff the money.

25.    Defendants attempted to claim that TRAVIS going to prison caused the value of ENTERTAINMENT to drop and that is why all assets had to be sold at a substantial discount despite the fact that ENTERTAINMENT had their highest revenue year in 2022 amounting to a profit of $346,000.00.

26.    Due to Defendants' actions TRAVIS has been defrauded of $1,500,000.00 in assets and as a result, AIRLINK has been defrauded of $528,231.37.

27.    The book value of ENTERTAINMENT at the time of sale was $1,038,000.00 and equipment value of $400,000.00. The total value of ENTERTAINMENT was $1,438,000.00. Defendants coerced DONNA to sell ENTERTAINMENT to Defendants for a total of $215,000.00, $1,185,000.00 less than the fair market value for ENTERTAINMENT.

## FIRST CAUSE OF ACTION

### (Breach of Operating Agreement - against JAMES)

28.    Plaintiffs reallege paragraphs 1 through 27, inclusive, and by this reference incorporate the same as though set forth fully herein.

29.    The Operating Agreement is a contract entered into by and among the TRAVIS and JAMES.

30.    JAMES breached the Operating Agreement by coercing DONNA, as power of attorney for TRAVIS, to sell all of ENTERTAINMENT's assets and rights at a substantial loss. The Operating Agreement and the law required JAMES to act in the best interests of ENTERTAINMENT and the sale was self-serving.

31.    As a direct and proximate result of the aforementioned breaches, Plaintiffs have been damaged in an amount no less than $$1,185,000.00.

32.    Plaintiffs are also entitled to their attorneys' fees pursuant to the Operating Agreement.

///

///

6

**COMPLAINT**

**SECOND CAUSE OF ACTION**

**(Breach of Fiduciary Duty - against JAMES and NATALIE)**

33.    Plaintiffs reallege paragraphs 1 through 32, inclusive, and by this reference incorporate the same as though set forth fully herein.

34.    JAMES as a member of ENTERTAINMENT owed fiduciary duties to ENTERTAINMENT and to TRAVIS as the majority member of ENTERTAINMENT as a matter of law.

35.    NATALIE as the accountant for ENTERTAINMENT owed fiduciary duties to ENTERTAINMENT and to TRAVIS as a matter of law.

36.    JAMES and NATALIE breached their fiduciary duties to TRAVIS and ENTERTAINMENT by partaking in the above-referenced actions and inactions, including, but not limited to, coercing DONNA to force ENTERTAINMENT to sell itself for $400,000.00, $1,185,000.00 less than its actual worth. JAMES and NATALIE coerced DONNA to sell equipment of ENTERTAINMENTS to Rat Sound at a 20% discounted price so that Rat Sound would develop a business relationship with ELITE, JAMES, NATALIE and JAYSON at the expense of ENTERTAINMENT and usurping ENTERTAINMENT's business relationship with Rat Sound.

37.    In doing the acts or failing to act as alleged herein, JAMES and NATALIE, acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, they are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

**THIRD CAUSE OF ACTION**

**(Fraud in the Inducement - against Defendants)**

38.    Plaintiffs reallege paragraphs 1 through 37, inclusive, and by this reference incorporate the same as though set forth fully herein.

39.    Defendants used repeated pressure, intimidation, and undue influence to exploit DONNA's weakness of mind, caused by extreme mental anguish and distress from her son and

7

sole financial provider being unavailable and convinced DONNA that ENTERTAINMENT would fail as a result of TRAVIS's incarceration.

40. Defendants were aware that ENTERTAINMENT was in fact having the best year in revenue when they applied repeated pressure, intimidation, and undue influence to exploit DONNA to sell all of ENTERTAINMENT's assets to Defendants and ENTERTAINMENT's assets and that ENTERTAINMENT's value and their assets were not reduced as a result of TRAVIS's incarceration, but Defendants made the Misrepresentations anyways.

41. Defendants knew that the Misrepresentations were false when they made said representations.

42. Defendants intended that DONNA and ENTERTAINMENT rely on the Misrepresentations and sell all of ENTERTAINMENT's assets and ownership at an incredibly deflated price.

43. DONNA on behalf of ENTERTAINMENT reasonably relied on the Misrepresentations and sold all assets of ENTERTAINMENT at a deflated price.

44. As a direct and proximate result of the aforementioned actions and/or omissions, Plaintiffs have been damaged in an amount no less than $1,185,000.00.

45. In doing the acts or failing to act as alleged herein, Defendants acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

### FOURTH CAUSE OF ACTION

**(Intentional Misrepresentation - against Defendants)**

46. Plaintiffs reallege paragraphs 1 through 45, inclusive, and by this reference incorporate the same as though set forth fully herein.

47. Defendants, and each of them, represented to Plaintiffs that certain facts were true and correct, as evidenced by the Misrepresentations.

48. It has since been discovered that the Misrepresentations were false.

8

**COMPLAINT**

49.     Defendants, and each of them, knew that the Misrepresentations were false when they made said representations.

50.     Defendants, and each of them, intended that DONNA as the power of attorney for Plaintiffs to rely on the Misrepresentations.

51.     DONNA as power of attorney for Plaintiffs, and each of them, reasonably relied on the Misrepresentations because Defendants used TRAVIS' incarceration to make DONNA believe that ENTERTAINMENT was failing as a business in 2022 despite ENTERTAINMENT having its highest grossing year for revenue in 2022.

52.     As a direct and proximate result of the aforementioned actions and/or omissions, ENTERTAINMENT has been damaged in an amount no less than $1,185,000.

53.     In doing the acts or failing to act as alleged herein, Defendants, and each of them, acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, they are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

### FIFTH CAUSE OF ACTION

#### (Theft by False Pretenses - against Defendants)

54.     Plaintiffs reallege paragraphs 1 through 53, inclusive, and by this reference incorporate the same as though set forth fully herein.

55.     Defendants knowingly and intentionally deceived Plaintiffs by false and/or fraudulent representations or pretenses, as evidence by the Misrepresentations.

56.     Defendants made the Misrepresentations intending to persuade DONNA on behalf of ENTERTAINMENT to let Defendants take possession and ownership of ENTERTAINMENT's assets.

57.     Plaintiffs let Defendants take possession and ownership of all of ENTERTAINMENT's assets because Plaintiff's reasonably relied on the Misrepresentations.

58.     As a direct and proximate result of the aforementioned actions and/or omissions, Plaintiffs have been damaged in an amount no less than $1,185,000.00.

**COMPLAINT**

59.    In doing the acts or failing to act as alleged herein, Defendants acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

## SIXTH CAUSE OF ACTION

### (Corporate Waste - Against Defendants)

60.    Plaintiffs reallege paragraphs 1 through 59, inclusive, and by this reference incorporate the same as though fully set forth herein.

61.    The Defendants, and each of them, owes Plaintiffs fiduciary duties as discussed hereinabove, which include the duty to protect the ENTERTAINMENT's assets from loss and waste.

62.    By making the Misrepresentations and selling all of ENTERTAINMENT's assets at a substantially depressed price, the Defendants, and each of them, breached their duties and caused ENTERTAINMENT to waste its corporate assets.

63.    As a direct and proximate result of the aforementioned actions and/or omissions, Plaintiffs have been damaged in an amount no less than $1,185,000.00.

64.    In doing the acts or failing to act as alleged herein, Defendants, and each of them, acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

## SEVENTH CAUSE OF ACTION

### (Abuse of Control - Against JAMES and NATALIE)

65.    Plaintiffs reallege paragraphs 1 through 64, inclusive, and by this reference incorporate the same as though fully set forth herein.

66.    By virtue of his position as the only member not incarcerated at the time of ENTERTAINMENT selling all its assets, JAMES exercised control over the Company and its

10
**COMPLAINT**

operations and owes duties as its controlling member to not use his position of control within ENTERTAINMENT for his personal interests and contrary to the interests of ENTERTAINMENT.

67. By virtue of her position as the accountant of ENTERTAINMENT selling all its assets, NATALIE exercised control over the ENTERTAINMENT and its operations and owes duties to not use her position of control within ENTERTAINMENT for her personal interests and contrary to the interests of ENTERTAINMENT.

68. JAMES and NATALIE's conduct (including, but not limited to, the Misrepresentations) amounts to an abuse of his control of ENTERTAINMENT, in violation of their obligations to ENTERTAINMENT.

69. As a direct and proximate result of the aforementioned actions and/or omissions, ENTERTAINMENT has been damaged in an amount no less than $1,185,000.00.

70. In doing the acts or failing to act as alleged herein, JAMES and NATALIE acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

## EIGHTH CAUSE OF ACTION

**(Accounting Against JAMES, ELITE SOUND COMPANY LLC and JAYSON COHEN)**

71. Plaintiffs reallege paragraphs 1 through 70, inclusive, and by this reference incorporate the same as though fully set forth herein.

72. JAMES, as a member of ENTERTAINMENT, owes Plaintiffs as the only other member of ENTERTAINMENT fiduciary duties as a matter of law. By way of his fiduciary duties, a relationship between the parties exists which requires an accounting in equity as to any assets improperly transferred to ELITE. JAYSON is the controlling member of ELITE.

73. Without said accounting, the amount of damages that Plaintiffs have suffered as a result of the Misrepresentations cannot be ascertained.

11

COMPLAINT

74. The sole means of the needed accounting are within the knowledge of JAMES, ELITE and JAYSON.

75. Based on the foregoing, an order from this Court directing an accounting by ELITE is needed and necessary.

## NINTH CAUSE OF ACTION

### (Declaratory Relief Against Defendants)

76. Plaintiffs reallege paragraphs 1 through 75, inclusive, and by this reference incorporate the same as though fully set forth herein.

77. An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Defendants, on the other hand, in that, Plaintiffs contends, among other things, that (the "Contentions"):

78. Defendants must surrender all interest and rights they have to ENTERTAINMENT's previous assets back to Plaintiffs;

79. Due to the Misrepresentations that the Defendants have materially breached, and have wrongfully and anticipatorily repudiated, the Operating Agreement;

80. That Plaintiffs are entitled to an accounting of the income and expenses and assets of ELITE.;

81. That Defendants cannot use any assets previously owned by ENTERTAINMENT to satisfy and/or pay their personal obligations or divert monies or assets from the ENTERTAINMENT;

82. That various transactions related to ENTERTAINMENT to which the Defendants assert ENTERTAINMENT has agreed are invalid and unenforceable against ENTERTAINMENT and Plaintiffs' interest therein; and

83. That Defendants must return monies or assets wrongfully diverted from ENTERTAINMENT.

84. Plaintiffs are informed and believe that Defendants, and each of them, deny and do not agree with the Contentions and a judicial determination as to the foregoing matters is

12

**COMPLAINT**

necessary and appropriate at this time, under the circumstances, so that the ENTERTAINMENT and Defendants may ascertain their rights and duties in order to avoid a multiplicity of actions and to avoid conflicting claims relating to the foregoing matters.

85.    By virtue of the foregoing and the matters set forth in this Complaint, Plaintiffs, on behalf of the Company, request and are entitled to a full and complete judicial declaration as to the relative rights and duties of the parties.

## TENTH CAUSE OF ACTION

### (Injunctive Relief Against Defendants)

86.    Plaintiffs reallege paragraphs 1 through 85, inclusive, and by this reference incorporate the same as though fully set forth herein.

87.    By virtue of the foregoing and the matters set forth in this Complaint and because ENTERTAINMENT's remedies at law are inadequate, Plaintiffs require and are entitled to preliminary and permanent injunctive relief, including, but not limited to, a Court order or decree:

A. The Defendants shall take reasonable actions to protect the interest of Plaintiffs in ENTERTAINMENT including, but not limited to, not selling the assets of ENTERTAINMENT or any interest therein or dilute Plaintiffs' or add new members without a prior court order, providing Plaintiffs with all proposed or actual contracts for the sale of ENTERTAINMENT's assets or any interest therein within two (2) business days of receipt by the Defendants of the same, enjoining any sale of ENTERTAINMENT or any of its assets or any interest therein without a Court order;

B. The Defendants shall provide an accounting of the income and expenses and assets of ELITE, and that Plaintiffs are entitled to review the books and records of ELITE on seventy-two hours or such other reasonable notice as the Court may order;

C. The Defendants be enjoined from using ENTERTAINMENT or its assets to satisfy and/or pay their personal obligations;

D. The Defendants return and disgorge all diverted assets and money and wrongly usurped business opportunities of ENTERTAINMENT;

13

**COMPLAINT**

E.  Various transactions related to ENTERTAINMENT to which the Defendants assert ENTERTAINMENT has agreed are invalid and unenforceable against ENTERTAINMENT and Plaintiffs' interest therein including, but not limited to, the sale of ENTERTAINMENT's assets to Defendants and the sale of ENTERTAINMENT's assets to Rat Sound.;

F.  The Defendants must return or cause the return to ENTERTAINMENT monies and assets wrongfully diverted from ENTERTAINMENT to the Defendants; and

G.  For such other and further injunctive relief as the Court deems just and proper

## ELEVENTH CAUSE OF ACTION

### (Unfair Business Practices Against Defendants)

88.  Plaintiffs reallege paragraphs 1 through 87, inclusive, and by this reference incorporate the same as though fully set forth herein.

89.  As set forth above, Defendants partook in the Misrepresentations and wrongful sale of ENTERTAINMENT's assets (the "Unlawful Acts").

90.  The Unlawful Acts were unfair, deceptive, misleading and/or fraudulent business practices.

91.  As a direct and proximate result of Defendants' unfair, deceptive and/or fraudulent business practices, as described above, ENTERTAINMENT has lost money and is entitled to restitution of all amounts paid to Defendants by ENTERTAINMENT, and disgorgement of all profits and/or damages according to proof.

92.  In doing the acts or failing to act as alleged herein, Defendants, and each of them, acted in a fraudulent, outrageous, malicious and/or oppressive manner and, therefore, are liable for punitive and exemplary damages, in an unascertained amount, according to proof, pursuant to *California Civil Code* Section 3294 and applicable law.

///

///

///

14

**COMPLAINT**

## TWELFTH CAUSE OF ACTION

### (Common Counts as to the Airlink Loan Against Defendants)

93. Plaintiffs reallege paragraphs 1 through 92, inclusive, and by this reference incorporate the same as though fully set forth herein.

94. Plaintiffs bring this cause of action individually against Defendants, and each of them and all Defendants are liable as alter egos of one another for the purposes of this Cause of Action.

95. AIRLINK and Plaintiffs provided money to the Defendants.

96. The money provided was not repaid and not used for their benefit.

97. It is unjust for the Defendants to retain the benefit of the money received.

98. The money should be returned to AIRLINK and Plaintiffs.

## THIRTEENTH CAUSE OF ACTION

### (Negligence - Against JAMES and NATALIE)

99. Plaintiffs reallege paragraphs 1 through 98, inclusive, and by this reference incorporate the same as though fully set forth herein.

100. JAMES, as a member of ENTERTAINMENT, owes ENTERTAINMENT a duty of care to properly manage the ENTERTAINMENT and not take actions that harm ENTERTAINMENT or TRAVIS as the sole other member.

101. NATALIE as the accountant of ENTERTAINMENT owes ENTERTAINMENT a duty of care to account for the finances of ENTERTAINMENT and not take actions that harm either ENTERTAINMENT.

102. Defendants, and each of them, breached each of their duties of care by partaking in the Unlawful Acts and for misappropriating the Airlink Loans.

103. As a direct and proximate result of the aforementioned breaches, Plaintiffs have been damaged in an amount no less than $1,185,000.00.

///

///

15

**COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests the entry of judgment in its favor, against the Defendants, and each of them, as specified above in each respective cause of action, and prays for relief, as appropriate and applicable with regard to the various causes of action set forth above, as follows:

**On the First  Cause of Action:**

1.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

2.    For reasonable attorneys' fees;

**On the Second Cause of Action:**

3.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

4.    For punitive and exemplary damages;

**On the Third Cause of Action:**

5.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

6.    For punitive and exemplary damages;

**On the Fourth Cause of Action:**

7.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

8.    For punitive and exemplary damages;

///

///

16

**COMPLAINT**

**On the Fifth Cause of Action:**

9.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

10.    For punitive and exemplary damages;

**On the Sixth Cause of Action:**

11.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

12.    For punitive and exemplary damages;

**On the Seventh Cause of Action:**

13.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

14.    For punitive and exemplary damages;

**On the Eighth Cause of Action:**

15.    For an accounting and audit, in the manner alleged herein;

**On the Ninth Cause of Action:**

16.    For the declaratory relief, as described above, which is hereby incorporated herein by this reference, as though fully set forth at length herein;

**On the Tenth Cause of Action:**

17.    For the affirmative and negative injunctive relief, as described above, which is hereby incorporated herein by this reference, as though fully set forth at length herein;

**On the Eleventh Cause of Action:**

18.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

17

**COMPLAINT**

**On the Twelfth Cause of Action:**

19.    For repayment of money had and received, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

**On the Thirteenth Cause of Action:**

20.    For general, compensatory, incidental, consequential and/or special damages, according to proof, in an unascertained amount to be fixed at trial, but in no event less than the jurisdictional minimum of this Court;

**On All Causes of Action:**

1.    For interest at a maximum legal rate allowed;

2.    For reasonable attorneys' fees as permitted by contract and/or statute;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as this court deems just and proper.

DATED: October 28, 2024                    **CORNELIUS & KASENDORF, APC**

                                           By: /s/*Alexander S. Kasendorf, Esq.*
                                           Alexander S. Kasendorf, Esq.
                                           Attorneys for Plaintiffs Travis Edward Martin,
                                           Airlink Internet, Inc. and Entertainment
                                           Technology LLC

18

**COMPLAINT**

## DEMAND FOR JURY TRIAL

**Plaintiffs** hereby demand a jury trial in this matter.

DATED: October 28, 2024                    **CORNELIUS & KASENDORF, APC**


By: /s/*Alexander S. Kasendorf, Esq.*
Alexander S. Kasendorf, Esq.
Attorneys for Plaintiffs Travis Edward Martin,
Airlink Internet, Inc. and Entertainment
Technology LLC

**COMPLAINT**

# EXHIBIT "C"

Travis Martin (CDCR#BU6031)
In Pro Per
480 Alta Road
San Diego, CA 92179

ELECTRONICALLY FILED
Superior Court of California
County of Ventura
07/14/2025
K. Bieker
Executive Officer and Clerk

By: _____ Deputy Clerk
Natalie Rosete

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF VENTURA**

| | |
|---|---|
| TRAVIS EDWARD MARTIN, an individual; ENTERTAINMENT TECHNOLOGY, LLC, a California limited liability company; and AIRLINK INTERNET, INC., a California Corporation,<br><br>       Plaintiffs,<br><br>       v.<br><br>JAMES WALD, an individual; NATALIE WALD, an individual; ELITE SOUND COMPANY LLC, a California limited liability company; JAYSON COHEN, an individual; and DOES 1 through 50, inclusive,<br>       Defendants. | Case No.: **2024CUNP032821**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Ben Coats<br>Date: August 14th, 2025<br>Time: 8:30a.m.<br>Dept: 43 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 14th, 2025, at 8:30a.m., or as soon thereafter as the matter may be heard in Department 43 of the above-entitled Court, located at 800 South Victoria Avenue, Ventura, California 93009, Plaintiff TRAVIS EDWARD MARTIN, appearing in propria persona, will and hereby does move for a preliminary injunction pursuant to Code of Civil Procedure § 526.

This motion is made solely on behalf of Plaintiff Martin in his individual capacity. Entertainment Technology, LLC and Airlink Internet, Inc. are represented separately by counsel, who may file parallel or joinder motions.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; AND MEMORANDUM OF POINTS AND AUTHORITIES

Ventura Superior Court transmitted through eFiling 07/14/2025 08:45:02 AM

This motion is supported by the Complaint, judicially noticed testimony from Case No. 2021029627, accompanying declarations, and any oral argument the Court may permit at hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case involves a fraudulent, retaliatory business takeover orchestrated by Defendants James and Natalie Wald, Jayson Cohen, and Elite Sound Company, LLC. After exploiting Plaintiff Martin's trust, financial resources, and absence during incarceration, Defendants misappropriated approximately $1.4 million in assets from Entertainment Technology, LLC and Airlink Internet, Inc., entities founded and funded by Martin. Their actions were not only calculated and deceitful, but followed years of receiving direct financial incentives to permit Plaintiff's continued involvement with their daughter despite her repeated allegations of sexual abuse—a pattern they admitted to under oath in Case No. 2021029627.

Plaintiff seeks to preserve the status quo and prevent disposal of assets pending trial.

### II. LEGAL STANDARD

Under Code of Civil Procedure § 526, a preliminary injunction may be granted when:

1. Plaintiff demonstrates probable success on the merits;

2. Plaintiff faces a threat of irreparable harm absent relief;

3. The balance of hardships favors Plaintiff.

See White v. Davis (2003) 30 Cal.4th 528, 554.

### III. ARGUMENT

**A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS**

The Complaint and corroborating testimony support multiple causes of action including fraud, breach of fiduciary duty, abuse of control, and conversion. Key facts include:

* Plaintiff financed Entertainment Technology, LLC, now owning 100% interest;

* Airlink Internet loaned over $528,000.00 to Entertainment Technology;

* Defendants pressured Plaintiff's mother, acting under power of attorney, to sell Entertainment Technology's assets for just $215,000;

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; AND MEMORANDUM OF POINTS AND AUTHORITIES

\* The assets were worth over \$1.4 million and had their highest revenue year in 2022;

\* Sworn testimony from James and Natalie Wald confirmed repeated disclosures by their daughter of sexual abuse by Martin, all of which went unreported while he financially supported them;

\* Defendants benefited from Plaintiff's incarceration by transferring assets to a successor entity they now control.

These facts establish a prima facie case for the causes of action pled.

**B. PLAINTIFF FACES IRREPARABLE HARM WITHOUT RELIEF**

Martin's personal ownership interest in the seized assets, equipment, contracts, and goodwill faces ongoing dissipation. As he is incarcerated, he cannot independently monitor or intervene in fraudulent transfers. Without injunctive relief, Defendants will continue exploiting the business network, identity, and resources built by Plaintiff. Monetary damages alone are inadequate when records are concealed and assets are being actively misused.

**C. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST SUPPORT RELIEF**

Defendants will suffer no undue hardship from a court order that merely prohibits asset transfers without court permission, requires transparency, and mandates temporary preservation of ownership structure. By contrast, Plaintiff risks permanent loss of assets derived from years of investment and Defendants have no personal assets to recover damages from upon his prevailing in this matter.

Moreover, the public interest weighs heavily against permitting continued exploitation by parties who, under oath, admitted to knowingly facilitating their daughter's contact with Plaintiff despite repeated abuse allegations—then leveraging those events for business gain.

**IV. REQUESTED RELIEF**

Plaintiff respectfully requests an order:

1. Prohibiting Defendants from selling, transferring, assigning, encumbering, or concealing any assets previously owned by Entertainment Technology, LLC or Airlink Internet, Inc. without prior court order;

Page 3 of 4

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; AND MEMORANDUM OF POINTS AND AUTHORITIES

2. Requiring Defendants to notify Plaintiff in writing within two (2) business days of receipt of any actual or proposed agreement involving those assets;

3. Requiring Defendants to produce a verified accounting of assets, income, expenses, and equipment transferred from Entertainment Technology;

4. Enjoining Defendants from using the assets of Entertainment Technology, LLC to satisfy or secure personal debts or obligations.

