Travis Edward Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

FILED

CLERK, U.S. DISTRICT COURT

5/12/26

CENTRAL DISTRICT OF CALIFORNIA

BY_____CS_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS EDWARD MARTIN, an individual;<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION, a federal agency; JAMES WALD, an individual; NATALIE WALD, an individual; ELITE SOUND COMPANY LLC, a California limited liability company; JAYSON COHEN, an individual,<br><br>        Defendants. | **Case No. 2:26-cv-03714-WLH-DFM**<br><br>**PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: June 5, 2026<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu |

PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants' motion is a premature procedural ambush and should be denied in full. Defendants voluntarily filed their motion to complain about "defective service" before Plaintiff had personally served them, before the Rule 4(m) service period had even remotely expired, and, critically, before the operative summonses were issued. Their argument is not that Plaintiff served the wrong person, served the wrong address, or missed a deadline. Their argument is that courtesy copies of this filing that Plaintiff sent counsel lacked the Clerk's signature and seal. Of course they did. Those were not the operative summonses for service.

This was day 29 of the 90-day Rule 4(m) period, not day 91. The Court's Standing Order requires prompt service under Rule 4 and provides dismissal only for defendants not served within 90 days after filing. Defendants tried to convert that unexpired service period into a dismissal sanction less than one month into the case. That request is meritless, disproportionate, and a waste of scarce judicial resources. The proper result is not dismissal; the proper result is for Plaintiff to serve the signed, sealed summonses within the time Rule 4 already provides and which is already underway.

The service gambit also exposes the unreliability of the rest of Defendants' motion. Defendants ask the Court to believe that Plaintiff's injury is speculative because the SBA supposedly may never pursue collection. That claim is false on the face of the Complaint. The Complaint alleges an existing personal guarantee, multiple defaults, the SBA's March 2026 delinquency notice, returned payments, Treasury collection exposure, and most importantly the Airlink SBA loan already in collections. Compl. ¶¶ 8, 21-24, 37-45, 51-55. The Complaint further alleges that Defendants hold and operate the collateral securing Plaintiff's SBA exposure. Compl. ¶¶ 26-28, 47-52, 84-90. This is not speculative. **The SBA is already collecting against Plaintiff through the Airlink loan, the ET loan is delinquent, and the collateral that should reduce Plaintiff's federal guarantor exposure in both loans is in Defendants' custody and being used by Defendants.**

The SBA's current statement makes Defendants' speculation even more indefensible. On May 15, 2026, nearly six weeks after the Complaint was filed and after Defendants and their counsel had courtesy notice that this case concerns the ET SBA loan, the SBA still showed the account past due. The statement for Loan No. 5632277910 lists a $5,472.00 payment due, a February 15, 2026 due date, a last payment amount of $0.00, $0.00 applied to principal, $0.00 applied to interest, and an outstanding balance of $267,022.99. See SBA Statement dated May 15, 2026, submitted concurrently as Exhibit A. That delinquency has doubled from the $2,736.00 arrearage pleaded in the Complaint. Defendants therefore cannot seriously tell the Court this controversy is hypothetical while the SBA account is actively past due and moving in the wrong direction, and while Defendants allegedly retain the collateral securing that federal debt.

That is the central issue Defendants try to obscure: the federal SBA controversy and the claims against Defendants are two sides of the same collateral dispute. Plaintiff alleges that the SBA holds Plaintiff liable while refusing to pursue collateral, and that Defendants are the very parties who diverted, retained, and profited from that collateral. Defendants want the SBA claim to remain in federal court while they escape to state court with the collateral and its revenues. Section 1367 does not require that absurd fragmentation. It authorizes this Court to decide the whole controversy in one forum.

The motion should be denied. If the Court believes any pleading detail should be sharpened, Plaintiff requests leave to amend, including leave to allege that the ET loan arrearage has continued to grow and is now $5,472.00, double the $2,736.00 delinquency pleaded in the Complaint, with a $267,022.99 outstanding balance while Defendants continue to possess and profit from the collateral.

## II. RELEVANT BACKGROUND

Plaintiff filed this action on April 5, 2026. Compl., ECF No. 1. The Complaint pleads original jurisdiction over the SBA under 15 U.S.C. § 634(b)(1), declaratory relief under 28 U.S.C. §§ 2201 and 2202, and supplemental jurisdiction over the claims against James Wald, Natalie Wald, Jayson Cohen, and Elite Sound Company LLC because those

claims arise from the same SBA EIDL loan, personal guarantee, collateral diversion, and default. Compl. ¶¶ 3-5.

