Travis Edward Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

FILED
CLERK, U.S. DISTRICT COURT
9/8/2026
CENTRAL DISTRICT OF CALIFORNIA
BY jb DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

TRAVIS EDWARD MARTIN, an individual,

Plaintiff,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, a federal agency; JAMES WALD, an individual; NATALIE WALD, an individual; JAYSON COHEN, an individual; AMERICAN LEGACY SOLUTIONS LLC, a California limited liability company; and ELITE SOUND COMPANY LLC, a California limited liability company,

Defendants.

**Case No. 2:26-cv-03714-WLH-DFM**

Hon. Wesley L. Hsu

**DECLARATION OF TRAVIS EDWARD MARTIN IN SUPPORT OF EX PARTE APPLICATION TO VACATE THE SEPTEMBER 2, 2026 STAY ORDER (DKT. 73) AND TO REINSTATE THE AUGUST 14, 2026 ORDER (DKT. 70)**

[Exhibits 1 through 9 attached]

[Ex Parte Application and [Proposed] Order filed concurrently]

## DECLARATION OF TRAVIS EDWARD MARTIN

I, Travis Edward Martin, declare as follows:

1. I am the Plaintiff in this action and represent myself. I have personal knowledge of the facts stated in this declaration, and if called as a witness I could and would testify to them. I submit this declaration in support of my Ex Parte Application to Vacate the September 2, 2026 Stay Order (Dkt. 73) and to Reinstate the August 14, 2026 Order (Dkt. 70).

2. I am incarcerated in the custody of the California Department of Corrections and Rehabilitation at. I litigate this action and the two Ventura County Superior Court cases described below. My mailing address for this action is 1746-F South Victoria Avenue, Suite 104, Ventura, California 93003, and my email address is Martin57290@gmail.com.

3. I filed this action on April 5, 2026. I filed the First Amended Complaint on May 24, 2026. I am the guarantor of SBA COVID-19 EIDL Loan No. 5632277910 to Entertainment Technology, LLC, and I am the sole owner of Airlink Internet, Inc., the borrower on SBA EIDL Loan No. 5642257908.

4. Attached as **Exhibit 1** is a true and correct copy of this Court's August 14, 2026 Order (Dkt. 70).

5. Attached as **Exhibit 2** is a true and correct copy of the Minute Order entered May 21, 2026 by the Honorable Dana K. Caudill, Department 21, in *Wald v. Martin*, Ventura County Superior Court Case No. 2023CUPP012195.

6. Attached as **Exhibit 3** is a true and correct copy of the Minute Order entered June 5, 2026 by Judge Caudill in Case No. 2023CUPP012195. Page 5 of that order sustains Natalie Wald's demurrer to my original cross-complaint with leave to amend limited to "the second cause of action for menacing duress against Natalie Wald," and states: "No other causes of action, nor new cross-defendants, may be added to the new cross-complaint without leave of court."

7. Attached as **Exhibit 4** is a true and correct copy of the First Amended Cross-Complaint. As the June 5, 2026 order permitted, it pleads a single cause of action for menace and duress against Natalie Wald. It pleads no claim under the Racketeer Influenced and Corrupt Organizations Act, no claim against the United States Small Business Administration, and no claim concerning my SBA loan guarantee.

8. Attached as **Exhibit 5** is a true and correct copy of the Minute Order entered July 7, 2026 by the Honorable Matthew P. Guasco, Presiding Judge, Department 22, in Case No. 2023CUPP012195, which reassigns the case for all purposes to the Honorable Ronda J. McKaig, Department 42.

9. Attached as **Exhibit 6** is a true and correct copy of the Notice of Motion and Motion for Leave to File Second Amended Cross-Complaint, with the proposed Second Amended Cross-Complaint attached as its Exhibit A, that I prepared and caused to be filed in Case No. 2023CUPP012195 on July 20, 2026, set for hearing on August 20, 2026 in Department 42. The proposed pleading asserts four state-law causes of action against Natalie Wald and James Wald: menace and duress, recovery of money obtained by wrongful threats, money had and received, and conversion. It asserts no RICO claim, no claim against the SBA, and no claim concerning the guarantee.

10. Attached as **Exhibit 7** is a true and correct copy of pages i and ii of the Notice of Motion and Motion to Declare Travis Martin a Vexatious Litigant Pursuant to C.C.P. § 391, filed by Ron Bamieh on behalf of James Wald, Natalie Wald, P.W., and Elite Sound Company, LLC in Case No. 2023CUPP012195 on August 5, 2026. The motion seeks an order requiring me to furnish security under Code of Civil Procedure section 391.3 "as a condition of proceeding with his Cross-Complaint," and its caption states "Trial date: None set." The hearing on that motion was continued by the court on August 20, 2026 to September 17, 2026, in Department 42.

11. No trial date has been set in Case No. 2023CUPP012195.

12. Attached as **Exhibit 8** is a true and correct copy of pages 1 through 3 of the Notice of Motion and Motion to Declare Travis Martin a Vexatious Litigant Pursuant to C.C.P. § 391, filed by Allen R. Ball on behalf of James Wald, Natalie Wald, Elite Sound Company LLC, and Jayson Cohen in *Martin v. Wald*, Ventura County Superior Court Case No. 2024CUNP032821, on

August 21, 2026. The complete motion is 24 pages; I have attached the notice of motion and the relief requested. The motion seeks an order requiring me to furnish security under Code of Civil Procedure section 391.3 as a condition of proceeding with my complaint in that case.

13. Attached as **Exhibit 9** is a true and correct copy of the Minute Order entered September 2, 2026 by the Honorable Ben Coats, Department 43, in Case No. 2024CUNP032821.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 8, 2026, at San Diego, California.



Travis Edward Martin

# INDEX OF EXHIBITS


| | |
|---|---|
| **Exhibit 1** | Order Re Ex Parte Application to Dissolve or Modify the Stay (Dkt. 70), entered August 14, 2026 |
| **Exhibit 2** | Minute Order, May 21, 2026, Wald v. Martin, Ventura County Superior Court Case No. 2023CUPP012195 (Dept. 21) |
| **Exhibit 3** | Minute Order, June 5, 2026, Wald v. Martin, Case No. 2023CUPP012195 (Dept. 21) |
| **Exhibit 4** | First Amended Cross-Complaint of Travis Edward Martin, dated June 14, 2026, Case No. 2023CUPP012195 |
| **Exhibit 5** | Minute Order, July 7, 2026, Wald v. Martin, Case No. 2023CUPP012195 (Presiding Judge, Dept. 22), reassigning case to Hon. Ronda J. McKaig, Dept. 42 |
| **Exhibit 6** | Notice of Motion and Motion for Leave to File Second Amended Cross-Complaint, filed July 20, 2026, Case No. 2023CUPP012195 (with proposed Second Amended Cross-Complaint) |
| **Exhibit 7** | Notice of Motion and Motion to Declare Travis Martin a Vexatious Litigant, filed August 5, 2026 by plaintiffs in Wald v. Martin, Case No. 2023CUPP012195 (pages i-ii) |

| | |
|---|---|
| **Exhibit 8** | Notice of Motion and Motion to Declare Travis Martin a Vexatious Litigant, filed August 21, 2026 by defendants in Martin v. Wald, Case No. 2024CUNP032821 (pages 1-3) |
| **Exhibit 9** | Minute Order, September 2, 2026, Martin v. Wald, Case No. 2024CUNP032821 (Dept. 43) |

# EXHIBIT 1

Order Re Ex Parte Application to Dissolve or Modify the Stay (Dkt. 70), entered August 14, 2026

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03714-WLH-DFM | Date | August 14, 2026 |
| Title | ***Travis Edward Martin et al v. United States Small Business Administration et al*** | | |

| | |
|---|---|
| Present: The Honorable | WESLEY L. HSU, United States District Judge |

| | |
|---|---|
| Claudia Garcia-Marquez | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings: (IN CHAMBERS) ORDER RE EX PARTE APPLICATION TO DISSOLVE OR MODIFY THE STAY OF DEFENDANTS' OBLIGATION TO ANSWER THE FIRST AMENDED COMPLAINT AND TO SET DATE CERTAIN FOR RESPONSIVE PLEADINGS [69]**

The Court is in receipt of Plaintiff’s *Ex Parte* Application to Dissolve or Modify the Stay of Defendants’ obligation to answer the First Amended Compliant and to Set Date Certain for Responsive Pleadings. (Application, Dkt. No. 69). Having reviewed the Application and finding good cause, the Court **GRANTS** the Application. The Court orders the stay dissolved on September 4, 2026. Defendants’ obligation to answer or otherwise respond to the First Amended Complaint is due on September 25, 2026.

**IT IS SO ORDERED.**

# EXHIBIT 2

Minute Order, May 21, 2026, Wald v. Martin, Ventura County Superior Court
Case No. 2023CUPP012195 (Dept. 21)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

Superior Court of California, County of Ventura, Hall of Justice, Department 21

**2023CUPP012195** May 21, 2026
**JAMES WALD, et al. vs TRAVIS EDWARD MARTIN, et al.** 8:20 AM

Judge: Honorable Dana K. Caudill
Judicial Assistant: Grace Powell
CSR: Mary Wu

APPEARANCES:

Charlotte Krem appearing on behalf of Ron S Bamieh, present for Plaintiff(s), Respondent(s), Cross-Defendant(s), Cross-Complainant(s) .

**NATURE OF PROCEEDINGS:** Demurrer to Cross Complaint

**NATURE OF PROCEEDINGS:** Motion to Strike Exemplary Damages from Cross-Complaint

**NATURE OF PROCEEDINGS:** Demurrer as to Cross-Defs James Wald, Natalie Wald and Elite Sound Co

**NATURE OF PROCEEDINGS:** Motion to Deem Service Complete on Defendant Airlink Internet Inc

**NATURE OF PROCEEDINGS:** Motion to Dismiss for Failure to Prosecute

**NATURE OF PROCEEDINGS:** Motion to Strike Travis Martin's First Amended Cross-Complaint

Allen Ball specially appearing, remotely via video, on behalf of defaulted defendants, Jayson Cohen and American Legacy Solutions LLC.

9:23 a.m. Court convenes in this matter.

There are no appearances by the defendant(s).

The Court orders the stay lifted from this case.

The Court provides it oral tentative ruling to grant the Motion to Deem Service Complete on Defendant Airlink Internet, Inc.

Matter submitted to Court without argument.

The Court provides it oral tentative ruling to deny the Motion to Dismiss for Failure to Prosecute.

Matter submitted to Court without argument.

The Court provides it oral tentative ruling to grant the Motion to Strike Travis Martin's First Amended Cross-Complaint.

Matter submitted to Court without argument.

The Court notes the Demurrer as to the First Amended Cross-Complaint is moot and states its intention to take the matter off-calendar.

Matter submitted to Court without argument.

The Court provides its oral tentative ruling to deny the Motion to Strike Exemplary Damages from Cross-Complaint and the Demurrer to Cross Complaint.

Matter submitted to Court with argument.

Mr. Ball sets forth his oral motion for relief from default on the 1st Amended Cross-Complaint.

The Court finds/orders:

The Court's tentative is adopted as the Court's ruling as follows:

**Motions:**

(1) Motion by Plaintiffs James Wald, et al. (collectively, "Plaintiffs") to deem service complete on Defendant Airlink Internet, Inc. ("Airlink") and for $4,715 in fees and costs (*opposed*).

(2) Motion by Defendant/Cross-Complainant Travis Edward Martin ("Defendant," "Cross-Complainant," "Martin," or "Travis" [1]), pro per, to dismiss for failure to prosecute (*opposed*);

(3) Demurrer by Plaintiffs/Cross-Defendants Natalie Wald ("Natalie"), James Wald ("James"), and Elite Sound Company, LLC ("ESC") (collectively, "Cross-Defendants") to the first amended cross-complaint ("FACC") of Defendant/Cross-Complainant Travis, pro per (*opposed*).

(4) Motion by Cross-Defendants to strike Travis's FACC (*opposed*)

**Ruling:**

(1) Plaintiffs' motion to deem service complete on Airlink is GRANTED. Plaintiffs' request for an award of $4,715 in costs and fees against Airlink, Travis Martin, or both is GRANTED in PART in the reduced amount of $60.00. The award of costs is payable to

Plaintiffs' counsel by Airlink, Travis, or both, within 30 days.

(2) Travis's motion to dismiss is DENIED.

(3) Cross-Defendants' motion to strike the FACC in its entirety is GRANTED, without leave to amend. This is without prejudice to Travis's ability to file a noticed motion for leave to amend.

(4) Cross-Defendants' demurrer to the FACC has been rendered moot by the order granting the motion to strike. Therefore, the demurrer will be taken off-calendar.

Plaintiff is to give notice within two (2) court days.

**Discussion:**

**I. <u>Plaintiffs Motion to Deem Service Complete on Defendant Airlink</u>**

To begin, Plaintiffs' request for contempt sanctions is summarily denied for failure to file a separate noticed motion for contempt sanctions. (See CCP, § 128.7, subd. (c).) This does not affect their request for an award of fees and costs under CCP section 415.30.

Next, the Court will deem service complete on Airlink if Plaintiffs show substantial compliance with the service by mail statute, and actual notice to Airlink.

Substantial compliance—not strict compliance—with the service statutes is required, and the provisions should be liberally construed to uphold jurisdiction if the defendant received actual notice. (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544–545.) "[A] finding of substantial compliance can only be sustained where (1) the record shows partial or colorable compliance with the requirement on which the objection is predicated; (2) the service relied upon by the plaintiff imparted actual notice to the defendant that the suit was pending and that he was bound to defend; and (3) the manner and objective circumstances of service were such as to make it highly likely that it would impart such notice." (*American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 391.)

When the defendant is a business entity, substantial compliance requires evidence of actual delivery to or receipt by the person(s) who may accept service for the entity under CCP sections 416.10-416.40. (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1437.)

Service has been found to be proper and in substantial compliance—despite a refusal to accept service—when the process server identified himself/herself, informed the person to be served that he/she is being served with process, and left the papers as close as possible to the person. (See *Trujillo v. Trujillo* (1945) 71 Cal.App.2d 257, 260-61.)

<u>Substantial Compliance:</u> Here, the record shows partial or colorable compliance with the requirements of the service by mail statute. The only errors with the service are limited to immaterial errors by prison staff. The first element has been met.

<u>Actual Notice:</u> Plaintiffs have shown that Airlink has actual notice of the action and the

pleadings. This is readily apparent by the fact that its agent for service of process has participated in two motions involving efforts to serve Airlink, as well as Travis's own involvement in the case as a whole.

The service relied on did result in actual notice to Airlink, via its agent for service of process, as stated above. The second element has been met.

The Manner and Objective Circumstances of Service: The manner and objective circumstances of service were such as to make it highly likely that it would impart such notice, especially given Plaintiffs' counsel's correspondence with the prison Litigation Coordinator. The third element has been met.

