COURTESY COPY

FILED
CLERK, U.S. DISTRICT COURT
9/29/2026
CENTRAL DISTRICT OF CALIFORNIA
BY: cgm DEPUTY

Travis Edward Martin
In Pro Per
1746-F South Victoria Ave.
Suite #104
Ventura CA 93003
Email: Martin57290@gmail.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TRAVIS EDWARD MARTIN, an individual,

Plaintiff,

v.

UNITED STATES SMALL BUSINESS ADMINISTRATION, a federal agency; JAMES WALD, an individual; NATALIE WALD, an individual; JAYSON COHEN, an individual; AMERICAN LEGACY SOLUTIONS LLC, a California limited liability company; and ELITE SOUND COMPANY LLC, a California limited liability company,

Defendants.

Case No. 2:26-cv-03714-WLH-DFM

Hon. Wesley L. Hsu

**PLAINTIFF'S RENEWED REQUEST FOR RECUSAL OF THE HONORABLE WESLEY L. HSU UNDER 28 U.S.C. § 455(a) AND § 455(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES**

[Declaration of Travis Edward Martin with Exhibit 1 filed concurrently]

No hearing requested; submitted for decision on the papers (Fed. R. Civ. P. 78; L.R. 7-15)

Notice of Appeal filed concurrently

**RENEWED REQUEST FOR RECUSAL**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

Plaintiff Travis Edward Martin, in pro per, renews his request that the Honorable Wesley L. Hsu recuse himself from this action under 28 U.S.C. § 455(a) and, in the alternative, § 455(b)(1), and refer the action to the Clerk for random reassignment.

The ground is the record. Between June 2 and September 24, 2026, this Court contradicted its own orders eight times, misstated the law five times on points Plaintiff had briefed correctly, once by altering a Supreme Court quotation, found four facts the record refutes, and signed orders containing errors no reader could have missed. Part II of the Memorandum sets out fifteen of these contradictions and errors, each with the docket cites that prove it. No later order acknowledges the earlier one it contradicts. Section 455 requires no motion, affidavit, or hearing; a party may invoke it directly. United States v. Sibla, 624 F.2d 864, 867-68 (9th Cir. 1980); In re Bernard, 31 F.3d 842, 843 n.1 (9th Cir. 1994). The Court decided the first request on the papers. (Dkt. 55 at 1.) Plaintiff asks that this one be decided the same way, before any further ruling, and that any order denying it state how the fifteen pairs of statements in Part II can all be true. The request rests on this document, the Memorandum, the Declaration of Travis Edward Martin and Exhibit 1, and the docket.

Dated: September 28, 2026

/s/ Travis Edward Martin

Travis Edward Martin, Plaintiff, In Pro Per

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Court has stayed a federal case against a federal agency, for years, to wait for two state cases that cannot decide one claim in it. The SBA is a party to neither state case, and no state pleading asserts a claim against the SBA, a RICO claim, or a claim on the guarantee. Even if Plaintiff won every form of relief he seeks in both state cases, all ten causes of action would still have to be adjudicated here, no Defendant would have answered, and the SBA's motion to dismiss would still be undecided. The stay order does not name one claim either state judgment would resolve, because there is none. (Dkt. 73; Dkt. 75 at 21; Dkt. 19, Ex. B.) A judge who actually read the complaints would not have signed it.

Then Plaintiff asked the Court to vacate the stay so that he could appeal it. He told the Court, with four cases, that a stay of this kind is final and appealable and that his time to appeal was running. (Dkt. 75 at 15, 27.) He was right; that is settled law. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 9-12 (1983). The Court answered, citing no case, that "there is no final judgment from which he can appeal," and in the footnote to that sentence wrote that Plaintiff "has a method to request appellate review even with the stay in place" and called him "disingenuous." (Dkt. 78 at 2 & n.1.) The "method" was an email threatening a mandamus petition to compel the Court to rule on the application it had ignored for over two weeks. It had nothing to do with appealing the stay. (Martin Decl. ¶¶ 3-4, Ex. 1.) On one page the Court got the appeal question wrong three ways: wrong on the law, wrong on the email, and contradicting itself between text and footnote. Then it threatened "terminating sanctions." (Dkt. 78 at 3.) A court that does not know what is appealable, ruling on a stay that had no lawful basis in the first place, has no business deciding whether a prisoner's case lives or dies.

That page is not an aberration. It is the pattern. Eight times in four months the Court contradicted its own orders without acknowledging it. Five times it misstated the

law on a point Plaintiff had briefed correctly, once by putting words in the Supreme Court's mouth. Four times it found a fact the record refutes. Each time, a pro se litigant writing from a prison cell had the law or the fact right and the Court had it wrong. The Court should ask itself why.

This request is not about bias. Plaintiff argued bias in June and the Court rejected it. (Dkt. 55 at 3.) What the record shows is worse, because bias at least implies a judge who knows what he is doing. There are only four explanations for this record. The first is prejudice against Plaintiff, which the Court has denied. The other three are these: the Court lacks the competence to apply the law consistently to facts that never changed; or these orders are written by different people, none of whom reads the others' work, and signed by a judge who does not read them either; or the Court's faculties have declined to the point that it cannot hold its own rulings in mind from one order to the next. There is no fifth. No single author writes that a stay is unappealable in the text and appealable in the footnote. No judge who read his August 14 order would issue the September 2 order without mentioning it. And no one who read the September 2 order before signing it would have let it name "Jayson Cohen, Jayson Cohen, Elite Sound Company LLC, Elite Sound Company, LLC" as the responding Defendants, spell the state case number two ways, number a footnote (1) through (12) and then (6), and cite a "Defendants' Reply" that does not exist. (Row 15.)

