UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRAVIS EDWARD MARTIN, an individual,

Plaintiff,

*v.*

UNITED STATES SMALL BUSINESS ADMINISTRATION, a federal agency; JAMES WALD, an individual; NATALIE WALD, an individual; ELITE SOUND COMPANY, LLC, a California limited liability company; JAYSON COHERN, an individual; AMERICAN LEGACY SOLUTIONS, LLC, a California limited liability company,

Defendants.

Case No. 2:26-cv-03714-WLH-DFM

**ORDER RE PLAINTIFF'S RENEWED REQUEST FOR RECUSAL [84]**

This case arises from Plaintiff Travis Edward Martin's allegations of business and property injuries against the United States Small Business Administration ("SBA"), James Wald, Natalie Wald, Elite Sound Company, LLC and American Legacy Solutions, LLC ("Defendants"). Before the Court is Plaintiff's Renewed Request for Recusal of the Honorable Wesley L. Hsu Under 28 U.S.C. § 455(a) and § 455(b)(1). ("Request," Dkt. No. 84).

Plaintiff contends that alleged errors, inconsistencies and omissions in the Court's prior orders demonstrate, when considered collectively, that the Court cannot continue to preside over this action impartially. Plaintiff identifies fifteen alleged deficiencies and argues that their cumulative effect creates an appearance of partiality requiring disqualification. (Request at 1-2, 5-15).

The Court has considered Plaintiff's allegations individually and collectively. Many of Plaintiff's allegations challenge the legal reasoning and factual findings underlying the Court's September 2, 2026, order staying this action ("Stay," Dkt. No. 73). Those challenges concern the validity of the Stay and are not properly resolved through a request for recusal. Moreover, Plaintiff has appealed the Stay to the Ninth Circuit. (*See* Dkt. No. 79). The Court therefore does not reconsider or modify the aspects of the Stay involved in that appeal. The question presented here is narrower: whether the Court's rulings, statements and other circumstances identified by Plaintiff, considered individually and collectively, establish personal bias or prejudice or would cause a reasonable person, knowing the relevant facts, to question the Court's impartiality, such that recusal is required under 28 U.S.C. § 455(a) or (b)(1).

Having considered the record and the governing law, the Court concludes that they do not. Accordingly, Plaintiff's renewed request for recusal is **DENIED**.

## I. BACKGROUND

On June 2, 2026, the Court issued an order directing the parties to address whether abstention or preclusion principles affected the continuation of this action (Dkt. No. 40). On June 18, 2026, Defendants requested a stay of their obligation to

respond to the operative complaint pending resolution of the Court's order to show cause (Dkt. No. 45). The Court granted that request (Dkt. No. 48). On June 26, 2026, Plaintiff filed an *ex parte* application requesting the voluntary recusal of Judge Wesley Hsu under 28 U.S.C. § 455(a) (Dkt. No. 53). On July 2, 2026, the Court entered a scheduling order (Dkt. No. 57) and denied Plaintiff's earlier request for recusal (Dkt. No. 55). When denying this earlier request for recusal, the Court cited the following well-established principles: "[i]t is . . . well-established that 'a judge's prior adverse ruling is not sufficient cause for recusal,'" "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion" and "'Judges are known to make procedural and even substantive errors on occasion' but that such errors 'would be the basis for appeal, not recusal[.]'" (Dkt. No. 55 at 2).

On August 14, 2026, the Court granted Plaintiff's *ex parte* application to dissolve the stay of Defendants' obligation to respond to the operative complaint. (Dkt. No. 70). The Court ordered that stay dissolved effective September 4, 2026, and set September 25, 2026, as the deadline for Defendants to answer or otherwise respond. (Dkt. No. 70 at 1).

On September 2, 2026, the Court stayed this action pending developments in related state-court proceedings (Dkt. No. 73). On September 8, 2026, Plaintiff filed an *ex parte* application seeking relief from the Stay ("EPA," Dkt. No. 75). On September 24, 2026, the Court denied that application on procedural grounds, concluding that Plaintiff had not demonstrated the circumstances necessary for *ex parte* relief ("EPA Denial," Dkt. No. 78). The denial was without prejudice to Plaintiff filing a regularly noticed motion seeking dissolution or modification of the Stay. (EPA Denial at 3). "The Court [did] not reach the merits of Plaintiff's arguments concerning whether the Stay should remain in effect." (*Id.*).

Plaintiff subsequently filed a notice of appeal on September 28, 2026 ("Notice of Appeal," Dkt. No. 79), identifying the Court's Stay and EPA Denial. Plaintiff filed the present renewed request for recusal on September 29, 2026.