## V. CONCLUSION

The assets in dispute were acquired through calculated fraud, undue influence, and exploitation of Plaintiff's incarceration. They are the product of financial abuse and Defendants criminal exploitation of their very young child—not lawful business conduct. Defendants have shown no regard for legal or ethical boundaries. Their continued possession and control of these assets is a miscarriage of justice. This Court should issue an immediate injunction to prevent further irreparable harm.

DATED: July 13th, 2025

By: /s/ Travis Edward Martin

Travis Edward Martin

Plaintiff, In Pro Per

NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; AND MEMORANDUM OF POINTS AND AUTHORITIES

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

Superior Court of California, County of Ventura, Hall of Justice, Department 43

**2024CUNP032821**                                                                   August 14, 2025
**TRAVIS EDWARD MARTIN, et al. vs JAMES WALD, et al.**                                    8:20 AM


Judge: Honorable Ben Coats
Judicial Assistant: Miriam Hernandez
CSR: Kathy De La O

---

APPEARANCES:

Allen Ball, counsel, present for Defendant(s).

Donna Martin, plaintiff's mother, present for Plaintiff(s) telephonically.

---

**NATURE OF PROCEEDINGS:** Motion for Preliminary Injunction

**NATURE OF PROCEEDINGS:** Motion for Judgment on the Pleadings

**NATURE OF PROCEEDINGS:** Motion to Disqualify Counsel


8:46 a.m. Court convenes in this matter.

Appearances are as noted above. There are no appearance(s) by the plaintiff.

The Court informs Ms. Martin, plaintiff's mother, that she cannot represent plaintiff because she is not an attorney. The Court proceeds in plaintiff's absence.

The Court finds/orders:

Plaintiff's request for a continuance is DENIED.

The Court declines to hear oral argument and rules based only on the affidavits and filings submitted to the Court. Wilburn v. Oakland Hospital (1989) 213 Cal.App.3rd 1107.

### Motion: Plaintiffs' Motion for Preliminary Injunction

Defendants' request for judicial notice is granted.

Plaintiffs' evidentiary objections are overruled.

Defendants' evidentiary objections 1, 2, 3, 4, 5, 10, 11, 13, 15, 16, 18, 19, 20, 21, and 22 are overruled. Evidentiary objections 6, 7, 8, 9, 12, 14, and 17 are sustained.

Plaintiff's motion to strike portions of the opposition is denied as procedurally defective and substantively lacking merit.

---

Minute Order                                                                          Page 1 of 3

The motion is DENIED. Plaintiff fails to meet his initial burden to demonstrate that monetary compensation would not provide adequate relief. In addition, Plaintiff does not offer evidence to support the elements of the causes of action asserted and does not establish a likelihood of success on the merits. The balance of interests favor denying the motion because the requested relief primarily consist of an order for affirmative acts by Defendants and Plaintiff does not demonstrate that the requested relief will prevent any harm.

The court shall serve notice of this ruling.


## Motion: Plaintiffs' Motion to Disqualify Counsel

Defendants' request for judicial notice of the civil and criminal cases involving Plaintiffs is GRANTED.

The motion is DENIED for lack of standing and for failure on the merits. Plaintiff does not establish that Defendants' counsel has a duty of confidentiality to them or that such a duty has been breached. This is a threshold issue for standing and merits denial on that basis.

As to the substantive merits, Plaintiff also fails to establish that Defendants' counsel has violated any rules of professional responsibility, which compromise the basis for their motion.

The court shall serve notice of this ruling.


## Motion: Plaintiff's Motion for Judgment on the Pleadings

The motion is GRANTED without leave to amend as to the affirmative defense of bad faith. The motion is DENIED as to all other causes of action.

### I.    Application

### A. Requests for Judicial Notice

Plaintiff requests the Court take judicial notice of the following:

1. Transcript of the sworn testimony of Natalie Wald, dated September 20, 2022, in related proceedings;
2. Transcript of the sworn testimony of Natalie Wald, dated September 21, 2022, in related proceedings; and
3. Transcript of the sworn testimony of James Wald, dated September 22, 2022.

These documents are certified transcripts of Defendants' testimony in a judicial proceeding and are properly noticed pursuant to Evidence Code section 452, subdivision (d).

Defendants request the Court take judicial notice of the following:

1. Appellate opinion known as *People v. Martin* (filed Jun 9 17, 2024, no. B 325 048);

2. Appellate opinion known as *Wald v. Martin, et. al.,* (file 12 June 16, 2025, no. B 335 960)

These are Court documents and are properly noticed pursuant to Evidence Code section 452, subdivision (d).

## B. Alleged Procedural Defects

Plaintiff contends that Defendants' opposition should be disregarded because it was filed late. "It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion." (*Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930.) Plaintiff filed a substantive reply to the opposition. Thus, any defect in notice was waived.

## C. Merits

*12th Affirmative Defense for Bad Faith*

This affirmative defense is asserted based on the contention that the causes of action are frivolous and in bad faith designed to punish Defendants. The facts asserted as to the defense do not constitute a defense. There is a reference to Code of Civil Procedure sections 128.5 and 128.7, but these are procedural mechanisms for sanctions. The Court grants the motion as to the 12th affirmative defense.

The remainder of the motion is denied.

The court shall serve notice of this ruling.

Certificate of Clerk's Service is attached.

# EXHIBIT "D"

**THE SUPERIOR COURT OF CALIFORNIA**
# COUNTY OF VENTURA

# 2024CUNP032821 TRAVIS EDWARD MARTIN, et al. vs JAMES WALD, et al.
**Civil Unlimited** Non-PI/PD/WD tort
Filed: 10/29/2024

## Case Summary

**CASE & COMPLAINT / PETITION INFORMATION**      **PARTIES**      **FUTURE HEARINGS**

**ALL HEARINGS**      **REGISTER**

˅ FUTURE HEARINGS                                            Search

| Name | Date/Time | Status | Department | Result |
|------|-----------|--------|------------|--------|
| Motion to Compel Responses to Demand for Production of Documents, Set One | 06/15/2026 08:20 AM | Scheduled | Dept 43 / Hall of Justice | |
| Motion to Compel Responses to Form Interrogatories | 06/15/2026 08:20 AM | Scheduled | Dept 43 / Hall of Justice | |
| Motion to Compel Responses to Special Interrogatories, Set One | 06/15/2026 08:20 AM | Scheduled | Dept 43 / Hall of Justice | |
| Motion to Vacate MARCH 20, 2026 MINUTE ORDER, FOR SANCTIONS AGAINST DEFENDANTS' COUNSEL AND AN ORDER TO SHOW CAUSE RE: CONTEMPT | 06/15/2026 08:20 AM | Scheduled | Dept 43 / Hall of Justice | |
| Jury Trial (6-Days) | 11/30/2026 01:30 PM | Scheduled | Dept 43 / Hall of Justice | |

Go Back

**THE SUPERIOR COURT OF CALIFORNIA**

COUNTY OF VENTURA

# 2024CUNP032821 TRAVIS EDWARD MARTIN, et al. vs JAMES WALD, et al.

**Civil Unlimited** Non-PI/PD/WD tort

Filed: 10/29/2024

Case Summary

CASE & COMPLAINT / PETITION INFORMATION     PARTIES     FUTURE HEARINGS

ALL HEARINGS     REGISTER

Chat

v REGISTER

Search

**Date**

| | |
|---|---|
| 03/20/2026 | Certificate of Clerk's Service for [Minute Order (Ruling on Submitted Matter)] <br/> Generated by: Court |
| 03/20/2026 | Updated -- Minute Order (Ruling on Submitted Matter): <br/> Status Date changed from 03/20/2026 to 03/20/2026 <br/> Name Extension changed from () to (Ruling on Submitted Matter) |
| 03/20/2026 | Minute Order () |
| 03/19/2026 | Minute Order (Motion for Protective Order and Relief to Restore Meaningful ...) |
| 03/09/2026 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. |
| 03/09/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 03/09/2026 |
| 03/09/2026 | PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND RELIEF TO RESTORE MEANINGFUL ACCESS TO THE COURTS FOR INDIGENT PRISONER PLAINTIFF <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 03/06/2026 | DEFENDANTS' OPPOSITION TO PLAINTIFF TRAVIS EDWARD MARTIN' MOTION FOR PROTECTIVE ORDER AND RELIEF TO RESTORE ACCESS TO THE COURTS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF ALLEN R. BALL <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. |
| 02/23/2026 | DECLARATION OF TRAVIS EDWARD MARTIN IN SUPPORT OF PLAINTIFFS NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER AND RELIEF TO RESTORE MEANINGFUL ACCESS TO THE COURTS FOR INDIGENT PRISONER PLAINTIFF <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 02/23/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Elite Sound Company LLC (Defendant) <br/>Service Date: 02/23/2026 |
| 02/23/2026 | Motion for Protective Order and Relief to Restore Meaningful Access to the Courts for Indigent Prisoner Plaintiff <br/> Filed by: Martin, Travis Edward (Plaintiff) |

| Date | | |
|---|---|---|
| 02/17/2026 | Updated -- Certificate of Clerk's Service for Minute Order () of 02/17/2026: <br/> Status Date changed from 02/17/2026 to 02/17/2026 | 🔍 |
| 02/17/2026 | Updated -- Minute Order (Motion to Enforce Court Order): <br/> Status Date changed from 02/17/2026 to 02/17/2026 <br/> Name Extension changed from () to (Motion to Enforce Court Order) | 🔍 |
| 02/17/2026 | Certificate of Clerk's Service for Minute Order () of 02/17/2026 <br/> Filed by: Clerk | 🔍 |
| 02/17/2026 | Minute Order () | 🔍 |
| 02/02/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 01/31/2026 | 🔍 |
| 02/02/2026 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 02/02/2026 | PLAINTIFF TRAVIS EDWARD MARTINS REPLY TO DEFENDANTS OPPOSITION TO PLAINTIFFS MOTION TO ENFORCE COURT ORDER <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 01/29/2026 | Defendants' Opposition to Plaintiff Travis Edward Martin's Motion to Enforce Court Order <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | 🔍 |
| 01/28/2026 | Remittitur Processing Form <br/> Generated by: Court | |
| 01/26/2026 | Remittitur (Appeal is dismissed.) <br/> Filed by: | 🔍 |
| 01/20/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 01/20/2026 | 🔍 |
| 01/20/2026 | Motion TO ENFORCE COURT ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 12/30/2025 | Updated -- Certificate of Clerk's Service for Minute Order (Motion to Disqualify Counsel Allen R Ball and the Law Office of Ball & Yorke) of 12/30/2025: <br/> Status Date changed from 12/30/2025 to 12/30/2025 <br/> Name Extension changed from Minute Order () of 12/30/2025 to Minute Order (Motion to Disqualify Counsel Allen R Ball and the Law Office of Ball & Yorke) of 12/30/2025 | 🔍 |

| Date | | |
|---|---|---|
| 12/30/2025 | Updated -- Minute Order (Motion to Disqualify Counsel Allen R Ball and the Law Office of Ball & Yorke): <br/> Status Date changed from 12/30/2025 to 12/30/2025 <br/> Name Extension changed from () to (Motion to Disqualify Counsel Allen R Ball and the Law Office of Ball & Yorke) | Q |
| 12/30/2025 | Certificate of Clerk's Service for Minute Order () of 12/30/2025 <br/> Filed by: Clerk | Q |
| 12/30/2025 | Minute Order () | Q |
| 12/16/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 12/16/2025 | Certificate of Clerk's Service for [Ruling on Travis Edward Martins' Motion to Disqualify Judge Benjamin F. Coats] <br/> Generated by: Court | Q |
| 12/16/2025 | Ruling on Travis Edward Martins' Motion to Disqualify Judge Benjamin F. Coats <br/> Filed by: Court | Q |
| 11/21/2025 | Updated -- Certificate of Clerk's Service for Minute Order (Notice of Assignment of Judge to Hear Disqualification Challenge) of 11/21/2025: <br/> Status Date changed from 11/21/2025 to 11/21/2025 | Q |
| 11/21/2025 | Certificate of Clerk's Service for Minute Order (Notice of Assignment of Judge to Hear Disqualification Challenge) of 11/21/2025 <br/> Filed by: Clerk | Q |
| 11/21/2025 | Minute Order (Notice of Assignment of Judge to Hear Disqualification Challenge) | Q |
| 11/21/2025 | Order for Dismissal <br/> Filed by: Clerk | Q |
| 11/17/2025 | Notice of Continuance <br/> Filed by: Court | Q |
| 11/14/2025 | Certificate of Clerk's Service for [Verified Answer of Hon. Benjamin F. Coats in Response to Statement of Disqualification] <br/> Filed by: Court | Q |
| 11/14/2025 | Verified Answer of Hon. Benjamin F. Coats in Response to Statement of Disqualification <br/> Filed by: Court | Q |
| 11/13/2025 | Proof of Personal Service (General) Attachments, Request for Judicial Notice, Statement of Disqualification <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 11/10/25 <br/>Service Cost Waived: No | Q |

| Date | | |
|---|---|---|
| 11/13/2025 | Notice of Cost of Preparing Clerk's Transcript on Appeal <br/> Generated by: Court | Q |
| 11/06/2025 | Notice of Ruling <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 11/05/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 11/05/2025 | Q |
| 11/05/2025 | PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEY ALLEN R. BALL AND THE LAW OFFICE OF BALL & YORKE <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 11/04/2025 | Defendant's Opposition to Plaintiff Martin's Second Motion to Disqualify Attorney Allen Ball and The Law Office of Ball Yorke; Memorandum of Points and Authorities and Declaration of Allen R. Ball in Support <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 11/04/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Appellant) | Q |
| 11/03/2025 | Request for Judicial Notice <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 11/03/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 11/03/2025 | Q |
| 11/03/2025 | Challenge To Judicial Officer (170.1) <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 11/03/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Appellant) | Q |
| 10/28/2025 | Minute Order (Motion for Judgment on the Pleadings) | Q |
| 10/28/2025 | Notice of Rescinding Default <br/> Generated by: Court | Q |
| 10/27/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Appellant) <br/>As to: Cohen, Jayson (Respondent); Elite Sound Company LLC (Respondent); Wald, James (Respondent) et al. <br/>Service Date: 10/27/2025 | Q |

| Date | | |
|---|---|---|
| 10/27/2025 | Appellant's Notice Designating Record on Appeal (Clerk's Transcript) <br/> Filed by: Martin, Travis Edward (Appellant) <br/>As to: Cohen, Jayson (Respondent); Elite Sound Company LLC (Respondent); Wald, James (Respondent) et al. <br/>Clerk's Transcript: Yes | 🔍 |
| 10/22/2025 | Declaration in Support OF TRAVIS EDWARD MARTIN IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY ATTORNEY ALLEN R. BALL AND THE LAW OFFICE OF BALL & YORKE <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/22/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 10/22/2025 | 🔍 |
| 10/22/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/22/2025 | Motion to Disqualify Counsel Attorney Allen R Ball and The Law Office of Ball & Yorke, Memorandum of Points and Authorities in Support thereof <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/21/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Appellant) | 🔍 |
| 10/17/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/17/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 10/17/2025 | 🔍 |
| 10/17/2025 | PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE IMPROPER MATTER <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/17/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Appellant) | 🔍 |
| 10/16/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Appellant) <br/>As to: Wald, James (Respondent) <br/>Service Date: 10/16/2025 | 🔍 |
| 10/15/2025 | Request for Judicial Notice <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | 🔍 |

**Date**

| Date | | |
|------|---|---|
| 10/15/2025 | Opposition to Plaintiff Martin's Second Motion for Judgment on the Pleadings; Memorandum of Points and Authorities <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | 🔍 |
| 10/14/2025 | Notice of Default on Appeal (Limited/Unlimited) <br/> Generated by: Court | 🔍 |
| 10/02/2025 | Declaration OF TRAVIS EDWARD MARTIN RE: STATUTORY EXEMPTION FROM MEETANDCONFER REQUIREMENTS <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/02/2025 | Motion for Judgment on the Pleadings <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 10/01/2025 | Notice of Filing Notice of Appeal / Cross Appeal <br/> Generated by: Court | 🔍 |
| 10/01/2025 | Notice of Appeal <br/> Filed by: Martin, Travis Edward (Appellant) <br/>As to: Cohen, Jayson (Respondent); Elite Sound Company LLC (Respondent); Wald, James (Respondent) et al. <br/>With Deposit: No | 🔍 |
| 08/18/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) | 🔍 |
| 08/14/2025 | Updated -- Certificate of Clerk's Service for Minute Order (Motion for Preliminary Injunction; Motion for Judgment on the...) of 08/14/2025: <br/> Status Date changed from 08/14/2025 to 08/14/2025 | 🔍 |
| 08/14/2025 | Updated -- Minute Order (Motion for Preliminary Injunction; Motion for Judgment on the...): <br/> Status Date changed from 08/14/2025 to 08/14/2025 <br/> Name Extension changed from (Motion for Preliminary Injunction; Motion for Judgment on the...) to (Motion for Preliminary Injunction; Motion for Judgment on the...) | 🔍 |
| 08/14/2025 | Certificate of Clerk's Service for Minute Order (Motion for Preliminary Injunction; Motion for Judgment on the...) of 08/14/2025 <br/> Filed by: Clerk | 🔍 |
| 08/14/2025 | Minute Order (Motion for Preliminary Injunction; Motion for Judgment on the...) | 🔍 |
| 08/14/2025 | Updated -- Order RE: Request for Continuance: <br/> Status changed from Received to Filed | 🔍 |
| 08/13/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |

| Date | | |
|------|---|---|
| 08/13/2025 | Declaration of Travis Edward Martin Regarding Unavailability and Request for Continuance <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 08/12/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) | 🔍 |
| 08/11/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) | 🔍 |
| 08/04/2025 | Certificate of Clerk's Service for [Order on Court Fee Waiver After Hearing (Superior Court)] <br/> Generated by: Court | 🔍 |
| 08/04/2025 | Updated -- Order on Court Fee Waiver (Superior Court): <br/> <br/>Fee Waiver Status: Denied | 🔍 |
| 08/04/2025 | Updated -- Request to Waive Court Fees: <br/> As To Parties: removed | |
| 08/04/2025 | Updated -- Order on Court Fee Waiver After Hearing (Superior Court): <br/> <br/>Fee Waiver Status: Granted | 🔍 |
| 08/04/2025 | Updated -- Order on Court Fee Waiver After Hearing (Superior Court): <br/> Status changed from Proposed - Received (Hearing Set) to Filed | 🔍 |
| 08/04/2025 | Updated -- Order on Court Fee Waiver After Hearing (Superior Court): <br/> Status Date changed from 07/28/2025 to 08/04/2025 <br/> Result: Granted <br/> Result Date: 08/04/2025 | 🔍 |
| 08/04/2025 | Minute Order (Initial Fee Waiver Hearing) | 🔍 |
| 08/04/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |
| 08/04/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 08/02/2025 | 🔍 |
| 08/04/2025 | PLAINTIFF TRAVIS EDWARD MARTIN'S: (1) REPLY TO DEFENDANTS OPPOSITION IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION; (2) REQUEST TO STRIKE DEFENDANTS' UNTIMELY OPPOSITION; (3) EVIDENTIARY OBJECTIONS AND REQUEST TO STRIKE IMPROPER MATTER <br/> Filed by: Martin, Travis Edward (Plaintiff) | 🔍 |

| Date | | |
|---|---|---|
| 08/01/2025 | Request for Judicial Notice Filed by Defendants as Part of Their Opposition to Plaintiffs' Request for Preliminary Injunction <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 08/01/2025 | Objection to the Declarations Submitted by Plaintiff Martin in Support of Motion for Preliminary Injunction; [Proposed] Order Thereon <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 08/01/2025 | Opposition to Plaintiffs' Motion for Preliminary Injunction; Memorandum of Points and Authorities in Support <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 07/29/2025 | Certificate of Clerk's Service for [Minute Order (Notice of Continuance)] <br/> Filed by: Court | Q |
| 07/29/2025 | Minute Order (Notice of Continuance) | Q |
| 07/28/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 07/26/2025 | Q |
| 07/28/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/28/2025 | Reply to Opposition TO MOTION TO DISQUALIFY ATTORNEY ALLEN R. BALL AND THE LAW OFFICE OF BALL & YORKE <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/28/2025 | Notice Notice of Related Case <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 07/28/2025 | Notice of Ruling <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 07/28/2025 | Updated -- Request to Waive Court Fees: <br/> Result changed from Hearing Set to Denied - Pending Hearing | |
| 07/28/2025 | Certificate of Clerk's Service for [Order on Court Fee Waiver (Superior Court)] <br/> Generated by: Court | Q |
| 07/28/2025 | Updated -- Order on Court Fee Waiver (Superior Court): <br/> Status changed from Received to Filed | Q |