The Complaint alleges that Plaintiff is a personal guarantor on SBA EIDL Loan No. 5632277910, that the SBA holds a perfected security interest in Entertainment Technology LLC's business assets, and that those assets were diverted to Elite Sound Company LLC. Compl. ¶¶ 8-18, 25-29. It further alleges that Plaintiff is the sole owner and guarantor on a separate Airlink Internet SBA EIDL loan that has been in default for approximately three years and referred to collections with an approximate balance of $1.7 million. Compl. ¶¶ 8, 21(c), 51-52.

The Complaint alleges active, present collection risk. The SBA issued a March 16, 2026 Notice of Delinquency for the ET loan; the notice was sent to the same Ventura address where Elite allegedly operates using the diverted collateral; and February and March 2026 payments were returned as "Borrower's Check Returned." Compl. ¶¶ 37-42. The Complaint also alleges Treasury collection consequences, including offset, garnishment, and penalties. Compl. ¶¶ 43-45.

The post-filing account statement confirms that the problem has intensified, not disappeared. By May 15, 2026, Defendants and their counsel had been on courtesy notice of the Complaint for nearly a month and a half. Yet the SBA statement for the same ET loan still shows a $5,472.00 payment due, a February 15, 2026 due date, no last payment amount, no principal or interest applied from any last payment, and a $267,022.99 outstanding balance. SBA Statement, Ex. A. Defendants did not cure the returned payments. They did not bring the loan current. They did not return the allegedly stolen collateral or preserve its value. Instead, the arrearage doubled while Defendants pressed a premature dismissal motion filed before personal service was even due.

The Complaint alleges that Defendants are not outsiders to this federal guaranty dispute. James allegedly transferred ET's business assets to Elite without authorization; Cohen allegedly joined with James to form and operate Elite using the transferred assets; Natalie allegedly transitioned her bookkeeping, accounts-receivable, accounts-payable,

PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES

check-signing, and operational functions from ET to Elite; and Defendants allegedly continued operating and profiting from the collateral while leaving Plaintiff exposed on the SBA debt. Compl. ¶¶ 26-28, 84-90.

Defendants filed this motion less than one month after the Complaint was filed. Their own motion focuses on unsigned, unsealed documents attached as Exhibit A to the Ball declaration. Ball Decl., Ex. A. Those documents were not signed by the Clerk and did not bear the Court's seal. After Defendants built a dismissal motion around those pre-issuance forms, the Clerk issued signed and sealed summonses on May 4, 2026, including docketed summonses for the moving Defendants. The Court also issued a notice of clerical error explaining that an earlier deficiency notice had been blank and that a new deficiency notice was issued. ECF No. 21. The docket was still being corrected while Defendants were already demanding dismissal despite the fact personal service had not taken place.

**III. LEGAL STANDARDS**

On a facial Rule 12(b)(1) attack, the Court accepts the Complaint's allegations as true and asks whether those allegations plausibly establish jurisdiction. Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). At the pleading stage, general factual allegations of injury caused by the defendant's conduct can satisfy Article III. Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011); Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

Rule 4(a)(1)(F) and (G) require a summons to be signed by the Clerk and bear the Court's seal. Rule 4(c) requires the summons to be served with the complaint, and Rule 4(m) gives a plaintiff 90 days after the complaint is filed to complete service. Fed. R. Civ. P. 4(a), (c), (m). A defendant's response obligation is triggered by formal service, not by mere receipt of a courtesy copy. Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 350 (1999).

Section 1367(a) gives district courts supplemental jurisdiction over claims so related to claims within original jurisdiction that they form part of the same Article III case or controversy. 28 U.S.C. § 1367(a). Declining supplemental jurisdiction under § 1367(c)(4) requires exceptional circumstances and compelling reasons, evaluated through

judicial economy, convenience, fairness, and comity. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000-01 (9th Cir. 1997) (en banc).

## IV. ARGUMENT

### A. Defendants' service attack is premature, meritless, and based on a false chronology.

Defendants' service theory collapses at the threshold. The documents they attack were not operative summonses that had been issued and served under Rule 4. They were unsigned, unsealed pre-issuance forms. Defendants therefore filed a motion complaining that Plaintiff had not properly served summonses before the operative summonses had even issued. That is not a basis for dismissal. It is proof that the motion should not have been filed in this posture.