In sum, Plaintiffs have shown substantial compliance with the service by mail statute. It would be unjust to allow Travis's failure (or refusal) to return the notice and acknowledgment of receipt form—despite discussions and his representations to the Court at the prior hearing on 12/16/25, and the fact that he received all of the papers being served on Airlink—to prevent service on Airlink. The Court therefore will exercise its inherent, equitable powers to deem complete service by mail on Airlink. (CCP, § 128, subd. (a)(3)-(5).)

Travis's Other Arguments: Travis's ongoing assertion that CDCR regulations and a "no-contact order" prevent him from participating in litigation lacks merit. This issue has previously been raised and rejected and, as is discussed below, is no longer an issue. More importantly, this assertion does not justify Travis's failure to accept service as ordered—and as he agreed he would on the Court record at the hearing on 12/16/25—after the Court denied his motion for a protective order. Specifically, at the hearing on 12/16/25 regarding Travis's motion for a protective order prohibiting Plaintiffs from serving Airlink by delivering papers to him, as the self-designated agent for service of process on Airlink, while incarcerated, Travis stated on the record, he agreed to accept service on behalf of Airlink at the mailing address of 1746-F S. Victoria Avenue, Unit 104, Ventura, CA 93003.

Fees & Costs: The Court finds that Plaintiffs are entitled to recover their costs pursuant to CCP section 415.30, subdivision (d). Airlink (via its agent for service of process, Travis) failed to timely return the notice and acknowledgement of receipt form. As a result, Plaintiffs needed to file this motion—which is an attempt to serve Airlink by mail, by virtue of substantial compliance with the mailing statutes and actual notice to Airlink—and incurred fees and costs. CCP section 415.30 allows for the recovery of reasonable expenses incurred in serving or attempting to serve by another method. However, there is no provision for attorney fees under this section. Here, the Declaration of Ms. Krem states Plaintiffs incurred a filing fee of $60.00 for bringing this motion. No other expenses or costs are listed. The Court will award the $60.00 in costs as reasonable expenses incurred in conjunction with attempting service via an alternative method, by having to bring this motion.

## II. Motion by Defendant/Cross-Complainant Travis Martin to Dismiss for Failure to Prosecute

Travis seeks to either dismiss Plaintiffs' case, order Plaintiffs to direct CDCR to lift communication restrictions, or disqualify Plaintiffs' counsel. The basis for the motion is that an unconstitutional no contact order imposed by CDCR has thwarted his efforts to participate in

litigation and pre-trial discovery, and neither Plaintiffs nor the Court have directed CDCR to lift the restriction.

Travis's motion lacks merit. The CDCR has confirmed that the communications restrictions expired on 10/17/25. In the reply, Travis insists that the 30-day suspension of privileges was only one of two restrictions imposed, and the second restriction was an ongoing no contact directive. Travis's evidence in reply does not show that he received two separate categories of consequences. The CDCR document only includes the suspension of privileges in the "disposition" section. The additional information is simply repeating an admonishment that was delivered to Travis at the hearing. The admonishment was to cease contact with the attorneys and the victim's family, and if the behavior continues, "he will be held accountable for his options." The document further states that the attorneys did not agree to receive electronic service, and Travis was instructed to communicate through the court personnel. The communication from CDCR dated 3/17/26 clearly states that counsel is free "to communicate with MARTIN, TRAVIS at your discretion." As such, his ability to participate in litigation and discovery has not been limited.

Second, Travis cites no legal authority to support the proposition that a trial court properly exercises its discretion to dismiss a case under the 2-year statute under the facts presented here. To the extent he complains that Plaintiffs and the Court did not intervene to require CDCR to lift the restrictions, Travis submits no evidence that Plaintiffs (or, for that matter, the Court) have such authority over CDCR. Travis's failure to prosecute arguments lack merit.

Third, some of the requested relief is an attempt to seek reconsideration of his prior motions to disqualify counsel and order CDCR to lift the restrictions, which were denied in December 2025. Such motions must comply with CCP section 1008. (CCP, § 1008, subd. (e).) That statute requires, amongst other things, a declaration showing new or different facts circumstances or law, and for the motion to be filed within 10 days of service of the notice of entry of order. (CCP, § 1008, subd. (a).) Travis's motion was untimely filed, and it is not supported by a declaration of new or different facts, circumstances, or law.

In sum, Travis's motion is DENIED.

## III. Motion by Cross-Defendants to Strike Travis's FACC

Pursuant to CCP section 472, subdivision (a), Cross-Defendants move to strike the FACC that was filed on 4/7/26, on the grounds that it was improperly filed without leave to amend, and Travis failed to file a noticed motion for leave to amend as ordered by the Court on 2/2/26.

The Court will consider any untimely papers.

Cross-Defendants argue that the FACC should be stricken in its entirety because the time for Travis to amend once as a matter of right expired, and Travis did not obtain leave to amend by following the Court's order on 2/2/26, which required a noticed motion.

CCP Section 472:

> A party may amend its pleading once without leave of the court at any time before the answer, demurrer, or motion to strike is filed, or after a demurrer or motion to

> strike is filed but before the demurrer or motion to strike is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike. A party may amend the pleading after the date for filing an opposition to the demurrer or motion to strike, upon stipulation by the parties. The time for responding to an amended pleading shall be computed from the date of service of the amended pleading.

(CCP, § 472, subd. (a).)

In other words, a party may amend its pleading once as a matter of right, without leave of court, under three circumstances:

(1) No answer, demurrer, or motion to strike has been filed.

(2) A demurrer or motion to strike has been filed, but the amended pleading is filed before the date when the opposition to the demurrer or motion to strike is due.

(3) By stipulation of the parties.

Cross-Defendants are correct Travis cannot rely on CCP 472 to amend without first obtaining leave because none of these three circumstances exist. Cross-Defendants filed a demurrer and other motions challenging the original cross-complaint on 12/13/23. This precludes Travis from relying on the first circumstance listed above. The time for Travis to file an opposition to the demurrer passed in January 2023. This precludes Travis from relying on the second circumstance listed above. There is no stipulation between the parties. This precludes Travis from relying on the third circumstance listed above.

In sum, Travis could not file the FACC without first obtaining an order granting leave to amend.

2/2/26 Order & 2/4/26: The 2/2/26 order vacated the prior order allowing an oral request for leave to amend, without prejudice to Travis's ability to file a noticed motion. The Court need not rely on its inherent authority to make this order; the Court is simply stating the law with respect to seeking leave to amend. (See CCP, § 426.50.)

Contrary to Travis's assertion, the 2/4/26 order did not somehow allow him to file the FACC. The 2/4/26 order states that the original cross-complaint is the operative cross-complaint.

Conclusion: Travis filed the FACC without first filing successful noticed motion for leave to amend. It follows that the entire FACC is not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court. (See CCP, § 436, subd. (b).) An order striking the FACC is warranted.

The Court will not grant leave to amend at this time. This is without prejudice to Travis's ability to file a noticed motion for leave to amend.

## IV. Cross-Defendants' Demurrer

Since the FACC is not the operative pleading, Cross-Defendants' demurrer to the FACC has been rendered moot by the ruling on the motion to strike.

**IV. Conclusion**

Plaintiffs' motion to deem service complete on Airlink is GRANTED. Plaintiffs' request for an award of costs and fees against Airlink, Travis Martin, or both is GRANTED in PART in the reduced amount of $60.00. The award of costs is payable to Plaintiffs' counsel by Airlink, Travis, or both, within 30 days.

Travis's motion to dismiss is DENIED.

Cross-Defendants' motion to strike the FACC in its entirety is GRANTED, without leave to amend. This is without prejudice to Travis's ability to file a noticed motion for leave to amend.

Cross-Defendants' demurrer to the FACC has been rendered moot by the order granting the motion to strike. Therefore, the demurrer will be taken off-calendar.

[1] First names are used for clarity; no disrespect is intended. (See, e.g., *In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 341, fn.2.)

The Demurrer to Cross Complaint scheduled for 05/21/2026 is continued to 06/05/2026 at 08:20 AM in Department 21.

The Motion to Strike Exemplary Damages from Cross-Complaint scheduled for 05/21/2026 is continued to 06/05/2026 at 08:20 AM in Department 21.

Plaintiff's counsel is to file a supplemental declaration addressing the timely filing of the Motion to Strike and the Demurrer no later than 05/29/2026.

The Court declines to rule on Mr. Ball's oral motion and directs him to file a noticed motion.

Formal order to be submitted by Plaintiff.

Notice to be given by Plaintiff.

# EXHIBIT 3

Minute Order, June 5, 2026, Wald v. Martin, Case No. 2023CUPP012195 (Dept. 21)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

Superior Court of California, County of Ventura, Hall of Justice, Department 21

**2023CUPP012195** June 5, 2026
**JAMES WALD, et al. vs TRAVIS EDWARD MARTIN, et al.** 8:20 AM

Judge: Honorable Dana K. Caudill
Judicial Assistant: Grace Powell
CSR: Pamela Rose

APPEARANCES:

Donna Martin, Defendant, self represented, Cross-Complainant, present telephonically.

Charlotte Krem appearing on behalf of Ron S Bamieh, present for Plaintiff(s), Respondent(s), Cross-Defendant(s), Cross-Complainant(s) .

**NATURE OF PROCEEDINGS:** Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL

**NATURE OF PROCEEDINGS:** Motion for Reconsideration of January 22, 2026 Minute Order Denying Defendant's Motion for Reconsideration CCP 1008(a)

**NATURE OF PROCEEDINGS:** Motion for Judgment on the Pleadings

**NATURE OF PROCEEDINGS:** Motion TO CORRECT THE RECORD AND FOR JUDICIAL RECUSAL (RE: JANUARY 22, 2026 MINUTE ORDER)

**NATURE OF PROCEEDINGS:** Case Management Conference

**NATURE OF PROCEEDINGS:** Trial Setting Conference

**NATURE OF PROCEEDINGS:** Order to Show Cause re: Imposition of Sanctions Against Counsel for Plaintiff for Failing to Timely File Proof of Service/Enter Default, and Obtain Default Judgment as to Defendant, Airlink Internet Inc.

**NATURE OF PROCEEDINGS:** Status Conference re Status of Stay Pending Resolution of CCP § 170.1 Challenge

**NATURE OF PROCEEDINGS:** Demurrer to Cross Complaint

**NATURE OF PROCEEDINGS:** Motion to Strike Exemplary Damages from Cross-Complaint

8:54 a.m. Court convenes in this matter.

Appearances are as noted above. There are no appearance(s) by the Defendant, Travis Martin.

Court proceedings were conducted using CourtCall.

The Court inquires of Travis Martin's non-appearance.

The Court is informed that Travis Martin was present by CourtCall, but disconnected 25 minutes prior and has not reconnected.

Donna Martin addresses the Court regarding Travis Martin's non-appearance as set forth on the record.

As to the Status Conference re Status of Stay Pending Resolution of CCP § 170.1 Challenge:

The Court notes that the stay on this case was lifted 05/21/2026, therefore, the case can proceed.

As to the Order to Show Cause re: Imposition of Sanctions Against Counsel for Plaintiff for Failing to Timely File Proof of Service/Enter Default, and Obtain Default Judgment as to Defendant, Airlink Internet Inc.:

The Court notes Plaintiff's Motion to Deem Service Complete on Defendant Airlink Internet, Inc. was granted on 05/21/2026.

Airlink Internet Inc. has until 06/22/2026 to file a response.

The Court discharges the Order to Show Cause in regard to service of Defendant Airlink Internet, Inc.

The Court is inclined to continue the Order to Show Cause in regard to the entry of default of Defendant Airlink Internet, Inc.

As to the Case Management Conference:

The Court is inclined to continue the Case Management Conference.

As to the Trial Setting Conference:

The Court is inclined to address trial setting at the Case Management Conference.

As to the Motions to Correct the Record re: December 02, 2025, Minute Order, January 22, 2026, Minute Order and Judicial Recusal:

The Court cites CCP § 473(d) and provides its oral tentative ruling to deny these motions as set forth on the record.

Matter submitted to Court without argument.

As to Defendant Travis Martin's Motion for Reconsideration of January 22, 2026 Minute Order

Denying Defendant's Motion for Reconsideration (CCP § 1008(a)):

The Court provides its oral tentative ruling to deny this motion as set forth on the record.

Matter submitted to Court without argument.

As to the Motion for Judgment on the Pleadings:

The Court provides its oral tentative ruling to grant Mr. Martin's Request for Judicial Notice, deny the Motion for Judgment on the Pleadings as untimely, and sua sponte orders to strike with leave to amend as set forth on the record.

Matter submitted to Court without argument.

As to the Demurrer to Cross-Complaint:

The Court notes the declaration filed 05/29/2026.

The Court provides its oral tentative ruling to sustain the Demurrer to Cross-Complaint with leave to amend as to the second cause of action only, as set forth on the record.

Matter submitted to Court with argument.

As to the Motion to Strike Exemplary Damages from Cross-Complaint:

The Court notes the only remaining cause of action is menacing duress as to Cross-Defendant Natalie Wald and provides its oral tentative ruling to strike punitive damages claims as set forth on the record.

Matter submitted to Court without argument.

The Court finds/orders:

As to the Order to Show Cause:

Order to Show Cause re: Imposition of Sanctions Against Plaintiff's Counsel for Failure to Enter Default as to Defendant Airlink Internet, Inc is scheduled for 08/25/2026 at 08:35 AM in Department 21 at Hall of Justice.

If there has been no response or entry of default as to Defendant Airlink Internet, Inc. by the next hearing, a declaration must be submitted by Plaintiff's counsel at least 5 days prior to the hearing addressing the status of response or entry of default and why the Court should not impose sanctions.

As to the Case Management Conference:

Case Management Conference is scheduled for 08/25/2026 at 08:35 AM in Department 21 at Hall of Justice.

As to the Trial Setting Conference: Matter is off calendar. No action is needed at this time.

As to the Motions to Correct the Record re: December 02, 2025, Minute Order, January 22, 2026, Minute Order and Judicial Recusal:

The Motion to Correct the Record and for Judicial Recusal (Re: December 02, 2025, Minute Order) filed by Travis Martin is DENIED.

The Motion to Correct the Record and for Judicial Recusal (Re: January 22, 2026, Minute Order) filed by Travis Martin is DENIED.

The Court finds Travis Martin has not shown grounds for recusal and denies his informal requests/motions for recusal.

As to Defendant Travis Martin's Motion for Reconsideration of January 22, 2026 Minute Order Denying Defendant's Motion for Reconsideration CCP 1008(a):

The Motion for Reconsideration of January 22, 2026 Minute Order Denying Defendant's Motion for Reconsideration (CCP § 1008(a)); (Alternative Request for Vacatur Under CCP § 473(d), and the Court's Inherent Authority filed by Travis Martin is DENIED.

As to the Motion for Judgment on the Pleadings:

Request for Judicial Notice is GRANTED.

The Court finds the Motion to Strike is untimely.