Each of the three violates the Code of Conduct the Court invoked against Plaintiff in July. (Dkt. 55 at 1-2.) Canon 3A(1) requires a judge to "be faithful to, and maintain professional competence in, the law." Canon 2A requires a judge to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 3C(1) requires disqualification whenever "the judge's impartiality might reasonably be questioned." Whichever is true, this Court should not decide this case, and it should ask itself, seriously, whether it should continue to decide anyone's. Section 455(a) does not ask which explanation is correct. It asks whether a well-informed observer would doubt that the next ruling will come from the law. Liteky v.

United States, 510 U.S. 540, 548 (1994); United States v. Holland, 519 F.3d 909, 913 (9th Cir. 2008). Fifteen times the answer has been no. If the Court can reconcile the fifteen pairs in Part II, the place to do it is the order on this request. If it cannot, "[i]f it is a close case, the balance tips in favor of recusal." Holland, 519 F.3d at 912 (citation omitted). This one is not close.

## II. FIFTEEN CONTRADICTIONS AND ERRORS, IN THE COURT'S OWN WORDS

Each row pairs two statements by this Court, or one statement by this Court and the record it ignored, and explains in plain terms why both cannot be true. No later order acknowledges the earlier one.

| Subject | What the Court said, what it then said, and why both cannot be true |
|---|---|
| 1. The Order to Show Cause on preclusion | **What the Court did:** On June 2, 2026, on its own motion, the Court ordered Plaintiff, an incarcerated pro se litigant, to show cause "on a claim by claim basis" why each of his ten claims was not barred by res judicata and collateral estoppel, and threatened dismissal. (Dkt. 40 at 4.) No Defendant had raised either defense. Plaintiff asked the Court to withdraw the order; it refused. (Dkt. 41; Dkt. 48 at 2-3.)<br>**What the record shows:** Defendants conceded in their first paragraph that "res judicata and collateral estoppel are simply inapplicable because there is no final judgment in either of the state cases." (Dkt. 60 at 2.) The Court then wrote: "The parties do not dispute that res judicata and collateral estoppel are inapplicable to this case." (Dkt. 73 at 1 n.1.)<br>**Why this matters:** Preclusion requires a final judgment. There was none. The Court forced a prisoner to brief, claim by claim, a defense no one had asserted and every party agrees does not exist. The same order told Defendants to "file Motions to Dismiss based upon the |

| Subject | What the Court said, what it then said, and why both cannot be true |
|---|---|
| | operative" complaint (Dkt. 40 at 3); twenty-three days later the Court excused them from responding at all. (Dkt. 48 at 3.) And the same order stated Younger as a three-part test (Dkt. 40 at 3); the stay order announced that "the Ninth Circuit applies a four-factor test." (Dkt. 73 at 4 n.3.) The Court contradicted its own Order to Show Cause on the very test it ordered Plaintiff to brief. |
| 2. The trial date | **What the Court said first:** On July 2, 2026, the Court set this case for a court trial on July 12, 2027, with a full pretrial schedule. (Dkt. 57 at 1, 22.)<br>**What the Court said next:** On September 2, 2026, the Court stayed the entire case indefinitely, until two state cases end. (Dkt. 73 at 8-9.) The stay order does not mention the scheduling order or the trial date. On September 24 the Court wrote that "the pretrial schedule is no longer applicable because the case is stayed." (Dkt. 78 at 2.)<br>**Why both cannot be true:** Nothing happened between July 2 and September 2. The Order to Show Cause briefing, the only matter the stay order decides, had been complete since July 7. (Dkt. 73 at 1.) The Court set a trial on the very record it later found required an indefinite stay, and has never said what changed. |
| 3. The deadline to answer | **What the Court said first:** On August 14, 2026, the Court granted Plaintiff's application "finding good cause," dissolved the stay of Defendants' obligation to answer as of September 4, and ordered every Defendant to answer or otherwise respond by September 25, 2026. (Dkt. 70.)<br>**What the Court said next:** Nineteen days later, on September 2, the Court stayed the whole case. (Dkt. 73.) The stay order does not |

| Subject | What the Court said, what it then said, and why both cannot be true |
|---|---|
| | mention the August 14 order, the September 25 deadline, or any reason for the reversal. No Defendant has ever answered.<br>**Why both cannot be true:** The only thing before the Court on September 2 was the same record, complete since July 7. On August 14 that record justified requiring answers within six weeks; on September 2 it justified freezing the case for years. A court that reverses itself in nineteen days on an unchanged record, and does not mention it, either did not know about its own order or did not think it mattered. |
| 4. The rule for ex parte applications | **What the Court said first:** Mission Power, 883 F. Supp. at 492, allows ex parte relief only on a showing of irreparable harm and an emergency not of the applicant's making. On June 18 the private Defendants applied ex parte to be excused from answering; their claimed harm was that answers might later prove unnecessary. (Dkt. 45 at 6-7.) Plaintiff objected under Mission Power. (Dkt. 47 at 2, 4.) Granted, without mentioning Mission Power. (Dkt. 48 at 3.) On August 4 Plaintiff applied ex parte for a date certain for answers, telling the Court he was using the procedure it had just approved. (Dkt. 69 at 6-7.) Granted, again without mentioning Mission Power. (Dkt. 70.)<br>**What the Court said next:** On September 24 the Court denied Plaintiff's ex parte application to vacate the stay under Mission Power, found none of his harm arguments "remotely persuasive," and warned that "[a]buse of the ex parte process may lead to sanctions, up to and including terminating sanctions." (Dkt. 78 at 2-3.) |