## II. LEGAL STANDARD

A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for recusal is "[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997)); *see also United States v. Holland*, 519 F.3d 909, 913-14 (9th Cir. 2008); *Clemens v. United States District Court*, 428 F.3d 1175, 1178 (9th Cir. 2005). Section 455(b)(1) separately requires disqualification where a judge "has a personal bias or prejudice concerning a party[.]" 28 U.S.C. § 455(b)(1).

In *Liteky v. United States*, 510 U.S. 540, 555 (1994), the Supreme Court explained that judicial rulings ordinarily do not provide a basis for disqualification: "judicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion." *See also McTiernan*, 695 F.3d at 891 ("Ordinarily, the alleged bias must stem from an extrajudicial source.") (internal quotation marks omitted); *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) ("[A] judge's prior adverse ruling is not sufficient cause for recusal.").

*Liteky* further explains when judicial opinions formed in the course of proceedings or remarks made in those proceedings may support disqualification:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-56. The Court must evaluate the circumstances presented, including their cumulative effect, rather than treating the judicial origin of an allegation as dispositive. However, § 455 does not provide a substitute for appellate review of alleged legal or factual errors. As *Liteky* explains, such rulings are ordinarily grounds for appeal, not recusal. *Id.* at 555.

As the Ninth Circuit explained in *Holland*, "[d]isqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." 519 F.3d 909, 913 (9th Cir. 2008). The Ninth Circuit further directs courts, when analyzing these claims, to "be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Id.* (quoting *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999).

## III. DISCUSSION

Plaintiff alleges fifteen errors, inconsistencies or mischaracterizations in the Court's prior orders. These allegations concern the Court's application of abstention principles, its treatment of governing authority, its procedural rulings, its characterization of Plaintiff's communications and its description of the related state proceedings. (*See generally* Request). Plaintiff contends that these circumstances, when taken together, demonstrate that the Court's decisions cannot reasonably be attributed to ordinary judicial error. (Request at 3-5; 16-18).

The Court has considered that argument. The relevant inquiry is not whether Plaintiff has identified decisions or statements that may be challenged as erroneous, because, once again, judicial errors do not ordinarily support recusal. It is whether the circumstances establish personal bias, prejudice or would cause a reasonable person, knowing the relevant facts, to question the Court's impartiality. *See Liteky*, 510 U.S. at 555-56; *Holland*, 519 F.3d at 913.

**A. Abstention Analysis**

Plaintiff challenges the legal reasoning and factual findings underlying the Court's Stay. (Request at 5-6, 9-12). He contends that the Court relied on an altered quotation, made findings inconsistent with the record and drew improper inferences from his conduct in the related state proceedings. (*See* Request at 5-8, 10-15). Plaintiff argues that these alleged deficiencies, considered together, demonstrate partiality rather than ordinary judicial error. (*See id.* at 16-17).

These allegations implicate two distinct questions. Whether the Stay is supported by correct legal reasoning and factual findings concerns the validity of that ruling. Whether the alleged deficiencies demonstrate disqualifying bias or prejudice or would cause a reasonable person, knowing the relevant facts, to question the Court's impartiality is the question presented by the Request. The Court therefore considers the allegations for the latter purpose but does not resolve the former. Moreover, because Plaintiff has appealed the Stay rather than file a properly noticed motion for reconsideration, the Court does not reconsider or modify the aspects of that ruling involved in the appeal.

Plaintiff specifically challenges the Court's use of *Kerr*. In discussing important state interests, the Court stated: "[i]t is [also in the interest of the state] … to discourage piecemeal litigation." (Stay at 6 (citing *Kerr*, 426 U.S. at 403)). Plaintiff contends that the cited authority does not support the proposition for which the quotation was used. (Request at 11).

The discussion in *Kerr* concerns the availability of extraordinary appellate relief and the administration of judicial proceedings, rather than the important-state-interest inquiry governing *Younger* abstention. *See Kerr*, 426 U.S. at 402-03. The use of the bracketed language by the Court was not intended to imply that the Court had specifically applied the important-state-interest inquiry; rather, the Court was identifying with brackets Its substitution of the issue before this Court to reach the

result reached by the Court in *Kerr*. In retrospect perhaps the Court could have been more clear.

*Liteky* explains that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" because they ordinarily provide grounds for appellate review rather than recusal. 510 U.S. at 555. The Court thus considers whether this error, when considered with Plaintiff's other allegations, establishes disqualifying partiality or prejudice and finds that it does not.