**Date**

| 07/28/2025 | Updated -- Request to Waive Court Fees: <br/> Result: Hearing Set |
| 07/28/2025 | Initial Fee Waiver Hearing scheduled for 08/04/2025 at 08:30 AM in Hall of Justice at Department 43 |
| 07/25/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 07/25/2025 |
| 07/25/2025 | Response to Notice of Related Case <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/25/2025 | Request for Judicial Notice <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. |
| 07/25/2025 | Opposition to Plaintiffs' Motion to Disqualify Attorney Allen Ball; Memorandum, of Points and Authorities and Declaration of Allen R. Ball in Support <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. |
| 07/22/2025 | Updated -- Request to Waive Court Fees: <br/> Result changed from Hearing Set to Granted <br/> Result Date changed from 07/22/2025 to 07/22/2025 |
| 07/22/2025 | Updated -- Request to Waive Court Fees: <br/> Result changed from Denied - Pending Hearing to Hearing Set <br/> Result Date: 07/22/2025 |
| 07/21/2025 | Proof of Electronic Service <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. <br/>Service Date: 07/18/2025 |
| 07/21/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Elite Sound Company LLC (Defendant) <br/>Service Date: 07/20/2025 |
| 07/21/2025 | Reply to Defendant's Opposition to Motion for Judgment on the Pleadings <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/21/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) |
| 07/18/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis Edward (Plaintiff) |

| Date | |
|---|---|
| 07/18/2025 | Request to Waive Court Fees <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Airlink Internet, Inc. (Plaintiff) |
| 07/18/2025 | Request for Judicial Notice Filed by Defendants as Part of their Opposition to Plaintiffs' Motion for Judgment on the Pleadings <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. |
| 07/18/2025 | Opposition to Plaintiffs' Moiton for Judgment on the Pleadings; Memorandum of Points and Authorities <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. |
| 07/18/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. <br/>Service Date: 07/18/2025 |
| 07/17/2025 | Jury Trial (6-Days) scheduled for 11/30/2026 at 01:30 PM in Hall of Justice at Department 43 |
| 07/17/2025 | Minute Order (Trial Setting Conference) |
| 07/15/2025 | Notice of Posting of Jury Fees <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/14/2025 | Declaration in Support OF TRAVIS EDWARD MARTIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/14/2025 | Request for Judicial Notice <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/14/2025 | Declaration in Support OF DONNA MARTIN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/14/2025 | Notice of Remote Appearance <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/14/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 07/13/2025 |
| 07/14/2025 | Motion for Preliminary Injunction <br/> Filed by: Martin, Travis Edward (Plaintiff) |
| 07/11/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Elite Sound Company LLC (Defendant) <br/>Service Date: 07/11/2025 |

| Date | | |
|------|---|---|
| 07/11/2025 | Trial Setting Conference Statement <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>As to: Elite Sound Company LLC (Defendant) | Q |
| 07/09/2025 | Trial Setting Conference Statement <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 07/08/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis Edward (Plaintiff) <br/>Service Date: 07/08/2025 | Q |
| 07/08/2025 | DECLARATION OF TRAVIS EDWARD MARTIN IN SUPPORT OF MOTION TO DISQUALIFY ALLEN R. BALL <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/08/2025 | Request for Judicial Notice <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/08/2025 | Motion to Disqualify Counsel <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/08/2025 | Request for Judicial Notice <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/08/2025 | Declaration of Meet and Confer Requirement <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/08/2025 | Motion for Judgment on the Pleadings <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/07/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) | Q |
| 07/07/2025 | Substitution of Attorney <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 07/03/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) | Q |
| 04/22/2025 | Trial Setting Conference scheduled for 07/17/2025 at 08:30 AM in Hall of Justice at Department 43 | |
| 04/22/2025 | Minute Order () | Q |
| 04/16/2025 | Answer <br/> Filed by: Cohen, Jayson (Defendant) | Q |
| 04/16/2025 | Answer <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant) | Q |

| Date | | |
|---|---|---|
| 04/16/2025 | Answer <br/> Filed by: Elite Sound Company LLC (Defendant) | Q |
| 04/15/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Elite Sound Company LLC (Defendant) | Q |
| 04/15/2025 | Case Management Statement <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 04/09/2025 | Notice of Withdrawal of Motions to be Relieved as Counsel for Travis Edward Martin; Airlink Internet Inc; and Entertainment Technology LLC <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 04/08/2025 | Case Management Statement <br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant); Elite Sound Company LLC (Defendant) et al. | Q |
| 04/02/2025 | Substitution of Attorney <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 04/02/2025 | Substitution of Attorney <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 04/02/2025 | Substitution of Attorney <br/> Filed by: Martin, Travis Edward (Plaintiff) | Q |
| 04/02/2025 | Notice of Ruling : Tentative Ruling <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 04/01/2025 | Minute Order () | Q |
| 03/24/2025 | REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRERS TO ANSWERS <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. | Q |
| 03/18/2025 | Request for Judicial Notice Filed by Defendant Jayson Cohen in Support of his Opposition to Plaintiffs Demurrer to His Amended Answer; Declaration of Allen R Ball and Exhibits Thereto <br/> Filed by: Cohen, Jayson (Defendant) | Q |
| 03/18/2025 | Memorandum of Points & Authorities in Opposition to Plaintiffs Demurrer to Amended Answer Filed by Defendant Jayson Cohen <br/> Filed by: Cohen, Jayson (Defendant) | Q |
| 03/18/2025 | Stipulation Re Resolution of Issues Raised by Demurrers to Operative Answers Filed by Defts <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) et al. | Q |

| Date | | |
|---|---|---|
| 03/18/2025 | Updated -- Affidavit of Unsuccessful Service: <br/> <br/>Service Cost: 50.00 | 🔍 |
| 03/14/2025 | Demurrer to James Wald and Natalie Wald's Answer scheduled for 04/01/2025 at 12:00 AM in Hall of Justice at Department 43 | |
| 03/14/2025 | Minute Order (Demurrer to James Wald and Natalie Wald's Answer) | 🔍 |
| 03/11/2025 | Substitution of Attorney <br/> Filed by: Wald, Natalie (Defendant) <br/>As to: Ball, Allen (Attorney) | 🔍 |
| 03/11/2025 | Substitution of Attorney <br/> Filed by: Wald, James (Defendant) | 🔍 |
| 03/10/2025 | Declaration in Support of Attorney's Motion to Be Relieved as Counsel-Civil <br/> Filed by: Kasendorf, Alexander Samuel (Attorney) | 🔍 |
| 03/10/2025 | Motion to Be Relieved as Counsel Counsel for Plaintiff Airlink Internet, Inc. <br/> Filed by: Attorney | 🔍 |
| 03/10/2025 | Declaration in Support of Attorney's Motion to Be Relieved as Counsel-Civil <br/> Filed by: Kasendorf, Alexander Samuel (Attorney) | 🔍 |
| 03/10/2025 | Motion to Be Relieved as Counsel Counsel for Plaintiff Travis Edward Martin <br/> Filed by: Attorney | 🔍 |
| 03/10/2025 | Declaration in Support of Attorney's Motion to Be Relieved as Counsel-Civil <br/> Filed by: Kasendorf, Alexander Samuel (Attorney) <br/>As to: Entertainment Technology, LLC (Plaintiff) | 🔍 |
| 03/10/2025 | Motion to Be Relieved as Counsel <br/> Filed by: Attorney <br/>As to: Entertainment Technology, LLC (Plaintiff) | 🔍 |
| 02/28/2025 | Affidavit of Unsuccessful Service <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff) <br/>Service Cost: 50.00 | 🔍 |
| 02/26/2025 | Declaration of Allen R Ball in Response to Declaration of Demurring Party in Support of Automatic Extension RE Demurrer to Answer Filed by James Wald and Natalie Wald <br/> Filed by: Elite Sound Company LLC (Defendant); Cohen, Jayson (Defendant) | 🔍 |
| 02/21/2025 | Declaration of Demurring Party Regarding Meet and Confer 430.41CCP <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Cohen, Jayson (Defendant) | 🔍 |

| Date | | |
|---|---|---|
| 02/21/2025 | Demurrer to Defendant Jayson Cohen's Answer; Memorandum of Points and Authorities in Support Thereof \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 02/21/2025 | Declaration of Demurring Party Regarding Meet and Confer 430.41CCP \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) \<br/>As to: Elite Sound Company LLC (Defendant) | Q |
| 02/21/2025 | Demurrer to Defendant Elite Sound Company LLC's Answer; Memorandum of Points and Authorities in Support Thereof \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 02/18/2025 | Notice of Errata Re Plaintiffs' Demurrer to James Wald and Natalie Wald's Answer \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) \<br/>As to: Wald, James (Defendant); Wald, Natalie (Defendant) | Q |
| 02/14/2025 | Declaration of Demurring Party Regarding Meet and Confer 430.41CCP \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 02/14/2025 | to James Wald and Natalie Wald's Answer; Memorandum of Points and Authorities \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 02/11/2025 | Proof of Service (General) of Declaration of Demurring or Moving Party in Support of Automatice Extension \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) \<br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. | Q |
| 02/11/2025 | Answer \<br/> Filed by: Cohen, Jayson (Defendant) | Q |
| 02/10/2025 | Declaration in Support of Automatic Extension \<br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | Q |
| 02/06/2025 | Answer \<br/> Filed by: Wald, James (Defendant); Wald, Natalie (Defendant) | Q |
| 01/29/2025 | Answer \<br/> Filed by: Elite Sound Company LLC (Defendant) | Q |

| Date | | |
|---|---|---|
| 01/27/2025 | Notice to James Wald, an Individual; Natalie Wald, an Individual; Jayson Cohen, an Individual; and Elite Sound Company LLC a California Limited Liability Company RE: Preservation of Right to Seek Punitive Damages <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | [Q] |
| 01/02/2025 | Answer <br/> Filed by: Cohen, Jayson (Defendant) | [Q] |
| 12/16/2024 | Proof of Personal Service <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Wald, Natalie (Defendant) <br/>Service Date: 12/11/2024 <br/>Service Cost: 50.00 | [Q] |
| 12/16/2024 | Proof of Personal Service <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Wald, James (Defendant) <br/>Service Date: 12/10/2024 <br/>Service Cost: 50.00 | [Q] |
| 12/16/2024 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Plaintiff) | [Q] |
| 12/06/2024 | Updated -- Notice of Errata re Complaint: <br/> Name Extension: re Complaint | [Q] |
| 12/04/2024 | Notice of Errata <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) | [Q] |
| 11/26/2024 | Proof of Service (Substituted Service) <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Elite Sound Company LLC (Defendant) <br/>Service Cost: 65.00 <br/>Cost Waived: No <br/>Mailing Date: 11/25/2024 | [Q] |
| 11/26/2024 | Proof of Service (Substituted Service) <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Cohen, Jayson (Defendant) <br/>Service Cost: 97.25 <br/>Cost Waived: No <br/>Mailing Date: 11/25/2024 | [Q] |
| 11/05/2024 | Updated -- Summons on Complaint: <br/> Name Extension changed from on Complaint to on Complaint | [Q] |
| 11/05/2024 | Notice of Case Assignment and Mandatory Appearance <br/> Generated by: Court | [Q] |
| 11/05/2024 | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default scheduled for 04/22/2025 at 08:35 AM in Hall of Justice at Department 43 | |

| Date | |
|---|---|
| 10/29/2024 | Case assigned to Hon. Ben Coats in Department 43 Hall of Justice |
| 10/29/2024 | Notice of Case Assignment <br/> Generated by: Court |
| 10/29/2024 | Summons on Complaint <br/> Issued and Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) |
| 10/29/2024 | Civil Case Cover Sheet <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) |
| 10/29/2024 | Complaint <br/> Filed by: Martin, Travis Edward (Plaintiff); Entertainment Technology, LLC (Plaintiff); Airlink Internet, Inc. (Plaintiff) <br/>As to: Cohen, Jayson (Defendant); Elite Sound Company LLC (Defendant); Wald, James (Defendant) et al. |

Go Back

Copyright © Journal Technologies, USA. All rights reserved.

# EXHIBIT "E"

RECEIVED
VENTURA SUPERIOR COURT
08/2/23

Electronically
FILED
by Superior Court of California
County of Ventura
08/02/2023
Brenda L. McCormick
Executive Officer and Clerk

Hannah Cress
Deputy Clerk

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

RON BAMIEH (SBN 159413)
    rbamieh@bamiehdesmeth.com
DANIELLE DE SMETH (SBN 263309)
    ddesmeth@bamiehdesmeth.com
ALEXANDER DE ARANA-LEMICH
    adearana@bamiehdesmeth.com
**BAMIEH & DE SMETH, PLC**
692 E. THOMPSON BOULEVARD
VENTURA, CA 93001
T: (805) 643-5555 | F: (805) 643-5558

Attorneys for Plaintiffs,
JAMES WALD, an individual; NATALIE WALD, an individual; P.W., a minor individual through
Guardian ad Litem James Wald, and Elite Sound Company, a California Company,

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF VENTURA

| | |
|---|---|
| JAMES WALD, an individual; NATALIE WALD, an individual; P.W., a minor individual through Guardian ad Litem James Wald; ELITE SOUNDS COMPANY LLC, a California Limited Liability Corporation,<br><br>        Plaintiffs,<br><br>    vs.<br><br>TRAVIS EDWARD MARTIN, an individual; DONNA MARTIN, an individual; AIRLINK INTERNET, INC., a California Corporation; and DOES 1 through 100, Inclusive,<br><br>        Defendants.<br>_____ | **Case No.:**   **2023CUPP012195**<br><br>Complaint filed:<br>Assigned to:<br>Trial date:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1) **CHILDHOOD SEXUAL ASSAULT**<br>2) **SEXUAL BATTERY**<br>3) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS as to P.W.**<br>4) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS as to JAMES WALD and NATALIE WALD**<br>5) **NEGLIGENCE**<br>6) **DEFAMATION as to JAMES WALD and NATALIE WALD**<br>7) **INTENTIONAL INTEFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS as to ELITE SOUNDS COMPANY LLC, JAMES WALD and NATALIE WALD**<br>8) **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS ELITE SOUNDS COMPANY LLC, JAMES WALD and NATALIE WALD**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

Plaintiffs JAMES WALD, NATALIE WALD, P.W., a minor through her Guardian ad Litem James Wald, and ELITE SOUNDS COMPANY, LLC. hereby complain and allege against Defendants TRAVIS EDWARD MARTIN, DONNA MARTIN, and AIRLINK INTERNET, INC., as follows.

## PARTIES AND JURISDICTION

1.      Plaintiff JAMES WALD ("JAMES") is, and at all times relevant hereto was, an individual over the age of majority residing in the County of Ventura, State of California.

2.      Plaintiff NATALIE WALD ("NATALIE") is, and at all times relevant hereto was, an individual over the age of majority residing in the County of Ventura, State of California.

3.      Plaintiff P.W. is, and at all times relevant hereto was, a minor under the age of eighteen years residing in the County of Ventura, State of California. She is represented in this action by and through her Guardian ad Litem James Wald.

4.      Plaintiff ELITE SOUND COMPANY, LLC ("ELITE") is, and at all times relevant hereto was, a California Corporation with its principal place of business located in the County of Ventura, State of California.

5.      Defendant TRAVIS EDWARD MARTIN ("TRAVIS") is, and at all times relevant hereto was, an individual over the age of majority residing in the County of Ventura, State of California.

6.      Defendant DONNA MARTIN ("DONNA") is, and at all times relevant hereto was, an individual over the age of majority residing in the County of Ventura, State of California.

7.      Defendant AIRLINK INTERNET, INC. ("AIRLINK") is, and at all times relevant hereto was, a California Corporation with its principal place of business located in the County of Ventura, State of California, which at all relevant times was operated by TRAVIS. AIRLINK was a sham corporation that was used by TRAVIS as a cover for his sexual abuse of minors including P.W. Upon information and belief, there is and was such a unity of interest between TRAVIS and AIRLINK at the times of the acts alleged herein, that the distinction between them no longer exists and to recognize such a distinction would promote injustice to P.W.

8.      DOES 1 through 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and

-2-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that plaintiff's damages as herein alleged were proximately caused by those Defendants.

9. Plaintiff is informed and believes and based thereon alleges, that at all times herein mentioned, each Defendant was the agent, employee, servant and/or joint venturer of each other Defendant and was at all such times acting within the course and scope of said agency, employment, service, and/or venture and with the full knowledge, consent, authority, ratification and permission of each other Defendant.

10. All events giving rise to this action took place in the County of Ventura, State of California.

## GENERAL ALLEGATIONS

11. TRAVIS was a close family friend of P.W.'s parents JAMES and NATALIE. He was a business associate of Plaintiff's father JAMES.

12. Plaintiffs are informed and believe and based thereon allege that, at all relevant times, TRAVIS owned a property located at 11043 Foothill Road in Ventura, California ("Foothill property"). TRAVIS and DONNA both resided at, controlled, and maintained the Foothill property. Plaintiffs are further informed and believe that TRAVIS owned a property at 3539 Glenn Abbey Lane, Oxnard, CA ("Abbey property") and that TRAVIS and DONNA both resided at, controlled, and maintained the Abbey property.

13. Plaintiffs are informed and believed, and based thereon allege that, at all relevant times, AIRLINK had its principal place of business at the Foothill property and AIRLINK's tangible assets were stored at the Foothill property and all AIRLINK's business operations and transactions occurred at the Foothill property.

14. TRAVIS was convicted of a felony when he was in his early twenties for molesting an 11-year-old girl. He served time in prison for those acts. Plaintiffs were unaware of the facts behind this conviction, as TRAVIS stated the conviction was a result of a consensual relationship with a teenage female and Plaintiffs assumed this meant someone who was an older teen but under the age of consent.

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

-3-

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

15.     Plaintiffs are informed and believe and based thereon allege that DONNA, who is TRAVIS's mother, knew of TRAVIS's prior misconduct and conviction.

16.     Having no knowledge of the nature of TRAVIS's prior conviction, and because they believed they had a trusting relationship with TRAVIS as a friend and business associate, JAMES and NATALIE occasionally left P.W. alone at the Foothill property and the Abbey property in TRAVIS's and DONNA's care.

17.     TRAVIS began sexually abusing P.W. when she was four years old while P.W. was in TRAVIS's and DONNA's care at the Foothill property and the Abbey property. The abuse continued until P.W. was six years old and reported it to her mother NATALIE.

18.     Despite knowing of TRAVIS's conviction and history of sexual abuse of minor girls, DONNA failed to warn Plaintiffs about TRAVIS's history or propensity for sexual abuse of minors. DONNA repeatedly allowed TRAVIS access to Plaintiff P.W. at the Foothill property and the Abbey property where she left P.W. unattended with TRAVIS. Plaintiff is informed and believes that while the incidents of sexual abuse were occurring, DONNA was often present at the Foothill property and the Abbey property with knowledge that TRAVIS was alone in a bedroom with P.W. and she deliberately did not interfere with the molestation.

19.     In November 2021, P.W. reported the abuse to JAMES and NATALIE, who notified law enforcement. TRAVIS was arrested shortly thereafter and on October 3, 2022, TRAVIS was found guilty on seven counts of lewd and lascivious acts with a minor under 14 years of age and sodomy with a minor under 10 years of age.

20.     NATALIE testified at the sentencing hearing. Following her testimony, TRAVIS wrote and caused to be delivered to NATALIE and JAMES a scathing 5-page handwritten letter in which he accused NATALIE of knowingly allowing her child to be sexually abused. TRAVIS described in vivid detail the nature of the physical and sexual abuse he inflicted on P.W. as well as P.W.'s response to the abuse. The letter is of such a graphic nature as to repulse and shock the conscience of any person—most of all the parents of the victim P.W.

21.     After TRAVIS was imprisoned, he masterminded a scheme to disseminate, via his friends outside of prison, false statements accusing NATALIE and JAMES of "trafficking" P.W. The false

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

-4-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

statements were deliberately sent to JAMES's and NATALIE's friends, their church, JAMES's and ELITE's business associates.

## FIRST CAUSE OF ACTION
## CHILDHOOD SEXUAL ASSAULT
### Code Civil Procedure § 340.1(a)(1)-(2)
### (P.W. against Defendant TRAVIS, DONNA, AIRLINK, and DOES 1 through 100)

22. Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

23. On many occasions between February 2019 and November 2021, in Ventura County, California, TRAVIS groped P.W.'s genitals and forced P.W. to copulate her genitals with TRAVIS's mouth.

24. On information and belief, DONNA, and DOES 1-100 knew of, condoned, facilitated, and encouraged such conduct to take place at the Foothill property where AIRLINK had its principal place of business, and the Abbey property . At all such times, P.W. was between the ages of 4 and 6 years old.

25. Plaintiffs are informed and believe and based thereon allege that AIRLINK was a sham corporation that was used by TRAVIS as a cover for his sexual abuse of minors including P.W. and that there is and was such a unity of interest between TRAVIS and AIRLINK at the times of the acts alleged herein, that the distinction between them no longer exists and to recognize such a distinction would promote injustice to P.W.

26. As an alternative to the allegations in paragraph 25, Plaintiffs are informed and believe and based thereon allege that AIRLINK, through TRAVIS, knew or had reason to know, or was otherwise on notice, that TRAVIS's history of sexual misconduct with minors, and his behavior of isolating P.W. in a private room at the business headquarters of AIRLINK created a risk of childhood sexual assault by TRAVIS. AIRLINK failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault. (Code Civ. Proc., § 340.1.)

27. TRAVIS's acts described herein are crimes under Penal Code §§ 288(a) and 288.7(b).

28. As a direct and proximate result of the acts of Defendants, and each of them, P.W. has suffered physical and psychological damage and continues to suffer psychological damage and severe

-5-

COMPLAINT FOR DAMAGES

emotional distress in an amount to be proven at trial. She has suffered further general and special damages in an amount to be proven at trial.

29.    Defendants, and each of them, committed the acts described herein maliciously, fraudulently, oppressively, and with the wrongful intent of repeatedly harming Plaintiff, as evidenced by their isolation of Plaintiff for the purpose of perpetrating sexual abuse. Defendants, and each of them, intentionally deprived Plaintiff of her privacy, her childhood, and her personal dignity; they showed extreme and deliberate indifference to Plaintiff's physical, emotional, and mental well-being. In doing so, Defendants, and each of them, acted with malice, and conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### SEXUAL BATTERY
### Civil Code § 1708.5
### (P.W. against TRAVIS, AIRLINK, and DOES 1 through 100)

30.    Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

31.    As alleged herein, TRAVIS perpetrated repeated sexual battery of P.W.'s person without P.W.'s consent. TRAVIS intentionally isolated P.W. in areas of both the Foothill property where AIRLINK had its principal place of business, and at the Abbey property, where he intentionally, forcefully, and offensively contacted P.W.'s genitals using his hands and mouth.

32.    TRAVIS's actions described herein, which were committed while P.W. was a minor child under the age of ten and without P.W.'s consent, were offensive and injurious.

33.    In committing the acts alleged above, TRAVIS acted with the intent to make sexually offensive contact with P.W.'s person. As a minor child P.W. did not have the capacity to consent to TRAVIS's acts.

34.    Plaintiffs are informed and believe and based thereon allege that AIRLINK was a sham corporation that was used by TRAVIS as a cover for his sexual abuse of minors including P.W. and that there is and was such a unity of interest between TRAVIS and AIRLINK at the times of the acts alleged herein, that the distinction between them no longer exists and to recognize such a distinction would promote injustice to P.W.

-6-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

35.     As an alternative to the allegations in paragraph 25, AIRLINK, through TRAVIS, knew or had reason to know, or was otherwise on notice, that TRAVIS's history of sexual misconduct with minors, and his behavior of isolating P.W. in a private room at the business headquarters of AIRLINK created a risk of childhood sexual assault by TRAVIS. AIRLINK failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault. (Code Civ. Proc., § 340.1.)

36.     As a direct and proximate result of the acts of Defendants, and each of them, P.W. has suffered physical and psychological damage and continues to suffer psychological damage and severe emotional distress in an amount to be proven at trial. She has suffered further general and special damages in an amount to be proven at trial.

37.     In committing the sexual abuse described herein, TRAVIS intentionally deprived P.W. of her childhood, her bodily autonomy, her sense of safety and security, her privacy, her personal dignity, and much more. He showed extreme and deliberate indifference to P.W.'s physical, emotional, and mental well-being. In doing so, TRAVIS acted with malice, and conscious disregard for P.W's rights, entitling P.W. to an award of punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Code Civil Procedure § 340.1(a)(2)-(3)
### (P.W. against TRAVIS, DONNA, AIRLINK, and DOES 1 through 100)

38.     Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

39.     Defendants TRAVIS and DONNA TRAVIS and DOES 1-100 engaged in and subjected P.W. to extreme and outrageous conduct including, without limitation:

a.     When TRAVIS repeatedly, over the course of several, sexually molested Plaintiff P.W. against her will and in violation of California Civil Code § 1708.5; and

b.     When DONNA and DOES 1-100 failed to warn P.W., NATALIE, or JAMES of TRAVIS's proclivity to sexually abuse young children; failed to adequately supervise P.W. while P.W. was in DONNA's residence and entrusted to DONNA's care; and,

c.     When DONNA and DOES 1-100 exhibited deliberate indifference to TRAVIS's repeated isolation of P.W. with TRAVIS in private rooms of the Foothill and Abbey

-7-

COMPLAINT FOR DAMAGES

properties while DONNA and DOES were present so that TRAVIS could molest P.W.