The courtesy copies sent to defense counsel is not Rule 4 service. Murphy Bros., 526 U.S. at 347-48, 350. Defendants cannot treat courtesy notice as enough to haul Plaintiff into a service fight, but not enough to accept that service had not yet occurred. If there was no service, there was no defective service warranting dismissal. If the Clerk later issued proper summonses, the cure was obvious: serve those summonses within Rule 4(m). Defendants' demand for dismissal skips every step Rule 4 requires.

The timing makes the motion abusive. Plaintiff filed the Complaint on April 5, 2026. Defendants signed and filed their motion on May 4, 2026, approximately 29 days later. Rule 4(m) gave Plaintiff 90 days. Judge Hsu's Standing Order repeats that defendants not served within 90 days after filing are subject to dismissal under Rule 4(m). Standing Order § B.1. Defendants filed this motion with more than 60 days left on the service clock. Their attempt to manufacture a dismissal before the service deadline had remotely expired should cause the Court to approach the rest of their factual characterizations with caution.

Defendants' authorities about unsigned summonses do not save them. Those cases concern attempts to rely on invalid service after a plaintiff has actually served defective process and sought to make that defective service effective. That is not what happened

here. Plaintiff does not ask the Court to treat unsigned, unsealed forms as valid service. Plaintiff's position is more basic: those documents were not issued summonses, no Rule 4(m) deadline had expired, and dismissal is not an available shortcut before Plaintiff has had the time Rule 4 gives him to complete service.

At most, the Court could direct Plaintiff to serve the signed and sealed summonses. Which is unnecessary as personal service is actively underway. Dismissal would reward Defendants for rushing into court to litigate a defect that had not matured and that Rule 4 already allowed Plaintiff to cure. The service-based Rule 12(b)(2), 12(b)(4), and 12(b)(5) arguments should be denied.

**B. Defendants' personal-jurisdiction argument is just the service argument in disguise.**

Defendants do not identify any serious minimum-contacts problem. They are California defendants alleged to reside in, operate in, or transact business in Ventura County, and Elite is alleged to operate at 5808 Telephone Road, Suite 200, Ventura, California 93003. Compl. ¶¶ 6-7, 10-13. The alleged misconduct occurred in this District and involved collateral located in this District. Compl. ¶¶ 6-7, 26-28.

Defendants instead try to transform their premature service objection into a personal-jurisdiction dismissal. That fails for the same reason the service objection fails. The absence of completed Rule 4 service before the deadline does not entitle Defendants to dismissal, particularly where Defendants voluntarily appeared to file a merits-heavy Rule 12 motion before service was due. The proper course is service within the Rule 4(m) period, not dismissal of live claims.

**C. Plaintiff has standing because the Complaint alleges present SBA collection exposure and present loss of collateral.**

Defendants' standing argument depends on pretending the Complaint says the opposite of what it says. Defendants claim Plaintiff's injury is speculative because the SBA may never pursue collection. The Complaint alleges that the SBA already has issued a delinquency notice on the ET loan, that payments were returned, that Plaintiff faces

Treasury collection consequences, and that the Airlink SBA loan has already been referred to collections with an approximate $1.7 million balance. Compl. ¶¶ 8, 21(c), 37-45, 51-52. Those allegations defeat Defendants' speculation theory at the pleading stage.

The injury is also traceable to Defendants. Plaintiff alleges Defendants diverted the collateral securing the ET and Airlink loan to Elite, used it to operate a revenue-generating business, and retained the benefits without paying the SBA loan or compensating Plaintiff for his guarantor exposure. Compl. ¶¶ 26-29, 47-52, 84-90. The Complaint is not based on the abstract possibility that the SBA might someday act. It is based on a concrete collateral problem: the SBA holds Plaintiff liable while Defendants hold and profit from the collateral that should reduce or eliminate that liability in both loans.

Defendants also ignore redressability. Plaintiff seeks avoidance of the transfer, restitution, constructive trust, indemnity, reimbursement, exoneration, and equitable subrogation. Compl. Prayer ¶¶ D-H; Compl. ¶¶ 82, 84-97. That relief directly addresses the injury by returning collateral value, shifting guarantor liability to the wrongdoer who caused it, and reducing Plaintiff's SBA exposure. A judgment against Defendants would not merely express an opinion about the SBA. It would restore or monetize the collateral Defendants allegedly took.