The Motion for Judgment on the Pleadings (CCP § 438) as to Plaintiff Elite Sounds Company LLC and Motion to Strike (CCP § 436) filed by Travis Martin are DENIED.

The Court GRANTS the Plaintiff leave to amend to correct the misspelled name of Elite Sounds Company LLC.

The Court, sua sponte, finds reference to sodomy inaccurate as Travis Martin was convicted of 288.7(b) PC rather than 288.7(a) PC, and strikes the word "sodomy", and grants Plaintiff leave to amend.

The Court finds Travis Martin's objections to reference to conviction of 288.7(b) PC are unfounded, as the allegation is true, supported by Travis Martin's request for judicial notice and DENIES the request to strike.

Plaintiff is granted 10 days leave to amend to correct the misspelled name and to strike the word "sodomy".

As to the Demurrer to Cross-Complaint:

The Court finds the Demurrer to Cross-Complaint was filed timely.

The Court takes judicial notice of the records in Travis Martin's criminal case and the decision on appeal (B325048).

The Court SUSTAINS Cross-Defendant Natalie Wald's Demurrer to Cross-Complaint to Travis Edward Martin's Cross-Complaint WITH LEAVE TO AMEND.

Leave to amend is limited to the second cause of action for menacing duress against Natalie Wald solely on the factual theory currently alleged in the original Cross-Complaint.

No other causes of action, nor new cross-defendants, may be added to the new cross-complaint without leave of court.

The Cross-Complainant is granted 10 days leave to amend.

As to the Motion to Strike Exemplary Damages from Cross-Complaint:

The Motion to Strike Exemplary Damages from Cross-Complaint filed by Natalie Wald and James Wald is GRANTED as it is timely.

The Court strikes the entirety of punitive damages claims without leave to amend, as to Cross-Defendant James Wald only.

The Court strikes the entirety of punitive damages with leave to amend, as to Cross-Defendant Natalie Wald only.

Leave to amend is limited to the punitive damages claim against Natalie Wald in connection with the only remaining cause of action, menacing duress.

The Court notes the Cross-Complaint is devoid of any specific allegations showing malice, oppression, or fraud, and there is no indication that Natalie Wald was not acting in good faith.

Notice is to be given by Ms. Krem within five court days.

# EXHIBIT 4

First Amended Cross-Complaint of Travis Edward Martin, dated June 14, 2026, Case No. 2023CUPP012195

Travis Edward Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

VENTURA SUPERIOR COURT
FILED
06/15/2026
K. Bieker
Executive Officer and Clerk
Lauralei Jensen

Ventura Superior Court transmitted through eFiling 06/17/2026 10:47:11 AM

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF VENTURA**

JAMES WALD, an individual; NATALIE WALD, an individual; P.W., a minor, by and through Guardian ad Litem JAMES WALD; and ELITE SOUNDS COMPANY, LLC

Plaintiffs,

v.

TRAVIS EDWARD MARTIN, an individual; DONNA MARTIN, an individual; AIRLINK INTERNET, INC., a California corporation; and DOES 1–100,

Defendants.

---

TRAVIS EDWARD MARTIN,

Cross-Complainant,

v.

NATALIE WALD, an individual,

Cross-Defendants.

**Case No.: 2023CUPP012195**

**FIRST AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN FOR:**

**1. MENACE AND DURESS**

**DEMAND FOR JURY TRIAL**

**PRELIMINARY OBJECTION TO COURT'S JURISDICTION AND RESERVATION OF RIGHTS**

1. Cross-Complainant Travis Edward Martin hereby objects, on jurisdictional grounds, to any purported authority of this Court to strike, nullify, limit, or otherwise interfere with his previously filed First Amended Cross-Complaint. At the time of the Court's May 21, 2026 ruling striking that pleading, the Court was subject to a pending verified statement of disqualification. Under Code of Civil Procedure sections 170.3(c) and 170.4(d), the challenged judicial officer had no power to adjudicate contested law-and-motion matters until the disqualification question was determined by a judicial officer lawfully empowered to decide it.

2. The May 21, 2026 strike order is void, ultra vires, and a jurisdictional nullity. Mr. Martin does not recognize that order as a valid adjudication of his pleading rights. A court acting under a pending disqualification challenge cannot lift a stay, adopt a tentative ruling, decide a contested motion, strike a pleading, impose derivative consequences, or manufacture a procedural default by proceeding as though section 170.4(d) did not exist.

3. The defect is not harmless and not mere procedural housekeeping. It is a statutory power defect. Section 170.4(d) strips a disqualified judge of power to act after the filing of a statement of disqualification, except for the narrow acts authorized by section 170.4. A contested motion to strike a cross-complaint is not a default matter, not a settlement conference, not a ministerial setting act, and not an act necessary to maintain jurisdiction. It is a contested merits adjudication.

4. The Court's interference also invaded Mr. Martin's statutory amendment rights. Mr. Martin exercised his right to amend his pleading as a matter of law in response to Cross-Defendants' demurrer and motion practice. This court had absolutely zero rights and/or authority to violate Mr. Martin's statutory right to file an amended complaint in response to cross-defendants' demurrer. It's more evidence of the shameful judicial misconduct this court continues to engage in.

5. This First Amended Cross-Complaint is filed under protest. It is filed only to preserve Mr. Martin's claim, to comply with the Court's purported amendment deadline and discovery schedule, and to prevent Cross-Defendant Natalie Wald from arguing forfeiture or noncompliance. Nothing in this filing waives Mr. Martin's objection that the May 21, 2026 order striking the prior First Amended

Cross-Complaint is void. Nothing in this filing waives any objection to the Court's lack of jurisdiction to rule on contested motions while the disqualification challenge was pending.

6. Mr. Martin further objects to the Court's purported June 5, 2026 restriction that leave to amend is limited to the second cause of action for menacing duress against Natalie Wald only and solely on the factual theory currently alleged in the original Cross-Complaint. Mr. Martin files this version to conform to that restriction under protest only. The court had absolutely zero authority to limit leave to amend. This is early pleading in this case, and leave to amend is liberally permitted, including adding defendants and causes of action. Especially considering trial has not been set

7. This pleading is a court-compelled placeholder. Mr. Martin will file a noticed motion for leave to amend to add all proper parties, and to plead the fuller claims and theories supported by the record. This placeholder filing does not concede that the Court's limitations are lawful, does not abandon any party or theory previously asserted, and does not waive any pending or future request to vacate void orders, restore the status quo, disqualify the challenged judicial officer, or obtain writ relief.

8. The transcript citations below refer to the certified reporter's transcript in People v. Martin, Ventura Superior Court Case No. 2021029627, Court of Appeal No. B325048, cited as "RT" by volume date, page, and line. Mr. Martin pleads the transcript excerpts only to supply factual detail supporting the same menacing-duress theory already alleged. He does not plead this Cross-Complaint to relitigate the criminal judgment.

**PARTIES**

9. Cross-Complainant Travis Edward Martin ("Martin") is an individual, a Defendant in the main action, and the Cross-Complainant in this pleading. He appears in propria persona.

10. Cross-Defendant Natalie Wald ("Natalie") is an individual. At all relevant times, Natalie resided in or conducted the acts alleged in Ventura County, California.

11. James Wald is not named as an operative cross-defendant in this pleading solely because the Court's purported June 5, 2026 amendment restriction states that leave to amend is limited to Natalie Wald only. References to James Wald, the Wald household, or the Wald children are factual allegations concerning the money, benefits, motive, timing, and context of Natalie's menace and duress. James Wald will be added in the leave of court amended complaint.

12. Martin is informed and believes, and on that basis alleges, that Natalie acted individually and, where alleged, as a person demanding, receiving, directing, using, retaining, or benefiting from money and property conferred by Martin to or for Natalie, her children, the Wald household, and related expenses.

## JURISDICTION, VENUE, AND SCOPE

13. This is an unlimited civil action. The amount in controversy exceeds the jurisdictional minimum for an unlimited civil case. Venue is proper in Ventura County because the underlying action is pending in this Court, the transactions and injuries occurred in Ventura County, and Natalie resides in, conducted acts in, or caused injury in Ventura County according to proof.

14. This Cross-Complaint arises out of the same transactions, occurrences, and series of transactions or occurrences alleged in the original Cross-Complaint, including the transfer of money and property from Martin to or for Natalie and the Wald household, the threatened accusation used to obtain those transfers, and the parties' dispute over money, control, and economic benefits.

15. This pleading contains one cause of action for menace and duress, rescission, restitution, and related relief against Natalie Wald. The claim is pleaded under Civil Code sections 1567, 1570, 1689, 1691, and 1692, with punitive damages against Natalie only under Civil Code section 3294 to the extent permitted by the Court's June 5, 2026 order.

16. This pleading does not seek personal-injury damages for incarceration, emotional distress, or reputational harm. It seeks recovery of money, property, payments, and benefits that Natalie obtained, demanded, directed, used, retained, or caused Martin to confer through menace and duress, plus interest, punitive damages to the extent legally available, and equitable relief necessary to restore the status quo.

## GENERAL ALLEGATIONS

17. Before P.W. was born and throughout the relationship between Martin and the Wald family, Natalie knew of Martin's prior criminal conviction, his registration status, and the catastrophic consequences that any accusation involving a minor would have for him. Natalie testified that she knew about Martin's prior case, knew he was a registered sex offender, and had looked him up online after Donna Martin told her about the matter. (RT Vol. 8, Sept. 20, 2022, 791:16-24; 792:18-24.)

18. Natalie also testified that she had this knowledge before she had children and before Martin spent any time with her children. (RT Vol. 8, Sept. 20, 2022, 793:5-7.) That knowledge gave Natalie unusual coercive leverage. She knew that threatening a report of a similar accusation would not function like an ordinary argument. It would threaten injury to Martin's character, liberty, business relationships, and practical ability to defend himself.

19. Natalie nevertheless allowed and benefited from Martin's continuing involvement with her family. She testified that Martin took the children once a week and then twice a week, that he offered to take them so Natalie and James could have a date night, and that the arrangement was helpful. (RT Vol. 8, Sept. 20, 2022, 794:9-20.)

20. Natalie also testified that Martin helped the Wald family financially. Martin paid Ethan's private-school tuition through November 2021, helped with Payton's tuition, and paid or helped pay tuition on a graduated schedule. (RT Vol. 8, Sept. 20, 2022, 795:6-28; 796:1-28; 797:1-13.) Natalie further testified that the Wald family received other financial assistance, including money for rent, cell phone bills, car insurance, trips, Target, Build-A-Bear, Disneyland, June Lake, Magic Mountain, Knott's Berry Farm, and other benefits. (RT Vol. 8, Sept. 20, 2022, 797:14-18; 798:1-10; 799:9-28; 800:1-14.)

21. In cross-examination, Natalie admitted that Martin and his wife paid Ethan's tuition completely and that Martin continued paying Ethan's Missionary School tuition until 2021. (RT Vol. 9, Sept. 21, 2022, 974:9-18.) When asked to estimate money Martin gave to Natalie, James, Ethan, Payton, or paid on their behalf, Natalie acknowledged tuition alone of approximately $48,000 before other monetary benefits, while the questioning referenced bank records exceeding $100,000. (RT Vol. 9, Sept. 21, 2022, 976:3-25; 977:1-4.)

22. The prosecution itself recognized that Natalie and James were financially dependent on Martin and that the money, trips, babysitting, and business benefits were central credibility facts. And that they relied on Martin for help caring for their children and "also financially," because he "helped them financially for years." (RT Vol. 6, Sept. 14, 2022, 367:26-28; 368:1-7.)

23. In closing argument, the prosecutor described Payton's parents as "weak, selfish parents" and "selfish adults" who "put themselves ahead of the child," "put their own wants and desires first,"

and put their friendship with Martin, babysitting, trips they could not afford, and the sound-company side job ahead of their daughter. (RT Vol. 13, Sept. 29, 2022, 1727:7-25.)

24. The same financial dependence became the engine of Natalie's menace. When disputes arose over money, continued payments, tuition, gifts, trips, insurance, phone bills, accounting compensation, business work, or the continued flow of benefits, Natalie used her knowledge of Martin's prior conviction as a weapon. She threatened to accuse him of sexually abusing P.W. and to involve law enforcement unless Martin continued providing money, benefits, or favorable financial treatment.

25. Natalie's admissions on cross-examination confirm the threat. She admitted that in October 2021, before P.W. allegedly told her anything in November, she accused Martin of doing something to her daughter and said she could get the police involved. (RT Vol. 9, Sept. 21, 2022, 1025:13-28; 1026:1-6.)

26. Natalie then admitted the critical coercive point. Defense counsel asked whether, before P.W. told Natalie something happened, Natalie's statement about getting the police involved was "more or less a threat." Natalie answered, "Yes." Counsel then asked whether, if Natalie did not know he did something and P.W. had not told her he had done something, saying "I'm getting the cops involved" would be a threat. Natalie answered, "Right." (RT Vol. 9, Sept. 21, 2022, 1026:7-14.)

27. Natalie further admitted that, because Martin had a prior history she knew about, reporting that something similar was occurring would make others likely to believe it because of the prior conduct, and that the threat carried weight. (RT Vol. 9, Sept. 21, 2022, 1026:15-28; 1027:1-9.) That testimony is the factual core of this cause of action. Natalie knew exactly why the threat worked and why it would coerce Martin.

28. The certified transcript also records the specific October 31 threat. Defense counsel asked Natalie: "On October 31st you said, I'll get you, sucker. One phone call is all it will take. My pride is bigger than yours. Who do you think they'll believe?" When asked whether she remembered saying that statement "pretty close to it, if it's not word for word," Natalie answered: "I very well could have." (RT Vol. 9, Sept. 21, 2022, 1028:13-21.)

29. Natalie admitted another threatening phrase from the same intimidation campaign. When asked, "How about nobody's going to make a canoe out of me?" Natalie answered, "Yes." She

explained that the phrase meant: "Nobody's going to make a fool out of me, nobody's going to make me go down because they're going down." (RT Vol. 9, Sept. 21, 2022, 1028:25-28; 1029:1-3.)

30. Counsel then linked the threat to its practical effect: Natalie had told Martin that if she reported him to police, it would be effective and would get him in trouble. Natalie admitted, "Yes." (RT Vol. 9, Sept. 21, 2022, 1029:4-9.) Later, when asked whether she had talked to Martin about "I'm gonna get you, sucker," Natalie testified that she did not remember saying that in a hotel-room conversation but "very well could have said something like that" in response to Martin telling her, "I'll show you I have a pair." (RT Vol. 9, Sept. 21, 2022, 1046:18-28.)

31. These were not casual insults. They were threats of criminal accusation and injury to character, delivered by a person who admitted she knew the accusation would carry special weight because of Martin's prior history. Natalie understood that one phone call would likely trigger immediate suspicion, police involvement, arrest risk, destruction of reputation, loss of liberty, and loss of business control. She used that leverage to extract and preserve money and benefits.