| **Subject** | **What the Court said, what it then said, and why both cannot be true** |
|---|---|
| | **Why both cannot be true:** One rule, applied three times. Defendants were not required to satisfy it. Plaintiff was not required to satisfy it when the Court agreed with him. Plaintiff was required to satisfy it, and threatened with dismissal, when the Court did not. The Court cannot tell Plaintiff on August 14 that ex parte scheduling relief is proper and on September 24 that seeking it is sanctionable abuse. |
| 5. Plaintiff's first recusal request | **What the Court said first:** On July 2 the Court denied Plaintiff's first recusal request because it "merely challenge[d]" prior rulings and rested "entirely upon the Court's prior adverse rulings." (Dkt. 55 at 2-3.)<br>**What the Court said next:** On September 2 the Court cited that same request as proof that Plaintiff is a forum shopper who tries "to disqualify" judges "after receiving an adverse ruling," and used it to satisfy the fourth Younger element, interference with the state cases. (Dkt. 73 at 8.) No party asked the Court to consider the recusal request; Defendants' forum-shopping argument relied on state-court filings only. (Dkt. 60 at 5, 8, 10.)<br>**Why both cannot be true:** A request that was nothing more than disagreement in July cannot be a scheme to escape the Court in September. If it was a scheme, the July order was wrong. If it was disagreement, the September finding has no basis. The Court used whichever characterization hurt Plaintiff on the day it wrote, and did so on its own initiative. |
| 6. Whether the stay can be appealed | **What the Court said first:** On September 8 Plaintiff told the Court, citing Moses H. Cone, Quackenbush, Herrera, and Seneca, that a stay sending a federal plaintiff to state court is final and immediately |

| **Subject** | **What the Court said, what it then said, and why both cannot be true** |
|---|---|
| | appealable, and that his sixty days were running. (Dkt. 75 at 15, 27.) On September 24 the Court wrote, citing no case: "while the case is stayed, there is no final judgment from which he can appeal." (Dkt. 78 at 2.)<br>**What the Court said next:** In the footnote to that sentence, the Court wrote that Plaintiff "has a method to request appellate review even with the stay in place," and called his argument "disingenuous." (Dkt. 78 at 2 n.1.)<br>**Why both cannot be true:** The text says no appeal is available. The footnote says Plaintiff knows how to get appellate review. Same page. The text is wrong: the Supreme Court held forty years ago that a stay of this kind is final and appealable. Moses H. Cone, 460 U.S. at 9-12; Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713-14 (1996); Herrera v. City of Palmdale, 918 F.3d 1037, 1042-43 (9th Cir. 2019). The footnote is built on nothing: the "writ" in the email was a mandamus petition to compel this Court to rule on an application it had ignored for over two weeks. It had nothing to do with appealing the stay. (Row 12.) The Court did not cite, distinguish, or mention any of the four cases Plaintiff put in front of it. |
| 7. Whether the Court has jurisdiction | **What the Court said first:** The Order to Show Cause directed Plaintiff to explain why his claims should not be "dismissed for lack of subject matter jurisdiction under the Younger doctrine." (Dkt. 40 at 4.) On June 25 the Court told Plaintiff he "fails to understand or acknowledge that district courts have limited jurisdiction." (Dkt. 48 at 2.) Plaintiff answered with the Ninth Circuit's holding that Younger abstention "is not jurisdictional, but reflects a court's prudential |

| Subject | What the Court said, what it then said, and why both cannot be true |
|---|---|
| | decision not to exercise jurisdiction which it in fact possesses." Benavidez v. Eu, 34 F.3d 825, 829 (9th Cir. 1994). (Dkt. 53 at 10-11; Dkt. 69 at 4.)<br>**What the Court said next:** On September 2 the Court did not dismiss for lack of jurisdiction. It kept the case, stayed it, and ordered status reports every ninety days. (Dkt. 73 at 8-9.)<br>**Why both cannot be true:** A court without subject-matter jurisdiction cannot keep a case. By staying instead of dismissing, the Court did exactly what Benavidez describes: it declined for now to exercise jurisdiction it has. Plaintiff was right. The September order refutes the June lecture, and the Court has never acknowledged Benavidez or withdrawn the lecture. |
| 8. The state court trial date | **What the Court said:** The stay order relies on the private Defendants' statement that trial in Martin v. Wald "is currently scheduled for November 30, 2026," as the reason the state court will resolve matters soon. (Dkt. 73 at 3, citing Dkt. 60 at 3.)<br>**What the record shows:** On August 21, 2026, twelve days before the stay order, those same Defendants filed a motion in the state case that automatically stayed it by statute, so the November 30 date could not be kept. They did not tell this Court. Plaintiff did, on September 8. (Dkt. 75 at 15.) The September 24 order says nothing about it.<br>**Why this matters:** The Court built its stay on a trial date that was already dead, supplied by the parties who killed it. When told, it said nothing. |
| 9. Whether Plaintiff sought | **What the Court said:** The stay order finds that "[i]nstead of requesting leave to file an amended cross-complaint, Plaintiff |