Plaintiff also objects to the Stay's reliance on the state court's prior order striking his amended cross-complaint and to its discussion of purported forum shopping. (Request at 8, 10-11). The Stay stated that allowing overlapping claims to proceed in federal court could permit Plaintiff to "circumvent the state court's authority." (Stay at 7). Plaintiff disputes that characterization, emphasizing that he filed this federal action before the state court's ruling and subsequently sought leave to amend in state court. (Request at 10-11).

Plaintiff's objections raise substantive questions concerning the chronology of the proceedings, the application of abstention doctrine and the inferences properly drawn from Plaintiff's litigation conduct. The Court does not resolve those questions here. It has, however, considered the challenged reasoning and language, including the *Kerr* citation, in assessing Plaintiff's allegation of partiality.

The Court concludes that the challenged abstention analysis, considered both alone and in context and with the remaining allegations, does not establish personal bias or prejudice, nor does it establish that a reasonable observer would question the Court's impartiality. This conclusion does not depend on any reconsideration of the appropriateness of the Stay, which Plaintiff did not regularly notice prior to filing a notice of appeal. *See Liteky*, 510 U.S. at 555-56.

**B. Procedural Rulings**

Plaintiff argues that the Court's procedural rulings are evidence of disqualifying partiality, personal bias or prejudice. (*See* Request at 3-7). On June 2, 2026, the

Court ordered Plaintiff to show cause as to why the action was not subject to abstention under *Younger* or barred by res judicata or collateral estoppel. ("OSC," Dkt. No. 40 at 4). On June 18, Defendants sought a stay of their obligation to answer the First Amended Complaint pending resolution of the OSC (Dkt. No. 45), which the Court granted (Dkt. No. 48). On July 2, 2026, the Court entered a Civil Pretrial Schedule and Trial Order establishing a February 19, 2027, discovery cutoff and a July 12, 2027, trial date. (Dkt. No. 57 at 22). On August 4, Plaintiff filed an *ex parte* application to dissolve the stay of Defendants' obligation to respond to the First Amended Complaint (Dkt. No. 69), which the Court granted (Dkt. No. 70). By that time, Defendant SBA had filed a motion to dismiss the First Amended Complaint (Dkt. No. 63), and the Court had received both Plaintiff's and Defendants' filings regarding the OSC (Dkt. Nos. 41, 45, 46, 47, 52, 61, 64). On September 2, after considering the parties' responses to the OSC, the Court issued its Stay (Dkt. No. 73) and vacated the upcoming hearing on SBA's motion to dismiss (Dkt. No. 74).

Plaintiff contends that the Court's decision to stay the action was inconsistent with its earlier orders establishing a trial date and deadlines for Defendants to respond to the First Amended Complaint. (Request at 5-7). He argues that the Stay does not adequately account for the procedural posture established by those earlier orders. (*Id.* at 6-7).

The earlier orders, however, addressed different procedural questions. The July 2 order established a schedule for litigation, while the August 14 order addressed when Defendants would be required to respond to the operative complaint. Neither order resolved the separately pending question whether the Court should abstain from exercising jurisdiction. The Stay, issued September 2, addressed that question after considering the OSC briefing. The fact that the Court had previously established a schedule and set a responsive-pleading deadline did not preclude it from subsequently resolving the abstention issue.

The Court acknowledges the sequence of its orders. A district court may establish a litigation schedule and subsequently determine that proceedings should be stayed. Although Plaintiff disputes the legal and factual basis for the Stay, that dispute concerns the merits of a judicial ruling. The sequence of orders, considered individually and together with Plaintiff's remaining allegations, does not establish personal bias, prejudice or partiality. Whether the Stay was legally justified is a question concerning the validity of that ruling, which is currently on appeal.

**C. *Ex Parte* Application Rulings**

Plaintiff further challenges the Court's treatment of *ex parte* applications. He contrasts the Court's August 14 grant of his earlier *ex parte* application to reimpose Defendants' obligation to respond to the operative complaint with the September 24 denial of his *ex parte* application seeking to vacate the Stay. (Request at 7-8). The applications, however, sought different relief in different procedural circumstances. The August 14 order addressed the timing of Defendants' responsive pleadings. (Dkt. No. 70 at 1). The September 8 application sought to vacate or modify a Stay entered on abstention grounds, reinstate previously established deadlines and resume proceedings in the action. (EPA at 1-2).