40. No reasonable individual in a civilized society would be expected to tolerate or endure the mental abuse inherent in the physical and sexual abuse of a minor child. TRAVIS abused his power over Plaintiff P.W. and used his relationship with her and her family to cultivate a sexual relationship benefitting his own desires and violating her rights and interests, intentionally causing her to suffer humiliation, mental anguish, and mental and emotional distress. DONNA and TRAVIS and DOES 1-100 knew or should have known that Plaintiff P.W., as a small child, was susceptible and vulnerable to emotional distress as a result of the sexual abuse they condoned and took part in.

41. TRAVIS acted intentionally or with reckless disregard of the probability that his sexual molestation of Plaintiff P.W. was reasonably certain to cause P.W. to suffer severe emotional distress.

42. DONNA and DOES 1-100 acted with intent and/or with reckless disregard of the probability that by allowing TRAVIS to isolate P.W. with him in his bedroom, P.W. would be sexually abused and that extreme emotional distress was reasonably certain to occur.

43. Plaintiffs are informed and believe and based thereon allege that AIRLINK was a sham corporation that was used by TRAVIS as a cover for his sexual abuse of minors including P.W. and that there is and was such a unity of interest between TRAVIS and AIRLINK at the times of the acts alleged herein, that the distinction between them no longer exists and to recognize such a distinction would promote injustice to P.W.

44. As a direct and proximate result of the acts of Defendants, and each of them, P.W. has suffered physical and psychological damage and continues to suffer psychological damage and severe emotional distress in an amount to be proven at trial. She has suffered further general and special damages in an amount to be proven at trial.

45. As a result of Defendants' individual and combined actions and inactions, P.W. was deprived of her privacy, her bodily autonomy, her sense of safety and security, her childhood, and her personal dignity. Defendants showed extreme and deliberate indifference to Plaintiff P.W.'s physical, emotional, and mental well-being. In doing so, Defendants, and each of them, acted with malice, and conscious disregard for Plaintiff P.W.'s rights, entitling Plaintiff to an award of punitive damages in an amount to be determined at trial.

-8-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

## FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Code Civil Procedure § 340.1(a)(2)-(3)
### (JAMES and NATALIE against TRAVIS and DOES 1 through 100)

46.     Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

47.     TRAVIS and DOES 1-100 engaged in and subjected JAMES and NATALIE to extreme and outrageous conduct including, without limitation the following examples:

      a.   When TRAVIS and DOES 1-100 masterminded a smear campaign against JAMES and NATALIE whereby TRAVIS and DOES 1-100 generated and disseminated social media postings and emails to several of JAMES's and NATALIE's friends, business associates, and church, falsely accusing JAMES and NATALIE of sex trafficking P.W.

      b.   When TRAVIS sent a letter to JAMES and NATALIE after his sentencing in the criminal proceeding, in which he explicitly described his sexual abuse of P.W., P.W.'s reactions to the abuse, and he accused JAMES and NATALIE of knowingly allowing the abuse to go on.

48.     The conduct of TRAVIS and DOES 1-100 toward JAMES and NATALIE is so extreme and outrageous as to shock the conscience. No reasonable individual in a civilized society would be expected to tolerate or endure the mental abuse inherent in the conduct described herein.

49.     The conduct of TRAVIS and DOES 1-100 caused Plaintiffs severe emotional distress. Plaintiffs have been deprived of their privacy and personal dignity. Plaintiffs suffer the shame and hurt of knowing what their small child endured with TRAVIS's abuse. Defendants' direct accusations that they played a role in their daughter's sexual abuse caused them to suffer intense mental anguish, humiliation and outrage which continues.

50.     As a direct and proximate result of the actions of TRAVIS and DOES 1-100, Plaintiffs James Wald and Natalie Wald have suffered general and special damages in an amount to be proven at trial.

51.     The conduct of TRAVIS and DOES 1-100 was malicious insofar as it was designed to and did harm them financially and emotionally. The conduct of TRAVIS and DOES 1-100 was

-9-

COMPLAINT FOR DAMAGES

fraudulent insofar as his written statements about the Wald family were knowingly false and were made for the purpose of causing third parties to believe that NATALIE and JAMES were guilty of aiding and abetting their daughter's sexual Abuse. Therefore, JAMES and NATALIE are entitled to an award of punitive damages against TRAVIS and DOES 1-100 in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE**
**Code Civil Procedure § 340.1(a)(2)**
**(P.W. Against DONNA, AIRLINK, and DOES 1 through 100)**

52.     Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

53.     At all relevant times, P.W. was a minor between the ages of 4 and 6. Defendant DONNA had a special relationship with P.W. insofar as she was in a position of authority over P.W. and while P.W. was in DONNA's home and AIRLINK's place of business, they were entrusted with the duty and responsibility of caring for P.W.'s physical and emotional well-being.

54.     DONNA owed P.W. a heightened duty of care due to her young age. Adults are expected to be more careful with minors and exercise a greater amount of caution than if they were dealing with, exclusively, adults. (*Kataoka v. May Dept. Stores Co.* (1943) 60 Cal.App.2d 177, 182.) "A greater degree of care is generally owed to children because of their lack of capacity to appreciate risks and to avoid danger." (*McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1, 7.) This is especially true where P.W. was entrusted into the care of DONNA by JAMES and NATALIE and there was an expectation that DONNA provide her with proper care and attention.

55.     Plaintiffs are informed and believe and based thereon allege that AIRLINK was a sham corporation that was used by TRAVIS as a cover for his sexual abuse of minors including P.W. and that there is and was such a unity of interest between TRAVIS and AIRLINK at the times of the acts alleged herein, that the distinction between them no longer exists and to recognize such a distinction would promote injustice to P.W.

56.     As an alternative to paragraph 55, Plaintiffs are informed and believe that AIRLINK and DOES 1-100, through TRAVIS, knew or had reason to know, or was otherwise on notice, that TRAVIS's history of sexual misconduct with minors, and his behavior of isolating P.W. in a private

-10-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

room at the business headquarters of AIRLINK created a risk of childhood sexual assault by TRAVIS. AIRLINK and DOES 1-100 failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault. (Code Civ. Proc., § 340.1.)

57.    DONNA and AIRLINK and DOES 1-100 breached the duty of care expected in relation to P.W. when they failed to supervise her effectively and protect her from the criminal and inappropriate tendencies of TRAVIS.

58.    The failure of DONNA and AIRLINK and DOES 1-100 to supervise Plaintiff P.W. was a substantial factor in causing Plaintiff P.W. to be sexually molested over a period of four years by TRAVIS. DONNA and DOES 1-100 had many opportunities to stop TRAVIS from molesting P.W. yet failed to do so.

59.    Given her knowledge of TRAVIS's past conviction for sexual assault of a minor, DONNA and AIRLINK should not have allowed TRAVIS to be in a bedroom alone with P.W. A reasonable person would have foreseen that TRAVIS would molest P.W. given the opportunity.

60.    But for Defendants' breach of duty to P.W. as alleged herein, TRAVIS would not have had the opportunity to molest P.W.

61.    As a direct and proximate result of the acts of Defendants, and each of them, P.W. has suffered physical and psychological damage and continues to suffer psychological damage and severe emotional distress in an amount to be proven at trial. She has suffered further general and special damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**DEFAMATION – LIBEL**
**Code of Civil Procedure Section 45**
**(JAMES and NATALIE Against TRAVIS MARTIN and DOES 1 through 100)**

62.    Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

63.    After being convicted of molesting Plaintiffs JAMES' and NATALIE's then six-year-old daughter, TRAVIS masterminded a smear campaign against JAMES and NATALIE targeting their friends, business associates, and even local churches. They have received social media postings and emails defaming the Wald Family, stating they willingly engaged in sex trafficking their daughter.

-11-

COMPLAINT FOR DAMAGES

64.    Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. (California Civil Code Section 45.)

65.    From May 10, 2023, through May 18, 2023, Ventura Missionary received multiple Yelp reviews whereby an unknown individual posted repeatedly that Natalie and James Wald were sex trafficking their daughter for over three years.

66.    On May 10, 2023, American Legacy Solutions—a business associate of JAMES—received a post on their Facebook from a fake Facebook profile in the name of "Francis Gallagher" saying:

> Ventura Missionary School teacher Natalie Wald has admitted in court to sex trafficking her 4 year old daughter. For 3 years Natalie would regularly leave her daughter alone with an ready registered sex offender knowing sexual abuse was happening. She says she received gifts, expensive trips and financial compensation during the 3 years she allowed this to happen.
> Head Dean of the school Amy Hall and Senior Pastor of Missionary Church Doug Colby have known about this for 6 months and yet Natalie is still working at the school and volunteering at the church. [¶] Please join us in making sure no more children are allowed to be hurt by this woman! She has 3 children including another younger daughter! She should not be allowed around any children and should be a registered sex offender herself. Please help us petition prosecutor Rafael Orellana to do his job and criminally charge this woman! Additionally, Amy Hall and Doug Colby should be held accountable for knowingly putting hundreds of children at the church and school at risk!

67.    The post included a graphic of supposed testimony regarding her duties as a mandated reporter.

68.    Later "Francis Gallagher" posted supposed screen captures of a transcript of testimony out of context including a caption "She KNEW he was a registered sex offender before her daughter was born!"

69.    In May of 2023, "Frank Gallagher" sent an email to Vincenzo Giammanco, a business partner of ELITE, stating that Giammanco's company CBF Productions "continues to hire James Wald of Elite Sound Co despite knowing James and his wife Natalie have admitted in court testimony to sex trafficking their 4 year old daughter." And "The Walds admitted to knowing sexual abuse was happening while receiving over $100,000.00 from the sex offender. Do you really want your ticket

-12-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

money going to parents that sold their daughter to a sex offender?" FRANCIS GALLAGHER threatened to post the same statements on multiple media platforms.

70.     Ventura County Sheriff Detective Megan Yates communicated with the Pleasant Valley State prison regarding their suspicions that TRAVIS was the source of the defamatory statements being made by "Francis Gallagher" and that he was using associates outside of prison as a medium to transmit and post the libelous statements. Plaintiffs are informed and believe and based thereon allege that the associates who were transmitting and posting the libelous statements were and are DOES 1-100. During an investigation at the prison, evidence was found on a state-issued tablet confirming that TRAVIS had initiated and coordinated with DOES 1-100 to post the defamatory content.

71.     On August 2, 2023, TRAVIS and DOES 1 – 100 sent or caused to be sent an email to employees of Ventura Missionary School, NATALIE's place of employment, as well as various religious churches and schools within Ventura County stating that NATALIE and JAMES were complicit in the sex trafficking their daughter:

> ...Ventura Missionary School teacher Natalie Wald admits, under oath, to knowing her daughter was being sexually abused for almost 3 years.  She admits...knowing sexual acts where (sic) occurring. ... James, her husband, was complicit in her actions.  ... "...[Y]ou will see for yourself that these evil people have admitted to multiple crimes, perjuring themselves in court, a 13 year mandated reporter failing to report, and trafficking their 4 year old daughter to a sex offender. The district attorney is derelict in his duties by allowing these admitted criminals to remain uncharged, endangering our community, the hundreds of children in her care, and their own 3 young children.

72.     TRAVIS initiated the posting of knowingly false statements against NATALIE and JAMES. Upon information and belief, he did so by coordinating with DOES 1-100 to post and send messages to JAMES and NATALIE's community.

73.     Each and every statement regarding JAMES and NATALIE contained in the statements quoted herein are false. NATALIE and JAMES never knowingly exposed their child to danger. NATALIE and JAMES never advertised, and never received or invited compensation for the abuse of P.W.

74.     By publicizing the above-described false statements, TRAVIS and DOES 1-100 caused JAMES and NATALIE to be publicly humiliated, shamed, vilified and hated within their social, charge,

-13-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

and business communities.

75.    TRAVIS and DOES 1-100 acted to injure JAMES and NATALIE in their occupation by spreading lies to their employers and clients.

76.    As a proximate result of the acts of TRAVIS and DOES 1-100, JAMES and NATALIE have suffered extreme emotional distress requiring psychotherapy. They have suffered further general and special damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INTEFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS (ELITE, JAMES, and NATALIE Against TRAVIS and DOES 1 through 100)

77.    Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

78.    A person will be found liable for the intentional interference with prospective economic advantage  is there is "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal. 4th 1134, 1164 citing *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 827.

79.    Plaintiffs JAMES, NATALIE, and ELITE were in a business relationship with Vincenzo Giammanco of CBF productions to service their "Boots and Brews Music Festival" through their company ELITE.

80.    Plaintiffs JAMES and NATALIE have worked with CBF Productions to provide venues for multiple music events in the past.  Each such event requires entering into a separate and distinct contractual arrangement. Maintaining a good relationship with a venue does not guarantee but does increase the likelihood of continuing the contractual relationship by being hired for future projects.

81.    Because TRAVIS previously did business with JAMES and NATALIE to provide sound production, TRAVIS knew of their economic relationship that they and ELITE had with CBF Productions.

-14-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

82. TRAVIS and DOES 1-100 engaged in extreme and outrageous conduct by contacting Mr. Giammanco and other business associates of ELITE, JAMES, and NATALIE by email, threatening to publish the false statement that "Vincenzo Giammanco owner of CBF productions continues to hire James Wald of Elite Sound Co despite knowing James and his wife Natalie have admitted in court testimony to sex trafficking their 4 year old daughter."

83. In spreading the threatening, false and defamatory statements about JAMES and NATALIE, TRAVIS and DOES 1-100 intended on disrupting ELITE's and JAMES and NATALIE's economic relationship with Mr. Giammanco and CBF productions.

84. TRAVIS and DOES 1-100 knew that the statements were false and fraudulent and defamatory.

85. TRAVIS and DOES 1-100 made these statements knowing that most individuals and companies would not want to be associated with individuals that had in fact been connected to such conduct. He also knew that, even if CBF did not believe the statements were true, the publication could harm CBF's reputation in the community. Therefore, CBF would be incentivized to end its business relations with ELITE.

86. As a proximate result of the acts of Defendants, the Plaintiffs have suffered extreme emotional distress requiring psychotherapy. Economic harm and other special and general damages in an amount to be proven at trial.

87. Wherefore, Plaintiffs seeks general and special damages, compensatory damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
### (ELITE, JAMES and NATALIE Against TRAVIS and DOES 1 through 100)

88. Plaintiffs incorporate by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

89. "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or

-15-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.

90.     JAMES and NATALIE, through their company, ELITE, were in a contractual relationship with Vincenzo Giammanco of CBF productions to service their "Boots and Brews Music Festival."

91.     Because TRAVIS previously did business with JAMES and NATALIE to provide sound production, TRAVIS knew of the economic relationship they and ELITE had with CBF Productions.

92.     Defendant TRAVIS and DOES 1-100 intended on disrupting JAMES and NATALIE's and ELITE's current contractual relationship with Mr. Giammanco and CBF productions when he wrote in an email threatening to publish that "Vincenzo Giammanco owner of CBF productions continues to hire James Wald of Elite Sound Co despite knowing James and his wife Natalie have admitted in court testimony to sex trafficking their 4-year-old daughter."

93.     Defendant TRAVIS and DOES 1-100 made these statements knowing that most individuals and companies would not want to be associated with individuals that had in fact been connected to such conduct.

94.     Defendant TRAVIS' and DOES 1-100's actions were designed to create a disruption in the contractual relationship between Plaintiffs and Mr. Giammanco.

95.     Defendant's actions in fact disrupted the contractual relationship between the Plaintiffs and Mr. Giammanco.

96.     NATALIE is employed at Ventura Missionary School as a teacher.

97.     TRAVIS and DOES 1-100 sent or caused to be sent multiple messages under the pseudonym of "Francis Gallagher" to induce Ventura Missionary School to terminate Plaintiff NATALIE by claiming that she admitted in court to sex trafficking her 4-year-old daughter.

98.     As recently as August 2, 2023, TRAVIS and DOES 1-100 sent or caused to be sent additional emails to employees of Ventura Missionary School, NATALIE's place of employment, as well as various religious churches and schools within Ventura County calling for the termination of Plaintiff NATALIE, again claiming she admitted to sex trafficking her daughter.

-16-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

99.     TRAVIS and DOES 1-100 made these statements knowing that allegations of sex trafficking of anyone but including a minor would result in concern on behalf of the parents and potential termination of NATALIE.

100.     TRAVIS' and DOES 1-100's statements in fact disrupted the relationship between NATALIE and the school.

101.     As a direct and proximate result of TRAVIS' and DOES 1-100's actions alleged herein, Plaintiffs have suffered economic harm, psychological and emotional trauma and other general and special damages in an amount to be proven at trial.

## PRAYER

WHEREFORE, plaintiff prays judgment as follows:

As to All Causes of Action

1. For general compensatory damages;

2. For special compensatory damages;

3. For punitive damages;

4. For interest as allowed by law;

5. For costs of suit incurred herein;

6. For such other and further relief as the court may deem proper.

DATED: August 2, 2023

BAMIEH & DE SMETH, PLC,

By_____
RON BAMIEH
DANIELLE DE SMETH
ALEXANDER DE ARANA-LEMICH
Attorneys for Plaintiffs

-17-

COMPLAINT FOR DAMAGES

Ventura Superior Court Accepted through eDelivery submitted 08-02-2023 at 03:25:26 PM

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this matter.

DATED: August 2, 2023

BAMIEH & DE SMETH, PLC,

By_____
RON BAMIEH
DANIELLE DE SMETH
ALEXANDER DE ARANA-LEMICH
Attorneys for Plaintiffs

CASE #:2023CUPP012195 RECEIPT #: 1230804D153941 DATE PAID : 08/4/23 4:32 PM TOTAL : 435.00 TYPE : EFT

-18-

COMPLAINT FOR DAMAGES

# EXHIBIT "F"

Travis E Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

VENTURA SUPERIOR COURT
**FILED**
04/07/2026
K. Bieker
Executive Officer and Clerk
Hannah Cressy

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF VENTURA**

JAMES WALD, an individual;
NATALIE WALD, an individual; P.W., a
minor, by and through Guardian ad Litem
JAMES WALD; and ELITE SOUNDS
COMPANY, LLC, a California Limited
Liability Corporation,
      Plaintiffs,

v.

TRAVIS EDWARD MARTIN, an
individual; DONNA MARTIN, an
individual; AIRLINK INTERNET, INC.,
a California corporation; and DOES 1–
100,
      Defendants.

_____

TRAVIS E MARTIN,
      Cross-Complainant,

v.

JAMES WALD, an individual; NATALIE
WALD, an individual; JAYSON COHEN, an
individual; AMERICAN LEGACY
SOLUTIONS LLC, a California Limited
Liability Corporation; ELITE SOUND
COMPANY LLC, a California Limited
Liability Corporation; and ROES 1-20,
inclusive,
      Cross-Defendants.

**Case No.: 2023CUPP012195**

**FIRST AMENDED CROSS-COMPLAINT OF
TRAVIS EDWARD MARTIN FOR:**

**1. Civil RICO (18 U.S.C. § 1962(c));**
**2. Civil RICO Conspiracy (18 U.S.C. § 1962(d));**
**3. Restitution/Disgorgement for Property
Obtained by Extortionate Threats;**
**4. Menace & Duress / Rescission;**
**5. Restitution & Common Count - Money Had
and Received;**
**6. Declaratory Relief.**

**DEMAND FOR JURY TRIAL**

Ventura Superior Court transmitted through eFiling 04/07/2026 08:01:00 AM

1

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

This First Amended Cross-Complaint is filed as a matter of right pursuant to California Code of Civil Procedure sections 472(a) and 428.50(b) in response to the Demurrer filed on March 4, 2026.

**PARTIES**

1  Cross-Complainant Travis E Martin ("Martin") is an adult individual. He is the defendant in the main action and the cross-complainant here.

2. Cross-Defendant James Wald ("James") is, and at all relevant times was, an adult individual residing in Ventura County, California.

3. Cross-Defendant Natalie Wald ("Natalie") is, and at all relevant times was, an adult individual residing in Ventura County, California.

4. Cross-Defendant Jayson Cohen ("Cohen") is, and at all relevant times was, an adult individual residing in Ventura County, California.

5. Cross-Defendant American Legacy Solutions LLC ("ALS") is, a California limited liability company owned and controlled by Cohen. At all relevant times, Cohen acted for ALS as its owner, manager, managing agent, and authorized representative.

6. Cross-Defendant Elite Sound Company LLC ("Elite Sound") is a California limited liability company co-owned by James Wald and Jayson Cohen. Elite Sound is the entity through which James and Cohen acquired and continued the business at issue after Martin's removal and that it is the same as, successor to, or otherwise affiliated with the plaintiff entity identified in the Complaint as Elite Sounds Company, LLC, according to proof.

7. Cohen is alleged not merely as a passive lender or investor. By no later than November 2021, and earlier according to proof, Cohen knowingly aligned himself with James and Natalie and used ALS and Elite Sound to exploit Martin's absence, to acquire Martin's business and assets at a distressed value, and to divert to himself and his entities consideration, control, and other economic benefits belonging to Martin personally.

8. ALS is alleged not merely because Cohen owns it. ALS, acting through Cohen, supplied capital, structure, credit, and business support for the takeover plan, participated in the capitalization and operation of Elite Sound, and received or expected to receive benefits from the acquisition and exploitation of the business and proceeds at issue.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

9. Elite Sound is alleged not merely as a nominal transferee. It was formed, capitalized, and used as the acquisition and operating vehicle through which defendants consummated the November 2022 transfer, took over ongoing operations, and retained or exploited assets, opportunities, revenues, and proceeds affecting Martin's personal ownership, control, compensation, distribution, and sale rights.

10. At all relevant times, Cohen acted individually and as owner, manager, managing agent, and authorized representative of ALS and Elite Sound. ALS and Elite Sound, through Cohen and other authorized agents, approved, authorized, ratified, and benefited from the conduct alleged herein.

11. The true names and capacities of Cross-Defendants sued herein as ROES 1 through 20 are presently unknown to Martin, who therefore sues those parties by fictitious names pursuant to Code of Civil Procedure section 474. Martin will amend this pleading to allege their true names and capacities when ascertained.

12. Martin is informed and believes, and on that basis alleges, that the agency, alter-ego, aider-and-abettor, co-conspirator, joint-venture, ratification, and principal allegations in this pleading are count-specific, role-specific, and phase-specific. Each Cross-Defendant is alleged to have participated in one or more phases of the scheme in the capacities described in the particular factual allegations and causes of action applicable to that party, including knowing receipt, retention, use, or monetization of Martin's money, assets, or traceable proceeds where so alleged.

### JURISDICTION AND VENUE

13. This is an unlimited civil action. Venue is proper in Ventura County because the wrongful acts, coerced transfers, asset diversion, and injuries alleged herein occurred in Ventura County, and because the underlying action is pending in this Court.

14. This cross-complaint is brought under Code of Civil Procedure section 428.10(b) because the claims asserted arise out of the same transactions, occurrences, and series of transactions or occurrences that are at issue in the operative Complaint and assert rights and interests in the same property and controversy.

15. Because no trial date has been set, this amended cross-complaint is timely as a matter of right under Code of Civil Procedure section 428.50(b). It is also timely under Code of Civil Procedure section 472(a) because it is filed in response to the pending demurrer before the demurrer opposition is due.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

16. California state courts have concurrent jurisdiction over civil RICO claims. (Tafflin v. Levitt (1990) 493 U.S. 455, 458-467.)

17. The anti-SLAPP remittitur in this action expressly left amendment open. Martin therefore alleges additional facts to fortify the surviving menace-duress theory, the later takeover allegations, the RICO counts, the restitutionary claims, and the present controversy concerning rights to traceable property and sale-related proceeds. No appellate order imposed any limitation on amendment.