Defendants' "independent SBA decision" theory is a straw man. Plaintiff does not need to prove at the pleading stage that the SBA has already completed every possible collection step. Article III requires injury in fact, causation, and redressability, not a final Treasury offset. The Complaint alleges existing debt exposure, existing delinquency, returned payments, active SBA collections, lost collateral, and Defendants' ongoing profits from that collateral. Compl. ¶¶ 37-52, 84-90.

The May 15 SBA statement demolishes Defendants' attempt to characterize the injury as hypothetical. That statement is not needed to survive a facial Rule 12(b)(1) attack because the Complaint already alleges active delinquency and collection exposure. But the statement confirms the exact injury pleaded: a live SBA debt, a growing payment delinquency, and a $267,022.99 outstanding balance while the collateral securing that debt

is allegedly in Defendants' custody. Defendants' premise that the SBA may never collect is not an Article III argument. It is wishful thinking contradicted by the Complaint and by the SBA's own current account statement and active collections against Plaintiff.

Nor does Plaintiff need post-Complaint facts to defeat the motion. The existing Complaint already alleges active delinquency and collection exposure. If the Court wants additional specificity, Plaintiff can amend to allege that the ET loan arrearage is now $5,472.00, double the $2,736.00 delinquency pleaded in the Complaint, with a $267,022.99 outstanding balance and continuing default while Defendants remain in possession of the collateral. That amendment would only confirm the Complaint's existing theory; it would not create a new one.

**D. The Complaint states direct claims against Defendants, not derivative or speculative claims.**

Defendants try to recast the case as if Plaintiff sued only because the SBA might someday do something. That misstates the pleading. Plaintiff alleges a direct personal injury as co-guarantor and co-member: James Wald allegedly stripped collateral securing a loan for which Plaintiff is personally liable; Cohen and Elite allegedly used that collateral; Natalie allegedly participated in Elite's operations and benefited from the same collateral; and all moving Defendants allegedly retained revenues and profits generated by assets securing Plaintiff's federal debt. Compl. ¶¶ 26-28, 73-90.

The Complaint expressly limits the fiduciary-duty count to Plaintiff's individual injury as co-member and co-guarantor, namely the direct increase of Plaintiff's personal SBA exposure and loss of collateral protection. Compl. ¶¶ 73-76. The restitution, conspiracy, and indemnity counts likewise seek to recover the value and benefits of collateral Defendants allegedly retained while leaving Plaintiff exposed. Compl. ¶¶ 84-97. These are not abstract entity claims. They are personal claims tied to a personal federal guaranty.

**E. Section 1367 supports retaining Defendants, not dismissing or staying them.**

PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES

Defendants' request to dismiss or stay the state-law claims under § 1367(c)(4) is backwards. The Complaint alleges original jurisdiction over the SBA, and the claims against Defendants arise from the same case or controversy: the SBA EIDL loan, the personal guarantees, the wrongfully diverted collateral, the defaults, and the current collection exposure. Compl. ¶¶ 3-5. The state-law claims are not a detachable sideshow. They are the mechanism by which the Court can identify who controls the collateral, who profited from it, and who should bear the guarantor burden.

The current SBA statement also shows why a stay or dismissal would be inequitable. Every month of fragmentation gives Defendants more time to hold and use collateral while the SBA account remains unpaid and the arrearage grows. The federal claim and the collateral claims are inseparable for a practical reason: the SBA is maintaining a live past-due federal loan account, and Defendants are alleged to have the assets that should satisfy or reduce that account. Sending the collateral claims elsewhere would not promote economy. It would shelter the alleged collateral holders while the federal account deteriorates.

The pending state actions do not justify fragmentation. Defendants' own request for judicial notice shows state-court disputes involving some parties and related business issues, but those cases do not include the SBA and cannot adjudicate Plaintiff's federal declaratory-relief claim against the SBA under 15 U.S.C. § 634(b)(1) and 28 U.S.C. §§ 2201-2202. A stay or dismissal would force two courts to decide overlapping collateral issues while only this Court can decide the complete SBA-guaranty controversy. That would waste resources, not conserve them.