32. The threats were tied to money. Natalie admitted that around November 3, 2021, Martin discussed cutting financial ties connected to her accounting work and the Wald family's cell phone coverage. She admitted that the phone and car-insurance benefits were approximately $400 per month, almost $5,000 per year. (RT Vol. 9, Sept. 21, 2022, 979:13-28.)

33. On November 3, 2021, Natalie called Martin and asked him to come over. During that conversation, Martin discussed moving the accounting to his mother and creating a separation so that "there will be nothing financial between" Martin and Natalie while the friendship was being addressed. Natalie remembered the conversation occurred. (RT Vol. 9, Sept. 21, 2022, 1031:6-23.)

34. The same evening, Natalie was asked whether she asked how she and James could get the company if something happened to Martin. Natalie answered, "I could have. I don't remember." She was then asked whether Martin explained that a loan based on the company's financials might be a way to buy the company.

35. On or about November 5, 2021, less than 36 hours after Martin attempted to end the financial relationship, Natalie carried out the threatened accusation by reporting sexual-abuse allegations to law enforcement. The actionable wrong pleaded here is not the later police report itself.

The actionable wrong is the pre-report use of threatened accusation and threatened injury to character to obtain or preserve money, property, tuition, trips, benefits, services, accounting compensation, phone and insurance payments, and other economic advantages.

36. Before the threats, some benefits Martin provided may have been voluntary. After Martin attempted to reduce, restrict, or end the flow of money and benefits, Natalie used the threat of accusation as a collection device. The challenged transfers occurred after Martin's apparent consent was overborne by fear that Natalie would make one phone call that would destroy his character and liberty.

37. The challenged transactions include, without limitation, tuition payments, cash transfers, travel and lodging expenses, gifts, household benefits, accounting-related benefits, phone and insurance payments, goods, services, reimbursements, and other financial transfers made to Natalie, for Natalie, or at Natalie's demand, direction, or benefit, according to proof.

38. The challenged transactions were not gifts to the extent they were obtained after and because of Natalie's threats. A coerced transfer does not become voluntary because the recipient calls it generosity. Nor is forbearance from making a threatened criminal accusation lawful consideration for money or property.

39. The challenged transactions were not voluntary family support. Martin had no legal obligation to pay the Wald children's private-school tuition, pay Natalie or her household expenses, fund trips, pay cell phone bills or car insurance, provide cash, or finance lifestyle benefits.

40. The threats constituted menace because they threatened injury to Martin's character within the meaning of Civil Code section 1570. They also constituted duress because they were used to overcome Martin's will and compel economic transfers he otherwise would not have made.

41. Martin did not promptly rescind earlier because the menace was ongoing, the threatened accusation was later carried out, and his ability to access records, communicate, investigate, and protect his civil rights was materially impaired by incarceration and by the very harm threatened. He pleads relation back to the original Cross-Complaint and delayed discovery, continuing duress, equitable tolling, and equitable estoppel to the extent necessary.

42. Service of this First Amended Cross-Complaint constitutes notice of rescission and an offer to restore anything of value that Martin actually received under the challenged transactions, if any, on

condition that Natalie restore all money, property, and benefits she received, demanded, directed, used, retained, or caused Martin to confer by reason of the menace and duress. Martin alleges that he received no lawful value other than temporary delay in threatened wrongful conduct.

43. The amounts obtained are presently known to Natalie and will be proven according to proof through testimony, bank records, school records, credit-card records, travel records, receipts, phone and insurance records, text messages, emails, company records, and discovery. The original pleading alleged extensive testimony concerning private-school tuition, gifts, trips, and approximately $250,000 in cash or benefits coming from Martin to the Wald family.

44. Martin seeks restitution, rescission, disgorgement, prejudgment interest, and such other complete relief as is necessary to restore him, as far as possible, to the position he occupied before the coerced transfers. Martin also seeks punitive damages against Natalie only because the threats were intentional, malicious, oppressive, and designed to deprive Martin of property and legal rights by exploiting his fear of imprisonment and character destruction.

## CAUSE OF ACTION

**MENACE AND DURESS / RESCISSION / RESTITUTION**

**(Civil Code sections 1567, 1570, 1689, 1691, and 1692)**

**(Against Cross-Defendant Natalie Wald)**

45. Martin incorporates by reference paragraphs 1 through 44 as though fully set forth here.

46. Civil Code section 1567 provides that apparent consent is not real or free when obtained through duress or menace. Martin's apparent consent to the challenged payments and transfers was obtained through duress and menace.

47. Civil Code section 1570 defines menace to include a threat of injury to character. Natalie's admitted October 2021 threat to involve police before P.W. allegedly told her anything, her admission that the threat carried weight because of Martin's prior history, and her admission that she very well could have said, "I'll get you, sucker. One phone call is all it will take. My pride is bigger than yours. Who do you think they'll believe?" constitute direct factual allegations of menace and duress.

48. Natalie intended those threats to place Martin in fear and to affect his conduct. She knew Martin's history, knew his fear of being sent back to prison, knew the catastrophic consequences of a

new accusation involving a minor, and deliberately used that fear while the parties were fighting over money, accounting, cell phone coverage, car insurance, tuition, trips, and other financial benefits.

49. The transactions subject to rescission include every cash payment, tuition payment, travel charge, lodging payment, consumer purchase, gift, goods or services payment, phone or insurance payment, household expense payment, accounting-related benefit, and other financial transfer Martin made to or for Natalie, or at Natalie's demand, direction, or benefit, because of the threatened-accusation scheme.

50. Martin's will was overcome. He did not pay because he believed Natalie was entitled to the money. He paid because he reasonably feared that if he refused, Natalie would make the threatened accusation, injure his character, destroy his business and relationships, and cause him to be arrested or imprisoned.

51. The threats were a substantial factor in causing Martin to make the challenged payments and transfers. Without the threats, Martin would not have continued paying tuition, cash demands, trips, gifts, phone bills, insurance, household expenses, services, and other benefits after he decided to restrict or end his generosity.

52. Natalie was unjustly enriched by those transactions. Equity and law require restoration of the money, property, and benefits obtained through menace and duress.

53. Pursuant to Civil Code section 1689(b)(1), Martin is entitled to rescind the challenged transactions because his consent was obtained through duress and menace exercised by Natalie.

54. Pursuant to Civil Code section 1691, service of this pleading constitutes notice of rescission and any required offer to restore. Martin offers to restore anything of cognizable lawful value he received from Natalie under the challenged transactions, according to proof and on condition that Natalie restore all money and property obtained from Martin by reason of the menace-and-duress scheme.

55. Pursuant to Civil Code section 1692, Martin seeks complete relief based on rescission, including restitution of benefits conferred, consequential relief necessary to restore the status quo, prejudgment interest, and equitable adjustment necessary to prevent Natalie from retaining the fruits of coerced transactions.

56. Martin seeks restitution and disgorgement of all funds paid and laid out under duress and menace, including approximately $250,000 in cash or benefits according to proof, private-school tuition payments, trips, lodging, gifts, goods, services, phone and insurance payments, household expenses, and all other payments or benefits conferred to or for Natalie, or at Natalie's demand, direction, or benefit.

57. Martin seeks punitive damages against Natalie only, to the extent permitted by Civil Code section 3294 and the Court's purported June 5, 2026 order allowing amendment of punitive damages as to Natalie in connection with menacing duress. Natalie acted with malice, oppression, and fraud by intentionally weaponizing threatened accusation and injury to character to obtain property, by exploiting Martin's fear of prison, and by doing so with conscious disregard of Martin's rights.

58. As a direct and proximate result of Natalie's menace and duress, Martin has suffered loss of money and property in an amount according to proof, including the transfers described above, prejudgment interest, and additional relief necessary to restore the status quo.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant Travis Edward Martin prays for judgment against Cross-Defendant Natalie Wald as follows:

1. For rescission of all transactions by which Martin paid, transferred, or conferred money, tuition, cash, gifts, trips, goods, services, phone or insurance payments, household payments, accounting-related benefits, or other financial benefits to or for Natalie Wald, or at Natalie Wald's demand, direction, or benefit, as a result of menace and duress;

2. For restitution, disgorgement, and restoration of all money and property obtained through menace and duress, including approximately $100,000 in cash or benefits according to proof, private-school tuition payments, travel expenses, lodging expenses, gifts, goods, services, phone and insurance payments, household expenses, and all other payments and benefits according to proof;

3. For prejudgment interest and postjudgment interest according to law;

4. For consequential relief, equitable adjustment, constructive trust, equitable lien, tracing, accounting, and any other relief necessary to restore the status quo and prevent Natalie Wald from retaining the fruits of transactions procured by menace and duress;

5. For punitive and exemplary damages against Natalie Wald only, according to proof and to the extent available by law;

6. For costs of suit; and

7. For such other and further relief as the Court deems just and proper.

Dated: June 14, 2026

/s/ TRAVIS EDWARD MARTIN

Travis Edward Martin

Defendant and Cross-Complainant, In Pro Per

**DEMAND FOR JURY TRIAL**

Cross-Complainant Travis Edward Martin demands trial by jury on all issues so triable.

Dated: June 14, 2026

/s/ TRAVIS EDWARD MARTIN

Travis Edward Martin

Defendant and Cross-Complainant, In Pro Per

# EXHIBIT 5

Minute Order, July 7, 2026, Wald v. Martin, Case No. 2023CUPP012195 (Presiding Judge, Dept. 22), granting C.C.P. § 170.6 challenge and reassigning case to Hon. Ronda J. McKaig, Dept. 42

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

Superior Court of California, County of Ventura, Hall of Justice, Department 22

**2023CUPP012195** July 7, 2026
**JAMES WALD, et al. vs TRAVIS EDWARD MARTIN, et al.** 4:44 PM

Judge: Honorable Matthew P. Guasco
Judicial Secretary: Tammy Brantner
CSR: None

APPEARANCES:

**NATURE OF PROCEEDINGS:** In Re Filing of Disqualification of Judge (CCP Section 170.6)

The matter having been referred to the Presiding Judge for review, the court finds as follows:

Defendant Airlink Internet, Inc. 170.6 CCP against Judge Dana K. Caudill is granted.

The Court having reviewed the CCP 170.6 filed in this proceeding and found said filing to be timely, the Court orders this matter reassigned for all purposes to Judge Ronda J. McKaig in Department 42.

Unless notified otherwise, all currently scheduled hearings will remain on the same date and time in the new department.

# EXHIBIT 6

Notice of Motion and Motion for Leave to File Second Amended Cross-Complaint, filed July 20, 2026, Case No. 2023CUPP012195 (with proposed Second Amended Cross-Complaint)

Ventura Superior Court transmitted through eFiling 07/20/2026 09:50:26 AM

Travis Edward Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

ELECTRONICALLY FILED
Superior Court of California
County of Ventura
07/20/2026
K. Bieker
Executive Officer and Clerk
By: ____________ Deputy Clerk
Natalie Rosete

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF VENTURA**

JAMES WALD; NATALIE WALD; P.W., a minor, by and through Guardian ad Litem JAMES WALD; and ELITE SOUND COMPANY LLC,

Plaintiffs,

v.

TRAVIS EDWARD MARTIN; DONNA MARTIN; AIRLINK INTERNET, INC.; and DOES 1 through 100,

Defendants.

TRAVIS EDWARD MARTIN,

Cross-Complainant,

v.

NATALIE WALD, an individual; and JAMES WALD, an individual,

Cross-Defendants.

**Case No.: 2023CUPP012195**
Assigned to: Hon. Ronda J. McKaig, Dept. 42

**NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED CROSS-COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF TRAVIS EDWARD MARTIN**
[Exhibit A: [Proposed] Second Amended Cross-Complaint]

Date: August 20, 2026
Time: 8:30 a.m.
Dept.: 42
Complaint Filed: August 8, 2023
Trial Date: None Set

**NOTICE OF MOTION AND MOTION**

TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 20, 2026, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department 42 of the above-entitled Court, Defendant and Cross-Complainant Travis Edward Martin ("Martin") will and hereby does move the Court for leave to file the [Proposed] Second Amended Cross-Complaint attached as Exhibit A.

The motion is made under Code of Civil Procedure sections 473, subdivision (a)(1), 576, and 426.50, and rule 3.1324 of the California Rules of Court, on the grounds that the proposed pleading conforms this action to the Court of Appeal's decision in *Wald v. Martin* (June 16, 2025, B335960) [nonpub. opn.], which reinstated Martin's menacing-duress claim; that the proposed amendments arise from the same general set of facts alleged in Martin's original Cross-Complaint filed October 18, 2023; that James Wald is not a new party; and that no party can claim prejudice at this stage: no answers to the operative First Amended Complaint are on file, three demurrers to it are pending, no discovery has been taken, and no trial date has been set.

The motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached Declaration of Travis Edward Martin, the [Proposed] Second Amended Cross-Complaint attached as Exhibit A, all pleadings and records on file in this action, and any further evidence or argument the Court may consider at the hearing.

Dated: July 19, 2026

[signature]

Travis Edward Martin

Defendant and Cross-Complainant, In Pro Per

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The Court of Appeal reinstated Martin's menacing-duress claim against Natalie Wald and adopted the legal framework that makes it viable. It held that the claim does not rest on protected activity because Natalie's alleged statements "essentially functioned as a promise not to speak publicly in exchange for money"; that menace under Civil Code sections 1566, 1567, and 1570 is "effectively the civil version of extortion" (quoting *Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 525); that under *Morrill v. Nightingale* (1892) 93 Cal. 452, 456, "it is entirely immaterial whether such person is guilty or innocent of the crime to be charged"; and that Natalie's "subsequent report to law enforcement, which qualifies as protected activity, does not propagate backward in time." (*Wald v. Martin* (June 16, 2025, B335960) [nonpub. opn.].) This motion asks the Court to let Martin plead that reinstated, viable claim in full, together with the recovery counts that arise from the same facts, in the pleading the Court of Appeal's decision contemplates.

This is the noticed motion this Court's June 5, 2026 order prescribed. That order limited the immediate amendment to the menacing-duress claim against Natalie Wald and directed that "[n]o other causes of action, nor new cross-defendants, may be added to the new cross-complaint without leave of court." (June 5, 2026 Order.) The First Amended Cross-Complaint filed June 15, 2026 was the placeholder that limited leave allowed, never the endpoint. Martin now seeks the leave the order requires. Nothing in the proposed pleading is new to anyone: James Wald was a cross-defendant in the original Cross-Complaint filed October 18, 2023, and every fact pleaded arises from the same money, the same threats, and the same November 2021 sequence that Cross-Complaint alleged. Leave is liberally granted, no one is prejudiced, and denying it would strand the very claim the Court of Appeal revived.