| **Subject** | **What the Court said, what it then said, and why both cannot be true** |
|---|---|
| leave to amend in state court | attempted, twice, to disqualify the state court judge." (Dkt. 73 at 7-8.) The finding came from Defendants' July 7 brief. (Dkt. 60 at 3.)<br>**What the record shows:** Plaintiff filed his noticed motion for leave to amend in the state court on July 20, 2026, six weeks before the stay order, and put that motion in front of this Court on September 8. (Dkt. 75 at 14, 24; Dkt. 76, Ex. 6.) The September 24 order says nothing about it.<br>**Why this matters:** The Court found as a fact that Plaintiff had not done something he had done six weeks earlier, on a Defendants' statement six weeks stale, and when shown the motion did not correct the finding. |
| 10. What the Supreme Court said in Kerr | **What the Court said:** The stay order's finding of an "important state interest," a required Younger element, rests on this quotation: "'It is [also in the interest of the state] … to discourage piecemeal litigation.' Kerr v. United States District Court, 426 U.S. 394, 403 (1976)." (Dkt. 73 at 6.)<br>**What Kerr says:** "[P]articularly in an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation." 426 U.S. at 403. Kerr is a mandamus case about federal appellate review of a federal trial court. It says nothing about any State or state interest.<br>**Why this matters:** The bracketed words "in the interest of the state" were inserted in place of the words the Supreme Court wrote, and the altered sentence was attributed to the Supreme Court as the basis for a required element of the stay. Whoever drafted that sentence did not read Kerr. Whoever signed the order did not check. |

| **Subject** | **What the Court said, what it then said, and why both cannot be true** |
|---|---|
| 11. The federal Defendant | **What the record shows:** The SBA, a federal agency, is a Defendant. It moved to dismiss on July 13; the motion was fully briefed and set for hearing September 4, 2026. (Dkt. 63; Dkt. 75 at 2.) The SBA never asked this Court to abstain or stay anything. (Dkt. 75 at 26.)<br>**What the Court did:** The stay order defines "Defendants" as the five private parties, never mentions the SBA, and stays every claim, including the claims against the SBA and the SBA's own pending motion. (Dkt. 73 at 1, 8-9.)<br>**Why this matters:** Younger exists to keep federal courts from interfering with state proceedings. The SBA is a party to no state case. The Court stayed claims against a federal agency, at the request of private parties, without writing the agency's name or applying one Younger factor to it. |
| 12. The email the Court called "disingenuous" | **What the email said:** On September 23, after Plaintiff's application had been pending over two weeks with no ruling and no opposition, an email from Plaintiff's account told the courtroom deputy that a petition for a writ of mandamus would be filed in the Ninth Circuit "to compel the court to issue a ruling on this application." (Martin Decl. ¶¶ 3-4, Ex. 1.) That is all it said.<br>**What the Court said it said:** The next day the Court described the email as Plaintiff "demanding a ruling on this Application or he would seek a writ," concluded from it that Plaintiff "is aware he has a method to request appellate review even with the stay in place," and on that basis found his argument about the appeal deadline "disingenuous." (Dkt. 78 at 2 n.1.) |

| Subject | What the Court said, what it then said, and why both cannot be true |
|---|---|
| | **Why this matters:** A mandamus petition to make this Court rule on a pending application is not an appeal of the stay, is not a request for review of the stay, and shows nothing about "a method to request appellate review" of the stay. The Court read a two-sentence email, attributed to it something it does not say, and called Plaintiff dishonest for being right. |
| 13. What the stay accomplishes | **What the Court ordered:** The Court stayed this case "pending resolution of" Martin v. Wald and Wald v. Martin, with status reports every ninety days. (Dkt. 73 at 2, 8-9.)<br>**What the record shows:** The SBA is not a party to either state case. The two claims against the SBA, the two federal RICO claims, the guarantor indemnity claim, and the claim concerning the SBA's collateral are pleaded in no state court. (Dkt. 75 at 21; Dkt. 19, Ex. B.) The stay order identifies no issue in this case that either state judgment would decide. Its "important state interest" is the State's interest "in enforcing the orders and judgments of its courts" (Dkt. 73 at 5 n.4, 7, citing Pennzoil), in an order that records on its first page that there is no judgment (id. at 1 n.1) and whose only "order" is a cross-complaint stricken without prejudice with leave to seek amendment. (Id. at 7.)<br>**Why this matters:** A stay in favor of state litigation is proper only if that litigation "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties"; with "any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay." Moses H. Cone, 460 U.S. at 28. Plaintiff cited that sentence. (Dkt. 75 at 21.) The Court did not reach it. When the state |

| **Subject** | **What the Court said, what it then said, and why both cannot be true** |
|---|---|
| | cases end, all ten causes of action will still be here. The Court stayed a case for years to wait for judgments that cannot decide it. |
| 14. Irreparable harm in a case the Court froze | **What the Court said:** Denying relief from the stay, the Court held that Plaintiff's growing exposure as guarantor on the SBA loan is not irreparable harm because "[m]ere financial injury … will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation." (Dkt. 78 at 2-3, quoting Goldie's Bookstore, 739 F.2d at 471.)<br>**What the same order does:** It keeps the litigation stayed indefinitely and "does not reach the merits." (Dkt. 78 at 3; Dkt. 73 at 8-9.)<br>**Why both cannot be true:** Compensatory relief "in the course of litigation" cannot be available in litigation the Court has frozen. The Court's reason for refusing to lift the stay is a remedy the stay itself forecloses. |
| 15. Signs the orders are not read before they issue | **What the orders say:** The September 2 order names the parties who responded to the Order to Show Cause as "Defendants American Legacy Solutions LLC, Jayson Cohen, Jayson Cohen, Elite Sound Company LLC, Elite Sound Company, LLC (collectively, 'Defendants')," omitting James and Natalie Wald, who filed the response. (Dkt. 73 at 1; Dkt. 60 at 1.) It renders the state case number as 2024CUNP032821 on page 1 and 2024CUNP03282 on pages 2, 3, 5, and 8. Its footnote 2 lists judicially noticed items (1) through (12) and then "(6)." (Dkt. 73 at 1-2 n.2.) It cites "Defendants' Reply at 3" for a factual finding, but the private Defendants filed no reply on the Order to Show Cause; the only reply on the docket is the SBA's, on its own motion. (Dkt. 73 at 7; Dkt. 71.) It cites Sprint as "571 U.S. 69 at |