In denying the latter application, the Court relied on *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995) for the proposition that *ex parte* applications are "rarely justified" and that a moving party must demonstrate that it will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." (EPA Denial at 2 (quoting *Mission Power*, 883 F. Supp. at 490, 492)). The Court concluded that Plaintiff had not made the showing necessary for such relief. (*Id.* at 2-3).

The EPA Denial expressly limited its rejection of Plaintiff's alternative request for reconsideration. It denied that request "without prejudice to Plaintiff filing a regularly noticed motion seeking dissolution or modification of the Stay" and stated that the Court did "not reach the merits of Plaintiff's arguments concerning whether

the Stay should remain in effect." (*Id.* at 3). Instead of filing a regularly noticed motion, Plaintiff chose to appeal.

Plaintiff may dispute whether the Court applied *Mission Power* correctly or consistently. The Court has considered that objection, including Plaintiff's contention that the earlier grant and subsequent denial reflected unequal treatment. The different procedural outcomes do not establish that the Court acted from personal bias or that a reasonable person, knowing the relevant facts, would question its impartiality. See *Liteky*, 510 U.S. at 555-56.

**D. Characterization of Plaintiff's September 23 Email**

Plaintiff also challenges the Court's characterization of his September 23, 2026, email in the EPA Denial. (Request at 3, 9, 12-13). The challenged statement arose in the context of Plaintiff's September 8 *ex parte* application, which sought immediate relief from the Stay. (Dkt. No. 75).

In support of emergency relief, Plaintiff argued that the Stay disrupted the Court's existing pretrial schedule and that "[a] regularly noticed motion cannot be heard before those dates begin to pass." (EPA at 3). Plaintiff further asserted that the Stay was an appealable decision and that "the time to appeal is running." (*Id.*). He maintained that "a prompt ruling either restores this case to its schedule or clears the way for review in the Ninth Circuit without months of lost time." (*Id.*). Plaintiff also contended that his financial exposure as a guarantor continued to increase while the action remained stayed. (*Id.*).

On September 23, 2026, while the application remained pending, Plaintiff emailed the Court: "This matter has been pending for over two weeks without a ruling. Please be advised that we will be filing a petition in the Ninth Circuit for a writ of mandamus to compel the court to issue a ruling on this application. Thank you." (*See* Declaration of Travis Edward Martin Ex. 1 at ¶¶3-4). The following day, the Court denied *ex parte* relief. (Dkt. No. 78).

The EPA Denial addressed Plaintiff's contention that the running appeal period justified immediate relief. The Court observed, "while the case is stayed, there is no final judgment from which he can appeal." (EPA Denial at 2). The statement addressed the absence of a final judgment disposing of the action; it did not expressly decide whether the Stay was immediately appealable under *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 8-10 (1983). Under *Moses H. Cone*, certain stay orders may constitute final decisions for purposes of appellate jurisdiction notwithstanding the absence of a judgment terminating the action. The absence of a conventional final judgment therefore does not necessarily foreclose an immediate appeal of a stay order.

In a footnote addressing Plaintiff's timing argument, the Court observed: "the Court finds this *argument* disingenuous given Plaintiff's e-mail to the Court demanding a ruling on this Application or he would seek a writ, so Plaintiff is aware he has a method to request appellate review even with the stay in place." (EPA Denial at 2-3 n.1) (emphasis added). Plaintiff challenges both the inference drawn from his email and the Court's use of the term "disingenuous." (Request at 9, 12-13).

The Court recognizes that "disingenuous" is a critical characterization of Plaintiff's litigation argument. *See Liteky*, 510 U.S. at 555 ("judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge). The term conveys more than mere disagreement with the legal position advanced in that argument. The comment, however, arose in evaluating Plaintiff's argument for emergency relief, particularly his contention that the time available to seek appellate review was running. It was not and would not be interpreted by an objective observer with knowledge, an assessment of Plaintiff's character. Critical comments when assessing the merits of a party's argument is not evidence of bias or partiality.

The Court has considered Plaintiff's objections to both the reasoning and the language of the footnote. Viewed both alone and and together with Plaintiff's

remaining allegations, the challenged characterization does not demonstrate the deep-seated favoritism or antagonism contemplated by *Liteky* or establish that a reasonable person, knowing the relevant facts, would question the Court's impartiality.

**E. Alleged Factual Inaccuracies and Errors**

Plaintiff asserts additional inaccuracies concerning the related state-court proceedings. (*See* Request at 10-11). Several of these objections concern the factual premises and legal scope of the Stay. The Court does not determine their merits in resolving recusal. Rather, the Court considers whether the alleged inaccuracies require disqualification under Section 455(a) or (b)(1) and finds that they do not.