18. This pleading does not attempt to revive the original independent negligence, intentional infliction of emotional distress, defamation, or stand-alone intentional-tort conspiracy causes of action that were stricken. Any factual allegations touching on supervision, reports, testimony, or post-accusation conduct are alleged only to support the remaining and amended claims actually pled herein, including menace, rescission, restitution, RICO, tracing, constructive-trust/equitable-lien remedies, and declaratory relief.

## FACTUAL ALLEGATIONS

19. The wrong alleged here is not that a person later made a police report. The wrong alleged here is that, before any report was made, Natalie repeatedly used threatened accusation, threatened injury to Martin's character, and threatened imprisonment as leverage to extract money and property from Martin, that James knowingly benefited from and ratified those threats, and that by no later than November 2021 James and Natalie, together with Cohen acting through ALS and Elite Sound, exploited the same enterprise to seize Martin's personal ownership, control, consent, compensation, distribution, sale, and other economic rights, together with identifiable traceable proceeds or substitute property derived from Martin's own transfers or personal rights.

20. The damages sought in the First through Fifth Causes of Action are limited to Martin's own property injuries, including money he personally paid or transferred; sale consideration, compensation, distributions, and other economic benefits payable directly to him; impairment of ownership, management, control, consent, and sale rights he personally held; and identifiable traceable proceeds or substitute proceeds derived from Martin's own transfers or personal rights, according to proof. Martin does not seek in those causes of action recovery for personal injury, emotional distress, incarceration itself, or depletion of assets owned only by a separate entity.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

21. References elsewhere in this pleading to receivables, customers, goodwill, projects, commissions, revenues, sponsorships, or similar business value are made only to the extent such items affected sale consideration, distributions, compensation, or other economic benefits payable directly to Martin, or constituted identifiable traceable proceeds of Martin's own transfers or personal rights. Martin does not seek in his individual capacity recovery for injury consisting solely of depletion of assets owned only by a separate entity.

22. To the extent any timeliness issue is measured from the filing of Martin's earlier cross-pleadings in this action, this First Amended Cross-Complaint relates back because it arises from the same general set of facts, the same pay-or-accuse scheme, the same post-removal seizure of Martin's business/property interests, and the same controversy over who wrongfully obtained Martin's money and assets. This pleading amplifies and clarifies those facts, adds detail regarding Cohen, ALS, Elite Sound, and the later takeover phase, and pleads refined theories of recovery arising from the same primary right and series of connected transactions.

23. Independently, the wrongful conduct was continuing and separately accruing. The threatened-accusation demands and coerced transfers constituting the early extortion/menace/duress phase occurred from at least April 2019 through approximately November 5, 2021. The later takeover/transfer/use/monetization phase began after Martin's removal, continued through the November 26, 2022 asset-transfer phase, and continued thereafter through defendants' retention, use, and exploitation of money, proceeds, opportunities, and economic value taken from Martin or affecting his personal rights.

24. Each coerced payment or extortionate demand during the early phase caused direct business/property injury to Martin. Separately, each act undertaken after Martin's removal to convert that coerced situation into a permanent takeover, including financing, structuring, receipt, transfer, retention, use, monetization, and concealment of traceable assets or substitute proceeds, and the November 26, 2022 transfer itself, caused new and additional business/property injury to Martin at least to the extent it impaired Martin's own ownership, control, consent, compensation, distribution, sale, or other personal economic rights and/or involved money or property traceable to Martin's own transfers. Martin therefore pleads each such injury as timely in its own right to the fullest extent permitted by law, including at a

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

minimum the November 26, 2022 transfer and defendants' ongoing retention and exploitation of traceable money and property thereafter.

25. While Martin was incarcerated and excluded from the business, he did not have access to the books, records, transaction documents, or internal communications necessary to discover the full role of Cohen, ALS, and Elite Sound, the financing structure of the takeover, the terms and undervaluation of the November 26, 2022 transfer, or the extent to which extorted or diverted value had been converted into substitute assets. Those matters were concealed from him and were discoverable only later through records and communications obtained after the fact.

26. Martin did not have a fair or practical opportunity to discover all material facts, safely repudiate the transactions, or pursue effective rescission while the coercive threats, resulting criminal exposure, incarceration, exclusion from the business, and concealment of the asset-seizure phase were still unfolding. He therefore pleads discovery, accrual, tolling, continuing-accrual, and relation-back to the fullest extent permitted by law.

27. The injuries alleged here are direct to Martin personally. Defendants targeted Martin because he was the majority owner and controlling person of the affected business. The plan was designed to make Martin personally pay money, personally lose the power to control and manage the business, personally lose compensation, distributions, sale consideration, and other economic rights attached to his majority interest, and personally lose possession or beneficial ownership of money, property, and opportunities traceable to him. Martin does not seek direct recovery merely because a separate entity lost value.

28. Any reference in this pleading to later reports, testimony, or court filings is made only to explain timing, causation, motive, and the completion of the underlying scheme. Liability is predicated on pre-report extortionate threats, knowing receipt of money/property, coordinated asset diversion, and other non-petitioning conduct.

29. Cohen, ALS, and Elite Sound were not participants in an ordinary arm's-length purchase. On information and belief, James and Natalie turned to Cohen by no later than the immediate aftermath of Martin's forced removal because they needed outside capital, business structure, and a controlled acquisition vehicle to capture Martin's business at a distressed value, impair or extinguish Martin's

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

personal consent, control, compensation, distribution, and sale rights, and redirect the resulting consideration and proceeds.

30. An actual controversy therefore exists concerning Martin's own rights to ownership, management, consent, compensation, distributions, sale consideration, and traceable proceeds, and concerning whether defendants may continue to hold and exploit money, property, or economic value taken from him personally through the conduct alleged herein.

31. Any constructive-trust, equitable-lien, or declaratory relief requested herein is derivative of the substantive claims pleaded below and is directed only to specifically identifiable money, proceeds, or substitute property traceable to Martin's own transfers or personal economic rights.

32. Before November 2021, Martin and James were business partners in a company in which Martin held a 90 percent ownership interest and James held a 10 percent ownership interest. Martin's majority stake carried with it personal rights of control, management, consent, compensation, distributions, and receipt of sale-related consideration or other economic benefits payable to him. That ownership structure and Martin's control of the business made Martin's removal highly valuable to James and anyone aligned with him.

33. From at least April 2019 through no later than November 5, 2021, Natalie engaged in a repeated pay-or-accuse scheme. During disputes about money and whenever Martin attempted to reduce or stop financial support, Natalie threatened to accuse Martin of sexually abusing her daughter, the minor P.W., unless Martin continued paying money and funding benefits for the Wald household. James knew of the threats, accepted the money and benefits obtained by them, and ratified the scheme.

34. The property Natalie and James demanded and obtained included, without limitation, substantial cash payments and transfers, private-school tuition for the Wald children, travel, lodging, entertainment, consumer goods, household goods and services, and other living expenses. The transfers included approximately $100,000 in cash, plus substantial additional tuition, financial compensation and payments.

35. The extortionate nature of the scheme lay in coupling threatened accusation and threatened injury to Martin's character with demands for money and property. Natalie repeatedly conveyed, in substance, that if Martin did not pay, one phone call would destroy him. Martin was specifically told by

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

Natalie: "I'll get you sucker. One phone call is all it will take. My tribe is bigger than yours. Who do you think they'll believe?" Natalie also used the phrase, "Nobody's going to make a canoe out of me," which she explained meant that no one would make a fool out of her and that if she was going down, the other person was going down too.

36. On each occasion when Natalie renewed the threatened accusation, the demand was for immediate or continued economic support. Martin did not make the resulting transfers as a matter of free consent. He made them because Natalie was threatening an accusation that would immediately destroy his character, personal relationships, and business interests before any adjudication could occur. James knowingly accepted and retained the resulting benefits.

37. The following dates plead representative episodes of the scheme and are not alleged to be exhaustive:

38. April 11, 2019: Natalie threatened accusation and injury to Martin's character unless Martin continued providing financial support. Martin thereafter paid tuition installments, cash, and household and travel expenses for the Wald family.

39. September 26, 2019: Natalie renewed the threats during another dispute over money. Martin thereafter paid further tuition, consumer purchases, travel charges, and cash.

40. January 2020: Natalie continued the threatened-accusation scheme, and Martin continued paying cash, tuition, goods, services, and travel expenses for the Wald household.

41. July 30, 2020: Natalie made additional threats tied to continued financial support. Martin thereafter funded travel, lodging, household purchases, and related expenses, including a week-long Anaheim trip.

42. October 2020: Natalie again coupled threatened accusation with monetary demands. Martin thereafter paid cash, travel expenses, goods, services, and household items.

43. June 28, 2021: Natalie renewed the scheme and obtained additional cash, goods/services, travel expenses, and tuition payments from Martin.

44. October 31 through November 3, 2021: Natalie and James continued pressing for money and benefits. Martin informed James and Natalie that "there will be nothing more financial between us" and that he intended to impose further restrictions under the governing agreement and ownership

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

arrangements for the company because the Walds were continuing to demand money, including a demand that Martin buy Natalie a Tesla Model Y.

45. The evening of November 3, 2021, after Martin cut off future financial support, Natalie asked Martin, in substance, "If something happens to you how do we get the company?" That statement was not incidental. It directly linked Martin's forced removal to the Walds' desire to obtain his business.

46. On November 5, 2021, less than 36 hours after Martin stated that no further financial benefits would be provided, Natalie carried out the threatened accusation by reporting sexual-abuse allegations to law enforcement. The immediacy of that report after Martin cut off money is a core fact supporting extortion, menace, ratification, conspiracy, and the plan to seize Martin's assets.

47. The wrongful conduct alleged here does not depend on proving that every later accusation made to police or in court was false. Under California law, the use of threatened accusation or threatened injury to character as leverage to obtain money or property constitutes extortionate menace and supports civil rescission and restitution of the property obtained, regardless of whether the crime threatened to be charged would later be claimed to be true. (Tran v. Nguyen (2023) 97 Cal.App.5th 523, 525-531; Morrill v. Nightingale (1892) 93 Cal. 452, 456.)

48. The pay-or-accuse scheme also established the coercive leverage, funding stream, and timing necessary for the later takeover phase. Once Martin stopped paying and Natalie carried out the threatened accusation, James and Natalie used Martin's removal from the business, together with money, access, and information obtained during the earlier scheme, to recruit additional capital and convert the extortionate pressure campaign into an asset-seizure plan. The precise timing of each later participant's agreement is presently within defendants' knowledge, but Martin alleges that by no later than November 2021 Cohen and ALS were knowingly acting in concert to convert that coercively created opportunity into a takeover of Martin's assets and rights.

**Expansion of the enterprise and seizure of Martin's assets.**

49. The scheme was not limited to extracting tuition, cash and payment of expenses. Once Martin was cut off from his business by arrest and incarceration, James and Natalie moved to exploit that removal to take Martin's company, customers, assets, and goodwill.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

50. Within days after Martin's arrest James and Natalie were already attempting to secure financing to take the company. The question Natalie asked on November 3, 2021 - how they would get the company if something happened to Martin - was answered in action immediately after Martin was removed.

51. Before and immediately after Martin's removal, James and Natalie sought outside financing to take the company. When they could not themselves obtain sufficient financing or credit to acquire Martin's business assets, they turned to Cohen as the outside capital source and business participant who would help make the acquisition possible.

52. Cohen was not brought in as a stranger to an ordinary arm's-length transaction. He was recruited because James and Natalie needed capital, a business vehicle, and a willing participant to exploit Martin's forced absence, to capture assets and opportunities at distressed value, and to receive or monetize sale consideration, receivables, revenues, commissions, distributions, and other proceeds traceable to Martin's personal ownership, control, compensation, distribution, and sale rights.

53. By no later than November 2021, Jayson Cohen was acting in concert with James and Natalie in furtherance of that plan. Cohen owned American Legacy Solutions LLC, used ALS capital and business resources in coordination with James and Natalie, and became a co-owner of Elite Sound Company LLC with James.

54. The precise date and terms of Cohen's initial agreement with James and Natalie are presently within defendants' communications, financing records, and transaction files. Martin therefore alleges on information and belief that Cohen's knowing agreement and coordination existed by no later than November 2021, and earlier according to proof, with knowledge that James and Natalie intended to exploit Martin's coerced removal and inability to protect his rights to seize Martin's business and the economic benefits attached to Martin's personal rights for their own benefit.

55. Cohen acted through ALS and in concert with James and Natalie to finance, structure, and facilitate the takeover effort, including the formation, capitalization, and operation of Elite Sound as the vehicle through which Martin's assets, customer work, receivables, sale-related value, and traceable proceeds would be acquired, held, operated, and monetized.

---

10

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

56. The common objective was not merely to exclude Martin temporarily. It was to convert Martin's coerced removal into a permanent transfer of the business platform, customer base, equipment, receivables, contracts, vendor relationships, and future income stream to Elite Sound.

57. At all relevant times, Cohen exercised substantial discretionary authority over ALS and Elite Sound and personally authorized, directed, approved, and ratified their participation in the conduct alleged herein, including the financing, structuring, acquisition, receipt, possession, retention, and exploitation of Martin's money, sale-related value, assets, and traceable proceeds.

58. Cohen did not merely supply money. He exercised business judgment and control over whether and how ALS resources and credit would be used, whether Elite Sound would be capitalized and owned so as to pursue the opportunity created by Martin's removal, what assets and customer work would be captured, and how the diverted business would thereafter be operated and monetized through the new entity.

59. On information and belief, ALS funds, credit, accounts, and other resources, and/or other capital arranged or controlled by Cohen, were used to capitalize Elite Sound, support its operations, and position it to acquire or exploit the business and opportunities that defendants knew Martin personally had the right to control or monetize.

60. Cohen expected, and ALS and Elite Sound were structured to obtain, ownership, revenue, profits, commissions, and other economic benefits from that takeover plan.

61. By aligning himself and ALS with James at or before the time the takeover steps were being organized, Cohen knew he was pursuing an opportunity created by Martin's sudden inability to protect his rights and by James and Natalie's effort to force a distressed acquisition of Martin's business for themselves.

62. Cohen nevertheless proceeded, agreed to co-own Elite Sound with James, and used ALS and Elite Sound as the business vehicles through which the takeover could be financed and implemented.

63. The enterprise's purpose in using ALS and Elite Sound was to convert Martin's forced absence into a business acquisition and continuing revenue stream for Cohen and James, while depriving Martin of the ownership, management, control, consent, compensation, distribution, and sale rights he personally held.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

64. The sequence of recruitment, financing, formation, capitalization, and later acquisition supports the inference of coordinated planning rather than an isolated later purchase.

65. Elite Sound was started, capitalized, and used as the operating vehicle for the seizure and exploitation of Martin's assets and business opportunities. What defendants took was not merely abstract business value, but the operating base, customer relationships, jobs, receivables, vendor relationships, equipment, tools, confidential business information, and goodwill that defendants then used to impair Martin's personal ownership, control, consent, compensation, distribution, sale, or other economic rights and to generate monetized proceeds traceable to him.

66. Throughout 2022 James, Natalie, Cohen, ALS, and Elite Sound continued acting as a coordinated unit toward that objective. They used James's inside knowledge and access, Natalie's prior coercive leverage and accounting role, Cohen's financing and ALS, and Elite Sound's newly created operating shell to position Elite Sound to acquire Martin's business at a distressed price and to take over ongoing work and relationships.

67. In November 2022, while Martin remained unable to negotiate directly and while Donna Martin was acting under power of attorney, defendants escalated the same plan by pressuring Donna to sell the remaining business assets to Elite Sound immediately.

68. Defendants represented to Donna, orally and/or in writing, in substance that the business had materially declined because of Martin's incarceration, that immediate sale was necessary, and that Elite Sound was the only practical or necessary buyer.

69. Those representations were false or materially misleading. Defendants knew the business had not collapsed and, to the contrary, that 2022 was one of the company's strongest years, and had substantial continuing value in equipment, customers, receivables, and goodwill.

70. James and Cohen, acting individually and through Elite Sound, then repeatedly pressed Donna with urgency, took advantage of her distress and isolation, and sought to prevent or limit meaningful consultation with Martin, so that the asset transfer could be completed on defendants' terms.

71. The core later-phase participants acted in concert to seize Martin's assets and to start, capitalize, and benefit Elite Sound. James supplied inside access to the existing business and its opportunities; Natalie supplied coercive leverage and timing; Cohen supplied outside capital, business

12

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

direction, and acquisition participation; ALS supplied the capital source and business structure; and Elite Sound served as the repository and operating shell for the assets, jobs, customers, receivables, and revenue stream taken from Martin.

72. The culmination of that plan occurred on November 26, 2022, when defendants procured execution of an Asset Purchase Agreement and/or Business Assets Sale Agreement transferring the remaining business assets to Elite Sound.

73. Defendants acquired those assets for approximately $215,000, or other similarly depressed consideration according to proof, despite a fair market value of at least approximately $1.15 million, thereby capturing for Elite Sound the operating base that James and Natalie had sought to obtain since before the November 5, 2021 report.

74. The November 2022 asset-sale phase was not a separate or unrelated transaction. It was the final damaging act and consummation of the same enterprise objective first advanced through Natalie's threatened-accusation-for-money scheme, James's acceptance and exploitation of the resulting leverage, and Cohen's knowing financing, acquisition participation, and later exploitation of the seized assets and proceeds.

75. Because Donna acted under Martin's power of attorney and because the scheme targeted Martin's majority ownership, control, and beneficial rights, the November 2022 transfer injured Martin directly and foreseeably at least to the extent it impaired or extinguished Martin's personal ownership, control, consent, compensation, distribution, sale, and other economic rights, and to the extent sale consideration or traceable value that should have gone to Martin was diverted.

76. The November 2022 transfer was not the end of the scheme. After acquiring Martin's assets at a depressed price, defendants have continued to date to use those assets, related goodwill, customer relationships, receivables, and operational know-how through Elite Sound and ALS to generate revenue and enterprise value for themselves and to retain, route, and exploit traceable proceeds and substitute assets derived from Martin's personal transfers and from personal rights taken from him.

77. After the November 2022 transfer, Cohen, ALS, and Elite Sound continued possessing, using, and controlling the acquired assets, customer relationships, work in progress, vendor connections, equipment, receivables, and know-how to generate ongoing revenue and enterprise value.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

78. On information and belief, defendants also caused consideration, profits, commissions, or other proceeds attributable to the transferred business to be paid to, retained by, or routed through Cohen, ALS, and Elite Sound rather than to Martin.

79. Badges of unfair dealing support that inference. The relevant transfer and ensuing retention of proceeds were among insiders or aligned parties, occurred while Martin was removed and unable to protect his rights, were allegedly at far below fair value to Martin, and were followed by the same participants' continued possession, use, and enjoyment of the business and its fruits.

80. Defendants' continuing use of ALS and Elite Sound allowed them not only to profit from the seizure repeatedly through revenues, commissions, customer work, receivables, and substitute proceeds traceable to Martin's own money, property, or personal economic rights, but also to continue depriving Martin of the benefits that would otherwise have flowed to him personally.

81. Each defendant named in the RICO theory knowingly joined, ratified, facilitated, or directed the enterprise in the phase and role alleged here. James and Natalie formed and operated it first through repeated extortionate threats and induced transfers. By no later than November 2021, Cohen and ALS were knowingly participating in and directing the same enterprise by funding, structuring, acquiring, and exploiting the plan to use Martin's forced removal to capture Martin's assets, impair Martin's personal ownership and economic rights, and convert the fruits of the early scheme into a continuing business and revenue stream.

82. Accordingly, the association-in-fact enterprise functioned as a continuing unit from at least April 2019 to date, with stable relationships among its participants, a common unlawful purpose, and sufficient longevity to permit them to pursue that purpose in multiple phases.

83. The first phase extracted money and benefits from Martin and created the coercive conditions for his removal; the second phase used financing, Elite Sound, and continuing pressure to convert that coercively created opportunity into acquisition, operation, and monetization of the seized business and its proceeds.

84. The enterprise persisted after the November 2022 transfer because the same participants continued using ALS, Elite Sound, and the acquired business to collect revenues, operate the seized assets, and retain the benefits of the takeover.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

85. The enterprise used interstate and commercial instrumentalities, including cellular calls, text messages, email, banks, payment cards, electronic funds transfers, online vendors, and travel vendors. The extortionate demands and resulting transfers therefore affected interstate commerce.

86. The scheme had the same victim, the same core participants, the same purpose, and related methods over a multi-year period, even though additional participants and vehicles were brought in as the enterprise evolved. It began with repeated threats to accuse Martin unless he paid money and provided benefits, and it culminated in the use of Martin's forced absence to seize his business, assets, and economic opportunities.

87. The pattern alleged here exhibits closed-ended continuity: related extortionate and asset-seizure conduct occurred over more than four years, involved repeated acts and coordinated participants, and continued through the November 26, 2022 signing of the asset-transfer agreement.

88. The enterprise therefore remained active after November 5, 2021 and through defendants' November 26, 2022 transfer to Elite Sound.

89. The pattern also exhibits open-ended continuity because, after the November 2022 transfer, defendants continued using ALS, Elite Sound, and related channels to retain, exploit, market, and conceal the seized assets and their proceeds.

90. The property and business injuries to Martin are traceable. They can be proven by bank records, payment-app records, credit-card statements, tuition records, receipts, invoices, vendor records, travel records, company records, customer and project records, and the formation, capitalization, and ownership records of ALS and Elite Sound.

91. The evidence of continuity and tracing is largely documentary and peculiarly within defendants' possession, including bank and payment records, school and travel charges, company books, customer and vendor communications, valuation and profit records for 2022, and financing and capitalization records for ALS and Elite Sound.

92. The causal chain is direct. There is no more immediate victim with respect to Martin's personally coerced payments, his lost control and economic rights, and the forced-value transfer of the business/property interests defendants targeted. The November 2022 transfer was the foreseeable culmination of the same scheme and not an independent superseding event.

15

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

93. The specific res subject to restitution, tracing, constructive trust, and equitable lien includes, without limitation, coerced cash payments; tuition, travel, consumer goods, and services paid for by Martin; sale consideration, distributions, compensation, and other economic benefits payable directly to Martin but diverted through or in connection with the November 2022 transaction; and any substitute property or traceable portion of commingled assets now held directly or indirectly by James, Natalie, Cohen, ALS, Elite Sound, or their nominees, according to proof.

94. Asset tracing is further aided by the overlap in control, management, timing, and function between ALS and Elite Sound, together with Cohen's personal control of ALS and co-ownership of Elite Sound. Those relationships are discoverable indicators of coordinated conduct rather than isolated transactions.

95. On information and belief, books, ledgers, bank accounts, merchant accounts, payroll records, commission statements, reimbursements, website/payment records, and intercompany transfer records for Cohen, ALS, and Elite Sound will show the movement, substitution, commingling, and current location of property traceable to Martin.

96. To the extent any later holder claims to be a bona fide transferee, Martin alleges that the overlapping control, insider nature of the transfers, and timing of the transactions defeat any such claim and support restitution, constructive trust, equitable lien, and declaratory relief.

## FIRST CAUSE OF ACTION

### CIVIL RICO (18 U.S.C. section 1962(c))

### (Against James Wald, Natalie Wald, Jayson Cohen, American Legacy Solutions LLC, Elite Sound Company LLC, and ROES 1-20)

97. Martin incorporates by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

98. For this claim, Cohen, ALS, and Elite Sound are alleged as core enterprise participants, not peripheral recipients. By no later than November 2021, and earlier according to proof, they were knowingly participating in and directing the Enterprise's takeover and exploitation phase and the retention and monetization of its fruits.

16

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

99. From at least April 2019 forward, and continuing through the November 26, 2022 transfer and the ensuing retention, use, and exploitation of traceable assets and proceeds, an association-in-fact enterprise (the "Enterprise") existed among James, Natalie, Cohen, ALS, Elite Sound, and Roe participants.

100. The Enterprise was an association-in-fact distinct from any one individual defendant or any one entity defendant. It had an ascertainable structure, stable core relationships, a shared purpose of extracting money and then converting Martin's coerced removal into permanent control of his personal ownership, control, and economic rights and into monetization of proceeds traceable to Martin, and sufficient longevity to pursue and complete that purpose.

101. The Enterprise members had coordinated and complementary roles. Natalie supplied threats, timing, and leverage; James supplied insider access and beneficiary status; Cohen supplied outside capital and business participation; ALS supplied the capital source and business structure; and Elite Sound supplied the acquisition and operating vehicle.

102. James, Natalie, and Cohen each participated in the operation or management of the Enterprise's affairs. James used his insider position in the business and his acceptance of benefits to keep the scheme going. Natalie supplied the threats, timing, and leverage. Cohen knowingly supplied outside capital and business participation through ALS and Elite Sound once the plan shifted to taking Martin's company and assets. (Reves v. Ernst & Young (1993) 507 U.S. 170, 179-185.)

103. Cohen participated in the operation or management of the Enterprise by approving and directing the use of ALS capital, credit, and structure; by co-owning and operating Elite Sound with James; by participating in decisions concerning capitalization, acquisition, ownership, and post-transfer operation; by participating in the pressure placed on Donna and the November 2022 transfer; and by directing the later possession, collection, routing, use, and exploitation of the assets, sale consideration, receivables, and other proceeds obtained, knowing that the transfer would impair or redirect Martin's personal control, consent, compensation, distribution, and sale rights.

104. ALS and Elite Sound, acting through Cohen, James, and their other authorized agents, participated in the later-phase operation of the Enterprise by serving as the instrumentalities through

17

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

which the Enterprise obtained capital, consummated the acquisition, and retained or exploited the resulting sale consideration, receivables, revenues, and other proceeds.

105. ALS was not a passive pocketbook. Through Cohen it supplied capital, credit, office, and business structure essential to the takeover and later received or expected to receive revenues, profits, commissions, or other economic benefits from operation of the acquired business and the proceeds generated by it.

106. Elite Sound was not an innocent end purchaser. It was formed and capitalized as the planned acquisition and operating vehicle and was used to receive the assets, jobs, customers, receivables, and revenue stream that defendants targeted after Martin's removal and to monetize the resulting proceeds.

107. The timing and nature of Cohen's coordination with James and Natalie, the use of ALS capital and credit, the formation and operation of Elite Sound, and the November 2022 sale collectively support the inference that Cohen, ALS, and Elite Sound knowingly joined and directed the enterprise with knowledge that the transaction would strip Martin of personal control and economic rights and redirect the resulting consideration and proceeds.

108. The Enterprise affected interstate commerce through the use of interstate communications, electronic payments, banking channels, online purchases, travel vendors, and interstate commercial relationships.

109. The Enterprise engaged in a pattern of racketeering activity by committing multiple acts of extortion and attempted extortion chargeable under California Penal Code sections 518, 519, and 523, including the representative threatened-accusation episodes pleaded in paragraphs 38 through 46 above. Natalie committed and repeatedly renewed the early extortionate threats, and James knowingly accepted, ratified, and participated in the demands and resulting benefits. By no later than November 2021, Cohen, ALS, and Elite Sound were knowingly participating in and directing the ongoing Enterprise's conversion of the leverage and fruits of that racketeering conduct into the later takeover, transfer, and exploitation phase.

110. The predicate acts of extortion and attempted extortion were related to each other by the same victim, the same participants or their confederates, the same coercive method, the same economic

---

18

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

objective, and the same overall design to obtain Martin's money, property, business control, and asset base.

111. The November 2022 transfer allegations further show the Enterprise's continuity, longevity, and causal scheme even apart from the representative predicate acts pleaded above.

112. The predicate acts described above were chargeable under California extortion law and/or involved extortion within the meaning of 18 U.S.C. section 1951, and were punishable by imprisonment for more than one year. They consisted of obtaining or attempting to obtain Martin's money/property through wrongful use of fear, including threats to accuse him of a crime and injure his character unless he paid or conferred economic benefits.

113. This RICO claim is not based on protected petitioning activity. The racketeering acts are the pre-report threats, demands, obtaining of money/property, coordinated financing, and non-petitioning asset-transfer conduct alleged above; later reports or testimony are referenced only as evidence of timing and execution of the scheme.

114. The pattern allegation is strengthened by the enterprise's evolution from extortionate demands to financed business seizure: the Walds created the coercive leverage, and Cohen, ALS, and Elite Sound knowingly helped convert that leverage into a permanent acquisition, possession, and continuing monetization of Martin's assets, sale-related value, and traceable proceeds.

115. The wrongfulness of the predicate acts is not defeated by any contention that Martin may have owed money or that Natalie later made a report. A threat to accuse a person of a crime or to expose disgrace, when coupled with a demand for money or property, is extortion. (Flatley v. Mauro (2006) 39 Cal.4th 299, 326-333; Mendoza v. Hamzeh (2013) 215 Cal.App.4th 799, 805-807; Stenehjem v. Sareen (2014) 226 Cal.App.4th 1405, 1423-1426.)

116. By reason of the section 1962(c) violation, Martin suffered direct injury to business or property in two connected but distinct tracks. The earliest injuries included personal cash, tuition, travel payments, goods, services, rewards points, and other property extracted by Natalie and James. Martin alleges those early injuries are recoverable to the extent relation back, delayed discovery, or other timeliness principles apply, and in all events they are pleaded as predicate-act injuries and pattern history.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

117. Separately, and at minimum within the limitations period, after Martin's forced removal and with Cohen acting in concert with the Enterprise by no later than November 2021, the Enterprise inflicted additional and independently direct business/property injuries by financing, structuring, and consummating the takeover, transferring the business to Elite Sound at a depressed price, and thereafter using, routing, retaining, and monetizing the resulting assets and proceeds.

118. The later-phase injuries include, at a minimum, impairment or destruction of Martin's personal rights of control, management, consent, compensation, distributions, and receipt of sale-related consideration or other economic benefits payable directly to him; diversion of compensation, profits, commissions, distributions, or other economic benefits payable directly to Martin; and continuing deprivation of identifiable traceable proceeds and substitute proceeds generated from Martin's own transfers or from personal rights taken from him after the seizure. Martin does not seek, in his individual capacity, damages consisting solely of depletion of assets owned only by a separate entity, except to the extent such matters affected compensation, distributions, sale-related consideration, or traceable proceeds payable directly to Martin.

119. Martin's injuries were direct, not remote. The early extortionate demands caused him personally to part with money and property, and the later enterprise conduct directly impaired or appropriated Martin's own control, consent, compensation, distribution, sale, and other business/property rights and diverted proceeds traceable to him. To the extent some of those business/property losses flowed from Martin's forced removal or incarceration, Martin still seeks only business/property damages, which are recoverable under section 1964(c). (Medical Marijuana, Inc. v. Horn (2025) 604 U.S. 593, 599-605.)

120. Martin's injuries were proximately caused by defendants' racketeering conduct. The Enterprise targeted Martin personally, and the loss of money, control, compensation, distributions, sale-related value, and identifiable traceable proceeds or substitute proceeds belonging to Martin personally was the natural, intended, and foreseeable result of the early extortion phase and the later coordinated takeover/use/monetization phase. At a minimum, the November 26, 2022 transfer and defendants' ensuing retention, use, and exploitation of traceable assets and proceeds derived from Martin's own transfers or personal rights fall within four years of this pleading.

20

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

121. Martin also pleads in the alternative that the early extorted-payment injuries are timely through relation back, delayed discovery, concealment, and separate accrual, and that each later receipt, retention, transfer, use, monetization, or exploitation of traceable assets or substitute proceeds belonging to Martin or derived from his own transfers or personal rights caused new and additional injury in its own right. The timely RICO injury theory therefore includes, at minimum, the November 26, 2022 transfer and the post-seizure retention and exploitation phase, while preserving the earlier extortionate acts as part of the same pattern and enterprise history.

122. Pursuant to 18 U.S.C. section 1964(c), Martin seeks treble damages, costs of suit, and attorney fees if he is later represented by counsel.

**SECOND CAUSE OF ACTION**

**CIVIL RICO CONSPIRACY (18 U.S.C. section 1962(d))**

**(Against James Wald, Natalie Wald, Jayson Cohen, American Legacy Solutions LLC,**

**Elite Sound Company LLC, and ROES 1-20)**

123. Martin incorporates by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

124. This conspiracy claim alleges a single agreement with phase-specific roles. James and Natalie created and maintained the threatened-accusation leverage; Cohen knowingly agreed, by no later than November 2021 and possibly earlier according to proof, to supply capital, structure, and business participation to help convert that coercively created situation into acquisition and retention of Martin's assets; and ALS and Elite Sound, acting through Cohen and James, supplied the capital and vehicles through which the agreement was carried out.

125. James and Natalie knowingly agreed to facilitate and further the Martin Asset-Seizure Enterprise and the section 1962(c) violation from the Enterprise's inception in the early extortionate phase. By no later than November 2021, Cohen knowingly joined that existing enterprise agreement, and he thereafter acted through ALS and Elite Sound to help carry it forward into the takeover, transfer, and exploitation phase.

126. Overt acts in furtherance of the conspiracy included, among other things, the repeated threatened-accusation demands for money and benefits, James's knowing acceptance and ratification of

those benefits, Natalie's November 3, 2021 statement about getting the company if something happened to Martin, the effort within days of Martin's arrest to obtain financing to take the business, Cohen's use of ALS capital to join James and Natalie in November 2021, and the capitalization and operation of Elite Sound as the vehicle for diverted opportunities and assets.

127. James and Natalie knew the essential nature and scope of the early threatened-accusation and payment-extraction phase. Cohen, and the entities he controlled or used, knew at least by the time he committed ALS and Elite Sound resources no later than November 2021 - and, on information and belief, earlier through his coordination with James - that the objective was to exploit Martin's forced absence, capitalize Elite Sound, acquire Martin's assets at distressed value, and retain the resulting revenues and proceeds for themselves.

128. The conspiracy continued through at least November 26, 2022, when the Asset Purchase Agreement and/or Business Assets Sale Agreement was executed as the final damaging act in furtherance of the agreed objective.

129. This conspiracy claim likewise arises from non-petitioning conduct and is timely because the agreement was carried forward through the November 2022 transfer and defendants' continuing knowing receipt, use, and retention of the proceeds and business/property value taken from Martin, and because Martin pleads separate accrual, delayed discovery, and relation-back in the alternative.

130. Later overt acts included the use of ALS capital and business structure to carry the scheme forward no later than November 2021, the capitalization and operation of Elite Sound, the pressure placed on Donna in November 2022, the procurement of the November 26, 2022 transfer, and the continuing retention and exploitation of the acquired assets, revenues, and proceeds thereafter.

131. By reason of the section 1962(d) conspiracy, Martin suffered direct injury to business and property as alleged above and according to proof.

132. By reason of that continuing conspiracy, Martin was injured not only by the initial seizure but by the ongoing distribution, concealment, and profit-taking from his property through Cohen, ALS, Elite Sound, and their continuing use of the transferred business and its proceeds.

## THIRD CAUSE OF ACTION

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

**RESTITUTION AND DISGORGEMENT FOR PROPERTY OBTAINED BY EXTORTIONATE THREATS**

**(Against Natalie Wald and James Wald only)**

133. Martin incorporates by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point, but for this count the direct extortionary conduct is alleged against Natalie and James only, while later parties are included, if at all, only for restitutionary or constructive-trust relief as recipients or holders of traceable proceeds or substitute property.

134. This count seeks restitution and disgorgement of money and property obtained from Martin through extortionate threats. It is not pleaded as a stand-alone extortion tort or as a claim for emotional-distress damages. It seeks recovery of money/property and related equitable remedies recognized by Tran v. Nguyen and Morrill v. Nightingale.

135. Natalie threatened to accuse Martin of sexually abusing P.W. and threatened injury to Martin's character unless Martin continued to pay money and provide financial benefits to the Wald household. James knew of those threats, benefited from them, ratified them. The money and property transferred after those threats included cash, tuition, travel, goods, services, and other benefits according to proof.

136. The demands were specific and economic. Natalie and James demanded continued financial support and, by October-November 2021, were demanding still more, including that Martin buy Natalie a Tesla Model Y. When Martin cut off the money on November 3, 2021, Natalie activated the threatened accusation within approximately 36 hours. That sequence supports the inference that the accusation had been used as leverage to obtain payment.

137. Property obtained through that extortionate scheme, and any specifically identifiable proceeds or substitute property traceable to it, is subject to restitution, tracing, and, where appropriate, constructive-trust or equitable-lien relief.

138. The money and property actually obtained by reason of the threatened accusation and threatened injury to Martin's character included repeated cash transfers, tuition, travel, goods, services, and later-acquired or substitute property traceable to the same scheme. James and Natalie are directly liable in restitution for the money and property so obtained.

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

139. This count is timely to the fullest extent permitted by the relation-back, delayed-discovery, concealment, and accrual allegations pleaded above. At minimum, the direct threat-based transactions continued into 2021, and Martin seeks recovery here only of money and property obtained from him by reason of that scheme.

140. Martin seeks tracing, constructive trust, and equitable lien over specifically identifiable and traceable property, including coerced cash, tuition and travel payments, goods, services, and any direct substitute proceeds derived from them, according to proof.

141. To the extent defendants contend the direct extortion proceeds were converted, commingled, or substituted, Martin seeks tracing into identifiable substitute property or proceeds according to proof.

142. The fact that the property may later have changed form does not defeat restitution or tracing. Martin seeks recovery of the property in whatever identifiable form it presently exists, to the extent permitted by law.

143. Martin therefore seeks restitution, disgorgement, tracing, constructive trust, equitable lien, and prejudgment interest according to proof.

144. Natalie directly made the threatened-accusation demands, and James knowingly accepted, retained, and ratified the benefits obtained through them; both are therefore liable in restitution for money and property obtained by the scheme. Conspiracy is alleged here only as a theory of joint liability between Natalie and James for that underlying conduct, not as an independent tort in the abstract. (Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503, 510-514.)

145. Overt acts in furtherance of that joint-liability theory included the threatened-accusation demands for money, James's acceptance and retention of the resulting benefits, Natalie's November 3, 2021 inquiry about how the Walds would get the company if something happened to Martin, and the immediate report once Martin cut off the money.

146. This count seeks direct restitutionary relief against Natalie and James for the threatened-accusation transactions and resulting benefits. Martin's allegations concerning Cohen, ALS, and Elite Sound are addressed in the RICO, later restitution, tracing, and declaratory counts.

24
FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

147. By reason of the conduct alleged in paragraphs 144 through 146, Natalie and James are jointly liable for the money and property Martin paid or transferred because of the threatened-accusation scheme, together with prejudgment interest and equitable tracing remedies according to proof.

148. This joint-liability theory is timely because the conspiracy and resulting extortionate demands continued into 2021, ending no later than November 5, 2021, and because Martin pleads relation back, delayed discovery, concealment, and accrual in the alternative to the fullest extent permitted by law.

## FOURTH CAUSE OF ACTION

**MENACE & DURESS (Civ. Code sections 1566, 1567, 1569, 1570) / RESCISSION (Civ. Code sections 1689, 1691, 1692)**

**(Against Natalie Wald and James Wald)**

149. Martin incorporates by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

150. The rescindable transactions include the representative payments and transfers described in paragraphs 38 through 46 and any substantially similar cash transfers, tuition payments, travel and lodging payments, consumer purchases, household expenditures, and other economic benefits that Martin conferred because of the threatened-accusation scheme. Each such transaction was procured by menace and duress by Natalie and James.

151. Martin's apparent consent to those transactions was not free because it was induced by threats to accuse him of sexual abuse, to injure his character, and to destroy him unless he continued paying. Each coerced transfer is therefore voidable and rescindable under Civil Code section 1689(b)(1).

152. This count is asserted directly against Natalie and James only because it seeks rescission of the threat-induced transactions. Martin does not by this count seek to rescind the later acquisition, transfer, and retention conduct involving Cohen, ALS, or Elite Sound, which is addressed elsewhere in this pleading.

153. Martin did not receive lawful consideration capable of offsetting or justifying those coerced transfers. Any temporary nonperformance of threatened wrongful accusations was not lawful

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

consideration. To the extent defendants contend Martin received any other cognizable value, he offers to restore it according to proof.

154. Pursuant to Civil Code section 1691, service of this Cross-Complaint constitutes notice of rescission as to Natalie and James and the coerced transactions they procured. Martin seeks complete relief under Civil Code section 1692 to restore the status quo so far as possible.

155. Martin did not waive rescission by failing to repudiate earlier. The menace and duress continued through the threatened-accusation phase ending around November 5, 2021; the resulting criminal exposure, incarceration, and exclusion from the business deprived Martin of a practical opportunity to investigate, repudiate, or sue sooner.

156. Because Martin did not receive bargained-for lawful value other than temporary forbearance from threatened wrongful conduct, there is ordinarily nothing of value to restore. To the extent any offsettable value is shown, Martin offers restoration according to proof.

157. This cause of action is timely because the coercive conduct and resulting property transfers continued into 2021 and ended no later than November 5, 2021, and because Martin pleads delayed discovery, concealment, relation back, and alternative accrual in the alternative to the fullest extent permitted by law.

158. Pursuant to Civil Code section 1692, Martin seeks complete relief based on rescission, including restitution of benefits conferred by him as a result of the transactions, prejudgment interest, and such other relief as is necessary to restore the parties, so far as possible, to their former positions.

159. Martin therefore seeks rescission, restitution, prejudgment interest, and such other equitable relief as is necessary to restore the status quo and to prevent defendants from retaining the fruits of transactions procured by menace or duress.

160. The equitable relief sought in this count is limited to transactions procured by menace or duress and is pleaded in addition to, and not in lieu of, Martin's other timely claims for restitution and declaratory relief concerning later-retained proceeds and property.

## FIFTH CAUSE OF ACTION

### RESTITUTION AND COMMON COUNT - MONEY HAD AND RECEIVED

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

**(Against James Wald, Natalie Wald, Jayson Cohen, American Legacy Solutions LLC, Elite Sound Company LLC, and ROES 1-20)**

161. Martin incorporates by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

162. James and Natalie received and retained money and benefits that in equity and good conscience belong to Martin, including direct payments and household benefits extracted during the threatened-accusation/menace phase. Separately, Cohen, ALS, and Elite Sound knowingly received, possessed, controlled, used, routed, collected, spent, or retained money, sale consideration, collected receivables, collected job revenues, commissions, distributions, or other monetized proceeds derived from Martin's assets or from Martin's personal ownership, control, compensation, distribution, or sale rights.

163. By reason of the later takeover and exploitation phase, Cohen, ALS, and Elite Sound also received and retained money that in equity and good conscience belongs to Martin personally, including inadequate or diverted sale consideration, collected receivables, collected job revenues, commissions, distributions, and other identifiable proceeds or substitute proceeds traceable to Martin's own transfers or personal economic rights.

164. The amounts received and retained by Cross-Defendants are ascertainable from bank records, payment records, invoices, school and travel records, the November 2022 transaction documents, and the books and records of Cohen, ALS, and Elite Sound, according to proof.

165. This cause of action is timely because each knowing receipt, retention, possession, use, monetization, transfer, or distribution of Martin's money, sale-related consideration, collected receivables, or traceable proceeds by defendants, including through and after the November 26, 2022 transfer, constituted a wrongful retention within the applicable period.

166. The theory against Cohen, ALS, and Elite Sound is not merely that earlier extorted cash may have been spent on or through Elite Sound. It is that they knowingly received, collected, possessed, controlled, used, and profited from money and monetized proceeds generated by the seizure and use of Martin's assets and personal economic rights through ALS and Elite Sound.

27

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

167. Equity does not permit defendants to retain those benefits merely because the money or proceeds were routed through business operations or converted into substitute proceeds after the takeover.

168. Martin therefore seeks restitution, money had and received, disgorgement, prejudgment interest, and such additional equitable relief as is necessary to prevent defendants' wrongful retention of Martin's money and property.

## SIXTH CAUSE OF ACTION

### DECLARATORY RELIEF (Code Civ. Proc. section 1060)

### (Against James Wald, Natalie Wald, Jayson Cohen, American Legacy Solutions LLC, Elite Sound Company LLC, and ROES 1-20)

169. Martin incorporates by this reference each of the allegations set forth above, inclusive, as though fully set forth at this point.

170. An actual and present controversy exists between Martin, on the one hand, and James, Natalie, Cohen, ALS, and Elite Sound, on the other, concerning whether Martin, rather than defendants, owns or is entitled to money, sale consideration, proceeds, substitute proceeds, and other economic benefits traceable to his own transfers or to his personal ownership, control, consent, compensation, distribution, and sale rights.

171. An actual and present controversy also exists concerning whether the November 26, 2022 transfer validly extinguished Martin's personal rights or whether defendants took or continue to hold property and economic benefits subject to restitution, rescission, tracing, constructive trust, or equitable lien.

172. Martin contends defendants wrongfully obtained and continue to retain or exploit such property and benefits; defendants are informed and believe, and on that basis Martin alleges, that defendants contend otherwise. A judicial declaration is therefore necessary and appropriate to determine the parties' present rights and obligations.

173. Martin seeks a declaration, among other things, identifying the categories of money, consideration, proceeds, substitute proceeds, and other property or economic benefits belonging to Martin or traceable to him; declaring that defendants have no superior equitable claim to such property to the

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

extent obtained through the conduct alleged herein; and declaring Martin's right to restitution, tracing, and related equitable remedies according to proof.

174. Martin therefore seeks declaratory relief, together with such supplemental equitable relief as is necessary to enforce the declaration and to determine the parties' rights in the property and proceeds at issue.

## **PRAYER FOR RELIEF**

WHEREFORE, Cross-Complainant Travis Edward Martin prays for judgment against the Cross-Defendants against whom the respective causes of action are asserted, as follows:

For clarity, the relief sought in the First through Sixth Causes of Action is limited to Martin's own money, property, ownership, management, consent, compensation, distribution, sale, and other economic rights, together with identifiable proceeds or substitute proceeds traceable thereto.

As to the First and Second Causes of Action (Civil RICO and Civil RICO Conspiracy), against the defendants against whom those counts are asserted and only in the phase-specific roles pleaded:

A. Treble damages under 18 U.S.C. section 1964(c) in an amount according to proof;

B. Costs of suit and, if Martin is later represented by counsel, reasonable attorney fees as permitted by 18 U.S.C. section 1964(c);

C. Prejudgment and postjudgment interest as allowed by law;

As to the Third Cause of Action (Restitution/Disgorgement for Property Obtained by Extortionate Threats), against Natalie Wald and James Wald only:

D. Restitution, disgorgement, and prejudgment interest according to proof for money and property Martin paid or transferred because of the threatened-accusation scheme;

E. Tracing, constructive trust, and/or equitable lien over specifically identifiable money, proceeds, and substituted property traceable to those coerced transfers, to the extent permitted by law;

F. Such other restitutionary and equitable relief as is necessary to restore to Martin money and property obtained through extortionate threats;

As to the Fourth Cause of Action (Menace & Duress / Rescission), against Natalie Wald and James Wald only:

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

G. Rescission of the coerced transactions and complete relief under Civil Code section 1692, including restoration of money and property transferred by reason of those transactions, prejudgment interest, and other relief necessary to restore the status quo;

As to the Fifth Cause of Action (Restitution & Common Count - Money Had and Received), against James Wald, Natalie Wald, Jayson Cohen, American Legacy Solutions LLC, Elite Sound Company LLC, and ROES 1-20:

H. Restitution, money had and received, disgorgement, prejudgment interest, and such additional equitable relief as is necessary to prevent defendants' wrongful retention of Martin's money and property;

As to the Sixth Cause of Action (Declaratory Relief):

I. A judicial declaration of the parties' rights in Martin's money, sale consideration, proceeds, substitute proceeds, and other economic benefits traceable to his own transfers or personal rights, together with supplemental equitable relief necessary to enforce that declaration;

As to All Causes of Action:

J. Costs of suit and such other and further relief as the Court deems just and proper.

Dated: March 19, 2026

Respectfully submitted,

By: /s/ Travis E Martin

Defendant/Cross-Complainant, In Pro Per

30

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

**<u>DEMAND FOR JURY TRIAL</u>**

Cross-Complainant demands trial by jury on all issues so triable.


Dated: March 19, 2026

Respectfully submitted,

By: /s/ Travis E Martin

Defendant/Cross-Complainant, In Pro Per

---

31

FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN

# EXHIBIT "G"

**THE SUPERIOR COURT OF CALIFORNIA**

# COUNTY OF VENTURA

## 2023CUPP012195 JAMES WALD, et al. vs TRAVIS EDWARD MARTIN, et al.

**Civil Unlimited** PI/PD/WD - Other

Filed: 08/02/2023                                                            Stay - Other

Case Summary

CASE & COMPLAINT / PETITION INFORMATION        PARTIES        FUTURE HEARINGS

ALL HEARINGS        REGISTER

∨ REGISTER

Search

**Date**

| 04/15/2026 | Updated -- Amended Cross-Complaint (1st): <br/> Name Extension changed from (2nd) to (1st) | 🔍 |
|---|---|---|
| 04/14/2026 | Certificate of Clerk's Service for [Minute Order (Disqualification Challenge)] <br/> Generated by: Court | 🔍 |
| 04/13/2026 | Certificate of Clerk's Service for [Minute Order (Disqualification Challenge)] <br/> Generated by: Court | 🔍 |
| 04/13/2026 | Minute Order (Disqualification Challenge) | 🔍 |
| 04/13/2026 | Verified Answer of Hon. Dana K. Caudill in Response to Third Statement of Disqualification <br/> Filed by: Court | 🔍 |
| 04/13/2026 | Proof of Personal Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 04/06/2026 | 🔍 |
| 04/07/2026 | Updated -- Amended Cross-Complaint (2nd): <br/> Status changed from Received to Filed | 🔍 |
| 04/07/2026 | Summons on Cross Complaint (1st) <br/> Issued and Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: AMERICAN LEGACY SOLUTIONS LLC, a California Limited Liability Corporation (Cross-Defendant); Cohen, Jayson (Cross-Defendant); ELITE SOUND COMPANY LLC, a California Limited Liability Corporation (Cross-Defendant) et al. | 🔍 |
| 04/07/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/19/2026 | 🔍 |
| 04/07/2026 | Proof of Service (General) <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 04/06/2026 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Cross-Complainant) | 🔍 |
| 04/03/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 04/03/2026 | 🔍 |

**Date**

| | |
|---|---|
| 04/03/2026 | Motion for Sanctions Against Plaintiffs' Counsel <br/> Filed by: Martin, Travis E (Cross-Complainant) |
| 04/02/2026 | Notice of Rejection <br/> Generated by: Court |
| 03/30/2026 | Notice of Rescheduled Hearing <br/> Generated by: Court |
| 03/30/2026 | Notice of Rescheduled Hearing <br/> Generated by: Court |
| 03/30/2026 | Notice of Rescheduled Hearing <br/> Generated by: Court |
| 03/30/2026 | Notice of Rescheduled Hearing <br/> Generated by: Court |
| 03/30/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/29/2026 |
| 03/30/2026 | Challenge To Judicial Officer 170.1(a)(6)(A)(iii), 170.3(c),170.4(c)(3)) <br/> Filed by: Martin, Travis E (Cross-Complainant) |
| 03/27/2026 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Cross-Complainant) |
| 03/26/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 03/26/2026 |
| 03/26/2026 | Response TO PLAINTIFFS' NOTICE OF NON-OPPOSITION AND REQUEST FOR RULING; REQUEST TO STRIKE UNAUTHORIZED AMENDED CROSS-COMPLAINT <br/> Filed by: Martin, Travis E (Cross-Complainant) |
| 03/26/2026 | Notice of Rejection <br/> Generated by: Court |
| 03/26/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/26/2026 |
| 03/26/2026 | REPLY IN SUPPORT OF DEFENDANT TRAVIS MARTIN'S MOTION TO DISMISS FOR FAILURE TO PROSECUTE; OR, IN THE ALTERNATIVE, MOTION FOR SANCTIONS; OR, IN THE ALTERNATIVE, MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) |

**Date**

| 03/25/2026 | Notice of Non-Opposition and Request for Ruling <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | 🔍 |
|---|---|---|
| 03/20/2026 | Notice of Stay and Courts March 18, 2026, Hearing <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | 🔍 |
| 03/19/2026 | Opp to Travis Martins Motion to Dismiss for Sanction and Disqualification of Counsel <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | 🔍 |
| 03/19/2026 | Status Conference re Status of Stay Pending Resolution of CCP § 170.1 Challenge scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Order to Show Cause re: Imposition of Sanctions Against Counsel for Plaintiff for Failing to Timely File Proof of Service/Enter Default, and Obtain Default Judgment as to Defendant, Airlink Internet Inc. scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Trial Setting Conference scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Case Management Conference scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL (RE: JANUARY 22, 2026 MINUTE ORDER) scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Motion for Judgment on the Pleadings scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Motion for Reconsideration of January 22, 2026 Minute Order Denying Defendant's Motion for Reconsideration CCP 1008(a) scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL scheduled for 05/01/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 03/19/2026 | Verified Answer of Hon. Dana K. Caudill in Response to Second Statement of Disqualification <br/> Filed by: Court | 🔍 |
| 03/18/2026 | Minute Order (Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL; Motion...) | 🔍 |

| Date | | |
|---|---|---|
| 03/18/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/18/2026 | 🔍 |
| 03/18/2026 | Case Management Statement <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 03/18/2026 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Cross-Complainant) | 🔍 |
| 03/17/2026 | DECLARATION OF TYLER MARTIN IN SUPPORT OF DEFENDANT TRAVIS MARTINS OPPOSITION TO PLAINTIFFS MOTION TO DEEM SERVICE COMPLETE ON AIRLINK INTERNET INC. <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 03/17/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/17/2026 | 🔍 |
| 03/17/2026 | DEFENDANT TRAVIS EDWARD MARTIN'S OPPOSITION TO PLAINTIFFS' MOTION TO DEEM SERVICE COMPLETE ON DEFENDANT AIRLINK INTERNET, INC.; REQUEST FOR ATTORNEYS' FEES AND COSTS <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 03/16/2026 | Proof of Electronic Service of Challenge to Judicial Officer (170.1) <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/16/2026 | 🔍 |
| 03/16/2026 | Challenge To Judicial Officer (170.1) Second Verified Statement of Disqualification for Cause Against Hon. Dana K Caudill Based on New Facts Revealed in Verified Answer <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | 🔍 |
| 03/13/2026 | Proof of Personal Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 03/03/2026 | 🔍 |
| 03/13/2026 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff) | 🔍 |
| 03/13/2026 | Verified Answer of Hon. Dana K. Caudill in Response to Statement of Disqualification and Motions for Judicial Recusal with Exhibits <br/> Filed by: Court | 🔍 |
| 03/12/2026 | Proof of Electronic Service <br/> Filed by: Martin, Donna (Cross-Complainant) <br/>As to: Martin, Travis Edward (Appellant) <br/>Service Date: 03/12/2026 | 🔍 |

**Date**

| 03/12/2026 | Case Management Statement <br/> Filed by: Martin, Donna (Cross-Complainant) | 🔍 |

03/10/2026  Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/10/2026

03/10/2026  REPLY IN SUPPORT OF MOTION TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL <br/> Filed by: Martin, Travis E (Cross-Complainant)

03/10/2026  Plaintiff's Opposition to Defendant Travis Martin's Motion to 'Correct the Record' and Request for Judicial Recusal <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff)

03/09/2026  Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/09/2026

03/09/2026  DEFENDANT TRAVIS MARTIN'S REPLY IN SUPPORT OF MOTION TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL <br/> Filed by: Martin, Travis E (Cross-Complainant)

03/09/2026  Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/09/2026

03/09/2026  DEFENDANT TRAVIS EDWARD MARTIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF JANUARY 22, 2026 MINUTE ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION (CCP 1008(a)); ALTERNATIVE REQUEST FOR VACATUR UNDER CCP 473(d), 128(a)(8), AND THE <br/> Filed by: Martin, Travis E (Cross-Complainant)

03/09/2026  Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 03/09/2026

03/09/2026  DEFENDANT TRAVIS EDWARD MARTIN'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF ELITE SOUNDS COMPANY, LLC, AND MOTION TO STRIKE <br/> Filed by: Martin, Travis E (Cross-Complainant)

03/05/2026  Plaintiffs' Opposition to Defendant Travis Martin's Motion to for Judgment on the Motion to Strike <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff)

**Date**

| 03/05/2026 | Opposition Plaintiffs' Opposition to Defendant Travis Martin's Motion to for Reconsideration <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | 🔍 |
|---|---|---|
| 03/05/2026 | Opposition Plaintiff's Opposition to Defendant Travis Martin's Motion to 'Correct the Record' and Request for Judicial Recusal <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | 🔍 |
| 03/04/2026 | Demurrer to Cross-Complaint <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>As to: Martin, Travis E (Cross-Complainant) | 🔍 |
| 03/04/2026 | Motion to Strike Exemplary Damages from Cross-Complaint <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>As to: Martin, Travis E (Cross-Complainant) | 🔍 |
| 02/27/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 02/27/2026 | 🔍 |
| 02/27/2026 | Challenge To Judicial Officer (170.1) <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 02/26/2026 | Notice of Rejection <br/> Generated by: Court <br/>As to: Wald, Natalie (Cross-Defendant) | 🔍 |
| 02/26/2026 | Notice of Rejection <br/> Generated by: Court <br/>As to: Wald, Natalie (Cross-Defendant) | 🔍 |
| 02/24/2026 | Motion to Deem Service Complete on Defendant Airlink Internet, Inc <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | 🔍 |
| 02/20/2026 | Order to Show Cause re: Imposition of Sanctions Against Counsel for Plaintiff for Failing to Timely File Proof of Service/Enter Default, and Obtain Default Judgment as to Defendant, Airlink Internet Inc. scheduled for 03/27/2026 at 08:35 AM in Hall of Justice at Department 21 | |
| 02/20/2026 | Trial Setting Conference scheduled for 03/27/2026 at 08:35 AM in Hall of Justice at Department 21 | |
| 02/20/2026 | Case Management Conference scheduled for 03/27/2026 at 08:35 AM in Hall of Justice at Department 21 | |
| 02/17/2026 | DECLARATION OF TRAVIS EDWARD MARTIN IN SUPPORT OF MOTION TO DISMISS <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |

**Date**

| 02/17/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 02/17/2026 | Q |
| 02/17/2026 | Motion to Dismiss for Failure to Prosecute <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 02/11/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 02/11/2026 | Q |
| 02/11/2026 | Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL (RE: JANUARY 22, 2026 MINUTE ORDER); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 02/11/2026 | Request for Judicial Notice <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 02/11/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant) <br/>Service Date: 02/03/2026 | Q |
| 02/11/2026 | Motion for Judgment on the Pleadings <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 02/05/2026 | Notice of Ruling <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | Q |
| 02/04/2026 | Minute Order () | Q |
| 02/03/2026 | Notice of Court Ruling <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>As to: Martin, Travis E (Cross-Complainant) | Q |
| 02/03/2026 | Updated -- Copy of Order from District Court of Appeal (Writ of mandate and request for immediate stay filed by Travis Edward Martin on 1/29/26 are denied.): <br/> Exact Name changed from Copy of Order from District Court of Appeal to Copy of Order from District Court of Appeal (Writ of mandate and request for immediate stay filed by Travis Edward Martin on 1/29/26 are denied.) | Q |
| 02/02/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 02/01/2026 | Q |

**Date**

| 02/02/2026 | Request for Judicial Notice ISO Motion to Correct the Record and for Judicial Recusal <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 02/02/2026 | Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL; MEMORANDUM OF POINTS AND AUTHORITIES <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 02/02/2026 | Minute Order (Motion TO: (1) CORRECT THE RECORD REGARDING THE OCTOBER 8, 20...) | Q |
| 01/30/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 01/30/2026 | Q |
| 01/30/2026 | Motion for Reconsideration of January 22, 2026 Minute Order Denying Defendant's Motion for Reconsideration CCP 1008(a) <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/30/2026 | Copy of Order from District Court of Appeal <br/> Filed by: Clerk | Q |
| 01/28/2026 | Substitution of Attorney <br/> Filed by: Martin, Donna (Defendant) | Q |
| 01/27/2026 | PLAINTIFFS'/CROSS-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | Q |
| 01/27/2026 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Donna (Defendant) | Q |
| 01/23/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 01/23/2026 | Q |
| 01/23/2026 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/23/2026 | DEFENDANTCROSS-COMPLAINANT TRAVIS EDWARD MARTINS REPLY IN SUPPORT OF MOTION TO: (1) CORRECT THE RECORD REGARDING THE OCTOBER 8, 2025 LEAVE-TO-AMEND ORDER; AND (2) FOR SANCTIONS AGAINST ATTORNEY CHARLOTTE E. KREM AND BAMIEH DE SMETH, PLC <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/23/2026 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |

| Date | | |
|---|---|---|
| 01/22/2026 | Notice of Ruling <br/> Filed by: Wald, James (Plaintiff) | Q |
| 01/22/2026 | Minute Order (Motion for Reconsideration by Travis E Martin) | Q |
| 01/20/2026 | Plaintiff's Opposition to Defendant Travis Martin's Motion to Correct the Record and for Sanctions; Request for Attorneys' Fees and Costs in the Amount of $2,972.50 <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | Q |
| 01/15/2026 | Updated -- Order on Motions: 1. Travis Martin's Motion to Disqualify Plaintiff's Counsel 2. Travis Martin's Motion for Protective Order. 3. Plaintiffs' Motion for Attorneys' Fees and Costs: <br/> Status changed from Received to Filed | Q |
| 01/14/2026 | DEFENDANT TRAVIS EDWARD MARTIN'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO REMOVE GUARDIAN AD LITEM JAMES WALD <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/12/2026 | Notice of Continued Case Management Conference and Trial Setting (Including OSC Re: Sanctions) <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | Q |
| 01/08/2026 | Minute Order (Trial Setting Conference; Case Management Conference) | Q |
| 01/08/2026 | Declaration of Josie Centeno in Support <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | Q |
| 01/08/2026 | Declaration of Natalie Wald in Support <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | Q |
| 01/08/2026 | Opposition to Defendant Travis Martin's Motion for Reconsideration of Order Denying Guardian Ad Litem Removal <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff) | Q |
| 01/08/2026 | Updated -- Request for Judicial Notice ISO Motion to Correct the Record and for Sanctions: <br/> Name Extension: ISO Motion to Correct the Record and for Sanctions <br/> Exact Name: blank | Q |
| 01/08/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 01/08/2026 | Q |
| 01/08/2026 | DEFENDANTCROSS-COMPLAINANT TRAVIS EDWARD MARTINS OPPOSITION TO PLAINTIFFSCROSS-DEFENDANTS MOTION TO SET ASIDE ENTRY OF DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |

**Date**

| | | |
|---|---|---|
| 01/05/2026 | ISO Motion to Correct the Record and for Sanctions <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/05/2026 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 01/03/2026 | Q |
| 01/05/2026 | Motion TO: (1) CORRECT THE RECORD REGARDING THE OCTOBER 8, 2025 LEAVE-TO-AMEND ORDER; AND (2) FOR SANCTIONS AGAINST ATTORNEY CHARLOTTE E. KREM AND BAMIEH DE SMETH, PLC FOR FILING <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/02/2026 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 01/02/2026 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 12/29/2025 | Declaration of Charlotte E. Krem ISO Motion to Set Aside Entry of Default <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | Q |
| 12/29/2025 | Declaration in Support Declaration of Leala Sparks ISO Motion to Set Aside Entry of Default <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | Q |
| 12/29/2025 | Motion to Set Aside/Vacate Default and Default Judgment <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | Q |
| 12/24/2025 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | Q |
| 12/22/2025 | Case Management Statement <br/> Filed by: Martin, Donna (Cross-Complainant) | Q |
| 12/22/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 12/22/2025 | Q |
| 12/22/2025 | Case Management Statement <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 12/19/2025 | Updated -- Notice of Rejection: <br/> As To Parties changed from Wald, Natalie (Cross-Defendant) to Wald, James (Cross-Defendant), Wald, Natalie (Cross-Defendant) | Q |

| Date | | |
|---|---|---|
| 12/19/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Wald, Natalie (Cross-Defendant) | 🔍 |
| 12/19/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Wald, James (Cross-Defendant) | 🔍 |
| 12/19/2025 | Certificate of Mailing - UD <br/> Generated by: Court | 🔍 |
| 12/19/2025 | Updated -- Certificate of Clerk and Order to Vacate: <br/> Status Date changed from 12/08/2025 to 12/19/2025 <br/> Status changed from Generated to Filed | 🔍 |
| 12/16/2025 | Minute Order (Motion to Disqualify Attorney Ron Bamieh and Bamieh & De Smet...) | 🔍 |
| 12/09/2025 | Reply in Support of Motion for Attorneys' Fees and Costs on Special Motion to Strike and Related Appeal <br/> Filed by: Wald, James (Plaintiff) | 🔍 |
| 12/08/2025 | Request for Judicial Notice <br/> Filed by: Martin, Travis E (Defendant) <br/>As to: Wald, James (Respondent); Wald, Natalie (Respondent) | 🔍 |
| 12/08/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Defendant) <br/>As to: Wald, James (Respondent); Wald, Natalie (Respondent) <br/>Service Date: 12/08/2025 | 🔍 |
| 12/08/2025 | DECLARATION OF SAMVEL POGHOSYAN REGARDING SERVICE EFFORTS ON JAMES WALD <br/> Filed by: Martin, Travis E (Defendant) <br/>As to: Wald, James (Respondent); Wald, Natalie (Respondent) | 🔍 |
| 12/08/2025 | Motion for Reconsideration <br/> Filed by: Martin, Travis E (Defendant) | 🔍 |
| 12/08/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 12/07/2025 | 🔍 |
| 12/08/2025 | DEFENDANT TRAVIS EDWARD MARTIN'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER PREVENTING ATTEMPTS TO SERVE AIRLINK INTERNET, INC. BY DELIVERING PROCESS TO INMATE TRAVIS EDWARD MARTIN IN CDCR CUSTODY <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 12/08/2025 | Certificate of Clerk and Order to Vacate <br/> Generated by: Court | 🔍 |
| 12/04/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Wald, James (Cross-Defendant) | 🔍 |

**Date**

| | |
|---|---|
| 12/03/2025 | Opposition to Mx for PO re Airlink Service <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) |
| 12/02/2025 | Updated -- Minute Order (Motion for Judgment on the Pleadings, Motion to Remove GAL): <br/> Status Date changed from 12/02/2025 to 12/02/2025 <br/> Name Extension changed from () to (Motion for Judgment on the Pleadings, Motion to Remove GAL) |
| 12/02/2025 | Minute Order () |
| 12/02/2025 | Notice of Ruling <br/> Filed by: Wald, James (Respondent); Wald, Natalie (Respondent); W, P (Respondent) |
| 12/01/2025 | DECLARATION OF TRAVIS EDWARD MARTIN IN SUPPORT OF OPPOSITION TO PLAINTIFFSCROSS-DEFENDANTS MOTION FOR ATTORNEYS FEES AND COSTS ON SPECIAL MOTION TO STRIKE AND RELATED APPEAL <br/> Filed by: Martin, Travis E (Cross-Complainant) |
| 12/01/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 12/01/2025 |
| 12/01/2025 | Opposition TO PLAINTIFFS CROSS-DEFENDANTS MOTION FOR ATTORNEYS FEES AND COSTS ON SPECIAL MOTION TO STRIKE AND RELATED APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES <br/> Filed by: Martin, Travis E (Cross-Complainant) |
| 12/01/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Cross-Complainant) |
| 12/01/2025 | Updated -- Request for Entry of Default: <br/> <br/>Requested Judgment Type: Request for Entry of Default |
| 12/01/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Wald, James (Cross-Defendant) |
| 11/26/2025 | Default entered as to Wald, James; Wald, Natalie <br/>On the Amended Cross-Complaint (1st) filed by Travis E Martin on 10/24/2025 |
| 11/26/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 11/26/2025 |

| Date | | |
|---|---|---|
| 11/26/2025 | Request for Entry of Default <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Requested Judgment Type: Request for Entry of Default | Q |
| 11/21/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 11/21/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 11/20/2025 | Motion for Attorney Fees and Costs on Special Motion to Strike and Related Appeal <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | Q |
| 11/19/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Bamieh, Ron S (Attorney) | Q |
| 11/13/2025 | Notice of Rescheduled Hearing <br/> Generated by: Court | Q |
| 11/13/2025 | Notice of Rescheduled Hearing <br/> Generated by: Court | Q |
| 11/13/2025 | Notice of Rescheduled Hearing <br/> Generated by: Court | Q |
| 11/13/2025 | Notice of Rescheduled Hearing <br/> Generated by: Court | Q |
| 11/13/2025 | Notice of Rescheduled Hearing <br/> Generated by: Court | Q |
| 11/10/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 11/10/2025 | Notice of Court Orders from Ex Parte Hearing <br/> Filed by: Wald, James (Plaintiff) | Q |
| 11/10/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, Natalie (Cross-Defendant) <br/>Service Date: 11/08/2025 | Q |
| 11/10/2025 | REPLY IN SUPPORT OF MOTION TO DISQUALIFY RON BAMIEH AND BAMIEH & DE SMETH, PLC <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |

| **Date** | | |
|---|---|---|
| 11/05/2025 | Plaintiffs' Opposition to Defendant Travis Martin's Motion to Disqualify Attorney Ron Bamieh and Bamieh & De Smeth, PLC <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | 🔍 |
| 10/31/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 10/31/2025 | 🔍 |
| 10/31/2025 | DECLARATION OF TRAVIS EDWARD MARTIN IN SUPPORT OF DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER PREVENTING ATTEMPTS TO SERVE AIRLINK INTERNET, INC. BY DELIVERING PROCESS TO INMATE TRAVIS EDWARD MARTIN IN CDCR CUSTODY <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/31/2025 | Motion for Protective Order Preventing Attempts to Serve Airlink Internet Inc. By delivering Process to Inmate Travis Edward Martin in CDCR Custody <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/31/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 10/31/2025 | 🔍 |
| 10/31/2025 | DEFENDANT TRAVIS EDWARD MARTIN'S REPLY IN SUPPORT OF (1) MOTION TO REMOVE GUARDIAN AD LITEM JAMES WALD AND (2) REQUEST FOR JUDICIAL NOTICE <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/31/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 10/31/2025 | 🔍 |
| 10/31/2025 | DEFENDANT TRAVIS EDWARD MARTINS REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/29/2025 | Minute Order (Ex Parte Application for Protective Order Prohibiting Service...) | 🔍 |
| 10/29/2025 | Opposition to Defendant Travis Martin's Request for Judicial Notice <br/> Filed by: Wald, James (Plaintiff) | 🔍 |
| 10/29/2025 | Opposition to Defendant Travis Martin's Motion to Remove James Wald as GAL <br/> Filed by: Wald, James (Plaintiff) | 🔍 |
| 10/29/2025 | Opposition to Defendant Travis Martin's Motion for Judgment on the Pleadings <br/> Filed by: Wald, James (Plaintiff) | 🔍 |

| Date | | |
|---|---|---|
| 10/27/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, Natalie (Cross-Defendant) <br/>Service Date: 10/27/2025 | Q |
| 10/27/2025 | Declaration of Travis Edward Martin ISO Ex Parte Application <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 10/27/2025 | Ex Parte Application FOR PROTECTIVE ORDER PREVENTING ATTEMPTS TO SERVE AIRLINK INTERNET, INC. BY DELIVERING PROCESS TO INMATE TRAVIS EDWARD MARTIN IN CDCR CUSTODY <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 10/24/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 10/24/2025 | Q |
| 10/24/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Cross-Complainant) | Q |
| 10/15/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: W, P (Cross-Defendant); Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) <br/>Service Date: 10/15/2025 | Q |
| 10/15/2025 | Declaration OF TRAVIS E MARTIN IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEY RON BAMIEH AND BAMIEH & DE SMETH, PLC <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 10/15/2025 | Motion to Disqualify Attorney Ron Bamieh and Bamieh & De Smeth, PLC <br/> Filed by: Martin, Travis E (Cross-Complainant) | Q |
| 10/08/2025 | Notice of Court Orders from Case Management Conference <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | Q |
| 10/08/2025 | Case Management Conference scheduled for 01/08/2026 at 08:35 AM in Hall of Justice at Department 21 | |
| 10/08/2025 | Trial Setting Conference scheduled for 01/08/2026 at 08:30 AM in Hall of Justice at Department 21 | |
| 10/08/2025 | Hearing re: Attorney Fees and Costs scheduled for 12/10/2025 at 08:20 AM in Hall of Justice at Department 21 | |
| 10/08/2025 | Minute Order (Case Management Conference Status of Appeal) | Q |

**Date**

| | | |
|---|---|---|
| 10/07/2025 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) | 🔍 |
| 10/06/2025 | Declaration OF TRAVIS EDWARD MARTIN RE: STATUTORY EXEMPTION FROM MEET-AND-CONFER REQUIREMENTS <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/06/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/06/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>Service Date: 10/06/2025 | 🔍 |
| 10/06/2025 | Motion for Judgment on the Pleadings <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/06/2025 | DECLARATION OF TRAVIS EDWARD MARTIN AUTHENTICATING JULY 5, 2023 EMAIL (EXHIBIT E) <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/06/2025 | Request for Judicial Notice ISO Motion to Remove GAL <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/06/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant) <br/>Service Date: 10/06/2025 | 🔍 |
| 10/06/2025 | Motion TO REMOVE GUARDIAN AD LITEM JAMES WALD FOR CONFLICT; MEMORANDUM OF POINTS ANppD AUTHORITIES IN SUPPORT THEREOF <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 10/03/2025 | Notice of Court Hearing (Civil) <br/> Generated by: Court | 🔍 |
| 10/03/2025 | Status Conference re Remittitur Ruling scheduled for 11/06/2025 at 08:30 AM in Hall of Justice at Department 21 | |
| 09/29/2025 | Request by Party with Fee Waiver for a Court Reporter for Hearing/Trial <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 09/24/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant) <br/>Service Date: 09/24/2025 | 🔍 |
| 09/24/2025 | Case Management Statement <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |

| Date | | |
|---|---|---|
| 09/23/2025 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 09/23/2025 | Case Management Statement <br/> Filed by: Martin, Donna (Cross-Complainant) | 🔍 |
| 09/22/2025 | Proof of Electronic Service <br/> Filed by: Martin, Travis E (Defendant) <br/>As to: Elite Sounds Company LLC (Plaintiff); W, P (Plaintiff); Wald, James (Plaintiff) et al. <br/>Service Date: 09/22/2025 | 🔍 |
| 08/27/2025 | Remittitur Processing Form <br/> Generated by: Court | |
| 08/27/2025 | Remittitur (Order is reversed in part.) <br/> Filed by: Clerk | 🔍 |
| 08/25/2025 | Substitution of Attorney <br/> Filed by: <br/>As to: Martin, Travis Edward (Defendant) | 🔍 |
| 08/14/2025 | Updated -- Substitution of Attorney: <br/> Status Date changed from 08/25/2025 to 08/14/2025 | 🔍 |
| 08/11/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Appellant) | 🔍 |
| 08/06/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Defendant) | 🔍 |
| 07/31/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Appellant) | 🔍 |
| 06/16/2025 | Opinion and Judgment <br/> Filed by: Clerk | 🔍 |
| 06/02/2025 | Case reassigned to Hall of Justice in Department 21 | |
| 04/08/2025 | The case is placed in special status of: Stay - Other | |
| 04/08/2025 | Case Management Conference Status of Appeal scheduled for 10/08/2025 at 08:30 AM in Hall of Justice at Department 21 | |
| 04/08/2025 | Minute Order (Case Management Conference Re: Status of Writ and Setting of TSC) | 🔍 |
| 04/04/2025 | Substitution of Attorney <br/> Filed by: Martin, Travis E (Defendant) | 🔍 |

**Date**

| 04/04/2025 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Defendant) | Q |
| 03/25/2025 | Case Management Statement <br/> Filed by: Martin, Donna (Defendant) | Q |
| 03/24/2025 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | Q |
| 03/10/2025 | Declaration in Support of Attorney's Motion to Be Relieved as Counsel-Civil <br/> Filed by: Kasendorf, Alexander (Attorney) <br/>As to: Martin, Travis Edward (Appellant); 2nd District Court of Appeal (District Court of Appeal) | Q |
| 03/10/2025 | Motion to Be Relieved as Counsel Counsel for Plaintiff Travis Edward Martin <br/> Filed by: Attorney <br/>As to: Martin, Travis Edward (Appellant); 2nd District Court of Appeal (District Court of Appeal) | Q |
| 01/01/2025 | Case reassigned to Hall of Justice in Department 21 | |
| 12/12/2024 | Abstract of Judgment <br/> Issued by: Court <br/>As to: Martin, Travis Edward (Defendant) | Q |
| 11/12/2024 | Notice of Continued Case Management Conference <br/> Filed by: Wald, James (Respondent) | Q |
| 10/28/2024 | Case Management Conference Re: Status of Writ and Setting of TSC scheduled for 04/08/2025 at 08:35 AM in Hall of Justice at Department 21 | |
| 10/25/2024 | Minute Order (Case Management Conference / OSC re: Dismissal for Plaintiff'...) | Q |
| 10/14/2024 | Case Management Statement <br/> Filed by: Martin, Travis E (Defendant) | Q |
| 10/10/2024 | Declaration of Danielle De Smeth Re: Order to Show Cause Re: Failure to Appear at August 22, 2024 Case Management Conference <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | Q |
| 10/10/2024 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | Q |
| 09/20/2024 | Notice of Completion of Record on Appeal <br/> Generated by: Court | Q |

| Date | | |
|------|---|---|
| 09/10/2024 | Copy of Order from District Court of Appeal re: The Appeals are consolidated for purposes of record, briefing, oral argument, and decision. All future filings are to be made under appellate case number B335960. <br/> Filed by: Court | Q |
| 09/05/2024 | Notice of Election to Proceed <br/> Generated by: Court | Q |
| 09/04/2024 | Appellant's Notice Designating Record on Appeal (Appendix Only) <br/> Filed by: Martin, Travis E (Appellant) <br/>Appendix: Yes | Q |
| 09/04/2024 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis Edward (Appellant) | Q |
| 08/29/2024 | Notice of Filing Notice of Appeal / Cross Appeal <br/> Generated by: Court | Q |
| 08/29/2024 | Updated -- Notice of Appeal: <br/> <br/>With Deposit: Yes | Q |
| 08/28/2024 | Notice of Appeal <br/> Filed by: Martin, Travis E (Appellant) <br/>As to: Wald, James (Respondent) <br/>With Deposit: Yes | Q |
| 08/26/2024 | Notice of Ruling RE Case Management Conference <br/> Filed by: Martin, Travis E (Defendant) | Q |
| 08/22/2024 | Case Management Conference / OSC re: Dismissal for Plaintiff's Counsel's Failure to Appear at the 08/22/2024 CMC scheduled for 10/25/2024 at 08:35 AM in Hall of Justice at Department 21 | |
| 08/22/2024 | Minute Order (Case Management Conference) | Q |
| 08/20/2024 | Notice of Entry of Judgment or Order <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | Q |
| 08/16/2024 | Notice of Lien <br/> Filed by: State of California/California Victim Compensation Board (Non-Party) | Q |
| 07/24/2024 | Case Management Conference scheduled for 08/22/2024 at 08:35 AM in Hall of Justice at Department 21 | |
| 07/23/2024 | Minute Order (Case Management Conference; Motion for Attorney Fees/Costs an...) | Q |
| 07/22/2024 | Notice of Posting of Jury Fees <br/> Filed by: Martin, Travis E (Defendant) | Q |

| Date | | |
|---|---|---|
| 07/16/2024 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 07/16/2024 | Reply in Support of Motion for Attorneys' Fees and Costs on Special Motion to Strike <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 07/10/2024 | Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs on Special Motion to Strike <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 05/31/2024 | Receipt for Record on Appeal <br/> Filed by: Non-Party | 🔍 |
| 05/31/2024 | Receipt for Record on Appeal <br/> Generated by: Court | 🔍 |
| 05/31/2024 | Receipt for Record on Appeal <br/> Generated by: Court | 🔍 |
| 05/31/2024 | Notice of Completion of Record on Appeal <br/> Generated by: Court | 🔍 |
| 05/29/2024 | Clerk's Transcript Complete 1 Vol (O+1) <br/> Lodged by: Clerk | |
| 05/13/2024 | Notice of Cost of Preparing Clerk's Transcript on Appeal <br/> Generated by: Court | 🔍 |
| 05/02/2024 | Notice to Court Reporter to Prepare Transcript <br/> Generated by: Court | 🔍 |
| 04/22/2024 | Notice of Continued Case Management Conference and Motion for Attorneys' Fees and Costs on Special Motion to Strike <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 04/19/2024 | Notice of Rescinding Default <br/> Generated by: Court | 🔍 |
| 04/16/2024 | Notice of Default on Appeal (Limited/Unlimited) <br/> Generated by: Court | 🔍 |
| 04/16/2024 | Notice of Rescinding Default <br/> Generated by: Court | 🔍 |
| 04/16/2024 | Appellant's Notice Designating Record on Appeal (Clerk's and Reporter's Transcript) <br/> Filed by: Martin, Travis Edward (Appellant) <br/>Clerk's Transcript: Yes <br/>Reporter's Transcript: Yes | 🔍 |
| 04/10/2024 | Motion for Attorney Fees/Costs and Costs on Special Motion to Strike scheduled for 07/23/2024 at 08:20 AM in Hall of Justice at Department 21 | |

| Date | | |
|---|---|---|
| 04/10/2024 | Case Management Conference scheduled for 07/23/2024 at 08:35 AM in Hall of Justice at Department 21 | |
| 04/10/2024 | Minute Order (MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dis...) | 🔍 |
| 04/02/2024 | Notice of Remote Appearance - Throughout the Case <br/> Filed by: Martin, Travis E (Defendant) | 🔍 |
| 04/02/2024 | Notice of Default on Appeal (Limited/Unlimited) <br/> Generated by: Court | 🔍 |
| 03/26/2024 | Notice of Posting of Jury Fees <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 03/26/2024 | Case Management Statement <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 03/22/2024 | Motion for Attorney Fees and Costs on Special Motion to Strike; Memorandum of Points and Authorities; Declaration of Danielle De Smeth Ini Support Thereof <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 03/22/2024 | Case Management Statement <br/> Filed by: Martin, Donna (Defendant) | 🔍 |
| 03/19/2024 | Notice of Filing Notice of Appeal / Cross Appeal <br/> Generated by: Court | 🔍 |
| 03/19/2024 | Updated -- Notice of Appeal: <br/> <br/>With Deposit: Yes | 🔍 |
| 03/19/2024 | Notice of Appeal <br/> Filed by: Martin, Travis Edward (Appellant) <br/>As to: Wald, James (Respondent) <br/>With Deposit: Yes | 🔍 |
| 03/06/2024 | Case Management Statement <br/> Filed by: Martin, Travis E (Defendant) | 🔍 |
| 03/04/2024 | Notice of Continuance <br/> Generated by: Court | 🔍 |
| 02/01/2024 | Minute Order (Motion to Strike Exemplary Damages of Cross-Complaint of Trav...) | 🔍 |
| 02/01/2024 | Agreement and Order Re Appointment of Official Reporter Pro Tempore Mary E. Ferreira, CSR # 10553 <br/> Filed by: Martin, Travis E (Defendant) | 🔍 |

**Date**

| 01/25/2024 | Response to Defendant's Evidentiary Objections to Plaintiff's Request for Judicial Notice in Support of Plaintiffs' Demurrer and Motion to Strike Cross-Complaint <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | [Q] |

| 01/25/2024 | Response to Defendant Travis Martin's Objections to Declaration of Ron Bamieh in Support of Plaintiffs' Motion to Strike and Demurrer on Defendant's Cross-Complaint <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | [Q] |

| 01/25/2024 | Response to Defendant's Objections to Declaration of Natalie Wald in Support of Plaintiffs' Demurrer and Motion to Strike Defendant's Cross-Complaint <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | [Q] |

| 01/25/2024 | Reply to Defendant's Opposition to Special Motion to Strike; Memorandum of Points and Authorities in Support <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | [Q] |

| 01/25/2024 | Reply to Defendant Travis Martin's Opposition to Plaintiffs' Motion to Strike Defendant's Cross-Complaint <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | [Q] |

| 01/25/2024 | Reply to Defendant's Opposition to Demurrer to Cross-Complaint; Memorandum of Points and Authorities in Support <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | [Q] |

| 01/25/2024 | Updated -- Objection to Plaintiffs' Declaration of Natalie Wald: <br/> Filed By Parties: Martin, Travis E (Cross-Complainant) | [Q] |

| 01/25/2024 | Objection to Plaintiffs' Request for Judicial Notice <br/> Filed by: Martin, Travis E (Cross-Complainant) | [Q] |

| 01/23/2024 | Objection to Plaintiffs' Declaration of Natalie Wald <br/> Filed by: Martin, Travis E (Cross-Complainant) | [Q] |

| 01/23/2024 | Objection to Plaintiffs' Declaration of Natalie Wald <br/> Filed by: | [Q] |

| 01/23/2024 | Objection to Plaintiffs' Declaration of Ron Banieh <br/> Filed by: Martin, Travis E (Cross-Complainant) | [Q] |

| 01/23/2024 | Declaration of Travis E Martin in Support of Opposition to Plaintiff's Special Motion to Strike <br/> Filed by: Martin, Travis E (Cross-Complainant) | [Q] |

| Date | | |
|---|---|---|
| 01/23/2024 | Opposition to Demurrer; Memorandum of Points and Authorities in Support Thereof <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 01/23/2024 | Opposition to Special Motion to Strike; Memorandum of Points and Authorities in Support Thereof <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 01/23/2024 | Opposition to Motion to Strike; Memorandum of Points and Authorities in Support Thereof <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 01/22/2024 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Defendant) | 🔍 |
| 12/26/2023 | Notice of Continuance <br/> Generated by: Court | 🔍 |
| 12/26/2023 | Notice of Continuance <br/> Generated by: Court | 🔍 |
| 12/26/2023 | Notice of Continuance <br/> Generated by: Court | 🔍 |
| 12/20/2023 | Notice of Rescheduled Hearing <br/> Generated by: Court | 🔍 |
| 12/13/2023 | Request for Judicial Notice in Support of Plaintiffs'/Cross-Defendants' Demurrer, Motion to Strike and Special Motions to Strike to Travis Edward Martin's Cross-Complaint <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |
| 12/13/2023 | Declaration of Ron Bamieh in Support of Plaintiffs'/Cross-Defendants' Demurrer to Travis Edward Martin's Cross-Complaint.. Motion to Strike Exemplary Damages, and Special Motion to Strike Pursuant to Code of Civil Procedure 425.16 <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |
| 12/13/2023 | Declaration of Natalie Wald in Support of Plaintiffs'/Cross-Defendants' Demurrer to Travis Edward Martin's Cross-Complaint.. Motion to Strike Exemplary Damages, and Special Motion to Strike Pursuant to Code of Civil Procedure 425.16 <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |
| 12/13/2023 | Special Motion to Strike Pursuant to Code of Civil Procedure 425.16; Memorandum of Points and Authorities <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |
| 12/13/2023 | Motion to Strike Exemplary Damages; Memorandum of Points and Authorities in Support <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |

| Date | | |
|---|---|---|
| 12/13/2023 | Demurrer to Travis Edward Martin's Cross-Complaint; Memorandum of Points and Authorities in Support <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |
| 12/11/2023 | Substitution of Attorney <br/> Filed by: Kasendorf, Alexander Samuel (Attorney) <br/>As to: Martin, Travis Edward (Defendant) | 🔍 |
| 12/08/2023 | Declaration <br/> Filed by: Martin, Travis E (Cross-Complainant) | 🔍 |
| 12/05/2023 | Answer to Cross Complaint <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | 🔍 |
| 11/13/2023 | Declaration in Support of Automatic Extension <br/> Filed by: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant); W, P (Cross-Defendant) | 🔍 |
| 11/03/2023 | Case reassigned to Hall of Justice in Department 21 <br/>Reason: | |
| 11/03/2023 | Certificate of Mailing for Minute Order (Court Order) of 11/03/2023 <br/> Filed by: Clerk | 🔍 |
| 11/03/2023 | Minute Order (Court Order) | 🔍 |
| 10/31/2023 | Challenge To Judicial Officer (170.6) <br/> Filed by: Martin, Donna (Defendant) | 🔍 |
| 10/31/2023 | Cross-Complaint <br/> Filed by: Martin, Donna (Cross-Complainant) <br/>As to: Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | 🔍 |
| 10/31/2023 | Answer <br/> Filed by: Martin, Donna (Defendant) | 🔍 |
| 10/26/2023 | Proof of Personal Service (General) Answer of Travis E Martin, Cross-Complaint <br/> Filed by: Martin, Travis E (Defendant) <br/>Service Date: 10/19/23 <br/>Service Cost Waived: No | 🔍 |
| 10/19/2023 | Answer <br/> Filed by: Martin, Travis E (Defendant) | 🔍 |
| 10/18/2023 | Cross-Complaint <br/> Filed by: Martin, Travis E (Cross-Complainant) <br/>As to: W, P (Cross-Defendant); Wald, James (Cross-Defendant); Wald, Natalie (Cross-Defendant) | 🔍 |
| 10/18/2023 | Updated -- Answer: <br/> Status Date changed from 10/19/2023 to 10/18/2023 | 🔍 |

| Date | | |
|---|---|---|
| 10/18/2023 | Certificate of Mailing for [Order on Court Fee Waiver (Superior Court)] <br/> Generated by: Court | 🔍 |
| 10/18/2023 | Notice of Rejection <br/> Generated by: Court <br/>As to: Martin, Travis E (Defendant) | 🔍 |
| 10/18/2023 | Order on Court Fee Waiver (Superior Court) <br/> Filed by: Court <br/>As to: Martin, Travis E (Defendant) | 🔍 |
| 10/17/2023 | Request to Waive Court Fees <br/> Filed by: Martin, Travis E (Defendant) | |
| 10/09/2023 | Proof of Service by Notice and Acknowledgment of Receipt - STATEMENT OF DAMAGES <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. <br/>As to: Martin, Travis Edward (Defendant) <br/>Service Date: 09/19/2023 | 🔍 |
| 10/05/2023 | Updated -- Proof of Service by Notice and Acknowledgment of Receipt - STATEMENT OF DAMAGES: <br/> Status Date changed from 10/09/2023 to 10/05/2023 <br/> <br/>Service Date: 09/19/2023 | 🔍 |
| 09/29/2023 | Notice of Rejection <br/> Generated by: Court <br/>As to: Elite Sounds Company LLC (Plaintiff) | 🔍 |
| 09/28/2023 | Proof of Personal Service (Statement of Damages) <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. <br/>As to: Martin, Donna (Defendant) <br/>Service Date: 09/27/2023 <br/>Service Cost: 100.00 | 🔍 |
| 08/08/2023 | Updated -- Summons on Complaint: <br/> Status Date changed from 08/02/2023 to 08/08/2023 <br/> Status changed from Received to Issued and Filed | 🔍 |
| 08/08/2023 | Updated -- Application And Order For Appointment of Guardian Ad Litem: <br/> Status Date changed from 08/02/2023 to 08/08/2023 <br/> Status changed from Received to Filed | 🔍 |
| 08/04/2023 | MANDATORY APPEARANCE CMC/Order to Show Cause Re Sanctions/Dismissal for Failure to File Proof of Service/Default scheduled for 04/26/2024 at 08:15 AM in Hall of Justice at Department 22B | |
| 08/02/2023 | Updated -- Summons on Complaint: <br/> Name Extension changed from on Complaint to on Complaint <br/> Status changed from Issued and Filed to Received | 🔍 |
| 08/02/2023 | Case assigned to Hon. Ben Coats in Department 43 Hall of Justice | |

| Date | | |
|------|------|------|
| 08/02/2023 | Notice of Case Assignment and Mandatory Appearance <br/> Generated by: Court | 🔍 |
| 08/02/2023 | Summons on Complaint <br/> Issued and Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 08/02/2023 | Civil Case Cover Sheet <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. | 🔍 |
| 08/02/2023 | Complaint <br/> Filed by: Wald, James (Plaintiff); Wald, Natalie (Plaintiff); W, P (Plaintiff) et al. <br/>As to: Airlink Internet, Inc. (Defendant); Martin, Donna (Defendant); Martin, Travis Edward (Defendant) | 🔍 |

Go Back

Copyright © Journal Technologies, USA. All rights reserved.