Defendants also fail to show "exceptional circumstances" or "compelling reasons." 28 U.S.C. § 1367(c)(4). They identify no novel state-law issue, no predominance problem that overwhelms the SBA claim, and no final state judgment capable of resolving the federal controversy. Their real request is strategic: keep the SBA case in federal court, remove themselves from it, and continue litigating collateral issues elsewhere while Plaintiff remains exposed. Section 1367 does not require the Court to assist that tactic.

PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES

**F. Defendants' request for judicial notice cannot turn contested allegations into dismissal facts.**

Defendants rely heavily on state-court filings. The Court may take notice that those filings exist, but it may not accept disputed factual assertions within them for the truth of the matter asserted on a Rule 12 motion. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999-1003 (9th Cir. 2018). Defendants' request for judicial notice therefore cannot erase the Complaint's allegations that they diverted collateral, used it, profited from it, and left Plaintiff exposed on SBA debt.

The RJN also undercuts Defendants' own stay argument. Their state-court materials show collateral and business disputes, but not a forum capable of adjudicating the SBA's federal guaranty and secured-creditor conduct. The existence of related state litigation does not make the federal case duplicative; it confirms why this Court should retain all claims arising from the same collateral and guaranty dispute.

**G. If the Court identifies any curable defect, leave to amend is required.**

Defendants seek dismissal as if this case is beyond repair. It is not. If the Court believes Plaintiff should add more allegations about current arrearages, the current status of collections, the sequence of summons issuance and service, or any other pleading detail, amendment would be straightforward. Judge Hsu's Standing Order recognizes the liberal amendment policy for Rule 12 motions, and Ninth Circuit law requires leave to amend unless amendment would be futile. Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

Dismissal would be especially improper where Defendants moved before service was complete and before the Rule 4(m) deadline. A party that voluntarily appears early to raise a premature summons attack does not earn a merits dismissal. It earns, at most, an order confirming what Rule 4 already says: serve the issued summonses within the service period.

## V. CONCLUSION

Defendants filed a dismissal motion over an unripe service issue before Plaintiff had even been required to complete service and before the operative summonses had issued. They then compounded that procedural overreach with a standing argument that ignores the Complaint's allegations of active delinquency, returned payments, Airlink collections, Treasury exposure, and Defendants' possession and use of the very collateral securing Plaintiff's SBA liability. The motion should be denied in full. In the alternative, the Court should deny dismissal and allow Plaintiff to serve the issued summonses or amend any curable pleading issue.

The May 15 SBA statement confirms the point: after nearly a month and a half of notice, the account was not brought current; the payment due doubled to $5,472.00; and the outstanding SBA balance remains $267,022.99 while Defendants allegedly retain the collateral. That post-filing evidence makes Defendants' motion even more baseless. If the Court declines to consider the statement on this motion, it confirms at minimum that amendment would be immediate, specific, and nonfutile.

Dated: May 12, 2016

Respectfully submitted,

TRAVIS EDWARD MARTIN

Plaintiff In Propria Persona


## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2 and Section G.4 of the Court's Standing Order, Plaintiff certifies that the memorandum of points and authorities in this opposition contains approximately 3,517 words, excluding the caption, signature block, this certificate, proof of service, and other materials excluded by the Court's word-count rule.

Dated: May 12, 2026

TRAVIS EDWARD MARTIN

Plaintiff In Propria Persona

PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES

# PROOF OF SERVICE

I, Tyler Martin, declare:

I am over the age of eighteen (18) years and am not a party to this action. My business address is 1746-F South Victoria Ave., Suite #104, Ventura, California 93003.

On May 12, 2026, I served a true and correct copy of the following document: PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES.

I served the document by United States mail. I placed the document in a sealed envelope with postage fully prepaid and deposited the envelope with the United States Postal Service at Ventura, California, addressed as follows:

Allen R. Ball, Esq.

LAW OFFICE OF BALL & YORKE

1001 Partridge Drive, Suite 330

Ventura, CA 93003

Attorney for Defendants James Wald, Natalie Wald, Jayson Cohen, and Elite Sound Company LLC

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 12, 2026, at Ventura, California.

*Tyler Martin*

_____

Tyler Martin

PLAINTIFF TRAVIS EDWARD MARTIN'S OPPOSITION TO DEFENDANTS JAMES WALD, NATALIE WALD, JAYSON COHEN, AND ELITE SOUND COMPANY LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY; MEMORANDUM OF POINTS AND AUTHORITIES