**II. PROCEDURAL POSTURE: THE CASE IS AT ITS EARLIEST STAGE**

Plaintiffs filed their Complaint on August 8, 2023. Martin filed his original Cross-Complaint on October 18, 2023, naming James Wald, Natalie Wald, and P.W. as cross-defendants and alleging five causes of action, including menacing-duress and conspiracy. That pleading alleged "the private school tuition, gifts, trips, and $100k cash that came from Travis Martin to The Wald family"; alleged that

when Natalie and Martin "would fight about money she would threaten to call the police and report him"; alleged Martin's November 3, 2021 statement that "there will be nothing more financial between us" and Natalie's report "less than 36 hours later"; and sought "recovery of all funds paid and laid out under duress and menace by Natalie Wald according to proof." (Original Cross-Complaint, filed Oct. 18, 2023, Causes of Action #2, #3.)

The trial court struck the Cross-Complaint under the anti-SLAPP statute. On June 16, 2025, the Court of Appeal reversed as to menacing-duress and reversed the attorney fee award: "The trial court's order granting the anti-SLAPP motion is reversed as to the cause of action denominated 'MENACING-DURESS.'" (*Wald v. Martin*, *supra*, B335960.) On June 5, 2026, this Court sustained a demurrer to the reinstated claim with leave to amend limited "to the second cause of action for menacing duress against Natalie Wald solely on the factual theory currently alleged in the original Cross-Complaint," directed that no other causes of action or cross-defendants be added "without leave of court," and granted leave as "to the punitive damages claim against Natalie Wald." (June 5, 2026 Order.) Martin filed the First Amended Cross-Complaint on June 15, 2026 within that limited leave, and now brings this motion for the leave the order requires.

The action remains at the pleading stage. Martin has not answered the First Amended Complaint. Airlink Internet, Inc. has not answered it. Three demurrers to the First Amended Complaint are pending and must be resolved regardless of this motion. Natalie Wald's demurrer and motion to strike directed at the First Amended Cross-Complaint are set for August 24, 2026. No discovery has been taken. No trial date has been set. The 2023 filing date reflects the time consumed by the anti-SLAPP order and the appeal, not litigation progress. Procedurally, this case is at the beginning.

**III. LEAVE TO AMEND IS LIBERALLY GRANTED**

The Court "may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading." (Code Civ. Proc., § 473, subd. (a)(1); see § 576.) That discretion "should be exercised liberally in favor of amendments, for judicial policy favors resolution of all disputed matters in the same lawsuit." (*Kittredge Sports Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, 1047.) It "is a rare case in which 'a court will be justified in refusing a party leave to amend his pleadings so that he may properly present his case.'" (*Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530.) "If the

motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where the refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of discretion." (*Ibid*.)

New theories change nothing: "it is irrelevant that new legal theories are introduced as long as the proposed amendments 'relate to the same general set of facts.'" (*Kittredge*, *supra*, 213 Cal.App.3d at p. 1048, quoting *Hirsa v. Superior Court* (1981) 118 Cal.App.3d 486, 489; see *Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600-601.) Delay alone changes nothing: "it is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment." (*Kittredge*, at p. 1048, citing *Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 564-565.) And doubts about the merits change nothing: "the preferable practice would be to permit the amendment and allow the parties to test its legal sufficiency by demurrer, motion for judgment on the pleadings or other appropriate proceedings." (*Kittredge*, at p. 1048.) "Leave to amend should be denied only where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but under substantive law, no liability exists and no amendment would change the result." (*Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1428, quoting *Edwards v. Superior Court* (2001) 93 Cal.App.4th 172, 180.) For the cross-claims here, Code of Civil Procedure section 426.50 goes further: a party who has failed to plead a related cause of action may seek leave "at any time during the course of the action," the court "shall grant" it on a showing of good faith, and the statute "shall be liberally construed to avoid forfeiture of causes of action." (Code Civ. Proc., § 426.50.)

## IV. THE PROPOSED PLEADING CONFORMS TO THE COURT OF APPEAL'S DECISION

The proposed Second Amended Cross-Complaint pleads exactly the conduct the Court of Appeal held unprotected and actionable: pre-report threats of criminal accusation used to obtain and keep money. It pleads the threats in Natalie's own sworn words, with pin citations to the certified reporter's transcript of the criminal trial, including her admissions that her October 2021 accusation was "more or less a threat," that the threat "carried some weight" because of Martin's history, and that she "very well could have" said "I'll get you, sucker. One phone call is all it will take. My pride is bigger than yours. Who do you think they'll believe?" (Proposed SACC ¶¶ 29-33.) It pleads the

demand-and-payment sequence to the day: the tuition payments running monthly through the threat window, the cutoff on November 3, 2021, and the report approximately 36 hours later. (Proposed SACC ¶¶ 14-23, 34-36.) And it expressly disclaims any liability based on the report, on any statement to law enforcement, or on any testimony, confining the claims to the pre-report coercion. (Proposed SACC ¶ 5.) That is the precise line the Court of Appeal drew: the report "does not propagate backward in time" to protect the menace that preceded it.

Plaintiffs' lead attack on this claim is already decided. Their pending demurrer to the First Amended Cross-Complaint argues, first and foremost, that a threat to report suspected misconduct cannot be an unlawful threat. The Court of Appeal eliminated that argument in this very case: menace under section 1570 includes threats of injury to character, threats of criminal accusation and imprisonment are exactly that, and the truth of the accusation is "entirely immaterial." (*Wald v. Martin*, *supra*, B335960, applying *Morrill*, *supra*, 93 Cal. at p. 456, and *Tran*, *supra*, 97 Cal.App.5th 523.) That holding is law of the case. A ruling denying Martin leave to plead the claim the Court of Appeal reinstated, on grounds the Court of Appeal rejected, would sit squarely athwart the appellate decision.

## V. THE AMENDMENTS ARE EXACTLY WHAT THE JUNE 5 ORDER CONTEMPLATED

The June 5, 2026 order did not forbid additional causes of action or the restoration of James Wald. It required a noticed motion first: no additions "without leave of court." This is that motion. Martin is not evading the order; he is obeying it.

The added counts arise from the same general set of facts as the original Cross-Complaint and the reinstated claim: the money the Walds took, the threats that kept it flowing, and the November 2021 cutoff and report. The second cause of action (recovery of money obtained by wrongful threats) applies the same *Tran*/*Morrill* framework the Court of Appeal adopted. The third (money had and received) and fourth (conversion) are recovery counts for the same money. (Proposed SACC ¶¶ 59-70.) Under *Kittredge* and *Hirsa*, that ends the analysis.

James Wald is not a new party. He was a named cross-defendant in the original Cross-Complaint filed October 18, 2023, which alleged a conspiracy between James and Natalie concerning the same events. The proposed pleading restores him on the identical facts: his presence at the November 3, 2021 cutoff meeting, his receipt of the money (including approximately $70,000 in

company checks his wife signed on an account she had no authority over), and his move to take over the business within days of Martin's arrest. (Proposed SACC ¶¶ 8-9, 47-49, 59-63.) A party who has been in the case since 2023, litigated the anti-SLAPP motion, and prevailed and lost on appeal cannot claim surprise at allegations he has faced from the beginning.

The punitive damages allegations run against Natalie Wald only, precisely as the June 5, 2026 order allowed. (Proposed SACC ¶¶ 58, 63; Prayer ¶ 6.)

**VI. THE PROPOSED PLEADING RESOLVES THE PENDING DEMURRER**

Granting this motion also cleans up the calendar. Natalie's demurrer and motion to strike, set August 24, 2026, attack the placeholder First Amended Cross-Complaint. The proposed pleading supersedes it and addresses each remaining point the demurrer raises. The scope objection is answered by this motion itself, the noticed request the June 5 order requires. The rescission-notice objection is answered by express allegations under Civil Code sections 1691 and 1693. (Proposed SACC ¶¶ 45-46, 55.) The uncertainty objection is answered by an itemized identification of the challenged transfers by category, amount, date, and record citation. (Proposed SACC ¶¶ 14-23, 42.) The no-benefit-to-Natalie objection is answered by the cash, the compensation benefits she described in her own testimony, and the checks she signed. (Proposed SACC ¶¶ 16, 19-20.) The public-policy and unclean-hands objections are foreclosed by *Tran*: a party whose consent was obtained by menace is not in pari delicto, and the wrong pleaded is the pre-report coercion, not the report. One operative pleading, tested once, serves everyone; as *Kittredge* holds, the preferable practice is to permit the amendment and test its sufficiency by demurrer if any party still wishes to.

**VII. NO PREJUDICE EXISTS, AND NONE IS POSSIBLE ON THIS RECORD**

Prejudice is the touchstone, and there is none. No trial date exists. No discovery has occurred. No answer to the operative complaint is on file from Martin or Airlink, and three demurrers to that complaint await hearing. The parties will litigate the same facts whether or not leave is granted, because the reinstated menacing-duress claim already puts the threats and the money at issue. The Walds have known the substance of every proposed allegation since October 18, 2023 at the latest; most of the pleaded admissions are their own sworn trial testimony from September 2022, and the seven-date chronology comes from a letter Natalie herself filed with this Court in December 2023. This

is the opposite of *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 486-487, where the amendment came on the eve of trial. Here, refusing leave "would in many cases be an absolute denial of justice," contrary to "the policy of the law that cases should be tried and decided on the merits." (*Higgins*, *supra*, 123 Cal.App.3d at pp. 564-565.)

Nor was there delay that matters. The anti-SLAPP order and the appeal consumed the period from late 2023 to mid-2025. The remittitur restored one claim; the June 5, 2026 order set the procedure; the placeholder amendment was filed within ten days; and this motion follows within weeks, brought by an incarcerated, self-represented litigant. Timeliness is measured against that history, and this motion passes easily.

**VIII. THE MOTION COMPLIES WITH RULE 3.1324**

The proposed Second Amended Cross-Complaint supersedes the First Amended Cross-Complaint in full, so the changes are stated by reference to the proposed pleading, a copy of which is attached as Exhibit A. The amendments add the Second Cause of Action for recovery of money obtained by wrongful threats (Proposed SACC ¶¶ 59-63, beginning p. 16, line 17), the Third Cause of Action for money had and received (¶¶ 64-66, beginning p. 17, line 15), and the Fourth Cause of Action for conversion (¶¶ 67-70, beginning p. 18, line 1); restore James Wald as a cross-defendant (¶¶ 8-9, 47-49); expand the general allegations with citations to the certified reporter's transcript and to court-filed documents (¶¶ 12-49); retain the menacing-duress rescission claim against Natalie Wald with punitive damages allegations against her only (¶¶ 50-58); and delete the First Amended Cross-Complaint's preliminary-objection material in its entirety. The accompanying Declaration of Travis Edward Martin states the effect of the amendment, why it is necessary and proper, when the facts giving rise to the amended allegations were discovered, and the reasons the request was not made earlier. (Cal. Rules of Court, rule 3.1324(a), (b).)

**IX. CONCLUSION**

The Court of Appeal revived this claim. The June 5 order prescribed a noticed motion for everything else. This is that motion, brought at the earliest procedural stage, on facts the Walds have faced since 2023, most of them in their own sworn words. Martin respectfully requests that the Court

grant leave and deem the [Proposed] Second Amended Cross-Complaint attached as Exhibit A filed as of the date of the order, or direct its filing within five court days.

Dated: July 19, 2026

Travis Edward Martin
Defendant and Cross-Complainant, In Pro Per

**DECLARATION OF TRAVIS EDWARD MARTIN**

I, Travis Edward Martin, declare as follows:

1. I am the Defendant and Cross-Complainant in this action, appearing in propria persona. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

2. Attached as Exhibit A is a true and correct copy of my [Proposed] Second Amended Cross-Complaint.

3. The effect of the amendment is as follows: the proposed pleading restates my reinstated menacing-duress claim against Natalie Wald, supported by citations to the certified reporter's transcript of my criminal trial and to documents already in this Court's file; it adds three recovery counts arising from the same facts (recovery of money obtained by wrongful threats, money had and received, and conversion); it restores James Wald as a cross-defendant; and it alleges punitive damages against Natalie Wald only.

4. The amendment is necessary and proper because the Court of Appeal reinstated the menacing-duress claim in *Wald v. Martin* (June 16, 2025, B335960), because complete relief on the money the Walds took requires the recovery counts pleaded, because James Wald participated in and benefited from the conduct alleged and was a cross-defendant in my original Cross-Complaint filed October 18, 2023, and because one complete operative pleading will allow the cross-action to be tested once and litigated on the merits.

5. The facts giving rise to the amended allegations have been known to me since they occurred, because I lived them; I alleged their substance in my original Cross-Complaint on October 18, 2023. The sworn admissions quoted in the proposed pleading were given at my criminal trial in September 2022 and appear in the certified reporter's transcript prepared for appeal number B325048.

6. The request was not made earlier because the anti-SLAPP order struck my Cross-Complaint and the appeal was not decided until June 16, 2025; because this Court's June 5, 2026 order limited the immediate amendment to the menacing-duress claim against Natalie Wald and required leave of court for anything more; because I filed the First Amended Cross-Complaint within that limited leave on June 15, 2026; and because I have been continuously incarcerated and self-represented, which slows every step of preparing and serving papers. I brought this motion as promptly as those circumstances allowed.

7. No trial date has been set in this action. No discovery has been taken. I have not answered the First Amended Complaint, Airlink Internet, Inc. has not answered it, and three demurrers to it are pending.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 19, 2026, at San Diego, California.

Travis Edward Martin

Defendant and Cross-Complainant, In Pro Per

# EXHIBIT “A”

Travis Edward Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF VENTURA**

| | |
|---|---|
| JAMES WALD; NATALIE WALD; P.W., a minor, by and through Guardian ad Litem JAMES WALD; and ELITE SOUND COMPANY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVIS EDWARD MARTIN; DONNA MARTIN; AIRLINK INTERNET, INC.; and DOES 1 through 100,<br><br>Defendants.<br>______________________________<br>TRAVIS EDWARD MARTIN,<br><br>Cross-Complainant,<br><br>v.<br><br>NATALIE WALD, an individual; and JAMES WALD, an individual,<br><br>Cross-Defendants. | **Case No.: 2023CUPP012195**<br>Assigned to: Hon. Ronda J. McKaig, Dept. 42<br><br>**SECOND AMENDED CROSS-COMPLAINT OF TRAVIS EDWARD MARTIN FOR:**<br><br>1. MENACE AND DURESS; RESCISSION AND RESTITUTION<br>2. RECOVERY OF MONEY OBTAINED BY WRONGFUL THREATS (CIVIL EXTORTION)<br>3. MONEY HAD AND RECEIVED<br>4. CONVERSION<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed: August 8, 2023<br>Trial Date: None Set |

Cross-Complainant Travis Edward Martin ("Martin") alleges as follows:

**INTRODUCTION**

1. This Cross-Complaint seeks the return of money, property, and benefits that Natalie Wald and James Wald obtained from Martin through threats of criminal accusation. Natalie Wald knew Martin was a registered sex offender before her children were born. For five years, she and her husband took his money: private-school tuition for both of her children, monthly cell-phone and car-insurance payments, approximately one hundred thousand dollars in cash, fully funded trips, and well over one hundred thousand dollars more in payments from his business account Natalie kept the books for. In the final week, with the latest accusation on the table, Natalie demanded that Martin buy her a Tesla as the price of her continued silence. Martin refused. On November 3, 2021, he told the Walds there would be nothing more financial between them. Approximately 36 hours later, on the morning of Friday, November 5, 2021, Natalie Wald carried out the threat she had been making since April 2019 and reported to law enforcement that Martin had sexually abused her daughter.

2. Natalie Wald admitted the threats under oath. She admitted that in October 2021, before P.W. told her anything had happened, she accused Martin and said she could get the police involved. She admitted that accusation was "more or less a threat." She admitted the threat "carried some weight" because of Martin's prior history, and that the police would be "likely to believe that it's true because of the prior conduct." And she admitted she "very well could have" told Martin: "I'll get you, sucker. One phone call is all it will take. My pride is bigger than yours. Who do you think they'll believe?" (RT Vol. 9, Sept. 21, 2022, 1025:13-1028:21.)

3. The Court of Appeal has already upheld this claim's legal theory in this case. In *Wald v. Martin* (June 16, 2025, B335960) [nonpub. opn.], the Court of Appeal reversed the order striking Martin's menacing-duress cause of action. The court held that Civil Code sections 1566, 1567, and 1570 establish a right to rescission where consent was obtained by menace, which "is effectively the civil version of extortion" (quoting *Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 525); that Natalie's alleged statements "essentially functioned as a promise not to speak publicly in exchange for money"; and that her "subsequent report to law enforcement, which qualifies as protected activity, does not propagate backward in time." Under *Morrill v. Nightingale* (1892) 93 Cal. 452, 456-457, threats of

imprisonment on a criminal charge are threats of injury to character and "consequently a menace," and "it is entirely immaterial whether such person is guilty or innocent of the crime to be charged." That decision is law of the case and binds this action.

4. Citations in the form "RT Vol. __, [date], [page]:[line]" are to the certified reporter's transcript on appeal in *People v. Martin*, Ventura County Superior Court Case No. 2021029627, Court of Appeal No. B325048. Martin pleads the transcript excerpts to supply factual detail supporting his claims. Sworn admissions by Natalie Wald and James Wald, and sworn findings by the investigating detectives, are the factual core of this pleading.

5. This Cross-Complaint does not relitigate the criminal judgment, and it does not need to. As the Court of Appeal held, guilt or innocence "is entirely immaterial." The wrong alleged here is not the November 5, 2021 report, not any statement to law enforcement, and not any testimony in any proceeding; no liability is based on any of those communications. The wrong alleged is the pre-report use of threatened criminal accusation and threatened injury to character to obtain and keep money, property, and financial benefits. This pleading seeks no damages for incarceration, emotional distress, or reputational harm. It seeks the money back.

**PARTIES**

6. Cross-Complainant Travis Edward Martin is an individual, a Defendant in the main action, and the Cross-Complainant in this pleading. He appears in propria persona.

7. Cross-Defendant Natalie Wald ("Natalie") is an individual and a Plaintiff in the main action. At all relevant times, Natalie resided in or committed the acts alleged in Ventura County, California.

8. Cross-Defendant James Wald ("James") is an individual, a Plaintiff in the main action, and Natalie's husband. At all relevant times, James resided in or committed the acts alleged in Ventura County, California. James was named as a cross-defendant in Martin's original Cross-Complaint filed October 18, 2023, which arose from the same operative facts alleged here. (Original Cross-Complaint, filed Oct. 18, 2023, naming James Wald, Natalie Wald, and P.W. as cross-defendants.)

9. Martin is informed and believes, and on that basis alleges, that at all relevant times each Cross-Defendant acted individually and as the agent, co-conspirator, and knowing beneficiary of the

other; that each demanded, received, directed, used, retained, or benefited from the money and property Martin conferred; and that each ratified and accepted the benefits of the conduct alleged with knowledge of the threats that produced them.

## JURISDICTION AND VENUE

10. This is an unlimited civil action. The amount in controversy exceeds the jurisdictional minimum for an unlimited civil case. Venue is proper in Ventura County because the underlying action is pending in this Court, the transactions and injuries occurred in Ventura County, and Cross-Defendants reside in Ventura County.

11. This Cross-Complaint arises out of the same transactions, occurrences, and series of transactions or occurrences alleged in the original Cross-Complaint filed October 18, 2023 and in the main action, including the transfer of money and property from Martin to or for the Walds, the threatened accusation used to obtain and preserve those transfers, and the parties' dispute over money, control, and economic benefits.

## GENERAL ALLEGATIONS

### A. Natalie Knew Exactly Why the Threat Would Work

12. Before P.W. was born and throughout the relationship between Martin and the Wald family, Natalie knew of Martin's prior criminal conviction and his registration status. Natalie testified that she knew about Martin's prior case, knew he was a registered sex offender, and had looked him up online after Donna Martin told her about the matter. (RT Vol. 8, Sept. 20, 2022, 791:16-24, 792:18-24.) She testified she knew all of this "before [she] had kids, before he spent any time with [her] kids." (RT Vol. 8, Sept. 20, 2022, 793:5-7.)

13. That knowledge gave Natalie extraordinary coercive leverage, and she understood it. A threat to accuse Martin of an offense involving a minor was not an ordinary argument. It was a threat of injury to his character, his liberty, his business, and his practical ability to defend himself, delivered by a person who knew the accusation would be believed precisely because of his history. Natalie admitted each link in that chain under oath, as alleged below.

**B. The Walds' Financial Dependence on Martin**

14. Martin paid Ethan Wald's private-school tuition "completely." Natalie called it "just a verbal gift." (RT Vol. 9, Sept. 21, 2022, 974:9-18.) Martin continued paying Ethan's Ventura Missionary School tuition into the fall of 2021 and paid P.W.'s tuition as well. (RT Vol. 8, Sept. 20, 2022, 795:6-28, 796:1-28, 797:1-13.) Natalie's own arithmetic on cross-examination put the tuition alone at approximately $48,000: about $6,000 per child per year, six years for Ethan and two for P.W. (RT Vol. 9, Sept. 21, 2022, 976:12-23.) From April 11, 2019 forward, every tuition dollar was paid under the threats alleged below. Martin paid the tuition, season after season, for both children, because Natalie made clear that the money was the price of not making the call.

15. The bank records prove Martin's tuition payments ran straight through the period of the threats. The defense financial investigator, Frank Brisslinger, a former Oxnard peace officer, testified that a June 20, 2020 payment of $12,011.25 from the Airlink account to Missionary School carried the notation "the Wald 2020 to 2021 tuition," and that six separate $2,000 electronic payments went from the same account to Missionary School between May 2021 and November 2021, $12,000 in total. (RT Vol. 12, Sept. 27, 2022, 1658:4-28.) Martin's money paid the Wald children's tuition during the very weeks Natalie was making the threats alleged below, and into November 2021.

16. The Wald household's cell-phone bills and car insurance were paid through Martin's company. Natalie confirmed the benefit was approximately $400 per month, nearly $5,000 per year, and agreed losing it would have an impact on the family budget: "It's a decent amount." (RT Vol. 9, Sept. 21, 2022, 979:23-28, 980:1-4.)

17. Martin funded the Wald family's recreation for years: Disneyland every few months and at times monthly, June Lake once or twice a year, Magic Mountain, Knott's Berry Farm, Build-A-Bear, and Target trips, all paid by Martin, at no cost to the Walds. (RT Vol. 8, Sept. 20, 2022, 798:13-28, 799:1-28.) On just two accounts, the defense investigator identified $10,430.60 in just Disneyland-related charges. (RT Vol. 12, Sept. 27, 2022, 1656:20-28, 1657:1-23.)

18. The People's forensic detective, Jason Cantrall, reviewed thousands of pages of bank records and testified that payments from the Entertainment Technology account to the Walds during the relevant period totaled $117,862.17, with another $11,649.10 paid to Ventura Missionary. (RT Vol. 10,

Sept. 22, 2022, 1227:25-28, 1228:1-6.) Cantrall admitted his totals undercount the true flow because payments to Smart Tuition LLC, Disneyland Resorts, and Great Wolf Lodge were never tallied. (RT Vol. 10, Sept. 22, 2022, 1239:13-27.)

19. Approximately $70,000 of the Entertainment Technology checks written to James were signed by Natalie. Natalie was not a signer on that account. The only two authorized signers were Martin and James. (RT Vol. 12, Sept. 27, 2022, 1653:9-28, 1654:1-28.) Natalie admitted she never went to the bank and never signed a signature card. Natalie was writing and signing the checks that moved Martin's money into her own household.

20. Martin also paid the Walds in cash. Detective Cantrall found large cash withdrawals, on the order of $5,000 and $2,000, from Martin's personal account, an account on which neither Wald was a signer, and not from the business accounts. (RT Vol. 10, Sept. 22, 2022, 1236:1-12, 1257:12-16.) The withdrawals carried no notations. (RT Vol. 10, Sept. 22, 2022, 1236:24-28, 1237:1-2.) Among them, Martin withdrew $10,000 in cash and gave it to Natalie. Martin told the detectives exactly that in his post-arrest interview: Detective Yates confirmed Martin "specifically told" the interviewing detectives about "a $10,000 cash withdrawal" given to Natalie for deposit into her account, and that the interviewers described it in those terms. (RT Vol. 11, Sept. 26, 2022, 1505:19-22, 1506:19-24, 1508:1-6.) The $10,000 was only the last of the cash. Throughout the period of the threats, Martin handed Natalie cash payment after cash payment, typically thousands of dollars at a time in increments matching the withdrawals from his personal account, totaling approximately $100,000, according to proof. Martin alleged exactly that in 2023: his original Cross-Complaint described "$100k cash that came from Travis Martin to The Wald family." (Original Cross-Complaint, filed Oct. 18, 2023, Cause of Action #2.) The unexplained withdrawals in the bank records are the footprints of those payments; the deposits sit in accounts the investigators never opened.

21. The criminal investigators never tested the money trail. Cantrall admitted he never looked at the Walds' bank accounts to see whether cash deposits matched Martin's withdrawals. (RT Vol. 10, Sept. 22, 2022, 1237:3-7.) He agreed that when blackmail is alleged, an investigator would want to know whether "large cash deposits" in the alleged blackmailer's account match the victim's withdrawals. (RT Vol. 10, Sept. 22, 2022, 1237:15-22; see 1259:25-28, 1260:1-6.) Detective Yates

admitted she did not know whether anyone ever told Cantrall to look for the deposits in the Walds' account. (RT Vol. 11, Sept. 26, 2022, 1507:20-28, 1508:7-10.) The People had no reason to trace the money. Martin does, and civil discovery will.

22. Natalie's sworn estimate of the money did not survive her own cross-examination. Asked whether she would be surprised if the bank records showed more than $100,000, she answered, "That would be surprising." (RT Vol. 9, Sept. 21, 2022, 976:28, 977:1-4.) The documented flow alone exceeds $160,000: $117,862.17 in company-account payments, $48,000 in tuition payments, and $10,430.60 in Disneyland charges on just two accounts. Adding the approximately $100,000 in cash, the monthly benefits, and the trip, lodging, and household categories the investigators never totaled, Martin conferred money, property, and benefits on Natalie, James, their children, and their household exceeding $250,000 in the aggregate, according to proof.

23. The prosecution itself told the jury that the Walds relied on Martin for help caring for their children "and also financially." (RT Vol. 6, Sept. 14, 2022, 367:26-28, 368:1-7.)

**C. The Pattern: Accusation, Confrontation, and the Money Kept Flowing**

24. The threats did not begin in October 2021. They began on April 11, 2019, and for three years they followed the same pattern: an accusation, a threat to report, a demand that the money continue, and a prompt return to the arrangement, with the money and benefits flowing. Natalie, a trained mandated reporter (RT Vol. 8, Sept. 20, 2022, 786:22-28, 787:1-2, 803:1-3), never reported any of the accusations she was raising to police or child protective services. She used them.

25. Natalie made the threat throughout the period, including on each of six dates before the final sequence: April 11, 2019; September 26, 2019; January 2020; July 30, 2020; October 2020; and June 28, 2021. On each of those dates, Natalie raised the accusation against Martin and threatened to report him to law enforcement unless the money continued: the tuition, the school costs, the trips, the benefits, and the support the Wald household ran on. Each time, Martin complied out of fear, and the payments and benefits continued. Martin pleads these threats on personal knowledge; he was the person threatened. The corroborating records are set out below: Natalie's own admissions of a matching series of confrontations, the documented July 30, 2020 cycle, and the seven-date chronology Natalie filed with this Court. And Martin's original Cross-Complaint alleged the same practice in 2023: when

Natalie and Martin “would fight about money she would threaten to call the police and report him” in order “to force him to pay for what she wanted.” (Original Cross-Complaint, filed Oct. 18, 2023, Cause of Action #2.)

26. One of those dates is documented to the day. Natalie placed a 71-minute call to Martin at 10:07 p.m. on July 30, 2020, following an accusation. (RT Vol. 9, Sept. 21, 2022, 1038:12-17.) Martin packed up the children’s toys the next day, July 31. (RT Vol. 9, Sept. 21, 2022, 1038:18-28, 1039:1-10.) By August 1, Martin was with both children again, and Natalie went on the multi-day trip with him immediately after the allegation. (RT Vol. 9, Sept. 21, 2022, 1040:19-28, 1041:1-23.)

27. Natalie conceded she confronted Martin after the first allegation and again in November 2021, with roughly five more conversations about the subject in between. (RT Vol. 9, Sept. 21, 2022, 966:6-15; 1057:24-28, 1058:1-8.) She asked P.W. about the subject approximately twice a month over a two-year period. (RT Vol. 9, Sept. 21, 2022, 966:26-28, 967:1-7.) Through all of it, the relationship and the money continued. Asked whether she had told the detective that Martin cut off contact with P.W., Natalie answered: “He told me he was going to. He did not, though.” (RT Vol. 9, Sept. 21, 2022, 969:3-6.)

28. This chronology has been part of this Court’s file since 2023, placed there by Natalie herself. On December 13, 2023, Natalie filed a declaration authenticating, under penalty of perjury, a five-page handwritten letter she allegedly received from Martin at the Ventura County Jail, attached to her declaration as Exhibit F. (Declaration of Natalie Wald, filed Dec. 13, 2023, ¶ 4 & Ex. F.) The letter lists the same dates alleged above: April 11, 2019; September 26, 2019; January 2020; July 30, 2020; October 2020; June 28, 2021; and November 5, 2021, and it ties Martin’s November 3, 2021 financial cutoff to Natalie’s police report “36 hrs later.” (Wald Decl., Ex. F, pp. 5-6 of 6.) Natalie filed that timeline with this Court herself.

**D. October and November 2021: The Threats, the Cutoff, and the Report**

29. In October 2021, before P.W. told Natalie that anything had happened, Natalie accused Martin of doing something to her daughter and said she could get the police involved. (RT Vol. 9, Sept. 21, 2022, 1025:13-28, 1026:1-6.)

30. Natalie admitted the accusation was a threat. Asked whether, before P.W. told her something happened, her statement was "more or less a threat," Natalie answered, "Yes." Asked whether, if she did not know he did something and P.W. had not told her anything, saying "I'm getting the cops involved" would be a threat, Natalie answered, "Right." (RT Vol. 9, Sept. 21, 2022, 1026:7-14.)

31. Natalie admitted she knew why the threat worked. She agreed the threat of reporting would be of extra concern to Martin "[b]ecause he had a prior history that [she] knew about." She agreed that if she reported something similar to the police, they would be "likely to believe that it's true because of the prior conduct." And she agreed she "knew that threat carried some weight." (RT Vol. 9, Sept. 21, 2022, 1026:15-28, 1027:1-9.)

32. Days after that threat, the benefits were still flowing. On Wednesday, October 27, 2021, Martin took the children to Disneyland on annual passes he had purchased for the children, and the family attended the Oogie Boogie Bash, with Martin covering the Great Wolf Lodge stay. (RT Vol. 8, Sept. 20, 2022, 816:15-28, 817:1-19.)

33. On Sunday, October 31, 2021, Natalie and Martin spoke by phone. Defense counsel put the statement to her directly: "On October 31st you said, I'll get you, sucker. One phone call is all it will take. My pride is bigger than yours. Who do you think they'll believe?" Natalie answered that she "very well could have" said it. (RT Vol. 9, Sept. 21, 2022, 1028:13-21.) She admitted using the phrase "nobody's going to make a canoe out of me," and explained what it meant: "nobody's going to make a fool out of me, nobody's going to make me go down because they're going down." (RT Vol. 9, Sept. 21, 2022, 1028:25-28, 1029:1-3.) She admitted she had told Martin that a report to the police would be effective and would get him in trouble. (RT Vol. 9, Sept. 21, 2022, 1029:4-9.)

34. The demand in the final window was concrete: a Tesla Model Y. In late October and early November 2021, with the accusation on the table, Natalie demanded that Martin buy her a Tesla as the price of her continued silence. At trial, Natalie recast the demand as Martin's generosity, testifying that "[h]e offered to get me a Tesla" and that it happened "[i]n November." (RT Vol. 8, Sept. 20, 2022, 800:13-16.) Her account to the lead detective tied it to the accusation: the Model Y "was brought up after she confronted him about touching Payton," reflective of the confrontation in the late

October to early November 2021 window. (RT Vol. 12, Sept. 27, 2022, 1608:13-20, 1609:3-16.) James supplied the detectives the household's payment plan: sell Natalie's paid-off car, put roughly ten thousand dollars toward the Y, have Entertainment Technology buy it, and, in his own words, "[i]nstead of taking show pay, I would just take payments on my Y, like, Tesla." (RT Vol. 12, Sept. 27, 2022, 1609:24-28, 1610:1-4, 1612:12-26.) Offer, bribe, or company car, the label changes with the teller, but the substance does not: in the same window as the threats, the Walds expected a Tesla purchased with Martin's money, and the subject arose with the accusation on the table. Martin refused to buy it and the report to law enforcement was made.

35. On Wednesday, November 3, 2021, Natalie called Martin and asked him to come over, and at that meeting Martin cut it all off, telling the Walds, as his original Cross-Complaint alleged in 2023, that "there will be nothing more financial between us." (Original Cross-Complaint, filed Oct. 18, 2023, Cause of Action #3.) Natalie admitted the conversation was about Martin's mother, Donna Martin, known as "Bear," "taking over the accounting" and getting Natalie "off of the ET payroll." (RT Vol. 9, Sept. 21, 2022, 1031:6-14.) Natalie admitted the discussion about cutting financial ties covered her accounting role and the family's cell-phone coverage, the approximately $400-per-month benefit. (RT Vol. 9, Sept. 21, 2022, 979:13-28.) James was in the room. (RT Vol. 9, Sept. 21, 2022, 1031:24-25.) Asked whether she asked how she and James "could get the company if something happened to Mr. Martin," Natalie answered: "I could have. I don't remember." (RT Vol. 9, Sept. 21, 2022, 1034:1-3.) That same day, November 3, James and Natalie discussed what Martin was doing with the Entertainment Technology corporation because of the October 31 conversation. (RT Vol. 9, Sept. 21, 2022, 1029:19-25.)

36. On the morning of Friday, November 5, 2021, approximately 36 hours after Martin cut off the money, Natalie reported the accusation to law enforcement. The November 5 report date is fixed in the record by Natalie's own testimony and by the letter she filed with this Court. (RT Vol. 9, Sept. 21, 2022, 1042:2-9; RT Vol. 8, Sept. 20, 2022, 816:1-3; Wald Decl., Ex. F, p. 5 of 6.) The sequence is the proof: threat, payment, attempted cutoff, and the threatened report executed within a day and a half.

37. Martin was arrested on Friday, November 12, 2021. (RT Vol. 11, Sept. 26, 2022, 1492:22-25, 1494:4-7.) He has been in custody continuously since.

38. The Walds moved on the company immediately. On or about November 27, 2021, fifteen days after the arrest, Natalie told Marylove Gonzalez "that she and Jimmy wanted to buy the Entertainment business because Travis was in jail." (RT Vol. 12, Sept. 27, 2022, 1649:8-13.) James, a ten-percent owner whose show work was, in his words, "fun" and "something I had fun doing" (RT Vol. 9, Sept. 21, 2022, 1084:1-4, 1084:17-19)

39. The People's own prosecutor confirmed the financial motive in closing argument, describing "Payton's own weak, selfish parents" who "put their own wants and desires first" and put "the babysitting, the trips they couldn't afford, the fun side job running the sound company" ahead of their daughter. (RT Vol. 13, Sept. 29, 2022, 1727:10-25.) Martin pleads the prosecutor's statements not as proof of any underlying charge but as the People's own characterization of the Walds' financial motives and priorities.

**E. The Coercion**

40. Natalie's threats constituted menace because they threatened injury to Martin's character within the meaning of Civil Code section 1570, and duress because they were used to overcome Martin's will and compel economic transfers he otherwise would not have made. Natalie intended the threats to place Martin in fear and to control his conduct. She knew his history, knew his fear of returning to prison, knew the catastrophic consequences of a new accusation involving a minor, and deliberately deployed that fear, over three years and whenever the money was at risk, to keep the tuition, the cash, the benefits, the cell-phone coverage, the car insurance, the trips, and the rest of the flow coming.

41. Martin's will was overcome. He did not pay because he believed the Walds were entitled to the money. He paid because he reasonably feared that if he refused, Natalie would make the one phone call she promised, destroy his character, end his liberty, and take his business. Whether a person had a reasonable alternative to succumbing is a question of fact. (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 644-645.) Martin had none. The record proves it: the one time he tried to stop paying, on November 3, 2021, the threatened accusation was carried out within approximately 36 hours.

42. The transfers challenged in this pleading (the "Challenged Transfers") are the payments, property, and benefits Martin conferred on or for Natalie, James, their children, or their household after and because of Natalie's threats beginning April 11, 2019, including without limitation: all tuition payments for both children from April 11, 2019 through November 2021; the approximately $400-per-month phone and insurance benefits; approximately $100,000 in cash payments to Natalie, of which the $10,000 was only the last; trips, lodging, passes, and travel expenses; household expenses, goods, services, gifts, and reimbursements; and payments from the Entertainment Technology account demanded, directed, signed for, received, used, or retained by Natalie or James, all in amounts according to proof.

43. The Challenged Transfers were not gifts. A transfer obtained by threat does not become voluntary because the recipient calls it generosity, and forbearance from making a threatened criminal accusation is not lawful consideration for money or property. Whatever Martin gave freely in earlier years, the Challenged Transfers were extracted by fear after Natalie began wielding the accusation as a collection device.

44. The Challenged Transfers were not obligations. Martin had no legal duty to pay the Wald children's private-school tuition, pay the Walds' household expenses, fund their vacations, pay their cell-phone bills or car insurance, hand Natalie cash, or finance their lifestyle.

**F. Rescission, Notice, and Timeliness**

45. Service of this Second Amended Cross-Complaint constitutes notice of rescission of the Challenged Transfers and an offer to restore anything of value Martin actually received under them, on condition that Cross-Defendants restore all money, property, and benefits they obtained. (Civ. Code, § 1691.) Martin received no lawful value in exchange for the Challenged Transfers other than temporary forbearance from the threatened accusation, which is not lawful consideration.

46. Any delay in seeking rescission is excused and immaterial. The menace was continuing through November 5, 2021, when the threat was executed. Martin was arrested on November 12, 2021 and has been continuously incarcerated since, with his access to records, communication, and investigation materially impaired by the very harm threatened. Relief from any delay is available absent substantial prejudice (Civ. Code, § 1693; see *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509),

and there is none: the Walds have known the substance of these claims since Martin's original Cross-Complaint, filed October 18, 2023, named James Wald and Natalie Wald as cross-defendants on these same facts. That pleading alleged menacing-duress and conspiracy; alleged "the private school tuition, gifts, trips, and $100k cash that came from Travis Martin to The Wald family"; alleged that Natalie "would threaten to call the police and report him" when she and Martin fought about money; alleged Martin's November 3, 2021 statement that "there will be nothing more financial between us" and the report "less than 36 hours later"; and sought "recovery of all funds paid and laid out under duress and menace by Natalie Wald according to proof." Each cause of action pleaded here rests on the same general set of facts as the original Cross-Complaint, seeks recovery for the same injury, the loss of the money, property, and benefits taken from Martin, and involves the same instrumentality, the threatened criminal accusation. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 408-409.) No limitations period ran against any of these claims while the threats continued, because until November 5, 2021 asserting them meant triggering the very accusation Natalie held over Martin. Martin pleads relation back to the original Cross-Complaint, continuing duress, delayed discovery, equitable tolling, and equitable estoppel, and, to the extent applicable, tolling under Code of Civil Procedure section 352.1.

**G. James Wald's Participation**

47. James knew of Martin's history, knew of Natalie's confrontations and accusations over the years, and knew the household's finances ran on Martin's money. James was present at the November 3, 2021 meeting where Martin announced the cutoff, and he and Natalie discussed Martin's corporate moves that same day. (RT Vol. 9, Sept. 21, 2022, 1029:19-25, 1031:24-25.)

48. James received and kept the proceeds. The $117,862.17 in Entertainment Technology payments to the Walds ran overwhelmingly to James, including approximately $70,000 in checks his own wife signed on an account she had no authority over. The tuition, phone, insurance, trip, and household benefits flowed to the marital community James headed. (RT Vol. 10, Sept. 22, 2022, 1227:25-28, 1228:1; RT Vol. 12, Sept. 27, 2022, 1653:9-28, 1654:1-28.)

49. Martin is informed and believes, and on that basis alleges, that James knew of, agreed to, participated in, and ratified Natalie's scheme to use the threatened accusation to obtain and preserve the flow of money and benefits; that James accepted and retained the proceeds with that knowledge; and

that James acted in furtherance of the scheme, including by joining the November 3 meeting, by pursuing the acquisition of Entertainment Technology within days of Martin's arrest. Natalie made the threats and ran the operation; James participated in it, ratified it, and kept its proceeds.

**<u>FIRST CAUSE OF ACTION</u>**

**MENACE AND DURESS; RESCISSION AND RESTITUTION**

**(Civil Code §§ 1566, 1567, 1570, 1689, 1691, 1692, 1693)**

**(Against Cross-Defendant Natalie Wald)**

50. Martin incorporates by reference each preceding paragraph as though fully set forth here.

51. Under Civil Code sections 1566 and 1567, apparent consent is not real or free when obtained through duress or menace. Martin's apparent consent to the Challenged Transfers was obtained through duress and menace.

52. Under Civil Code section 1570, menace includes a threat of injury to character. A threat of criminal accusation and imprisonment is a threat of injury to character and "consequently a menace." (*Morrill v. Nightingale*, *supra*, 93 Cal. at p. 456.) The statutory menace claim "is effectively the civil version of extortion" (*Tran v. Nguyen*, *supra*, 97 Cal.App.5th at p. 525), it requires no falsity, and the truth of the accusation is "entirely immaterial" (*Morrill*, at p. 456). The Court of Appeal adopted that framework in this case, and it is law of the case. Natalie's threats on the dates alleged above beginning April 11, 2019, her admitted October 2021 accusation and police threat, her demand for a Tesla as the price of silence, her admission that the accusation was "more or less a threat," her admissions that the threat "carried some weight" and would be believed because of Martin's history, and her admission that she "very well could have" said "I'll get you, sucker. One phone call is all it will take. My pride is bigger than yours. Who do you think they'll believe?" are direct factual allegations of menace and duress.

53. Natalie intended the threats to place Martin in fear and to control his economic conduct, and they did. The threats were a substantial factor in causing Martin to make and continue the Challenged Transfers. Without the threats, Martin would not have continued the tuition, the monthly benefits, the cash, the trips, and the other payments after he decided to restrict or end them.

54. Every Challenged Transfer is subject to rescission under Civil Code section 1689, subdivision (b)(1), because Martin's consent was obtained through duress and menace exercised by Natalie. Coerced payments are rescindable; no bilateral contract is required. (*Tran v. Nguyen*, *supra*, 97 Cal.App.5th 523; *Morrill v. Nightingale*, *supra*, 93 Cal. 452.)

55. Service of this pleading constitutes notice of rescission and any required offer to restore under Civil Code section 1691, as alleged above. To the extent any notice or restoration requirement was not satisfied earlier, the Court should relieve Martin of any resulting bar under Civil Code section 1693 because Cross-Defendants have suffered no substantial prejudice.

56. Under Civil Code section 1692, Martin seeks complete relief based on rescission, including restitution of all benefits conferred, consequential relief necessary to restore the status quo, and prejudgment interest.

57. Natalie was unjustly enriched by the Challenged Transfers, and equity requires their restoration. Natalie cannot invoke Civil Code section 3517 or any unclean-hands theory against the very person she coerced: a party whose consent was obtained through duress or menace is not in pari delicto. (*Tran v. Nguyen*, *supra*, 97 Cal.App.5th 523.) The Court of Appeal has already rejected the argument that the lawfulness of a report immunizes the pre-report extraction of money; the wrong pleaded here is the coercion, not the report.

58. Natalie acted with malice, oppression, and fraud within the meaning of Civil Code section 3294, entitling Martin to punitive and exemplary damages against Natalie only. The specific facts are pleaded above: Natalie knew of Martin's conviction and registration before her children were born; she ran the same play for three years beginning April 11, 2019, threatening the report whenever the money was at risk; she demanded a Tesla as the price of her silence in the final days; she admitted under oath that the threat of a report "carried some weight" and would be believed "because of the prior conduct"; she declared her intent in her own words, "nobody's going to make me go down because they're going down"; and she timed the execution of the threat to Martin's November 3, 2021 cutoff of the money, reporting approximately 36 hours later. That is the intentional, calculated exploitation of a known vulnerability to take money and property, done with conscious disregard of Martin's rights.

**SECOND CAUSE OF ACTION**

**RECOVERY OF MONEY OBTAINED BY WRONGFUL THREATS (CIVIL EXTORTION)**

**(Against Cross-Defendants Natalie Wald and James Wald)**

59. Martin incorporates by reference each preceding paragraph as though fully set forth here.

60. California law permits recovery of money obtained by the wrongful threat of criminal accusation or prosecution. The statutory menace claim is "the civil version of extortion" (*Tran v. Nguyen*, *supra*, 97 Cal.App.5th at p. 525; see *Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408), and the Court of Appeal held in this case that Natalie's alleged statements "essentially functioned as a promise not to speak publicly in exchange for money." A threat to accuse a person of a crime, coupled with a demand for money, is extortionate whether or not the underlying accusation is true, and it is an unlawful threat. (Pen. Code, § 519; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 330; *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, 806-807.)

61. Natalie threatened to accuse Martin and to involve law enforcement unless the flow of money and benefits continued. The demand was the continuation of the established stream: the tuition, the monthly benefits, the cash, the trips, the payments through the company, and, in the final days, a Tesla Model Y. Martin paid, and the Walds took, because of the threats. When Martin stopped, the threat was executed within approximately 36 hours.

62. James is liable with Natalie. Martin is informed and believes, and on that basis alleges, that James agreed to and participated in the scheme, acted in furtherance of it, ratified it, and knowingly received and retained its proceeds, as alleged above.

63. As a direct and proximate result, Martin has been deprived of the Challenged Transfers in an amount exceeding $250,000, according to proof, plus prejudgment interest. Natalie's conduct was malicious, oppressive, and fraudulent within the meaning of Civil Code section 3294, and Martin seeks punitive and exemplary damages against Natalie only, on the specific facts pleaded above.

**THIRD CAUSE OF ACTION**

**MONEY HAD AND RECEIVED**

**(Against Cross-Defendants Natalie Wald and James Wald)**

64. Martin incorporates by reference each preceding paragraph as though fully set forth here.

65. Cross-Defendants received money that was intended to be used for the benefit of Martin or that in equity and good conscience belongs to Martin, including approximately $100,000 in cash payments to Natalie, the approximately $70,000 in checks Natalie signed to James, the household payments and benefits, and the other Challenged Transfers, in amounts according to proof. The money was obtained by threats and paid under duress and menace. Money paid under duress is recoverable in a common count for money had and received, without rescission and without tender. (*Millsap v. National Funding Corp.* (1943) 57 Cal.App.2d 772.)

66. Cross-Defendants have not returned the money. The amounts, with prejudgment interest, are owed to Martin according to proof.

**FOURTH CAUSE OF ACTION**

**CONVERSION**

**(Against Cross-Defendants Natalie Wald and James Wald)**

67. Martin incorporates by reference each preceding paragraph as though fully set forth here.

68. Martin owned and had the right to possess specific, identifiable sums of money, including the cash payments he made to Natalie under the compulsion of her threats, totaling approximately $100,000, in specific increments corresponding to the withdrawals from his personal account, including withdrawals on the order of $2,000, $5,000, and the final $10,000, and the other specific sums identified through discovery, according to proof.

69. Cross-Defendants wrongfully exercised dominion over those sums by taking and retaining them through the coercion alleged above. Apparent consent obtained by menace and duress is not consent, and the taking was wrongful from its inception.

70. As a direct and proximate result, Martin has been damaged in the amount of the converted sums, plus prejudgment interest from the dates of taking, according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Cross-Complainant Travis Edward Martin prays for judgment against Cross-Defendants Natalie Wald and James Wald as follows:

1. For rescission of the Challenged Transfers under Civil Code sections 1567, 1570, 1689, 1691, and 1692;

2. For restitution, disgorgement, and restoration of all money, property, and benefits obtained through menace, duress, and wrongful threats, in an amount exceeding $250,000, according to proof;

3. For damages on the Second, Third, and Fourth Causes of Action, according to proof;

4. For prejudgment and postjudgment interest according to law;

5. For a constructive trust, equitable lien, tracing, and an accounting of all money and property obtained from Martin, and all other consequential relief necessary to restore the status quo;

6. For punitive and exemplary damages against Cross-Defendant Natalie Wald only, according to proof;

7. For costs of suit; and

8. For such other and further relief as the Court deems just and proper.

Dated: August 20, 2026

______________________________

Travis Edward Martin

Defendant and Cross-Complainant, In Pro Per

**DEMAND FOR JURY TRIAL**

Cross-Complainant Travis Edward Martin demands trial by jury on all issues so triable.

Dated: August 20, 2026

______________________________

Travis Edward Martin

Defendant and Cross-Complainant, In Pro Per

# EXHIBIT 7

Notice of Motion and Motion to Declare Travis Martin a Vexatious Litigant, filed August 5, 2026 by plaintiffs in Wald v. Martin, Case No. 2023CUPP012195 (pages i-ii)

ELECTRONICALLY FILED
Superior Court of California
County of Ventura
08/05/2026
K. Bieker
Executive Officer and Clerk
By: ____________ Deputy Clerk
Joan Foster

Ventura Superior Court transmitted through eFiling 08/05/2026 05:38:55 PM

RON BAMIEH (SBN 159413)
rbamieh@bamiehdesmeth.com
DANIELLE DE SMETH (SBN 263309)
ddesmeth@bamiehdesmeth.com
**BAMIEH & DE SMETH, PLC**
692 E. THOMPSON BOULEVARD
VENTURA, CA 93001
T: (805) 643-5555 | F: (805) 643-5558

Attorneys for Plaintiffs,
JAMES WALD, et al.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF VENTURA**

JAMES WALD, an individual; NATALIE WALD, an individual; P.W., a minor individual through her Guardian ad Litem, James Wald; ELITE SOUNDS COMPANY, LLC, a California Limited Liability Corporation,

Plaintiffs,

v.

TRAVIS EDWARD MARTIN, an individual; DONNA MARTIN, an individual; AIRLINK INTERNET, INC., a California Corporation; and DOES 1 through 100, Inclusive,

Defendants.

AND RELATED CROSS-ACTIONS

**Case No. 2023CUPP012195**

*Assigned to: Hon. Ronda J. McKaig, Dept. 42*

**NOTICE OF MOTION AND MOTION TO DECLARE TRAVIS MARTIN A VEXATIOUS LITIGANT PURSUANT TO C.C.P. § 391; DECLARATION OF RON BAMIEH, ESQ.**

Complaint filed: August 08, 2023
Trial date: None set

**Hearing:**
**Date:** 09/09/2026
**Time:** 8:30 a.m.
**Dept:** 42

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that on September 9, 2026, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department 42 of the above-entitled Court, Plaintiffs James Wald, Natalie Wald, P.W., and Elite Sound Company, LLC (collectively, "Plaintiffs") will and hereby do move this Court for an order:

1. Declaring Defendant TRAVIS E. MARTIN ("Defendant" or "Martin") a vexatious litigant pursuant to California Code of Civil Procedure section 391(b)(3);

*2.* Entering a prefiling order pursuant to California Code of Civil Procedure section 391.7;

3. Directing the Court Clerk not to accept for filing any new litigation filed by Martin in propria persona unless accompanied by an order from the presiding judge granting leave to file;

4. Requiring Martin to furnish security pursuant to California Code of Civil Procedure section 391.3 as a condition of proceeding with his Cross-Complaint, on the grounds that he is a vexatious litigant and there is no reasonable probability he will prevail;

5. Granting such other and further relief as the Court deems just and proper.

This Motion is made pursuant to Code of Civil Procedure section 391 on the grounds that Travis Martin is a vexatious litigant within the statutory definition, commencing at least five frivolous lawsuits in the preceding seven year period, and within this litigation while acting in propria persona, repeatedly filed unmeritorious motions, pleadings, or other papers, and engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

The Motion is further based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Ron Bamieh and Request for Judicial Notice, exhibits attached thereto, the pleadings and papers on file in this action, and such oral and documentary evidence as may be presented before or at the hearing on this Motion.

**Dated:** August 5, 2026

**BAMIEH & DE SMETH, PLC**

[signature]

RON BAMIEH

*Attorneys for Plaintiffs*

# EXHIBIT 8

Notice of Motion and Motion to Declare Travis Martin a Vexatious Litigant, filed August 21, 2026 by defendants in Martin v. Wald, Case No. 2024CUNP032821 (pages 1-3)

Ventura Superior Court transmitted through eFiling 08/21/2026 04:35:16 PM

Allen R. Ball, Esq. (State Bar #124088)
**LAW OFFICE OF BALL & YORKE**
1001 Partridge Drive, Suite 330
Ventura, California 93003
(805) 642-5177; (805) 642-4622 Fax
aball@ballandyorkelaw.com

**Attorney for Defendants,**
**JAYSON COHEN, JAMES WALD, NATALIE WALD AND ELITE SOUND COMPANY, LLC**

ELECTRONICALLY FILED
Superior Court of California
County of Ventura
08/21/2026
K. Bieker
Executive Officer and Clerk
By: ________ Deputy Clerk
Hannah Cressy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF VENTURA

| | |
|---|---|
| **TRAVIS EDWARD MARTIN, an individual; ENTERTAINMENT TECHNOLOGY, LLC, a California limited liability company; and AIRLINK INTERNET, INC., a California corporation**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**JAMES WALD, an individual; NATALIE WALD, an individual; ELITE SOUND COMPANY LLC, a California limited liability company; JAYSON COHEN, an individual; and DOES 1 through 50, inclusive**<br><br>**Defendants.** | **Case No.: 2024CUNP032821**<br>**- Complaint filed: 10/29/2024**<br>**- Assigned to Hon. Ben Coats, Dept. 43**<br><br>**NOTICE OF MOTION AND MOTION TO DECLARE TRAVIS MARTIN A VEXATIOUS LITIGANT PURSUANT TO C.C.P. § 391; DECLARATION OF ALLEN R. BALL, ESQ.**<br><br>**Trial date: November 30, 2026**<br><br>**Hearing:**<br>**Date: September 21, 2026**<br>**Time: 8:30 AM**<br>**Dept: 43** |

TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on September 21, 2026 at 8:30AM or as soon thereafter as the matter may be heard, in Department 43 of the above-entitled Court, Defendants James Wald, Natalie Wald, Elite Sound Company, LLC, and Jayson Cohen (collectively, "Defendants") will and hereby do move this Court for an order:

1. Declaring Plaintiff TRAVIS E. MARTIN ("Martin") a vexatious litigant pursuant to California Code of Civil Procedure section 391(b)(3);

2. Entering a prefiling order pursuant to California Code of Civil Procedure section 391.7;

3. Directing the Court Clerk not to accept for filing any new litigation filed by Martin in propria persona unless accompanied by an order from the presiding judge granting leave to file;

4. Requiring Martin to furnish security pursuant to California Code of Civil Procedure section 391.3 as a condition of proceeding with his Complaint, on the grounds that he is a vexatious litigant and there is no reasonable probability he will prevail;

5. Granting such other and further relief as the Court deems just and proper; and

6. Ordering that any pleading filed in violation of this Order be deemed void *nunc pro tunc*.

This Motion is made pursuant to Code of Civil Procedure, section 391 on the grounds that Travis Martin is a vexatious litigant within the statutory definition, commencing at least five frivolous lawsuits in the preceding seven-year period, and within litigation while acting in propria persona, repeatedly filed unmeritorious motions, pleadings, or other papers, and engages in other tactics that are frivolous or solely intended to punish and to cause unnecessary delay.

The Motion is further based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Allen R. Ball and Request for Judicial Notice, exhibits attached thereto, the pleadings and papers on file in this action, and such oral and documentary evidence as may be presented before or at the hearing on this Motion.

Dated: 8/31/26

LAW OFFICE OF BALL & YORKE

ALLEN R. BALL
Attorneys for Defendants

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..... 4

**MEMORANDUM OF POINTS AND AUTHORITIES** ..... 5

**I. INTRODUCTION** ..... 5

**II. STATEMENT OF FACTS** ..... 6

A. Background ..... 6

B. Martin's Pattern of Abusive Litigation Conduct in this Action ..... 7

C. Martin's Broader Litigation History — Other Lawsuits ..... 8

D. State Bar Complaints ..... 11

E. Martin Has Attempted to Involuntarily Recuse Judge Four (4) Times ..... 13

F. Prior Warnings Have Had No Deterrent Effect ..... 13

**III. ARGUMENT** ..... 14

A. The Court Has Authority to Declare Martin a Vexatious Litigant Under CCP § 391(b)(3) ..... 14

B. Martin's Conduct Satisfies the Statutory Criteria Under Section 391(b)(3) ..... 15

1. Martin Is Acting in Propria Persona ..... 15

2. Martin Has Repeatedly Filed Unmeritorious Motions and Engaged in Frivolous and Abusive Tactics ..... 15

C. The Court Should Enter a Prefiling Order Under CCP § 391.7 ..... 17

1. Statutory Authority ..... 17

2. A Prefiling Order Is Necessary and Appropriate ..... 17

3. Operational Directives ..... 18

D. Security Should Be Required Under Code of Civil Procedure Section 391.3 ..... 18

E. The Prefiling Order Does Not Violate Constitutional Rights ..... 19

F. Procedural Protections Are Satisfied ..... 19

**IV. CONCLUSION** ..... 19

# EXHIBIT 9

Minute Order, September 2, 2026, Martin v. Wald, Case No. 2024CUNP032821 (Dept. 43)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

Superior Court of California, County of Ventura, Hall of Justice, Department 43

**2024CUNP032821** September 2, 2026
**TRAVIS EDWARD MARTIN, et al. vs JAMES WALD, et al.** 8:30 AM

Judge: Honorable Ben Coats
Judicial Assistant: Marycela Clement
CSR: None

---

APPEARANCES:

Travis Edward Martin, Plaintiff, self represented, Appellant, is not present.

Allen Ball, counsel, present for Defendant(s).

---

**NATURE OF PROCEEDINGS:** Ex Parte Application to Continue Hearing on Defendants' Vexatious Litigant Motion

8:50 a.m. Court convenes in this matter.

Plaintiff, Travis Edward Martin, registered to appear via zoom, however he did not log in.

Matter submitted to the Court with argument.

The Court finds/orders:

The Ex Parte Application for order continuing hearing on defendants' motion to declare Travis Martin a vexatious litigant is granted.

The Motion to Declare Travis Martin a Vexatious Litigant scheduled for 09/21/2026 is continued to 10/07/2026 at 08:20 a.m. in Department 43.

The Court notes that the motion to declare Travis Martin a Vexatious Litigant in this case should be withdrawn if the motion to declare Travis Martin a Vexatious Litigant is granted in case Wald v. Martin, Ventura County Superior Court No. 2023CUPP012195.

Notice to be given by the court.

Certificate of Clerk’s Service is attached.