| **Subject** | **What the Court said, what it then said, and why both cannot be true** |
| --- | --- |
| | 593–594," Supreme Court Reporter pages attached to a U.S. Reports citation, two lines after citing the same case as "134 S. Ct. 584." (Dkt. 73 at 4-5.) The September 24 order cites the Standing Order as "Docket No. 9," which is the Notice of Assignment; the Standing Order is Dkt. 13, as amended at Dkt. 66, which the same order cites two pages later. (Dkt. 78 at 2-3.) It refers to "Plaintiffs" in a case with one plaintiff. (Id. at 2.) The Order to Show Cause asks why Plaintiff's "claims is not barred" (Dkt. 40 at 4) and cites a California Supreme Court case at "50 Cal. 3d 658, 6635 n.2," a page that does not exist. (Id. at 3.) The July 2 recusal order quotes a sentence with the notation "(citation omitted)" and never supplies any citation. (Dkt. 55 at 1.) **Why this matters:** None of these errors changes an outcome. Together they show that no one read these orders against the docket, against each other, or against the law before they issued over the Court's signature. That failure produced Rows 1 through 14. |

## III. WHAT THE TABLE PROVES

Count it. Eight times the Court contradicted its own order without acknowledging it (Rows 1-7, 14). Five times it misstated the law on a point Plaintiff had briefed correctly: preclusion without a judgment (Row 1); a stay that is appealable as a matter of law (Row 6); Younger as jurisdictional (Row 7); Kerr (Row 10); Moses H. Cone's adequacy requirement (Row 13). Four times it found a fact the record refutes, two of them taken unchecked from the private Defendants, every one against Plaintiff (Rows 8, 9, 11, 12). Twice it was shown the error on September 8 and answered that it "does not reach the merits." (Dkt. 78 at 3.) And it threatened to dismiss this case for Plaintiff's use of a procedure it had approved for the same subject twice. (Dkt. 69 at 6-7; Dkt. 70; Dkt.

78 at 3.) Two rows are findings about who Plaintiff is: mere disagreement in July, forum shopper in September, with no party asking for either (Row 5); then "disingenuous," on a misread email, in the order that threatened "terminating sanctions" (Row 12). A bad-faith finding the record refutes, joined to a threat to dismiss, is a verdict on the litigant announced in advance.

Set the score beside it. Plaintiff said preclusion required a judgment that did not exist; Defendants conceded it. (Dkt. 60 at 2.) Plaintiff said Younger is not jurisdictional; the Court, which had told him he "fails to understand" jurisdiction, then kept the case. (Dkt. 48 at 2; Dkt. 73 at 8-9.) Plaintiff said Mission Power governs ex parte relief; the Court ignored it until it could be used against him. Plaintiff said the stay is appealable now and that he needed a ruling so he could take the appeal (Dkt. 75 at 27); the Court said no appeal lies, then said he had a method, then called him disingenuous. Plaintiff said the state trial date was dead and his motion to amend was on file; the Court did not look. Plaintiff said the state cases cannot decide these claims; the Court did not answer. An incarcerated pro se litigant has been right on the law and the facts at every turn, and this Court has been wrong at every turn. That is not what adverse rulings look like. It is what a court that is not reading looks like.

## IV. THE LAW REQUIRES RECUSAL

### A. The standard.

A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test is objective: "what matters is not the reality of bias or prejudice but its appearance." Liteky, 510 U.S. at 548. The question is "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." Holland, 519 F.3d at 913 (citation omitted); Clemens v. U.S. Dist. Court, 428 F.3d 1175, 1178 (9th Cir. 2005); Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988). Conduct inside the case disqualifies when it displays "clear inability to render fair judgment," 510 U.S. at 551, or "such a high degree of favoritism or antagonism as to make fair judgment impossible,"

id. at 555. The facts are weighed together: "We need not decide whether any one of these things alone would require recusal, because they operate in combination in this case such that a reasonable person could question [the judge's] impartiality." In re Creech, 119 F.4th 1114, 1123-24 (9th Cir. 2024). "If it is a close case, the balance tips in favor of recusal." Holland, 519 F.3d at 912 (citation omitted); Creech, 119 F.4th at 1121.

**B. Section 455(a) does not require bias, and this record is not "adverse rulings."**

The statute asks whether impartiality "might reasonably be questioned." It does not ask why. When a court decides the same question opposite ways on an unchanged record and never explains the reversal, the merits did not decide it, because the merits did not change. When it attributes to the Supreme Court words the Supreme Court did not write, the law did not decide it. When it adopts one side's facts, is shown they are false, and declines to look, the record did not decide it. Fifteen times something other than the merits decided this case, every time against Plaintiff. Liteky's word is "inability." 510 U.S. at 551. Plaintiff need not show that the Court wants to rule against him, only that it cannot be relied on to rule from the law, and its own orders show it. The Ninth Circuit reassigns cases where a judge reverses a prior order "sub silento," Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 372-73 (9th Cir. 2005), and where "adamancy in erroneous rulings" leaves decisions unresponsive "to the facts and rational arguments" presented, Disability Rights Mont., Inc. v. Batista, 930 F.3d 1090, 1100-01 (9th Cir. 2019) (citations omitted).

The Court will say, as it did in July, that "a judge's prior adverse ruling is not sufficient cause for recusal." (Dkt. 55 at 2, quoting United States v. Studley, 783 F.2d 934, 939 (9th Cir. 1986).) True and irrelevant. Liteky protects rulings because rulings, "[i]n and of themselves (i.e., apart from surrounding comments or accompanying opinion)," show only that a judge decided. 510 U.S. at 555. Part II is not a list of rulings Plaintiff lost. It is a list of rulings the Court cannot reconcile with its own rulings, findings the record refutes, an altered quotation, a bad-faith finding built on a misread email, and a threat of dismissal for conduct the Court licensed. F.J. Hanshaw

Enterprises, Inc. v. Emerald River Development, Inc., 244 F.3d 1128, 1145 (9th Cir. 2001), rejected a request "based … entirely upon alleged procedural errors"; Plaintiff's point is that the Court is not deciding, and the orders prove it. In United States v. McTiernan, 695 F.3d 882, 892 (9th Cir. 2012), the judge's harsh words rested on the defendant's "known conduct," lies to the FBI he later admitted, and "had absolutely no negative effect" on the outcome. Here the "disingenuous" finding rests on a correct statement of law and a misread email, and it arrived with a threat to end the case.

**C. The request is timely.**

A request must follow "with reasonable promptness after the ground for such a motion is ascertained." Preston v. United States, 923 F.2d 731, 733 (9th Cir. 1991). The stay issued September 2; Plaintiff moved to vacate it September 8; the order completing the pattern issued September 24; this request follows within days. Rows 1 and 7 begin with orders that predate Dkt. 55, but what makes them grounds is what the Court did with them afterward, none of which existed on July 2.

**D. Explain the orders or step aside.**

If the Court can explain how a case set for trial on July 2 and ordered answered on August 14 became a case frozen for years on September 2 with nothing added to the record, the explanation belongs in the order on this request. An order that recites Liteky and Studley and does not answer the table will confirm what the table shows. Plaintiff will ask the Ninth Circuit to reassign this case. The Court should not make the Ninth Circuit do it. The honorable course, and the one § 455 commands, is to step aside now.

**E. In the alternative, § 455(b)(1).**

If the Court concludes that Part II reflects something other than inability, only one thing is left: every contradiction was resolved against Plaintiff, every adopted fact came from Defendants, and the only bad-faith findings in the case are against Plaintiff and refuted by the record. That is "an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes."

United States v. Conforte, 624 F.2d 869, 881 (9th Cir. 1980); 28 U.S.C. § 455(b)(1). Berger v. United States, 255 U.S. 22, 33-36 (1921).

**F. The appeal is no bar.**

A notice of appeal divests the district court only of control "over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (per curiam); Rodriguez v. County of Los Angeles, 891 F.3d 776, 790 (9th Cir. 2018). The appeal asks whether Younger permits the stay; this request asks who presides. The Court should decide this first.

## V. CONCLUSION

Plaintiff requests that the Honorable Wesley L. Hsu recuse himself under 28 U.S.C. § 455(a) or, in the alternative, § 455(b)(1); refer this action to the Clerk for random reassignment; and make no further ruling until this request is decided. In the alternative, Plaintiff requests that the Court refer this request to another judge of this District, as this District has done before. See McTiernan, 695 F.3d at 891 (Judge Hatter decided request directed at Judge Fischer); Hanshaw, 244 F.3d at 1145 (Judge McLaughlin decided request directed at Judge Taylor).

One of three things is true. The Court cannot apply the law consistently to unchanged facts; or the Court is not reading the orders issued in its name; or the Court can no longer keep its own rulings in mind from one month to the next. The record leaves no fourth choice the Court has not already denied. Each violates Canons 2A and 3A(1). Each requires recusal here. And each is a reason for the Court to consider, on its own, whether it should remain on the bench. If the Court denies this request, Plaintiff asks that the order state how each pair of statements in Part II can be reconciled, so that the Ninth Circuit, which will be asked to reassign this case in any event, has the Court's explanation before it.

Dated: September 28, 2026
/s/ Travis Edward Martin
Travis Edward Martin, Plaintiff, In Pro Per

## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, Plaintiff in pro per, certifies that the Memorandum of Points and Authorities, including the table in Part II, contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 28, 2026

/s/ Travis Edward Martin
Travis Edward Martin
Plaintiff, In Pro Per

## PROOF OF SERVICE

I, John Ruiz, declare: I am over the age of eighteen years and not a party to this action. On September 28, 2026, I served the following documents:

1. Plaintiff's Renewed Request for Recusal of the Honorable Wesley L. Hsu Under 28 U.S.C. § 455(a) and § 455(b)(1); Memorandum of Points and Authorities; and
2. Declaration of Travis Edward Martin with Exhibit 1,

on the following parties by the method indicated:

Allen R. Ball, Esq., Law Office of Ball & Yorke, 1001 Partridge Drive, Suite 330, Ventura, California 93003 (counsel for Defendants James Wald, Natalie Wald, Jayson Cohen, American Legacy Solutions LLC, and Elite Sound Company LLC).

Paul (Bart) Green, Assistant United States Attorney, Federal Building, Suite 7516, 300 North Los Angeles Street, Los Angeles, California 90012 (counsel for Defendant United States Small Business Administration).

[X] BY MAIL: I placed true copies in sealed envelopes addressed as listed above, with first-class postage fully prepaid, and deposited them with the United States Postal Service at Scottsdale, Arizona.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 28, 2026, at Scottsdale, Arizona.

/s/ John Ruiz

John Ruiz

# ATTACHMENT 1

Complaint of Judicial Misconduct or Disability: Subject Judge Hon. Wesley L. Hsu
Email of September 23, 2026, from Complainant to chambers (not on PACER)

| | |
|---|---|
| **From:** | martin57290@gmail.com |
| **To:** | WLH_Chambers@cacd.uscourts.gov |
| **Date:** | Wednesday, September 23, 2026, 8:30 AM (Pacific Time) |
| **Subject:** | Re: Ex Parte Application |

This matter has been pending for over two weeks without a ruling. Please be advised that we will be filing a petition in the Ninth Circuit for a writ of mandamus to compel the court to issue a ruling on this application.

Thank you.

On Tue, Sep 8, 2026, 1:20 PM T, Martin <martin57290@gmail.com> wrote:

> Please find attached.
>

*Reproduced from the Sent folder of Complainant's email account.*

## COMPLAINT OF JUDICIAL MISCONDUCT OR DISABILITY (page 1 of 2)

1. Name of Complainant: Travis Edward Martin

   Contact Address*: 1746-F South Victoria Ave., Suite #104
   Ventura, CA 93003

   Daytime telephone: (___) ______________

   *Please notify the Office of the Circuit Executive in writing of any changes to your address as soon as possible. We will use your last known address on file to communicate about your complaint.

2. Name(s) of Judge(s): Hon. Wesley L. Hsu, U.S. District Judge

   Court: U.S. District Court, Central District of California

3. Does this complaint concern the behavior of the judge(s) in a particular case or cases?

   ☒ Yes ☐ No

   If "yes," give the following information about each case:

   Court: U.S. District Court, Central District of California

   Case Number: 2:26-cv-03714-WLH-DFM
   (Martin v. U.S. Small Business Administration, et al.)

   Are (were) you a party or lawyer in the case?

   ☒ Party ☐ Lawyer ☐ Neither

   If you appealed the decision, please provide information about your appeal.

   Case Number: [Ninth Circuit No. not yet assigned]

   Current status of appeal: Notice of appeal filed [date] (Dkt. 73, Dkt. 78)

**COMPLAINT OF JUDICIAL MISCONDUCT OR DISABILITY (page 2 of 2)**

**4.** Have you filed any lawsuits against the judge?

☐ Yes ☒ No

If "yes," give the following information about each such lawsuit:

Court: ______________________

Case Number: ______________________

Present status of lawsuit: ______________________

If you appealed the decision, please provide information about your appeal.

Case Number: ______________________

Current status of appeal: ______________________

**5.** **Brief Statement of Facts.** Attach a brief statement of the specific facts that support your claim of judicial misconduct or disability. Describe what happened, when and where it happened, and any information that would help an investigator check the facts. **Your Statement of Facts must be no longer than five standard 8.5x11 inch, single-sided, double-spaced pages using 12-point font.**

**You must provide objectively verifiable proof such as the names of witnesses or docket numbers of transcripts to support your allegations.** You cannot prove misconduct only by saying that the judge ruled against you. The appellate court is the appropriate place to argue that a judge's rulings were wrong. Do not include copies of your filings in the underlying case or the judge's orders because those documents are already accessible via PACER (the federal filing system). Excess or irrelevant documentation will not be considered. Do not submit any original documents, as they may not be returned to you.

**6.** **Declaration and signature:**

I declare under penalty of perjury that the statements made in this complaint are true and correct to the best of my knowledge.

(Signature) ______________________ (Date) September 28, 2026

## STATEMENT OF FACTS

Subject Judge: Hon. Wesley L. Hsu, U.S. District Judge, C.D. Cal. Case: Martin v. U.S. Small Business Administration, et al., No. 2:26-cv-03714-WLH-DFM. All docket ("Dkt.") cites are to that case on PACER.

**1. What this complaint is, and is not.**

Complainant is the pro se plaintiff. He does not ask the Chief Judge to review any ruling, vacate any order, reassign the case, or require recusal; those matters are before the Ninth Circuit on appeal. This complaint concerns what Judge Hsu's orders show on their face, whether or not any ruling is correct. Over four months, his orders contradicted his own earlier orders six times without acknowledging them, misquoted the Supreme Court, misread a two-sentence email, and issued with errors no reader could miss. Those facts support one of two conclusions, and each is cognizable: an "impairment of cognitive abilities that renders the judge unable to function effectively" (Rule 4(c); 28 U.S.C. § 351(a)); or orders drafted by others and issued under the judge's signature without his review, which is "conduct prejudicial to the effective and expeditious administration of the business of the courts" (Rule 4(a)).

**2. The judge's orders do not account for his own earlier orders.**

(a) On July 2, 2026, Judge Hsu set a court trial for July 12, 2027. (Dkt. 57 at 1, 22.) On September 2, he stayed the case indefinitely. (Dkt. 73 at 8-9.) The stay order does not mention the scheduling order; the only matter it decides had been fully briefed since July 7. (Dkt. 73 at 1.)

(b) On August 14, "finding good cause," he ordered every defendant to answer by September 25. (Dkt. 70.) Nineteen days later, on the same record, he stayed the entire case without mentioning the August 14 order. (Dkt. 73.)

(c) On July 2, he held that Complainant's first recusal request "merely challenge[d]" prior rulings. (Dkt. 55 at 2-3.) On September 2, he cited that same request as proof that Complainant tries "to disqualify" judges "after receiving an adverse ruling." (Dkt. 73 at 8.) No party had raised it. (Dkt. 60 at 5, 8, 10.)

(d) He granted ex parte scheduling relief to the defendants, and then to Complainant, without applying the Mission Power standard. (Dkt. 48 at 3; Dkt. 70.) On September 24, he applied that standard to Complainant alone and warned that "[a]buse of the ex parte process may lead to sanctions, up to and including terminating sanctions." (Dkt. 78 at 2-3.)

(e) On September 24, his text states "there is no final judgment from which he can appeal," and the footnote to that sentence states Complainant "has a method to request appellate review even with the stay in place." (Dkt. 78 at 2 & n.1.)

(f) His June 2 order to show cause stated the Younger test as three parts and ordered Complainant to brief it. (Dkt. 40 at 3.) His September 2 order announced that "the Ninth Circuit applies a four-factor test" and applied four. (Dkt. 73 at 4 n.3.)

The question is not which ruling in each pair is right. Each later order contradicts an earlier order by the same judge, on an unchanged record, and never acknowledges it.

**3. The orders contain errors that no one who read them could miss.**

The September 2 order names the responding defendants as "Jayson Cohen, Jayson Cohen, Elite Sound Company LLC, Elite Sound Company, LLC," omitting James and Natalie Wald, who filed the response. (Dkt. 73 at 1; Dkt. 60 at 1.) It gives the state case number as 2024CUNP032821 on page 1 and 2024CUNP03282 on pages 2, 3, 5, and 8. It numbers judicially noticed items (1) through (12), then "(6)." (Id. at 1-2 n.2.) It cites "Defendants' Reply at 3" for a finding, but the private defendants filed no reply; the only reply on the docket is the SBA's, on a

different motion. (Id. at 7; Dkt. 71.) It cites Sprint as "571 U.S. 69 at 593–594," attaching Supreme Court Reporter pages to a U.S. Reports cite. (Id. at 4-5.) It supports a required element of its ruling by quoting Kerr v. U.S. District Court, 426 U.S. 394, 403 (1976), as saying "It is [also in the interest of the state] … to discourage piecemeal litigation." (Dkt. 73 at 6.) Kerr says it is "in the interest of the fair and prompt administration of justice to discourage piecemeal litigation." 426 U.S. at 403. The bracketed words replace the Supreme Court's words.

The September 24 order cites the Standing Order as "Docket No. 9," which is the Notice of Assignment (the Standing Order is Dkt. 13), and refers to "Plaintiffs" in a one-plaintiff case. (Dkt. 78 at 2-3.) The June 2 order asks why Complainant's "claims is not barred" and cites a California Supreme Court case at "50 Cal. 3d 658, 6635 n.2." (Dkt. 40 at 3-4.) The July 2 order quotes a sentence followed by "(citation omitted)" and supplies no citation. (Dkt. 55 at 1.)

**4. The judge misread a two-sentence email and called Complainant dishonest.**

On September 23, after Complainant's ex parte application (Dkt. 75) had been pending over two weeks with no ruling, his email to chambers stated that a mandamus petition would be filed "to compel the court to issue a ruling on this application." (Attachment 1.) The next day, Judge Hsu described the email as "demanding a ruling on this Application or he would seek a writ," concluded that Complainant "is aware he has a method to request appellate review even with the stay in place," and called his argument "disingenuous," in the same order that threatened terminating sanctions. (Dkt. 78 at 2 n.1, 3.) The email says nothing about review of the stay. This is evidence apart from any ruling: the email's actual text, compared with what the order says it says.

**5. Why this warrants inquiry.**

The Rules name "impairment of cognitive abilities that renders the judge unable to function effectively" as a disability. Rule 4(c). The evidence here is not an adverse ruling or a guess about the judge's thinking. It is the judge's own orders compared with each other, a Supreme Court opinion compared with the order quoting it, and an email compared with the order describing it. A judge functioning effectively does not contradict his own orders six times in four months without noticing, contradict his text in his footnote, list the same defendant twice, cite a brief that does not exist, or rewrite a Supreme Court quotation. If Judge Hsu read and approved these orders, the pattern raises the disability question. If he did not, orders are issuing under his name that he has not reviewed. Either is a matter for this process, not for appeal.

Complainant asks that the Chief Judge conduct an inquiry under 28 U.S.C. § 352(a), including a request for Judge Hsu's written response and a review of the orders cited above, and take any further action the Act allows. Complainant seeks no relief in his case through this complaint.

# Ex Parte Application

1 message

**T, Martin** <martin57290@gmail.com> Wed, Sep 23, 2026 at 8:30 AM
To: WLH_Chambers@cacd.uscourts.gov

This matter has been pending for over two weeks without a ruling. Please be advised that we will be filing a petition in the Ninth Circuit for a writ of mandamus to compel the court to issue a ruling on this application.

Thank you.

On Tue, Sep 8, 2026, 1:20 PM T, Martin <martin57290@gmail.com> wrote:

> Please find attached.

# SERVICE OF DOCUMENTS

September 29, 2026

The following documents are served on the Honorable Wesley L. Hsu:

1. Plaintiff's Renewed Request for Recusal of the Honorable Wesley L. Hsu Under 28 U.S.C. § 455(a) and § 455(b)(1)

2. Complaint of Judicial Misconduct or Disability