Plaintiff challenges the Stay's description of the status of a state-court trial date and its treatment of his efforts to amend his state-court pleadings. (*Id.*). Plaintiff contends that these inaccuracies materially affected the Court's abstention analysis. (*See id.*). The Court recognizes that the timing and procedural status of the state-court proceedings may be material to the substantive abstention inquiry.

Plaintiff also disputes the Stay's characterization of the relationship between the state proceedings and his federal claims, including claims against the SBA. (*See* Request at 12-13). He argues that the SBA did not seek abstention and that certain federal claims could not be resolved in the state proceedings. (*Id.*; *id.* at 3).

Plaintiff further identifies alleged citation errors, inconsistent references, typographical mistakes and statements he contends are unsupported by the record. (*Id.* at 14-15). The Court recognizes that accurate factual statements and legal citations are essential to judicial decision-making. Nevertheless, the existence of an asserted factual or citation *error* does not alone establish that the error resulted from personal bias or prejudice. *Liteky* distinguishes judicial conduct that may be challenged through ordinary review from conduct demonstrating an inability to adjudicate impartially. 510 U.S. at 555-56.

The Court has considered the nature of the asserted inaccuracies, their potential significance to the challenged rulings and Plaintiff's contention that their number and

recurrence demonstrate partiality. The Court does not presume that every disputed factual statement was correct. Indeed, the Court recognizes that it can error. Nor does it determine, through this Order, whether correction, reconsideration or appellate relief is warranted with respect to any underlying ruling. The question is whether the identified circumstances establish grounds for disqualification for bias, prejudice or partiality. Considered in context and with Plaintiff's other allegations, they do not.

**F. Considering the allegations individually and collectively under Section 455(a) and (b)(1)**

Plaintiff argues that the challenged rulings and statements, when considered collectively, demonstrate partiality more clearly than any individual alleged error. (Request at 16-17). The Court has undertaken that cumulative inquiry and finds it no more compelling that the arguments individually.

Under § 455(a), the relevant question is whether the Court's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The inquiry is objective and considers the perspective of a reasonable person informed of the relevant circumstances. *Holland*, 519 F.3d at 913. Section 455(b)(1) separately requires disqualification where a judge has "a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).

The Court has considered the challenged *Kerr* citation, Plaintiff's objections to the *Younger* analysis, the sequence of scheduling orders and the Stay, the different dispositions of Plaintiff's *ex parte* applications, the language of the September 24 EPA Denial and the asserted factual and drafting errors. The Court has also considered Plaintiff's contention that these matters, viewed together, reflect a pattern rather than independent instances of judicial error.

The cumulative inquiry does not require the Court to conclude that every prior ruling was correct before denying recusal. Nor does it permit the Court to disregard the potential significance of an asserted error merely because that error arose during judicial proceedings. The inquiry instead requires consideration of whether the

circumstances, taken as a whole, would cause a reasonable person, knowing the relevant facts, to question the Court's impartiality.

In *Liteky*, the Supreme Court explained that opinions formed during judicial proceedings ordinarily do not establish disqualifying bias unless they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." 510 U.S. at 555. The Court further explained that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not, without more, establish bias or partiality. *Id.* at 555-56.

Here, Plaintiff has identified substantive disagreements with the Court's abstention analysis, an objection to the use of authority in the September 2 Stay, asserted inconsistencies in procedural rulings and critical language in the EPA Denial. The Court has considered those matters collectively rather than treating each as immaterial in isolation.

Considered in totality, the record presented fails to establish, or even suggest, that the challenged decisions resulted from favoritism toward Defendants or antagonism toward Plaintiff. Nor do the identified circumstances, considered together, establish that a reasonable person informed of the relevant facts, would question the Court's impartiality. Disqualification is therefore not required under § 455(a).

Plaintiff's request under § 455(b)(1) rests substantially on the same allegations. Considered individually and collectively, those allegations do not establish personal bias or prejudice concerning Plaintiff. Disqualification under § 455(b)(1) is therefore unwarranted.

As previously stated, the Court reaches these conclusions without reconsidering the substantive merits of the Stay or resolving the questions Plaintiff has presented for appellate review. The distinction between potentially reviewable judicial error and disqualifying partiality governs the disposition of the Renewed Request. *See Liteky*, 510 U.S. at 555; *Holland*, 519 F.3d at 913.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Request for Recusal is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 29, 2026

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE